| | | |
|---|---|---|
| **MARK I. ADAMS and KATHERINE** | ) | |
| **S. ADAMS, Husband and Wife** | ) | |
| **Individually and on behalf of** | ) | |
| **All others similarly situated,** | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| **V.** | ) | |
| | ) | **Case No.:  2:14-cv-02013** |
| | ) | |
| **UNITED SERVICE AUTOMOBILE** | ) | |
| **ASSOCIATION, ET AL.,** | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFFS' COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE

# TABLE OF CONTENTS

I.    SUMMARY OF RESPONSE ................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................3

    A.    Plaintiffs file the class action Arkansas state court ...........................3

    B.    Defendants remove the action to federal court under CAFA ...........................3

        1.    The Parties seek a stay to attempt to mediate the case .........................4

        2.    The Mediation.........................................................................4

        3.    Following a fruitful mediation, the Parties requested more time to negotiate........................................................................6

        4.    The Parties move toward finalizing a settlement ...................................6

        5.    The Parties dismiss the case after reaching the Settlement .................7

        6.    The Court enters its Order to Show Cause...........................................8

III.    STANDARD OF REVIEW.................................................................................8

IV.    RESPONSE ....................................................................................................9

    A.    Counsel were ethically obligated to attempt to have the case resolved in the forum they believed most advantageous to the Plaintiffs and the Putative Class; there was no improper "forum shopping" ..............................................................................9

        1.    The Circuit Court of Polk County was a proper forum for a class action settlement of the claims at issue, even if it was not the *only* proper forum .......................................9

        2.    In Counsel's professional judgment, the Circuit Court of Polk County was the most advantageous forum for this particular case ..............................................................11

        3.    Returning the case to a proper forum where objectors are required to comply with a more stringent procedure as part of the settlement was in the best interest of the class, to avoid unwarranted delays in payment of settlement funds.....................................................................12

4. The complaints of a professional objector do not alter the ethical duties of Counsel to obtain the most favorable settlement of the law governing forum selection ..................................................................14

B. The requested stays to attempt settlement complied with Rule 11 and furthered the purpose of that rule ......................................................16

C. The stipulation of dismissal was properly filed; no class had been certified by this Court ............................................................18

D. Presenting the Settlement to the state court for approval and oversight utilizing a similar Rule 23 and the same federal constitutional protections for absent class members was a proper method of actuating the Settlement ......................................................19

1. State courts have jurisdiction over class actions, and their judgments are entitled to full faith and credit ...........................20

2. The Settlement was properly subjected to full Rule 23 scrutiny ...............................................................22

3. Returning to state court to effectuate a settlement is a recognized class action strategy ............................................25

E. The settlement achieved was fair, adequate and reasonable ...........................26

1. The Settlement obtained was both (i) the best available settlement and (ii) fair, adequate and reasonable ...............................26

2. The Settlement obtained was at least as beneficial to the Class as the settlement approved by this Court in *Eastwood* as being fair, adequate and reasonable ...............................31

3. The principle terms of the Settlement pre-dated any hearings in *Cameron* ............................................................32

4. There was nothing improper about having the Arkansas state court rule on the fee request .......................................33

F. Based on prior experiences in other federal courts in Arkansas, Counsel did not believe the Court would have any concerns with the Settlement being presented to the state court for approval and oversight ...................................................................36

V. CONCLUSION..................................................................37

**Cases**

*Armstrong v. Bd. of Sch. Directors*,
    616 F.2d 305 (7th Cir. 1980) ............................................................17

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    134 S. Ct. 568 (2013) .......................................................................9

*Ballard v. Advance Am.*,
    349 Ark. 545, 79 S.W.3d 835 (2002), *cert. denied,* 538 U.S. 906 (2003)..............................13

*Ballard v. Martin*,
    349 Ark. 564, 79 S.W.3d 838 (2002) ....................................... 22, 23, 24

*Blyden v. Navient Corp.*,
    No. EDCV1402456JGBKKX, 2015 WL 4508069 (C.D. Cal. July 23, 2015) ......................18

*BPS Inc. v. Richardson*,
    341 Ark. 834, 20 S.W.3d 403 (2000) ...................................................23

*Burt v. Titlow*,
    134 S. Ct. 10 (2013) .......................................................................20

*Casey v. Citibank, N.A.*,
    No. 1:13-CV-353, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) ............................ 26, 28, 29

*Chrisco v. Sun. Indus., Inc.*, 304 Ark. 227 (1990) ....................................................25

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................17

*Coll. Ret. Equities Fund, Corp. v. Rink*,
    No. 2012-CA-002050-MR, 2015 WL 226112 (Ky. Ct. App. Jan. 16, 2015)........................35

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir.1977) ..........................................................17

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ........................................................................9

*First Commodity Corp. of Boston Customer Accts. Litig.*,
    119 F.R.D. 301 (D. Mass. 1987)........................................................17

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) .........................................................22

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ..................................................................................................10

*Hall v. Equity Nat. Life Ins. Co.*,
   730 F. Supp. 2d 936 (E.D. Ark. 2010) .........................................................................20, 37

*Hamilton v. SunTrust Mortg. Inc.*,
   No. 13-60749-CIV, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ........................................27

*Hardware Dealers Mut. Fire Ins. Co. v. Glidden Co.*,
   284 U.S. 151 (1931) ..................................................................................................21

*Howlett v. Rose*,
   496 U.S. 356 (1990) ..................................................................................................21

*Hunter v. Runyan*,
   2011 Ark. 43, 382 S.W.3d 643 (2011) .........................................................................13, 23

*In re Charter Commc'ns, Inc., Sec. Litig.*,
   No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................................17

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .........................................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .........................................................................................17

*In re Hydroxycut Marketing and Sales Practices Litig.*,
   No. 09-md-2087, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) .........................................15

*In re Living Social Mktg. and Sales Practices Litig., MDL No. 2254*,
   2013 WL 1181489 (D.D.C. Mar. 22, 2013) ....................................................................15

*In re Motor Fuel Temperature Sales Practices Litig.*,
   No. 07-1840-KHV, 2015 WL 339307 (D. Kan. Jan. 23, 2015) ...........................................19

*In re Online Dvd-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .......................................................................................27

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ..........................................................................................27

*In re Wal-Mart Wage and Hour Emp't Practices Litig.*,
   MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010) .................................................15

*Johnson v. Fankell*,
   520 U.S. 911 (1997) ..................................................................................................21

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ....................................................................................................10

*Kremer v. Chem. Constr. Corp.*,
    456 U.S. 461 (1982) ....................................................................................................20

*Lee v. L.B. Sales, Inc.*,
    177 F.3d 714 (8th Cir. 1999) ........................................................................................8

*Lee v. Ocwen Loan Servicing, LLC*,
    No. 14-cv-60649-Goodman, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015)...........................27

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ......................................................................................33

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996) ..............................................................................................20, 37

*McCuin v. Texas Power & Light Co.*,
    714 F.2d 1255 (5th Cir. 1983) ...................................................................................10

*Mega Life & Health Ins. Co. v. Jacola*,
    330 Ark. 261, 954 S.W.2d 898 (1997) ......................................................................23

*MHC Inv. Co. v. Racom Corp.*,
    323 F.3d 620 (8th Cir. 2003) ........................................................................................8

*Misischia v. St. John's Mercy Health Sys.*,
    457 F.3d 800 (8th Cir. 2006) ........................................................................................8

*Norsyn, Inc. v. Desai*,
    351 F.3d 825 (8th Cir. 2003) ........................................................................................8

*O'Connell v. Champion Int'l Corp.*,
    812 F.2d 393 (8th Cir. 1987) ........................................................................................8

*Perkins v. Spivey*,
    911 F.2d 22 (8th Cir. 1990) ........................................................................................8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ....................................................................................................20

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ....................................................................................................10

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ...........................................................................27

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
    793 F.3d 1177 (10th Cir. 2015) ...................................................................9

*Salkil v. Mt. Sterling Twp. Police Dep't*,
    458 F.3d 520 (6th Cir. 2006) ......................................................................8

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................28

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...................................................................................21

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011) .........................................................................18, 20

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013) ...............................................................................18

*State of Missouri ex rel. St. Louis, B. & M. Ry. Co. v. Taylor*,
    266 U.S. 200 (1924) .....................................................................................9

*Tafflin v. Levitt*,
    493 U.S. 455 (1990) ...................................................................................21

*Tex. Instruments Inc. v. Micron Semiconductor, Inc.*,
    815 F. Supp. 994 (E.D. Tex. 1993) ...........................................................10

*Trainor v. Hernandez*,
    431 U.S. 434, (1977) ..................................................................................20

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir.1976) ......................................................................17

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .....................................................................................9

*Waters v. Int'l Precious Metals Corp.*,
    190 F. 3d 1291 (11th Cir. 1999)................................................................34

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) ...................................................................34

**Statutes**

28 U.S.C. § 1927 ..................................................................................................................8

**Rules**

ARK. R. CIV. P. 23 ....................................................................................................3, 23, 25

ARK. R. CIV. P.. 23(a)(4) ....................................................................................................23

ARK. R. CIV. P. 23(e) .........................................................................................................23

ARK. R. CIV. P. 23(e)(1) .....................................................................................................22

ARK. R. CIV. P. 23(e)(2) ...............................................................................................22, 23

FED. R. CIV. P.. 11 ...........................................................................................................8, 9

FED. R. CIV. P. 11(b) ..........................................................................................................35

FED. R. CIV. P.  11(b)(1) .......................................................................................................8

FED. R. CIV. P.. 23 ...............................................................................................19, 20, 22

FED. R. CIV. P.. 23(e) .....................................................................................................18, 19

FED. R. CIV. P.  Rule 41 ....................................................................................................19

FED. R. CIV. P. 41(a)(1)(A)(ii) ...........................................................................................18

**Other Authorities**

2 Newberg & Conte § 11.41, at 11−85 .............................................................................17

*Aggregate Litigation and the Death of Democratic Dispute Resolution*,
    107 Nw. U. L. Rev. 511 (2013) ....................................................................................21

*Anti-Federalist Procedure*,
    64 Wash. & Lee L. Rev. 233 (2007) .............................................................................21

*Are Consumer Class and Mass Actions Dead? Complex Litigation Strategies After CAFA & MMTJA*,
    41 Loy. L.A. L. Rev. 965 (2008) .............................................................................11, 12

*Attorney Choice of Forum in Class Action Litigation: What Difference Does It Make?*,
    81 Notre Dame L. Rev. 591 (2006) ..........................................................................11, 22

*Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
  2003 U. Chi. Legal F. 403 ...................................................................13

*Conroy v. 3M Corp., No. 00-cv-2810*,
  2006 U.S. Dist. LEXIS 96169, at *10 (N.D. Cal. Aug. 10, 2006)...........................................15

*Death of a Salesman? Forum Shopping and Outcome Determination Under International Shoe*,
  28 U.C. Davis L. Rev. 769 (1995) ...................................................................10

*Forum Shopping, Domestic and International*,
  63 Tul. L. Rev. 553 (1989) ...................................................................12

*How States Can Protect Their Policies in Federal Class Actions*,
  32 Campbell L. Rev. 285 (2010)...................................................................21

*In Defense of Forum Shopping: A Realistic Look at Selecting A Venue*,
  78 Neb. L. Rev. 79 (1999) ...................................................................12

Manual for Complex Litigation Third, § 30.41 ...................................................................19

*Mirroring or Muscling: An Examination of State Class Action Appellate Rulemaking*,
  58 Kan. L. Rev. 1027 (2010) ...................................................................21

Newberg on Class Actions § 6:3...................................................................19

*Nonpecuniary Class Action Settlements*,
  60 Law & Contemp. Probs. 97 (1997) ...................................................................13

Principles Of The Law Of Aggregate Litigation § 3.08...................................................................13

*Redefining Prey and Predator in Class Actions*,
  80 Brook. L. Rev. 743 (2015)...................................................................11

Selecting the Forum—Plaintiffs' Position, 3 Am. Jur. Trials 553...................................................................11

*The End of Objector Blackmail*,
  62 Vand. L. Rev. 1623  (2009) ...................................................................13

*The Relations Between State and Federal Law*,
  54 Colum. L. Rev. 489 (1954) ...................................................................21

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs' Counsel ("Counsel") file this written response to the Court's December 21, 2015 Order to Show Cause ("Order," ECF No. 37). Counsel acted properly and ethically at all times, and there is no basis for Rule 11 sanctions. In support, Counsel respectfully state the following as to why sanctions should not be imposed.

## I. SUMMARY OF RESPONSE

Counsel believe, and the record demonstrates, that they have acted in good faith and pursued a legitimate course of action in:

- litigating in federal court following USAA's removal of this case under the Class Action Fairness Act ("CAFA");

- achieving a favorable settlement ("Settlement") for the putative class;

- stipulating to a dismissal of the federal court action as part of the Settlement; and

- pursuing a class action settlement in the original court of concurrent jurisdiction where state procedural rules are in place favoring members of the class to avoid delays in finalizing the Settlement.

Counsel's conduct was appropriate, does not run afoul of Rule 11, and does not warrant the harsh imposition of sanctions. Counsel's actions complied with the applicable rules of civil procedure, were supported by existing case law interpreting the parties' right to choose their forum, were endorsed by and consistent with treatises discussing this issue, and were in accord with the express and implicit approval of other federal judges in the Eastern and Western Districts of Arkansas in similar litigation.

As an initial matter, it should be noted that Plaintiffs *never* "invoke[ed] this Court's jurisdiction." Instead, this case was only before the Court because the Defendants removed it here. Moreover, Counsel never made misrepresentations in their statements or filings in this

Court; each representation made by Counsel was accurate and made for a proper purpose. Rather than being filed for an improper purpose, all filings were necessary either to comply with the Court's orders, or to prepare for litigation in this Court should settlement discussions fail.

Finally, Counsel's actions were not to the detriment of the class. The Settlement reached, and ultimately approved by the Polk County Circuit Court as being "fair, reasonable, and adequate," was at least as beneficial to the class as—and Counsel believe the record demonstrates even *more* beneficial than—other class settlements approved by federal courts in this district as being "fair, reasonable, and adequate." Among other favorable provisions, Counsel: (i) negotiated a limited (not a "general" or "blanket") release with no preset cap on total recovery; (ii) obtained recovery for class members whose claims might otherwise have been barred by the statute of limitations; and (iii) obtained recovery of a broader category of damages than originally pled by Plaintiffs.

Counsel never sought to evade judicial review of their class action Settlement; the record in state court and the text of the Settlement demonstrates that the Settlement was always intended to be subject to all of the due process protections afforded to absent class members. There are, however, benefits to a class settlement in Arkansas state court. Given that Plaintiffs initially filed their case in Arkansas state court and always believed that it was the appropriate forum, Counsel ultimately negotiated a settlement that appropriately took the matter back to its forum of inception. Such actions were in no way detrimental to the class nor were they in any other manner improper.

## II. Factual Background

A detailed review of the facts is required to analyze the propriety of Rule 11 sanctions. The record here establishes that Counsel conducted this litigation in compliance with all rules of procedure and in the best interest of the Plaintiffs and the putative class.

### A. Plaintiffs file the class action in Arkansas state court.

On December 5, 2013, Mark and Katherine Adams filed suit against USAA in the Circuit Court of Polk County, Arkansas, because that court was a proper, and the preferred, forum to pursue their claims under Arkansas state law on behalf of Arkansas residents for injuries suffered in the state of Arkansas. *See* ECF No. 3 (all docket entries listed herein as "ECF No. __" are to the present cause number, and are reflected on the Docket Sheet attached as App. 1-11). In their complaint, Plaintiffs alleged proper grounds for bringing suit in the Circuit Court of Polk County. *See, e.g.*, ECF No. 3 at ¶¶ 1-6. Plaintiffs alleged claims based on Arkansas state law. *See id.*. Plaintiffs sought certification of a class "[p]ursuant to Arkansas Rule of Civil Procedure 23." *Id.* at ¶ 22. The proposed class was limited to "persons and entities that received 'actual cash value' payments, directly, or indirectly, from USAA for loss or damage to a dwelling or other structure located ***in the State of Arkansas*.**" *Id.* at ¶ 23 (emphasis added).

### B. Defendants remove the action to federal court under CAFA.

Although Plaintiffs never sought to litigate their case in federal court, after Defendant removed the case on January 15, 2014, by asserting CAFA diversity jurisdiction, ECF No. 1, Counsel proceeded to litigate the claims in this Court. Counsel never represented that this Court was the *only* forum to pursue their claims, nor did they represent that this was a *preferred* forum to pursue their claims. Nonetheless, Counsel absolutely complied with the directives of the

Court applicable to the action while preparing for anticipated class certification proceedings and a jury trial.

        1.      <u>The Parties seek a stay to attempt to mediate the case</u>.

Given the inherent risks of litigation—not the least of which was the risk that this Court would not certify a class—Counsel were also open to the possibility of resolving the claims by compromise, as was reasonable under the circumstances. To that end, Counsel agreed with Defendants' counsel to file a Joint Motion for Stay on May 2, 2014. *See* ECF No. 20. The purpose of requesting the stay was to attempt to resolve the case through mediation, thereby avoiding or greatly reducing the expenditure of time and expense by the parties and by the Court. *See id*. At the time, the parties believed that ninety days would be sufficient to complete their exchange of information regarding damages and to schedule and conduct the mediation. *Id*. The Court granted the request and ordered that "[t]he parties shall file ***a stipulation of dismissal*** or status report in this matter on or before August 4, 2014." ECF No. 21 (emphasis added). After a status report was filed, on August 11, 2014 the Court again directed the parties to file a status report ***or stipulation of dismissal*** on or before October 13, 2014. *See* Text Only Order, August 11, 2014. The case remained stayed. *Id.*

        2.      <u>The Mediation</u>.

The Parties enlisted the services of The Honorable Layn R. Phillips, retired federal district judge for the Western District of Oklahoma, to mediate this action. Judge Phillips is one of the nation's preeminent mediators, successfully mediating numerous high-stakes civil disputes in complex multi-party matters, including matters involving Fortune 500 companies. Prior to the mediation, the parties provided Judge Phillips with briefs discussing the factual and procedural background of the case, as well as the disputed factual and legal issues, supported by substantial

data and expert analysis. These materials required hundreds of hours to prepare. The materials were based, in some measure, on the experience obtained by Counsel in other litigation involving similar claims. Preparation for the mediation began months in advance of the scheduled September 2014 mediation and was time intensive. *See* December 9, 2015 Affidavit of Matt Keil, attached hereto as App. 275-289.

The Parties participated in a mediation session in New York on September 15, 2014. While the September mediation was productive and progress was made, a settlement was not reached by the conclusion of that session. It was clear that Plaintiffs and Defendants were not in agreement on numerous key factual and legal points. Accordingly, both sides conducted significant additional work in an attempt to narrow the legal and factual differences. App. 278.

In December 2014, as a culmination of the additional work performed, the parties returned to mediation and participated in a second mediation session with Judge Phillips. The second mediation session, and numerous subsequent telephonic conferences between the parties, concluded with the parties reaching an agreement in principle on the major deal points. However, as is commonplace in complex litigation, it was necessary for the attorneys for the Parties to engage in significant negotiation concerning the details of the settlement documents, including the form and content of the Settlement, Mailed Notice, and Claim Form. These rigorous discussions and negotiations continued for many months following the formal mediation sessions. *Id.*

On December 15, 2014, before the parties had reached an agreement in principle, Mr. Keil wrote this Court on behalf of the parties:

> We write to update the Court on the status of the parties' settlement negotiations. The parties engaged in a second mediation session on December 3, 2014 before the Honorable Layn R. Phillips (Ret.) and have made substantial progress towards

resolving this action. The parties jointly request this action remain stayed for an additional 90 days to allow the parties to continue their settlement efforts.

*See* December 15, 2014 Letter from Matt Keil to the Court, App. 352. This letter is consistent with the later drafted and executed affidavit. App. 278-79.

        3.      <u>Following a fruitful mediation, the Parties requested more time to negotiate</u>.

On December 15, 2014, the Court granted the parties' request and extended the stay until March 16, 2015. *See* Text Only Order, December 15, 2014. The parties were directed to file a status report ***or stipulation of dismissal*** on the record by that date. *Id.* The parties were advised that the Court was unlikely to grant any further extension of the stay in this case. *Id.*

Because the parties believed a final settlement was within reach, Counsel agreed with Defendants' Counsel to file a Status Report and Joint Motion to Extend Stay Pending Settlement Negotiations on March 16, 2015. ECF No. 30. At the time, the parties had reached a consensus on almost all material terms and believed only an additional thirty days was needed to resolve outstanding issues. *Id.* The purpose of requesting the Court to extend the stay was to increase the chances the case could be resolved without the attendant costs, delays and risks of continued litigation.

The Court denied the request. *See* Text Only Order, March 17, 2015. The Court directed Plaintiffs to file any response to the Defendants' pending motion for judgment on the pleadings (ECF No. 18) by April 16, 2015. *Id.* The parties were also directed to file an updated Rule 26(f) report by that same date. *Id.*

        4.      <u>The Parties move toward finalizing a settlement</u>.

By March 31, 2015, the parties had reached an accord on most of the essential terms to settle the case. The parties then began the work of preparing proposed drafts of various documents that would be necessary to effectuate such a settlement, and negotiating the terms

contained in those documents. Accordingly, although an understanding in substance had been reached, final settlement documents had not been executed.

Therefore, in compliance with the Court's March 17, 2015 Order, the parties filed a Rule 26(f) report on April 15, 2015. ECF No. 31. In addition, Defendants withdrew their Motion for Partial Judgment on the Pleadings (ECF No. 18) "without prejudice to reasserting the same arguments set forth therein in a future motion, if Defendants decide to do so at a later point in this litigation." ECF No. 32. The Court then entered a scheduling order. ECF No. 33.

The parties also continued to work on finalizing the settlement documents to effectuate the terms of the agreement. On June 16, 2015, a Stipulation of Settlement ("Settlement") was finalized and executed by the parties which resolved all claims in this Court by Plaintiffs against the Defendants. *See* Stipulation of Settlement, App. 81-177.

5. The Parties dismiss the case after reaching the Settlement.

Shortly after the Settlement was finalized and executed by the Parties on June 16, 2015, the parties filed a stipulation of dismissal in this Court on June 19, 2015. ECF No. 35. The stipulation of dismissal was filed herein because the parties had entered into a classwide settlement conditioned on approval by the Polk County Circuit Court and, if approved, to be administered and overseen by that court. Despite the fact that approval of the class settlement had not yet been entered in Polk County Circuit Court, rather than leave a parallel action pending on this Court's docket consuming Court resources, Counsel agreed to the stipulation of dismissal. A clerk's order of dismissal was entered herein on June 22, 2015. ECF No. 36.

6.    <u>The Court enters its Order to Show Cause</u>.

On December 21, 2015, the Court directed all counsel of record to show cause as to why a non-monetary sanction should not be imposed for violations of Federal Rule of Civil Procedure 11(b)(1).   On January 11, 2016, the Court issued a text only order scheduling a hearing for February 19, 2016.

## III. STANDARD OF REVIEW

"The standard under … Rule 11 is whether the attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990) (citation omitted). The test is whether the litigant's conduct was reasonable under the circumstances. *Norsyn, Inc. v. Desai*, 351 F.3d 825, 831 (8th Cir. 2003); *Salkil v. Mt. Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006).

Because Rule 11 "is penal in nature, it should be strictly construed so that it does not dampen the legitimate zeal of an attorney in representing his client." *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (construing 28 U.S.C. § 1927; internal quotations and citations omitted)); *see also Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 806 (8th Cir. 2006) (holding that sanctions are not appropriate where conduct undertaken, even if "hardly worthy of praise," raises issues "subject to reasonable dispute"). "The imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir. 1987); *see also MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003) (noting Rule 11 should be applied with "particular strictness where, as here, the sanctions are imposed on the court's own motion").

## IV. RESPONSE

Counsel have not filed or done anything in this Court for any "improper purpose" (or otherwise in violation of Rule 11), as demonstrated by the facts set out above and the legal principles discussed below. Sanctions should not be imposed.

**A.      Counsel were ethically obligated to attempt to have the case resolved in the forum they believed most advantageous to the Plaintiffs and the Putative Class; there was no improper "forum shopping."**

Forum shopping is not an "improper purpose" under Rule 11 when a proper ground "arguably exists" for jurisdiction in the forum at issue. *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,* 793 F.3d 1177, 1188 (10th Cir. 2015) (holding that district court abused its discretion in relying on "forum shopping" as a ground for imposing Rule 11 sanction).

1.      The Circuit Court of Polk County was a proper forum for a class action settlement of the claims at issue, even if it was not the *only* proper forum.

"[P]laintiffs are ordinarily allowed to select **whatever forum they consider most advantageous** (consistent with jurisdictional and venue limitations)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581-82 (2013) (emphasis added) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)).[1]  As stated by one federal appeals court,

> Forum-shopping is sanctioned by our judicial system. It is as American as the Constitution, peremptory challenges to jurors, and our dual system of state and federal courts.  […] Virtually all causes of action created by federal law may be asserted in either a state or a federal court. Many claims that may be asserted in the courts of one state may also be asserted in the courts of another. Not only may

---

[1] *See also Ferens v. John Deere Co*., 494 U.S. 516, 534 (1990) (noting the federal venue law "grants the plaintiff the advantage of choosing the venue in which his action will be tried, with whatever state-law advantages accompany that choice.") (Scalia, J., dissenting); *State of Missouri ex rel. St. Louis, B. & M. Ry. Co. v. Taylor,* 266 U.S. 200, 208 (1924) ("The grant of concurrent jurisdiction implies that, in the first instance, the plaintiff shall have the choice of the court. As an incident, he is entitled to whatever remedial advantage inheres in the particular forum.").

a litigant frequently select among several jurisdictions, he may, within a jurisdiction, lay venue in more than one court.

*The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause.* The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*McCuin v. Texas Power & Light Co*., 714 F.2d 1255, 1261-62 (5th Cir. 1983) (emphasis added);

*see also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779 (1984) ("Petitioner's successful search for a State with a lengthy statute of limitations is no different from the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations.").[2]

Commentators have similarly noted the propriety of deliberative forum selection:

[F]orum selection is merely the process of choosing among various proper fora to resolve a case. In fact, a recent study on attorney choice of fora in class action litigation indicates that two of the three primary factors in forum selection are source of law and state connections. The prevalence of these factors indicates that class action attorneys are generally not manipulating jurisdiction to "keep cases of national importance out of Federal court." Rather, they are merely following principles of federalism and maintaining local actions in state courts. Moreover, even when plaintiffs' counsel chooses a forum based on a perception of judges'

---

[2] *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981) (recognizing that "many plaintiffs are able to choose from among several forums"); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947) ("[General venue] statutes . . . usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy."); *Tex. Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 996 (E.D. Tex. 1993) ("In reality, every litigant who files a lawsuit engages in forum shopping when he chooses a place to file suit. . . . The venue statutes are intentionally broad, and litigants must often make an election from among several options as to where to file a lawsuit."); *see also* Christopher D. Cameron & Kevin R. Johnson, *Death of a Salesman? Forum Shopping and Outcome Determination Under International Shoe*, 28 U.C. DAVIS L. REV. 769, 776 n. 20 (1995) (referring to "the rare case in which an alternative forum is effectively unavailable").

predispositions, many commentators characterize this decision as the fulfillment of an attorney's ethical obligation, rather than an exercise in manipulation.

A well-known precept in the world of litigation is that forum selection has a substantial effect on the outcome of a case. This precept is particularly true in class and mass actions. A plaintiff or class member's recovery often depends on successful joinder or class certification because small claims are not economically viable unless pursued collectively. However, joinder and certification rules grant judges particularly wide discretion, increasing the likelihood that the forum selected will ultimately determine the outcome of the case.

Nicole Ochi, *Are Consumer Class and Mass Actions Dead? Complex Litigation Strategies After CAFA & MMTJA*, 41 LOY. L.A. L. REV. 965, 975-76 (2008) (internal notes and citations omitted).

2.  In Counsel's professional judgment, the Circuit Court of Polk County was the most advantageous forum for this particular case.

The process of selecting a preferred forum for a particular putative class action depends on numerous variables. *See generally* Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does It Make?,* 81 NOTRE DAME L. REV. 591, 614 (2006).[3] Here, Counsel at all times believed the state court was the best and most

---

[3] As one encyclopedia notes, "[w]henever a possible election of forum exists, serious consideration must be given [to] the substantive and procedural differences between the forums to determine which would be most favorable to the client's case." James A. Dooley, *Selecting the Forum—Plaintiffs' Position*, 3 AM. JUR. TRIALS 553; *see, e.g.,* Christine P. Bartholomew, *Redefining Prey and Predator in Class Actions*, 80 BROOK. L. REV. 743, 781 (2015) ("Consumers are disadvantaged by the rise of procedural hurdles that allow defendants to avoid legal accountability. A corporation can 'win' either by beating a motion for class certification or by winning a dispositive motion without necessarily reaching the substantive allegations of misconduct. As previously detailed, in federal court, where these claims are primarily brought, it is now harder to get into court; harder to plead a claim; and harder to certify a class."); *see also* Willy E. Rice, Allegedly "Biased," "Intimi*dating,"* and *"Incompetent" State Court Judges and the Questionable Removal of State Law Class Actions to Purportedly "Impartial" and "Competent" Federal Courts--A Historical Perspective and an Empirical Analysis of Class Action Dispositions in Federal and State Courts, 1925-2011,* 3 WM. & MARY BUS. L. REV. 419 (2012).

desirable forum for the claims asserted herein. Counsel were duty-bound to attempt to resolve the claims in the forum that was most advantageous to the Plaintiffs and the putative class. *See, e.g.,* Mary Garvey Algero, *In Defense of Forum Shopping: A Realistic Look at Selecting A Venue*, 78 NEB. L. REV. 79, 81 (1999) ("Should the attorney use restraint and not seek the more advantageous venue for his client? If so, the attorney could face a malpractice claim from his client."); Ochi, *supra*, 41 LOY. L.A. L. REV. at 975-76 (class action attorney seeking to resolve case in the most advantageous forum is "the fulfillment of an attorney's ethical obligation, rather than an exercise in manipulation.").[4]

3. <u>Returning the case to a proper forum where objectors are required to comply with a more stringent procedure as part of the settlement was in the best interest of the class, to avoid unwarranted delays in payment of settlement funds.</u>

When mediating and attempting to reach a compromise settlement in a class action, Counsel's objectives for the Plaintiffs and putative class[5] included negotiating the best settlement they could achieve; on the best terms they could receive; obtaining settlement approval in the best forum available; achieving these objectives as expeditiously as they could; all the while avoiding professional objectors to the extent possible. In this manner, class members will receive the class benefits at the earliest possible date. Counsel achieved each of these objectives.

While many factors played an important role in Counsel's decision to seek to have this litigation resolved in the Arkansas state court where it was originally filed, at the top of the list

---

[4] "When a relationship becomes litigious, failure to select an advantageous forum may amount to malpractice, for **attorneys owe a duty to vindicate their clients' rights wherever they can expect the best results.** That proposition ought to be obvious, and so it would be but for the nasty phrase 'forum shopping,' which suggests that those who represent their clients' interests effectively commit a breach of professional etiquette." Friedrich K. Juenger, *Forum Shopping, Domestic and International*, 63 TUL. L. REV. 553, 572 (1989) (emphasis added).

[5] At the time of dismissal from federal court and refiling in state court, there was no "class," only a "putative class."

was the fact that "professional objectors" are treated considerably different in the state courts of Arkansas compared to federal court. Under the current federal system, even the weakest objection can be raised not only in district court but again on appeal in an attempt to delay and extort money out of a class settlement.[6] Federal courts recognize the problem, but have yet to fashion an effective means to address this concern. *See generally, In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n. 30 (S.D. Fla. 2011) ("[p]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.") (internal quotation marks and citation omitted). In stark contrast, Arkansas state courts have developed the means that provide a reasonable restraint on such abuses by requiring formal intervention. *See Hunter v. Runyan*, 2011 Ark. 43, at 14, 382 S.W.3d 643, 651 (2011) ("an unnamed class member whose request to intervene is not granted has no standing to appeal the final approval of a class settlement"), citing *Ballard v. Advance Am.,* 349 Ark. 545, 79 S.W.3d 835 (2002), *cert. denied*, 538 U.S. 906 (2003). For this reason, among others, Counsel believed

---

[6] *See generally* Brian T. Fitzpatrick, *The End of Objector Blackmail*, 62 VAND. L. REV. 1623, 1666 (2009) ("courts and commentators have been concerned with the ability of class action objectors to blackmail class counsel by filing meritless appeals that could **delay the final resolution of settlements for months or years.**") (emphasis added); *see also id.* at pp. 1633-1640, (citing PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.08 cmt. b (Proposed Final Draft, Apr. 1, 2009) ("A baseless objection, followed by an appeal after the objection is rejected, can delay the finalization of a settlement for months or even years."); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 429 ("The ability to appeal after filing an objection in the district court—now firmly established after *Devlin*—slows down the class action's progress considerably."); Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 LAW & CONTEMP. PROBS. 97, 120 n.64 (1997) (explaining that objectors "can appeal the settlement . . . and during the appeal process, the settlement will be in limbo. […] ***The prospect of delaying a settlement for months or years by taking an appeal is the realistic threat that objectors hold over the heads of the settling parties.***") (emphasis added)).

the Arkansas state court was the best forum for the class in terms of getting the Settlement (the best they could negotiate) approved as quickly as they could while avoiding professional objectors with baseless objections so that they could get people paid as soon as they could.

4.    The complaints of a professional objector do not alter the ethical duties of Counsel to obtain the most favorable settlement or the law governing forum selection.

The Court states in its Order that it first became aware that the present case had been re-filed in state court from an article written by Mark Friedman that appeared on December 14, 2015, in the Arkansas Business News (ECF No. 37 at 1, n. 2, citing Mark Friedman, *John Goodson's New Class Action Strategy Takes Place of One Blocked by US Supreme Court*, Arkansas Business News, Dec. 14, 2015). Compounding a number of factual and legal inaccuracies contained in Mr. Friedman's article is his questionable reliance upon Ted Frank's interpretation of the documents in this case, which Mr. Friedman apparently requested Mr. Frank to review. In the article, Mr. Frank opines, with no apparent factual or legal foundation, that having a case filed in state court for the purposes of settlement is "a pretty standard way to try to rip off the class." *See* Friedman, *supra*. Notably *lacking* in the Friedman article is any discussion of Mr. Frank's professional background or motivation to make such a baseless, and erroneous, statement. In particular, nowhere in the article is the reader informed of Mr. Frank's lengthy and well-documented career as a "serial" objector to class action settlements across the country.[7]

_____

[7] *See, e.g.,* National Association of Legal Fee Analysis, *The New Case Against Professional Class Action Objectors*, April 14, 2014, http://www.thenalfa.org/blog/the-new-case-against-professional-class-action-objectors/ ("Well-known class actions objectors include Ted Frank of Center for Class Action Fairness, John Pentz of Class Action Fairness Group and Lawrence Schonbrun of Class Action Watch, Edward Siegel of Law Offices of Edward Siegel and Eduardo Cochran of Law Offices of Eduardo Cochran.") (advancing Top 10 reasons to oppose class action objectors, including, 'Professional Objectors Troll for Cases'; 'Professional Objectors Are Not Qualified Experts'; 'Professional objectors are anti-class action'; 'Professional objectors lack

Mr. Frank is fond of repeatedly declaring that his motives are pure and that he merely seeks "to correct class action abuses for his clients and other class members, not to help clients win extortionate payoffs." *See* Alison Frankel, *Exposing Class Action Objectors: Lieff Cabraser, Ted Frank in 'Lurid' Dispute,* Reuters, June 22, 2015. However those claims have recently been brought into serious question given the revelation of Mr. Frank's close relationship to another high-profile professional objector, Chris Bandas.[8] It was revealed earlier this year that Mr. Frank has had a lucrative and long-standing relationship with Mr. Bandas, whereby Mr. Frank apparently received approximately $250,000 in "consulting fees" since 2013 in exchange for his assistance with objections filed by Mr. Bandas. *See* Frankel, *supra.* In short, Mr. Frank's

---

experience in large, complex class action cases'; 'Professional objectors interfere with private parties negotiating a class action settlement in good faith'; and 'Professional Objectors Hide Behind Non-Profit Groups';

[8] Attorney Christopher Mr. Bandas, is a "professional" or "serial" objector. Mr. Bandas "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted). *See also, id.* at 533 n. 4 (citation omitted) ("Mr. Bandas is … improperly attempting to 'hijack' the settlement of this action from deserving class members … solely to coerce ill-gotten, inappropriate, and unspecified 'legal fees.'); *In re Hydroxycut Marketing and Sales Practices Litig.*, No. 09-md-2087, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (finding that Mr. Bandas demanded $400,000 in return for making his objection "go away.") Mr. Bandas' objection scheme has repeatedly been found to be "meritless," "frivolous," "vexatious," and/or "filed for [an] improper purpose". *See Id.* ("In light of Mr. Bandas's scheme, the Court finds [the objections] were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."); *In re Wal-Mart Wage and Hour Emp't Practices Litig.*, MDL No. 1735, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) ("[T]he Court finds that the objections are not supported by law or the facts and are indeed merit less [sic]."); *Conroy v. 3M Corp.*, No. 00-cv-2810, 2006 U.S. Dist. LEXIS 96169, at *10 (N.D. Cal. Aug. 10, 2006) ("The Court finds that the Bandas Law Firm['s] … objections to the proposed settlement were unfounded …."); *In re Living Social Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, at *17 (D.D.C. Mar. 22, 2013) ("The objections to the settlement terms are largely meritless.").

conclusory and utterly unsupported statement that Counsel re-filed in the original state court forum as a means of "ripping off" the class is patently false, unsupported, irresponsible, of questionable motive, and certainly incapable of supporting a finding that Rule 11 has been violated.

In any event, this case was resolved in a proper forum. The Settlement Class, now and as originally pled, is comprised solely of Arkansas property-holders, and the suit asserted claims for breach of Arkansas law arising from Arkansas insurance policies. Arkansas state courts have a strong interest in resolving disputes of an Arkansas-only Settlement Class, whose claims are governed by Arkansas substantive law. Counsel believe that Arkansas trial judges are fully capable of handling such a case, and that the citizens of Arkansas are well protected by Arkansas state court judges making determinations as to whether such a settlement is fair, adequate, reasonable, and in the best interest of the class. *See* Keil Affidavit, App. 277, 279, at ¶¶ 4 and 10. There was no impermissible "forum shopping"; the case started—and ended—in an Arkansas state court with jurisdiction over the case.

**B.    The requested stays to attempt settlement complied with Rule 11 and furthered the purpose of that rule.**

Counsel asked this Court to stay the case so that Counsel could continue settlement discussions. There was no misrepresentation—Counsel *did* want the case stayed for settlement negotiations, and Counsel *did* in fact conduct and continue such settlement discussions. Counsel requested such stays in the belief that they were ***preventing*** harassment, ***preventing*** unnecessary delay, and ***preventing*** an increase of the cost of litigation. In short, the stays were requested to prevent the very concerns addressed in Rule 11(b)(1). Declarations of Counsel, App. 443-508.

In short, the motions to stay were not filed in bad faith. Counsel believe that attempting to resolve the case by compromise was a proper purpose for requesting a stay, *see id.*, a position supported by existing case law:

> The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. See 2 NEWBERG & CONTE § 11.41, at 11–85 (citing cases); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976). The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *See First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301, 306–07 (D.Mass.1987). These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation within itself.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).[9]

Although progress was made during mediation, Counsel were never certain a final agreement of any sort would be reached. Declarations of Counsel, App. 443-508. By seeking stays, Counsel simply asked for additional time to work through the issues in hopes of reaching a final agreement. *Id.* The parties understood that if the settlement process broke down, the case would continue to be litigated in federal court. *Id.* The parties did not move to dismiss until the case was settled because until a final agreement was reached the case could have returned to a litigation track. *Id.* Counsel were not wasting the Court's time; Counsel were doing what was objectively and subjectively appropriate to *avoid* wasting the Court's time. *Id.* Counsel believed

---

[9] *See also Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (citations omitted); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."), quoting *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980).

the requested stays were the best means to limit the Court's expenditure of time and effort on the matter, and Counsel still believe that the stays achieved that benefit. *Id.*

## C. The stipulation of dismissal was properly filed; no class had been certified by this Court.

Plaintiffs and Counsel agreed with Defendant to dismiss the case in this Court. No motion for certification had been filed and no class had been certified.[10] Plaintiffs agreed to the stipulation of dismissal because Plaintiffs wanted to include their claims as part of a putative classwide settlement to be presented to the Arkansas state court where Plaintiffs had originally filed their claims (and which Counsel believed was not only a proper forum, but the best forum, for their claims). *Id.* Rather than keep this case on this Court's docket while a parallel proceeding was underway in state court, Counsel believed in good faith that dismissing the federal case was a proper way to avoid a needless increase in the cost of litigation. *Id.*

The Federal Rules of Procedure permit the dismissal of a case via the parties' stipulation. *See* FED. R. CIV. P. 41(a)(1)(A)(ii). The rule allows such a stipulation of dismissal to be filed at any time. *Id.* In the class action context, the *only* limitation on a stipulation of dismissal would be in the event the district court has already certified a class. Rule 23(e)'s requirement for court approval for voluntary dismissal of a class action only applies to a "certified class." *See* FED. R. CIV. P. 23(e) ("The claims, issues, or defenses *of a certified class* may be settled, voluntarily

---

[10] "Until a class is certified, Plaintiff proceeds in an individual capacity and asserts claims on behalf of herself only." *Blyden v. Navient Corp.,* No. EDCV1402456JGBKKX, 2015 WL 4508069, at *7 (C.D. Cal. July 23, 2015), citing *Smith v. Bayer Corp.,* 131 S. Ct. 2368, 2380 (2011) ("[A]ccording to Bayer, . . he 'acted in a representative capacity when he sought class certification.' ¶ But wishing does not make it so. . . . Federal Rule 23 determines what is and is not a class action in federal court. . . ."); *Standard Fire Ins. Co. v. Knowles,* 133 S. Ct. 1345, 1349 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.").

dismissed, or compromised only with the court's approval.") (emphasis added).[11] Because no class had been certified here (indeed, certification had not even been requested), under the express provisions of Rule 23 and Rule 41 no court approval was required.

Respectfully, the Order, as a whole, suggests that there are limitations on dismissal of uncertified class action cases that do not appear in Rule 41, and for which the 2003 amendments to Rule 23 were expressly made to address. *See* n. 11.

**D.    Presenting the Settlement to the state court for approval and oversight utilizing a similar Rule 23 and the same federal constitutional protections for absent class members was a proper method of actuating the Settlement.**

State courts share jurisdiction over class actions such as the case at issue, and a federal court is not the exclusive venue for handling such claims and settlements.[12] Counsel did not "evade" the protections of Rule 23 or the constitutional protections of due process by asking a court in a different forum to scrutinize the Settlement by applying that forum's Rule 23 that

---

[11] "Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of 'a class action.' That language could be--and at times was--read to require court approval of settlements with putative class representatives that resolved only individual claims. See Manual for Complex Litigation Third, § 30.41. The new rule requires approval only if the claims, issues, or defenses *of a certified class* are resolved by a settlement, voluntary dismissal, or compromise." FED. R. CIV. P. 23 Advisory Committee Notes, 2003 Amendments. *See, e.g., In re Motor Fuel Temperature Sales Practices Litig.,* No. 07-1840-KHV, 2015 WL 339307, at *3 (D. Kan. Jan. 23, 2015) ("The Court had not certified a class as to any of the claims which were subject to the stipulation of dismissal. Thus, the Federal Rules of Civil Procedure did not require the parties to obtain Court approval before dismissing said claims.").

[12] *See* NEWBERG ON CLASS ACTIONS § 6:3 (5th Ed.) ("[D]iversity cases and diversity class actions that *could* be filed in federal court may nonetheless be filed in state courts. State courts have concurrent subject matter jurisdiction over most cases that are within the subject matter jurisdiction of the federal courts.") (emphasis in original).

provides the very same constitutional protections of due process for absent class members as Federal Rule 23.[13]

> 1. <u>State courts have jurisdiction over class actions, and their judgments are entitled to full faith and credit.</u>

It is well-established that a state court is competent to certify a class action and issue a judgment therein. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985). "[A] judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit." *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 373-375 (1996). Indeed, an Arkansas federal district court has recognized that a decision by an Arkansas state court to approve a class action settlement is entitled to full faith and credit in the federal courts. *See Hall v. Equity Nat. Life Ins. Co.,* 730 F. Supp. 2d 936, 944 (E.D. Ark. 2010) (J. Holmes). In the present case, the Arkansas court's judgment approving the Settlement and awarding fees is to be treated "with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co*., 516 U.S. at 373, quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481–482 (1982).

In short, Federal Rule 23 as construed by federal courts is not the only permissible means of resolving a class action in the United States. *See generally, Smith v. Bayer Corp*., 564 U.S. 299, ___, 131 S. Ct. 2368, 2377-79 (2011) (holding that a federal court's decision against certifying a class under federal law did not bar a West Virginia state court from later applying its

---

[13] "[A] foundational principle of our federal system [is that] State courts are adequate forums for the vindication of federal rights. . . . This principle applies to claimed violations of constitutional, as well as statutory, rights." *Burt v. Titlow,* 134 S. Ct. 10, 15, (2013), citing *Trainor v. Hernandez,* 431 U.S. 434, 443, (1977). Indeed, "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights," and this Court has refused to sanction any decision that would "reflec[t] negatively upon [a] state court's ability to do so." *Id*. (internal quotation marks and citation omitted).

own, different class action law to consider certifying the same class*)*. "Because states retain authority over their respective judiciaries under the Tenth Amendment, the [Supreme] Court has indicated that 'the procedure by which rights may be enforced and wrongs remedied is peculiarly a subject of state regulation and control.'" A. Benjamin Spencer, *Anti-Federalist Procedure*, 64 WASH. & LEE L. REV. 233, 273 (2007) (quoting *Hardware Dealers Mut. Fire Ins. Co. v. Glidden Co.*, 284 U.S. 151, 158 (1931) and citing Henry M. Hart, Jr., *The Relations Between State and Federal Law*, 54 COLUM. L. REV. 489, 508 (1954) ("The general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them."), quoted in *Johnson v. Fankell*, 520 U.S. 911, 919 (1997); *Howlett v. Rose*, 496 U.S. 356, 372 (1990)); *see also, generally, Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("We begin with the axiom that, under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause."); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 416 (2010) ("Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court.").[14]

---

[14] "States have a great variety of possible interests in authorizing class actions and fine-tuning their effects." Lucas Watkins, *How States Can Protect Their Policies in Federal Class Actions,* 32 CAMPBELL L. REV. 285, 288 (2010). "***Standards for class certification vary widely across the fifty states.*** Some states, like South Carolina, have extremely liberal standards. Some, like Arkansas, claim to adhere to federal standards but do not. Others, like Texas, have stricter standards than federal courts." *Id*. at 291-92 (emphasis added). "West Virginia provides another example. West Virginia's basic class certification standards--much more liberal than their federal analogues." *Id*. at 292; *see also* Linda S. Mullenix, *Aggregate Litigation and the Death of Democratic Dispute Resolution*, 107 NW. U. L. REV. 511, 534 (2013) (noting that Mississippi and Virginia do not even have state class action rules); *see generally.,* Laura J. Hines, *Mirroring or Muscling: An Examination of State Class Action Appellate Rulemaking*, 58 KAN. L. REV. 1027 (2010); Jessica D. Miller & Jordan M. Schwartz, *Recent Appellate Federal and State Developments in Class Actions*, NFJE EIGHTH ANNUAL JUDICIAL SYMPOSIUM 87 (July 2012). Federal and state courts may also have different procedures or standards regarding such matters

2.     The Settlement was properly subjected to full Rule 23 scrutiny.

There was no "evasion" of any protections to the class members of Rule 23.  Indeed, the Arkansas Supreme Court has adopted the following factors *set forth by the Eighth Circuit* to ensure that a proposed class settlement is fair to absent members: "(1) the strength of the case for the plaintiffs on the merits, balanced against the amount offered in the settlement; (2) the defendant's overall financial condition and ability to pay; (3) the complexity, length, and expense of further litigation; and (4) the amount of opposition to the settlement." *See Ballard v. Martin*, 349 Ark. 564, 574, 79 S.W.3d 838, 844 (2002) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)).  In this regard, the Arkansas Supreme Court adopted the Eighth Circuit's guidance that "the trial court is accorded deference, but that deference is accompanied by *a duty to act as a fiduciary who must serve as guardian of the rights of absent class members*" and "no court should accept a settlement that is unfair or inadequate, and the burden is on the proponents of the settlement to show that the proposed settlement meets standards of fairness and adequacy." *Ballard,* 349 Ark. at 575, 79 S.W.3d at 844-45 (emphasis added).

As the Arkansas Supreme Court has stated:

[Arkansas] Rule 23(e)(1) requires that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Ark. R. Civ. P. 23(e)(1) (2010). Rule 23(e)(2) further requires that "[t]he parties seeking approval of a settlement, voluntary dismissal, or compromise must file a statement identifying any agreement made in connection

---

as pleading requirements, discovery practices, coupon settlements, attorney fee awards, jury pool makeup, and summary judgment. *See, generally,* Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does It Make?,* 81 NOTRE DAME L. REV. 591 (2006); Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*, FED. JUDICIAL CTR. (2005); Thomas Mayhew, *Choosing Federal or State Court in Consumer Class Actions*, 16:3 ASS'N BUS. TRIAL LAWS. N. CAL. REP. (2007).

with the proposed settlement, voluntary dismissal, or compromise." Ark. R. Civ. P. 23(e)(2) (2010). The language of Rule 23(e) is mandatory; it specifically requires court review and approval of a settlement agreement reached in a class-action case.

*Hunter v. Runyan,* 2011 Ark. 43, at 11, 382 S.W.3d 643, 650 (2011), *cert. denied sub nom.,*

*Crager v. Runyan*, —— U.S. ——, 132 S. Ct. 243, 181 L. Ed. 2d 139 (2011).

Among the specific prerequisites to class certification under Arkansas Rule 23 is that "the representative parties and their counsel will fairly and adequately protect the interests of the class. ARK. R. CIV. P. 23(a)(4); *see also BPS Inc. v. Richardson*, 341 Ark. 834, 841, 20 S.W.3d 403, 405-06 (2000). The Arkansas Supreme Court has interpreted that subsection to require three elements: "(1) the representative counsel must be qualified, experienced, and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation." *Ballard,* 349 Ark. at 583-84, 79 S.W.3d at 850 (quoting *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 275, 954 S.W.2d 898, 904 (1997)).

Here, the Settlement was presented for consideration before Judge Jerry Ryan, who, just like this Court, is a conscientious jurist, and who conducted a thorough review of the Settlement before ultimately issuing an order approving the Settlement and awarding attorneys' fees. The review was assisted by both extensive briefing and a lengthy oral argument at the final fairness hearing. *See, e.g.*, Motion and Brief in Support for Final Approval of Settlement and Entry of an Order and Judgment, App. 212-245. Direct mail notice was sent to each Class Member, with a reach of nearly 99% (Affidavit of Hodne, App. 248-255); the Class members were advised via the mailed notice of their rights under the Settlement, including their rights to opt-out or to object

(Notice, App. 257-266); and Counsel filed their fee brief in advance of the deadline for opt-out and exclusions. Class Counsel's Application for Attorneys' Fees and Costs, App. 22-59.[15]

At the final fairness hearing, Judge Ryan had the benefit of hearing from objectors, and reviewing other objections that had been filed, which allowed him to further evaluate the Settlement before approving it. Finally, Judge Ryan had the comprehensive attorney fee brief to consider in reviewing and awarding fees. In sum, the Arkansas state court had the very same sort of materials this Court would have been provided to review such a settlement, and Counsel strongly believe that the state court was up to the role of protecting the interests of the Class. *See Ballard*, 349 Ark. at 575, 79 S.W.3d at 844 (trial court has "duty to act as a fiduciary who must serve as guardian of the rights of absent class members").

Judge Ryan thoroughly considered and evaluated the issues, and he entered an order reflecting his review and evaluation of the Settlement:

> 18.     The Court, in its evaluation of the fairness, reasonableness, and adequacy of the Stipulation and Class Counsel's Application for Fees, considered all objections that have been raised by those who objected, including those arguments that were raised but not properly developed by the objectors, and considered arguments could have been raised by any absent Settlement Class Member. After considering all such objections, the Court finds that the Stipulation is fair, reasonable, and adequate under Arkansas law.
>
> 19.     Settlement Class Members are not required under the Stipulation to submit in support of their claim, records or documents that they do not possess. Settlement Class Members are not burdened or discouraged from filing their claims because they are required to provide documents in their possession along with their Claim Form. Additionally, the manner in which documents in Defendants' possession are used to evaluate and process claims is fair and reasonable based upon the terms of the Stipulation and evidence presented at the Final Approval Hearing. The claim process as set forth in the Stipulation is fair, reasonable, and adequate to both Settlement Class Members and Defendants.

---

[15] The entirety of the Appendices and motions submitted are attached as App. 22-308. In addition, Counsel filed responses to the two objections that were filed, App. 309-330, and a response to the one defective motion to intervene that was filed.

20.     Class Counsel's request for $1,850,000 in fees and expenses, and total Incentive Awards to the Named Plaintiffs of $5,000 each, in full satisfaction of all of their claims, to be paid by Defendants is fair, reasonable, and adequate under the Court's analysis of the *Chrisco* factors. *Chrisco v. Sun. Indus., Inc.*, 304 Ark. 227, 229 (1990).

[...]

22.     The Court finds that all requirements for certification of a settlement class under Rule 23 of the Arkansas Rules of Civil Procedure have been met. The Court certifies the Settlement Class, for settlement purposes only, under Rule 23 of the Arkansas Rules of Civil Procedure and all other applicable rules and law.

23.     The Court finds that the terms of the Stipulation are fair, reasonable, and adequate to Settlement Class Members; consistent with and in compliance with all requirements of due process and Arkansas law; and in the best interests of the Settlement Class.

December 21, 2015 Final Order and Judgment, App. 331-351.

> 3.     <u>Returning to state court to effectuate a settlement is a recognized class action strategy</u>.

At least one class action treatise has recognized that CAFA does not prohibit the parties

from agreeing to return to state court to effectuate a settlement:

> [T]he settlement provisions [of CAFA] apply only to federal court class actions. Thus, the parties to a settlement—even of a federal case—can settle the case in state court, thereby avoiding CAFA's limitations.  If both sides are comfortable, for example, with a coupon settlement that would determine fees based on the face value of coupons, the parties can re-file in state court, and present the coupon settlement in state court.  Because the defendant will not want to remove the case to federal court, CAFA's settlement provisions will not apply . . .  and the parties can settle without CAFA's restrictions.  The existing federal case would then be dismissed as *res judicata*.

Robert Klonoff, CLASS ACTIONS AND OTHER MULTI-PARTY LITIGATION IN A NUTSHELL (4th ed.

2012) at 305 (emphasis added).[16]    Thus what transpired was legally and procedurally

permissible—and certainly not sanctionable—conduct.

---

[16] Prof. Klonoff suggests that this practice perhaps reflects a "gap" in CAFA that would be a matter for Congress to address.  *See id.*

**E.     The settlement achieved was fair, adequate and reasonable.**

Counsel reads the Order to Show Cause as very clearly expressing the Court's concern that (i) the Settlement achieved here was not as good as the one brought before the Court for evaluation in *Cameron*, and (ii) there was something untoward about having another court evaluate the fee request when this Court likely would have reduced the fee request because this was a claims-made, versus claims-paid, settlement.  Counsel will respond to both points.

     1.     <u>The Settlement obtained was both (i) the best available settlement and (ii) fair, adequate and reasonable.</u>

The Settlement obtained was the best *available* settlement.  Counsel recognizes that it is not a *Cameron*-type "direct payment" settlement.  However, a claims-made settlement that *was achieved* should not be compared to a settlement that *was not offered*.[17,18]

---

[17]  *Casey v. Citibank, N.A.*, No. 1:13-CV-353, 2014 WL 4120599, at *2 (N.D.N.Y. Aug. 21, 2014) ("Although the objectors' criticism of the claims-made structure is valid, it does not impact the fairness, reasonableness, or adequacy of the proposed settlement. Instead, they repeatedly maintain that a direct payment structure should be used. To that end, the Estey objectors' seek discovery related to the feasibility of processing direct payments. […] Such additional evidence and reports are irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate. While a direct payment structure would obviously result in more, and possibly all, class members receiving a share of the $110 million settlement, ***there is no reason to believe the defendants would agree to such terms.***") (emphasis added).

[18]  All cases present unique challenges and all settlements stem from unique factual circumstances. Respectfully, *Cameron* was an outlier that cannot fairly be utilized as a measuring stick for all other settlements. In *Cameron*, this Court had already denied a motion to dismiss and motion for summary judgment, removing significant risk to the plaintiff in moving forward. The Arkansas Supreme Court had then ruled directly on the policy language used by *Cameron*, removing additional risk. In addition, the *Cameron* class period was five years, not ten, so negotiating recovery for class members whose claims accrued outside the five-year limitations period was not at issue. Finally, there were certain unique matters to the posture of the case which presented plaintiffs, in their estimation, with a better negotiating posture. Here, none of those circumstances existed. There had been neither favorable, nor unfavorable, rulings on motions to dismiss, no ruling from the Arkansas Supreme Court on specific policy language, and no extenuating circumstances promoting settlement. Counsel--in the context of the case before them-- negotiated a strong settlement. If all of the matters attendant to *Cameron* had been

"[W]hile monetary relief was available to only those class members who submitted claims, the use of a claims process is not inherently suspect." *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015). In fact, numerous federal appeals courts have ratified claims-made settlements. *See, e.g., In re Online Dvd-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (finding no abuse of discretion for use of a claimant fund mechanism and it is not "prohibited when only a small number of class members file settlement claims"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 37-38 (1st Cir. 2009) (holding claims-made process was reasonable); *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at **4-6 (S.D. Fla. Oct. 24, 2014) (A "class settlement that offers significant monetary relief, as this one does, 'requiring only that class members submit a claim form,' can be 'fair and reasonable independent of the number of claims filed.' […] Filing a claim form is a 'reasonable administrative requirement' which generally does not impose an undue burden on members of a settlement class."); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649-

---

present, perhaps the settlement would have been more *Cameron*-like. But they did not exist here, and obtaining them here carried the risk that the decisions would have been unfavorable (versus favorable) to the Plaintiffs. In both cases--*Cameron* and *USAA*--there was risk with regard to class certification. This matter cannot be overstated. While Counsel in this matter, and in *Cameron*, believe that the Court (or any reviewing Court) *should* certify the class for litigation purposes in a contested class certification, the defendants have a laundry list of issues and arguments to trot out for consideration. By way of example only, certain Counsel in this matter were also counsel in Cause No. 4:14-cv-00029-BRW; *Vinson v. Metropolitan Prop. & Cas. Ins. Co.*; In the United States District Court of Arkansas, Eastern District (J. Billy Roy Wilson), where the defendant mounted a vigorous opposition to the plaintiffs' class certification motion before the case was settled. ECF Nos. 55-57 Counsel have had the benefit of seeing how defendants in depreciation of labor cases attempt to muddy class certification waters to defeat certification. Defendants here gave Counsel a preview of these arguments during settlement negotiations. Again, while Counsel believe they will ultimately prevail, contested class certifications are an uncertain battle that should be avoided if a good settlement can be achieved. Weighing all of the attendant risk factors, Counsel negotiated a strong settlement, and moved for approval of that Settlement.

Goodman, 2015 WL 5449813, at *21 (S.D. Fla. Sept. 14, 2015) ("The proposed claims-made structure will provide class members who opt to submit claims with extraordinary relief and, as such, is fair, reasonable, and adequate."); *Casey*, 2014 WL 4120599, at *2-3 (finding a claims-made structure "does not impact the fairness, reasonableness, or adequacy of the proposed settlement" and that "[t]his Court does not have the authority to impose a preferred payment structure upon the settling parties"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)) ("There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.").[19]

Every settlement of every lawsuit involves some degree of compromise. Almost by definition that compromise requires a plaintiff to accept less than the full amount of their highest possible damages and the defendant to pay more than the lowest amount of their possible liability. This principle is the cornerstone of litigation. If it were wrong for parties to accept less than 100% of their possible damages then virtually every settlement in every case in every court across the nation was wrongly obtained.

---

[19] "[C]laims-made settlements can provide a win-win solution for all of the true stakeholders in a consumer class action. ***They can maximize the relief available to individual class members who take the minimal steps necessary to participate***, provide reasonable compensation to the attorneys and class representatives who took the time and effort necessary to pursue the class action, and still keep the cost of the settlement low for the defendant." (emphasis added). Paul G. Karlsgodt, *Claims-Made Settlements In Consumer Class Actions* (Law360.com March 10, 2008) http://www.law360.com/articles/49658/claims-made-settlements-in-consumer-class-actions (last accessed December 29, 2015). "If done properly, claims-made settlements provide a unique mechanism for resolving disputes that is both fair to all parties and reduces unnecessary burdens on the court system." by Paul Karlsgodt, *Long Live the Reversionary, "Claims-Made" Settlement* (ClassActionBlawg.com February 23, 2010); http://classactionblawg.com/2010/02/23/long-live-the-reversionary-claims-made-settlement/ (last accessed December 29, 2015).

In an ideal world, every class action settlement would provide for direct payment of 100% of damages that might have been recovered by 100% of class members. However, there is no ideal world, and there are no settlements without the agreement of the defendant. What Counsel did, therefore, was to seek the best settlement available for the class under the *actual* circumstances. Here, Defendants never offered a direct-payment settlement in an amount that Counsel could ever recommend be accepted.[20]  *See* Declaration of Mustokoff, App. 449. Nonetheless, Counsel were able to negotiate a Settlement that offers a significant cash recovery to the Class, with some members of the Class receiving a 100% recovery of actual damages. App. 275-289; 81-177.  Payments are made to those class members who comply with a very typical and relatively easy claim form procedure.  App. 251-252; 267-270.  There is no cap on Defendants' potential liability to the class.  App. 102-104; 111.[21]

As described in Plaintiffs' complaint, the case was brought to recover damages resulting from the depreciation of labor costs in adjusting homeowners' insurance claims. As reflected in Defendants' notice of removal, labor depreciation comprised approximately 45% of the total depreciation on Arkansas claims.  *See* ECF No. 1 at 7-8 (identifying $21,608,272.39 in total depreciation and $9,648,968 in labor depreciation (44.6% of total depreciation) on Arkansas claims between 2008 and 2013).  In the simplest scenario, therefore, the amount of labor depreciation withheld on a claim would be 45% of the total depreciation, expressed as follows:

---

[20] *See Casey*, 2014 WL 4120599, at *2  ("Although the objectors' criticism of the claims-made structure is valid, it does not impact the fairness, reasonableness, or adequacy of the proposed settlement.")

[21] The claim form is also available online at:
http://www.homeownersinsurancesettlement.com/Portals/0/Documents/Claim%20Form.pdf

$$\text{Labor Depreciation} = \text{Total Depreciation} \times 45\%$$

Assuming that the "total depreciation" on a hypothetical claim was $1,000, the amount of withheld labor depreciation would be $450:

$$\$450 = \$1,000 \times 45\%$$

Thus, under the case as pled, a recovery of $450 under this hypothetical would be a recovery of 100% of the maximum actual damages suffered by the insured. *See* Keil Affidavit, App. 283-286, at ¶¶ 22(a)-(d) and ¶ 23 (detailing relative value of benefits under the Settlement).

As negotiated, the Settlement provided that for a large percentage of the class, the Class members would be entitled to recover 45% of Total Depreciation, not just of Labor Depreciation. Using the same example as above, the Class member's recovery would be calculated as:

$$\text{Recovery} = \$1,000 \times 45\%$$

The Settlement recovery for this portion of the Class would be, therefore,:

$$\$450 = \$1,000 \times 45\%$$

Thus, Counsel negotiated a recovery of 100% of maximum actual damages for a large portion of the Class. *Id.*

For Class members with lesser actual damages, the percentages paid under the Settlement would be lower than 45%. The explanation for these differences is outlined in the Settlement and the Keil Affidavit, App. 283-285, at ¶¶ 22(a)-(d). The amounts paid are ***not*** reduced by the payment of costs and attorneys' fees. App. 110, ¶ 77.

Counsel believed that the Settlement achieved was fair, adequate and reasonable balancing the recovery against the risk:

> Any settlement is inherently the product of compromise. It is -- by nature -- an exercise in balancing the strength of the case on the merits with the risk that Class Members receive nothing. Thus, any settlement, including the Proposed Settlement, is a bargained exchange among the parties. In structuring the

Proposed Settlement, Class Counsel protected the interests of the Settlement Class, by -- among other things -- negotiating a limited (not "general or "blanket") release, obtaining a recovery for class members who might otherwise have their claims barred by the statute of limitations[22], and obtaining recovery of a broader category of damages than originally plead [sic] by Plaintiffs. . . .[23]

Keil Affidavit, App. 281-283, at ¶ 21.

Mr. Keil's Affidavit (filed in the Polk County Circuit Court on December 5, 2015) also addressed the issue of the choice of forum. App. 277, 279 at ¶¶ 4, 10 ("Plaintiffs and Class Counsel disagreed with the removal asserted by the Defendants, and believed that Arkansas state court was the appropriate forum for the litigation. . . . As part of the settlement agreement, the parties agreed that this matter would be refiled in the Circuit Court of Polk County, which is where Plaintiffs filed the original action.").

    2.    <u>The Settlement obtained was at least as beneficial to the Class as the settlement approved by this Court in *Eastwood* as being fair, adequate and reasonable</u>.

Notably, the Settlement reached here was at least as strong in terms of class benefit as the settlement approved by this Court on October 7, 2014, in *Eastwood v. Southern Farm Bureau Casualty Ins. Co.* That settlement, like the one at issue here, was a claims-made settlement.

---

[22] "Class Counsel obtained a recovery for many Arkansans who might otherwise have any claim barred by the statute of limitations. Under the negotiated terms of the Settlement Agreement, the Class Period begins on January 1, 2006. Class Counsel plead fraudulent concealment as a basis for recovery on behalf of class members with claims accruing outside the statute of limitations. However, following commencement of the litigation, adverse rulings have been issued on the applicability of fraudulent concealment to similar claims in other litigation. Rather than abandon the claims, Class Counsel negotiated a recovery for these time-barred claims at a discount commensurate with the projected risk." *Id.* at ¶ 21(b).

[23] "The Proposed Settlement allows for an expanded scope of recovery. Plaintiffs plead allegations concerned [sic] the purported depreciation of labors costs in estimating and making property insurance payments. Under the Settlement Agreement, the Settlement Class is entitled to recover a percentage of total depreciation withheld, which includes depreciation not only on labor costs, but sales tax, overhead & profit, and other material and non-material components of pricing that was depreciated and withheld." *Id.* at ¶ 21(c).

Opinion and Order, October 7, 2014, App. 408-419; Judgment, App. 420. Even with the concerns now expressed by the Court, the Court approved the settlement. *Id*. at App. 415 ("In summary, and after considering all the factors, the Court finds that the proposed settlement warrants final approval, as it meets the requirements of due process and is otherwise fair, reasonable, and adequate.") That settlement provided for up to 81% of the value of the claim to be paid, and attorneys' fees and class administrator expenses were paid out of the settlement fund (not in addition to the class benefit as provided for in the current Settlement). *Id.* at App. 413. Moreover, the *Eastwood* settlement was negotiated and settled after "the Court had certified the class and found in Plaintiff's favor on summary judgment." *Id*.

Here, the Settlement called for a significant portion of the Class to be paid *100% of their actual damages*. That amount was not going to be reduced by attorneys' fees and administrator expenses, and the Settlement was negotiated prior to the Class having to take any risk of losing at the certification or summary judgment stage. In other words, on a risk-free basis, the Class in this case got the benefit of a settlement at least as strong, if not stronger, than had been achieved in *Eastwood*. Because this Court found *Eastwood* to be fair, adequate and reasonable, Counsel, at the time that the primary components of the Settlement were negotiated and agreed upon, had every belief that any reviewing court—including this one—would find the present settlement to also be fair, adequate, and reasonable.

> 3. The principle terms of the Settlement pre-dated any hearings in *Cameron*.

To the extent Counsel were made aware of any reservations this Court had about claims-made settlements, those reservations were expressed *after* Counsel had already negotiated and agreed in principle to the core matters relating to form of the settlement and forum. Declarations of Counsel (App. 443-508), at App. 449, 454, 463, 468, 473, 478, 483, 490, 496, 501, 506.

Respectfully, the Court's Order incorrectly assumed that its comments expressed at the *Cameron* hearing in May 2015 and contained in the Cameron preliminary approval order, App. 12-21, was a driver for how and where this case was ultimately settled. The main agreements were made *in advance* of any hearing in *Cameron*. *Id.*

> 4. <u>There was nothing improper about having the Arkansas state court rule on the fee request.</u>

Counsel does not assert that how attorneys' fees would potentially be handled in state court, as opposed to this Court, played no role in the choice of forum. But it was not *the* driver; and, to the extent it was *a* driver, it was not improper and not done "to the detriment of the class." As noted above, in negotiating the Settlement Counsel never had any reason to assume that this Court would not follow its own approach in *Eastwood*, an approach that is regularly followed by federal courts that routinely approve claims-made settlements providing for cash payments. Counsel had every reason to believe that the class benefit conferred by the present Settlement should similarly be deemed "fair, adequate and reasonable." Quite frankly, Counsel are unaware of *any* decision where a reviewing court rejected a claims-made settlement that offered some class members *100% of their actual damages paid in cash*. But having achieved this Settlement, Counsel did want to get paid for their work and achievements.

Given this Court's approach to attorneys' fees, if the review of the fees could be conducted in a potentially more favorable forum—without any detriment to the Class, with all the protections to the Class that would have been afforded by this Court, and without the risk of professional objectors delaying the effectuation of the settlement—there was objectively and subjectively no reason not to pursue a settlement in that forum. Indeed, the concept of awarding an attorney's fee based on the total benefits available for the class's recovery (as opposed to those benefits actually claimed) has been endorsed by federal appellate courts. *See, e.g., Masters*

*v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) (overturning the District Court's grant of attorney's fees based on the portion of funds claimed and holding that ***"[a]n allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."***) (emphasis added); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that the "district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund . . . ."); *Waters v. Int'l Precious Metals Corp.*, 190 F. 3d 1291, 1295 (11th Cir. 1999) (same).

Counsel recognize that the Court views its attorneys' fee approach as better than the approach taken by Arkansas state courts. Respectfully, Counsel disagree, and would again use *Eastwood* as an exemplar. In *Eastwood*, the common (capped) fund was $3,600,000, inclusive of any attorneys' fees awarded. At the time of the fee award, the class had only claimed $855,956.32. App. 417. The Court reduced the requested fee from $1,200,000 to $670,042.50. App. 418-419. The remainder that was not paid to the Class or paid in fees to class counsel was to be returned to the defendant, Southern Farm Bureau, under a reversionary clause. App. 415-417; Motion for Reverter, App. 421-423; Order, App. 424. If the Court *had not reduced* counsel's fee request, the settlement, in rough numbers, would have ultimately cost Southern Farm Bureau $2,000,000. After the reduction and reverter, the settlement, in rough numbers, only cost Southern Farm Bureau $1,500,000. The only party that appears to have "won" as a result of the Court's fee decision was Southern Farm Bureau: the class received no additional payments as a result of the reduction in the fee request; class counsel received less compensation for negotiating a settlement that this Court had already determined was "fair, adequate, and

reasonable"; and the defendant (the alleged wrongdoer) received the windfall because they got away with paying *less* than they originally contracted to pay by way of settlement.

By submitting this Settlement to the Arkansas state court, the Defendants here were required to pay the full measure of what they contracted to pay in fees. The payment of fees is, itself, certainly a deterrent to future wrongdoing.

The Settlement carried, as an independent term, an agreement on attorneys' fees that was separately briefed and separately awarded. App. 109-111, ¶ 76-79. The parties reached agreement regarding the principle terms of the Class's recovery *before* negotiating the amount of attorneys' fees for which Counsel would seek court approval. App. 109, ¶ 76. The attorneys' fees were *in addition to the class relief*; in other words, the class could obtain its full relief (in some cases up to or exceeding 100% of the actual damages suffered) without any deduction for attorneys' fees. App. 110, ¶ 77.[24] Moreover, the class benefit was not contingent on an award of attorneys' fees. App. 109, ¶ 76. The settlement benefit for the class might have been approved without any fees being awarded to Class Counsel, or reduced fees being awarded, and Class Counsel would not have had the ability to unwind the Settlement. *Id.* Although another judge or another forum might have addressed or resolved the award of fees differently than this Court, there is certainly nothing inherently improper about the request for, or award of, fees herein.

---

[24] *See, e.g., Coll. Ret. Equities Fund, Corp. v. Rink*, No. 2012-CA-002050-MR, 2015 WL 226112, at *6 (Ky. Ct. App. Jan. 16, 2015) ("We agree with the Appellees that CREF attempts to exalt form over substance in asking this Court to find that the circuit court abused its discretion in awarding the attorneys' fees as a percentage-of-fund. The reality is that in the underlying settlement, the class members received a benefit that was far better than it would have been had a cap been established. The settlement in this case insured that the class members did not have their recovery reduced in any way to pay for the services provided by class counsel.").

**F.     Based on prior experiences in other federal courts in Arkansas, Counsel did not believe the Court would have any concerns with the Settlement being presented to the state court for approval and oversight.**

For purposes of Rule 11, the reasonableness of an attorney's conduct depends on the circumstances before the attorney. *See* FED. R. CIV. P. 11(b) ("to the best of the person's knowledge, information, and belief, formed after an inquiry ***reasonable under the circumstances***") (emphasis added). Any evaluation of the circumstances at issue in the instant matter must take into consideration the fact that Counsel had recently "re-filed" in Arkansas state courts other class actions in order to effectuate settlement agreements that, like the present case, encompassed claims pending in federal court cases. Moreover, the practice had been approved by other federal judges in other unrelated class action litigation.

Specifically, (a) Cause No. 1:07CV00035; *Pipes v. Life Investors Ins. Co. of America*; In the United States District Court, Eastern District of Arkansas, Northern Division (J. Susan Webber Wright); (b) Cause No. 6:08-cv-06034; *Runyan v. Transamerica Life Insurance Co.*; In the United States District Court, Western District of Arkansas, Hot Springs Division (J. Jimm Larry Hendren); (c) Cause No. 14-cv-4038; *Rafaelli v. Certain Underwriters at Lloyd's, London*; In the United States District Court, Western District of Arkansas, Texarkana Division (J. Susan O. Hickey); (d) Cause No. 4:14-cv-00029; *Vinson v. Metropolitan Property & Casualty Insurance Co.*; In the United States District Court of Arkansas, Eastern District (Judge Billy Roy Wilson); and (e) Cause No. 4:14-CV-04013; *Goodner, et al. v. Shelter Mutual Insurance Company*; In the United States District Court for the Western Division of Arkansas, Texarkana Division (J. Susan O. Hickey), were all putative class actions that were pending in federal court, but then either stayed or dismissed in favor of a Arkansas state court putative class action settlement.

These five settlements were all ultimately approved in Arkansas state court. In each case, the federal judge was aware that a settlement was being presented to a state court for approval. App. 425-442; App. 446, 450, 455, 460, 464, 469, 474, 479, 484, 492, 497, 502, 507. None of those federal courts ever expressed any concern or disapproval. *Id.* With the evolving settlement, coupled with the dismissal, Counsel believed it was apparent to the Court what was occurring in this case. *Id.* Given this prior experience, Counsel expected that this Court would have a similar reaction. *Id.* Counsel now know that the Court's silence was not approval—either express or implied. But in light of all the other settlements that preceded this one, Counsel incorrectly interpreted it as such as they moved forward on a very public, and not in any way secretive, Rule 23 settlement and notice program (with a website).

In some of these other cases, the parties asked the federal court to stay the federal case and retain it on their docket. App. 425-428, 430-434, 436, 441-442. Here, even before the state court had considered much less approved the settlement, the parties dismissed the federal case. If anything, the actions of the parties in the present case show that they acted to reduce the time and cost of the federal action in light of the re-filing of a state action.

## V. CONCLUSION

The Polk County Circuit Court was a proper forum for the settlement of this action. Counsel reasonably believed state court to be the most advantageous forum for Plaintiffs and the putative class, and there was nothing improper about negotiating with Defendant to settle the claims in state court. Counsel respectfully reiterates that they did not seek to litigate this case in federal court – thus, it was impossible for Counsel to have "invoked" the jurisdiction of the Court for an improper purpose. The state court's final judgment approving the Settlement and awarding fees, performed through application of a similar Rule 23 and the same constitutional

protections, provided a fair, adequate and reasonable settlement to the class, and is entitled to full faith and credit. *Matsushita Elec. Indus. Co*., 516 U.S. at 373; *Hall.,* 730 F. Supp. 2d at 944. Indeed, the judgment approving the Settlement and awarding fees should be treated by this Court "with the same respect that it would receive in the courts of" Arkansas. *See Matsushita Elec. Indus. Co*., 516 U.S. at 373.

Given Counsel's prior experiences, any reasonable attorney in the same circumstances as Counsel would have reasonably believed it was permissible to re-file the class claims in state court by agreement of the parties in order to effectuate the negotiated putative class settlement. At the time they dismissed the case, Counsel objectively and subjectively believed their conduct was appropriate and within the bounds of acceptable litigation strategy.

Respectfully submitted,

By: /s/ James M. Moody
James M. Moody
Ark. Bar 64028
Wright, Lindsey & Jennings LLP
200 West Capitol Avenue, Ste. 2300
Little Rock, AR 72201
(501) 371-0808
(501) 376-9442 facsimile
jmoody@wlj.com

*COUNSEL FOR STEPHEN C. ENGSTROM*

By: /s/ John R. Elrod
John R. Elrod, Ark. Bar 71026
Vicki Bronson, Ark. Bar 97058
Conner & Winters, LLP
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703
(479) 582-5711
(479) 587-3423 facsimile
jelrod@cwlaw.com
vbronson@cwlaw.com

*COUNSEL FOR MATT KEIL, MATTHEW L. MUSTOKOFF, WILLIAM B. PUTMAN, JOHN C. GOODSON, W.H. TAYLOR, STEVAN EARL VOWELL, TIMOTHY J. MYERS, KENNETH P. "CASEY" CASTLEBERRY, TOM THOMPSON, R. MARTIN WEBER, JR., RICHARD E. NORMAN, JASON E. ROSELIUS*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed pursuant to the electronic filing requirements of the United States District Court for the Western District of Arkansas on this the 14th day of January, 2016, which provides for service on counsel of record in accordance with the electronic filing protocols in place.

 /s/ James M. Moody
James M. Moody