**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

| | | |
|---|---|---|
| MARK I. ADAMS and KATHERINE | : | |
| S. ADAMS, Husband and Wife | : | |
| Individually and on behalf of | : | |
| All others similarly situated | : | CASE NO.: 2:14-cv-2013-PKH |
| | : | |
|      Plaintiffs, | : | |
| vs. | : | |
| | : | |
| UNITED SERVICES AUTOMOBILE | : | |
| ASSOCIATION, USAA CASUALTY | : | |
| INSURANCE COMPANY, and USAA | : | |
| GENERAL INDEMNITY COMPANY, | : | |
| All d/b/a USAA | : | |
| | : | |
|     Defendants. | : | |

**RESPONSE OF DEFENDANTS AND THEIR COUNSEL
TO ORDER TO SHOW CAUSE DATED DEC. 21, 2015**

Defendants United Services Automobile Association, USAA Casualty Insurance Company, and USAA General Indemnity Company (collectively, "USAA") and their undersigned counsel respectfully submit this response to the Court's Order dated December 21, 2015, directing counsel for all parties to show cause why their filings in this Court were not made for an "improper purpose" in violation of Fed. R. Civ. P. 11(b)(1). (Doc. 37, at 5-6.)

**PRELIMINARY STATEMENT**

No document was filed with this Court for an improper purpose, and at all times USAA and its counsel acted in good faith and in accordance with the rules. In brief summary:

i   USAA removed the case to this Court based on a good faith belief, supported by evidence, that the amount in controversy exceeded $5 million.

i   USAA and its counsel believed the amount in controversy exceeded the $5 million threshold throughout the course of the litigation.

i   At the time of removal, USAA instructed its counsel that it intended to litigate the case in this Court. After settlement discussions commenced in late April of 2014, USAA always

intended to litigate the case in this Court to finality if settlement discussions were unsuccessful. During the settlement negotiations, USAA and its counsel endeavored to conserve this Court's resources and avoid litigation costs.

i   After lengthy settlement negotiations assisted by a prominent national mediator who is a former federal judge, spanning more than six months, USAA agreed to settle in state court because it could not reach an acceptable settlement agreement with Plaintiffs otherwise.

i   Prior to receiving this Court's recent order, USAA's counsel had no knowledge of the concerns this Court expressed in May of 2015 concerning a proposed class action settlement in *Adams v. Cameron Mutual Ins. Co.*

i   All applicable federal rules and statues allow for settling a putative class action pending in federal court that has not been certified as a class action through voluntary dismissal of the federal lawsuit, accompanied by a re-filing in the state court and a motion for approval of a class action settlement in the state court.

i   USAA believes that the settlement approved by the Polk County Circuit Court on December 21, 2015, would satisfy federal standards for a class action settlement. "Claims made" settlements of this nature are regularly approved by federal courts. Arkansas state law standards for approval of a class action settlement closely track federal standards.

i   The settlement is designed to provide full compensation for those USAA members who had property damage claims in Arkansas with respect to which depreciation of labor costs was deducted from their claim payments, as long as their claims are not barred by the applicable statute of limitations and the class member submits a short claim form.

i   Not all USAA members who had property damage claims in Arkansas during the alleged class period had their claim payments reduced for depreciation of labor costs, so a "claims made" settlement was particularly appropriate for this case. Determining whether labor depreciation was applied to a claim payment requires an individual file-by-file review.

i   At all times USAA's counsel acted in accordance with their duties and obligations to their clients. *See* Ark. R. Prof. C. 1.2, 1.3.

USAA and its counsel respectfully submit that Rule 11 sanctions would be inconsistent with the governing appellate authority, and unfair to USAA and its counsel, who at all times acted in good faith.

<u>SUMMARY OF RELEVANT FACTS</u>

**A.      Initial Filing of Suit and the Proper Removal of the Case to This Court**

Plaintiffs originally filed suit in Polk County Circuit Court on December 5, 2013. (Doc. 1-1.) USAA was served with the summons and complaint on December 16, 2013. USAA retained as defense counsel Lyn Pruitt, a partner of Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C. in Little Rock, Arkansas, and Stephen Goldman and Wystan Ackerman, partners of Robinson & Cole LLP in Hartford, Connecticut, who were admitted *pro hac vice* in this case.[1]

Attorney Pruitt has been a member of the Arkansas bar for over 30 years. She is a fellow of the American College of Trial Lawyers, currently serving as President of the Arkansas Chapter, and the American Board of Trial Advocates and the International Academy of Trial Lawyers. She has tried over 60 jury trials to verdict, and has defended over twenty-five class actions. She was appointed by the Arkansas Supreme Court as a member of the Arkansas Civil Jury Instructions Committee, and has served as an Adjunct Professor Trial Advocacy at the University of Arkansas at Little Rock School of Law. (Pruitt Decl. ¶ 2 (Ex. 1).)

Attorney Goldman has over 35 years of litigation experience, and has litigated and tried cases in numerous jurisdictions across the country. He is a fellow of the American College of Trial Lawyers, a former Vice President and Chair of the Class Action Section of the Federation of Defense and Corporate Counsel, and a former adjunct professor at the University of Connecticut School of Law and Western New England College School of Law. Attorney Goldman has defended over twenty-five class actions. (Goldman Decl. ¶ 2 (Ex. 2).)

---

[1] Stephen Clancy, a counsel of Robinson & Cole LLP, was also admitted *pro hac vice* in this case, but did not have substantive involvement in this case after May of 2014. (Clancy Decl. ¶ 4 (Ex. 4).)

Attorney Ackerman is a graduate of Columbia Law School with approximately 14 years of litigation experience, has defended over twenty-five class actions, and currently chairs the Appellate Section of the Federation of Defense and Corporate Counsel and the Class Action Special Litigation Group of the Defense Research Institute. (Ackerman Decl. ¶ 2 (Ex. 3).)

None of USAA's outside counsel has ever been sanctioned by any court, and, until this case, none of them had ever been ordered to show cause why they should not be sanctioned. (Pruitt Decl. ¶ 2; Goldman Decl. ¶ 2; Ackerman Decl. ¶ 2; Clancy Decl. ¶ 2.)

USAA timely removed the case to this Court on January 15, 2014.[2] (Doc. 1, ¶ 2.) The notice of removal asserted that this Court had jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because it was a putative class action involving minimal diversity of citizenship, with an aggregate amount in controversy exceeding $5 million. (Doc. 1, ¶ 14.) At the time of removal, USAA intended to defend this case by opposing any motion to certify a class. USAA desired to litigate class certification issues under federal class action law. USAA did not file the notice of removal for the purpose of achieving leverage in settlement negotiations. There were no settlement discussions from the time of removal until late April of 2014. (Pruitt Decl. ¶ 4; Goldman Decl. ¶ 4; Ackerman Decl. ¶ 4.)

USAA's notice of removal alleged that the amount in controversy exceeded $5 million based in part on an electronic search of estimates prepared on Arkansas claims during the period from January 1, 2008 to December 5, 2013, which reflected a total amount of depreciation of

---

[2] The state court complaint named the plaintiffs as Mark I. Adams and Katherine S. Adams. The notice of removal incorrectly identified the first-named plaintiff as "Michael" instead of "Mark." (Doc. 1.) This was an error in the preparation of the notice of removal. The correct first name (Mark) was on the civil cover sheet filed in this Court at the time of removal (Doc. 2), the state court complaint that was filed with the notice of removal (Doc. 3), the answer that was filed with the notice of removal (Doc. 4), and various other papers filed by the parties (*see, e.g.*, Docs. 6, 7, 9 through 17).

$21.6 million. Through an electronic calculation that involved multiplying the depreciation percentage in the estimates by the total labor costs, the approximate amount of labor depreciation shown on the estimates was estimated at approximately $9.6 million. (Doc. 1, ¶ 21.) This was supported by an affidavit attached to the notice of removal. (Doc. 1-2.) This calculation did not include the additional time period of December 5, 2003 through December 31, 2007, which was also part of the putative class alleged in the Complaint. USAA's allegation of the amount in controversy tracked Plaintiffs' allegations that depreciation was purportedly withheld on all putative class members' claims, and that depreciation was improperly applied to labor costs. (Complaint, ¶¶ 13-15, 20, 26, 40-44.) USAA's notice of removal also noted that the complaint sought a 12% statutory penalty and attorneys' fees, and that the complaint contained allegations that would entitle the Court to consider the possibility of punitive damages in determining the amount in controversy. (Doc. 1, ¶¶ 22-25.)

The actual amount of damages that a plaintiff is likely to recover on the actual facts of a case almost never corresponds with the amount in controversy, which is based on the allegations in the complaint. As the Supreme Court has explained, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Raskas*, 719 F.3d at 887 ("[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability").

### B. Initial Proceedings in This Court

Following removal, the Court issued an initial scheduling order requiring a Rule 26(f) report to be submitted by March 27, 2014. (Doc. 8.) As reflected in the Rule 26(f) report, counsel had disputes that they were unable to resolve, including: whether discovery should be phased

between class and merits issues; the appropriate case schedule; and how many depositions, interrogatories and requests for production should be permitted. (Doc. 17.) At the time the Rule 26(f) report was filed, USAA intended to seek adjudication by the Court of the parties' disputes as set forth in that report. There had not been any settlement discussions with Plaintiffs' counsel as of that time. (Pruitt Decl. ¶ 6; Goldman Decl. ¶ 6; Ackerman Decl. ¶ 6.)

After receiving the Rule 26(f) report, the Court scheduled a hearing on May 6, 2014. Although the Court's docket entries did not specify the purpose of the hearing, it appeared the Court intended to address the disputes set forth in the Rule 26(f) report. (Docket Entries dated Apr. 10, 2014.)

On April 16, 2014, Plaintiffs' counsel served interrogatories, requests for production and requests for admission on USAA. (Pruitt Decl. ¶ 8; Goldman Decl. ¶ 6; Ackerman Decl. ¶ 7.) Counsel for USAA prepared draft discovery requests to Plaintiffs, formulated a plan to respond to Plaintiffs' discovery requests, and prepared a motion for partial judgment on the pleadings with respect to the fraudulent concealment and unjust enrichment allegations. (Ackerman Decl. ¶ 8.)

On April 28, 2014, USAA authorized its outside counsel to file the motion for partial judgment on the pleadings, and also to explore with Plaintiffs' counsel the possibility of conducting a private mediation. (Pruitt Decl. ¶ 9; Goldman Decl. ¶ 8; Ackerman Decl. ¶ 9.) USAA decided to explore the possibility of settlement to avoid litigation costs, mitigate disruption to its normal operations to serve its members, and taking into consideration the inherent uncertainty of class action litigation.

On April 29, 2014, USAA filed its motion for partial judgment on the pleadings. (Docs. 18, 19.) Later that same day, for the first time, USAA's counsel had discussions with Plaintiffs'

counsel regarding a possible mediation, and what information Plaintiffs would need to review in preparation for a mediation. The possibility of a state court settlement was not discussed at that time. (Goldman Decl. ¶ 10; Ackerman Decl. ¶ 11.)

On May 2, 2014, a joint motion to stay pending mediation was filed, seeking an initial stay of 90 days, but noting that an additional 90 days might be needed. (Doc. 20.)

On May 5, 2014, the Court entered an order granting the joint motion to stay pending mediation. The order stated that "[t]he parties shall file a stipulation of dismissal or status report in this matter on or before August 4, 2014." (Doc. 21 (underlining removed).) This order thus appeared to contemplate that a possible outcome of the mediation might be a stipulation of dismissal of the federal case, rather than the submission of a proposed class action settlement for this Court's approval.

## C.      Settlement Negotiations

The parties scheduled a mediation with the Honorable Layn R. Phillips, a former United States District Judge for the Western District of Oklahoma, on September 15, 2014, which was one of the next available dates on Judge Phillips' busy calendar. On August 5, 2014, Attorney Keil sent a letter to the Court advising of the September 15, 2014 mediation date and requesting an extension of the stay. On August 11, 2014, the Court issued an order "directing the parties to file a status report or stipulation of dismissal on or before October 13, 2014." (Docket Entry dated Aug. 11, 2014.) This order appeared to contemplate that a potential final resolution might involve a stipulation of dismissal of the federal case, rather than a proposed class action settlement being submitted to this Court for approval.

On June 19, 2014, the parties filed a joint motion for protective order to provide protection with respect to documents that Defendants provided to Plaintiffs in connection with

the mediation, and for information that Defendants would be required to produce and deposition testimony Defendants would be required to provide if the case did not settle. (Pruitt Decl. ¶ 13; Goldman Decl. ¶ 12; Ackerman Decl. ¶ 13.)

A day-long mediation was held with Judge Phillips in New York on September 15, 2014. A settlement was not reached, but the parties agreed to conduct further discussions. (Pruitt Decl. ¶ 14; Goldman Decl. ¶ 13; Ackerman Decl. ¶ 13.)

Following the first mediation, the parties scheduled a second mediation session with Judge Phillips for December 3, 2014. On October 10, 2014, Attorney Keil sent a letter to the Court advising of the second mediation session with Judge Phillips, and requesting an extension of the stay. On October 10, 2014, the Court entered an order "directing the parties to file a status report or stipulation of dismissal on or before December 15, 2014." (Docket Entry dated Oct. 10, 2014.) As with the Court's prior orders, this order appeared to contemplate that a potential final resolution might involve a stipulation of dismissal of the federal case, rather than a proposed class action settlement being submitted to this Court for approval.

A second day-long mediation was held with Judge Phillips in New York on December 3, 2014. A settlement was not reached, but the parties agreed to conduct further discussions. (Goldman Decl. ¶ 14; Ackerman Decl. ¶ 15.)

On December 15, 2014, Attorney Keil sent a letter to the Court advising that the parties "have made substantial progress towards resolving this action" and requesting a 90-day extension of the stay. On the same day, the Court issued an order stating: "The Court will grant the parties' request and extend the stay until March 16, 2015. The parties are directed to file a status report or stipulation of dismissal on the record by that date. The parties are advised that the

Court is unlikely to grant any further extension of the stay in this case." (Docket Entry dated Dec. 15, 2014.)

As of March 16, 2015, the parties had not reached a settlement agreement. Accordingly, on that date the parties filed a joint motion to extend the stay. The joint motion advised the Court that "[t]he Parties have reached agreement on almost all material terms but require an additional 30 days to resolve outstanding issues." (Doc. 30.) The Court denied that motion, explaining that: "This case has been stayed for over ten months to enable the parties to pursue alternative dispute resolution, but the parties have failed to fully resolve all issues. In the text order dated December 15, 2014, the parties were advised that the Court was unlikely to grant any further extension of the stay. The Clerk is directed to lift the stay in this case. Plaintiffs are directed to file any response to the pending [Doc.18] motion for judgment on the pleadings by April 16, 2015. The parties are also directed to file an updated Rule 26(f) report by that same date." (Docket Entry dated Mar. 17, 2015.)

On March 31, 2015, the parties reached agreement in principle on the basic terms of a class action settlement that would include a stipulation of dismissal of the federal case and a re-filing in the Polk County Circuit Court with a motion for preliminary approval of the settlement. This agreement in principle was subject to preparation of and reaching agreement on the more specific terms of a detailed written settlement agreement and accompanying documents.. (Pruitt Decl. ¶ 17; Goldman Decl. ¶ 16; Ackerman Decl. ¶ 17.)

As of April 15, 2015, the parties were negotiating the terms of the settlement documents. As this Court required in its order of March 17, the parties filed a Rule 26(f) report on April 15, 2015, proposing a schedule for the case that the parties believed was appropriate if they were unable to agree on the specific language/terms in the documents that were being drafted. USAA

also filed a motion to withdraw without prejudice its motion for judgment on the pleadings, so that the Court would not need to adjudicate that motion if a settlement was able to be finalized. (Pruitt Decl. ¶¶ 18-19; Goldman Decl. ¶¶ 17-18; Ackerman Decl. ¶¶ 18-19.) The Court entered a scheduling order in accordance with the Rule 26(f) report on May 5, 2015. (Doc. 33.)

On May 22, 2015, USAA instructed its outside counsel to add Garrison Property and Casualty Insurance Company ("Garrison"), which is part of the USAA corporate family but was not named as a defendant in this case, to the draft settlement papers, because Garrison had issued a small number of homeowners' insurance policies in Arkansas during the relevant time period. There were subsequent discussions between counsel regarding whether this required renegotiation of some of the terms of the settlement that had previously been agreed to. (Pruitt Decl. ¶ 20; Goldman Decl. ¶ 19; Ackerman Decl. ¶ 20.)

On June 9, 2015, USAA provided factual information indicating that Garrison claims had been included in the data that was relied upon in negotiating the settlement, and also relied upon for USAA's notice of removal (which was filed on behalf of the named defendants, which did not include Garrison). On June 14, 2015, Plaintiffs' counsel agreed to include Garrison in the settlement without renegotiating the settlement. (Pruitt Decl. ¶ 21; Goldman Decl. ¶ 20; Ackerman Decl. ¶ 21.)

On June 16, 2015, USAA's counsel filed a corrected Affidavit of Michael J. Allen because the original affidavit had stated that the data set forth therein was for the Defendants named in this lawsuit, and the information recently provided by USAA to its counsel had indicated that data for Garrison (not named as a defendant) was also included. The corrected affidavit was not believed to have any material impact on any determination of the amount in controversy. Throughout the course of this litigation, USAA's counsel believed, and still

believes, that the amount in controversy exceeded the $5 million threshold for federal jurisdiction. (Pruitt Decl. ¶ 22; Goldman Decl. ¶ 21; Ackerman Decl. ¶ 22.)

On June 16, 2015, a final agreement was reached on the class action settlement documents, which included Garrison. The stipulation of class action settlement was signed on that date. (Pruitt Decl. ¶ 23 and Ex. A; Goldman Decl. ¶ 22; Ackerman Decl. ¶ 23.) The stipulation of voluntary dismissal was filed in this Court on June 19, 2015. (Doc. 19.) Pursuant to the signed settlement agreement, a new class action complaint was filed in the Polk County Circuit Court on June 23, 2015, together with the class action settlement papers. (Pruitt Decl. Ex. A.)

Throughout the course of the litigation, both before and after the commencement of settlement discussions in late April of 2014, USAA fully intended to litigate the case in this Court if a settlement could not be reached. (Pruitt Decl. ¶ 26; Goldman Decl. ¶ 25; Ackerman Decl. ¶ 26.)

### D.        The State Court Settlement

The settlement submitted to the state court provides for what amounts to full relief for class members who have valid claims that are not time-barred and who submit claim forms. While individual estimates vary, labor costs are approximately 45% of estimated replacement cost.[3] Accordingly, for eligible class members who have potentially timely claims for damage that occurred during the time period before USAA changed its practices (i.e., July 5, 2008 to October 2, 2013), the settlement attempts to provide what amounts to approximately full compensation (i.e., 45% of the total amount of depreciation shown on the final estimate, if the

---

[3] The Affidavit of Michael J. Allen explained that data from USAA estimates indicated an approximate amount of labor depreciation of $9,648,968 out of a total amount of depreciation of $21,608,272.39. Labor depreciation was thus approximately 44.6% of the total.

depreciation was not later paid in a subsequent payment), while doing so in a manner that is administratively feasible, not requiring an extensive file review by USAA. (Stipulation of Settlement, ¶ 60(b) (Pruitt Decl. Ex. A).) A smaller amount (35% of the total amount of depreciation shown on the final estimate) is provided for class members who received, in a payment subsequent to the initial payment, a portion but not all of the amount withheld for depreciation. (*Id.*) To determine which USAA members had property damage claims for which labor was depreciated in calculating the actual cash value payment, and the estimated amount attributable to depreciation of labor costs withheld, if any, on each claim, requires an individual and detailed file-by-file manual review of every claim file. In most circumstances, such a review would need to include a review of the repair estimates, payments, notes, and communications in each file. This is a time-consuming and labor-intensive process..

Those settlement class members who are not receiving approximately full compensation under the settlement would be unlikely to recover full compensation if a litigation class was certified and the case went to trial. This is because they either have claims that a court likely would conclude are untimely under the five-year contractual suit limitation period (because the date of loss was prior to July 5, 2008), or have claims that were made after USAA had conformed its practices to follow the new Arkansas Insurance Department bulletin (as of October 2, 2013). These settlement class members, although they might be found to be entitled to nothing if the case were to proceed to trial, are being paid smaller amounts to reflect the small risk that Plaintiffs might be able to overcome USAA's suit limitation period defense, and the slight risk that USAA might not have succeeded immediately in fully implementing the change in practices with 100% accuracy. (Stipulation of Settlement, ¶ 60(a), (c) (Pruitt Decl. Ex. A).)

To the extent that the maximum total amount paid to the class members in the settlement was estimated at $3,445,598, that analysis was based upon the results of a detailed file-by-file review by USAA personnel of a sample of Arkansas claim files, and extrapolating that result to the proposed settlement class. These numbers differ from the amount set forth in USAA's notice of removal because the notice of removal was based on Plaintiffs' allegations asserting that labor depreciation was withheld on all claims (and the removal papers were also prepared without the benefit of a review of hundreds of files). USAA's file-by-file analysis of a sample of Arkansas claim files showed that approximately 57% of depreciation dollars shown on estimates were not actually subtracted when claim payments were issued. In other words, USAA's adjusters had prepared many estimates showing depreciation on the estimate, but the depreciation was not subtracted when payments were made. The $3.4 million figure is simply an estimate, however, based on a review of a sample of Arkansas claim files. A review by an expert retained by Plaintiffs' counsel suggested a larger amount of approximately $4.2 million. (Keil Affidavit ¶ 13 (Ex. 5 hereto.) USAA has agreed in the settlement to provide what amounts to full compensation for all settlement class members with valid claims that fall within the 5-year limitations period, and who submit timely claims.

It is significant to note that even if the lower $3.4 million figure were used as a component of an amount in controversy calculation, the amount in controversy would still exceed $5 million. This is because the $3.4 million figure does not include: (1) the full value of the alleged claims of putative class members whose claims are time-barred; (2) potential punitive damages; or (3) potential attorneys' fees. *See Raskas*, 719 F.3d at 887-88 (explaining that amounts sought in Complaint are properly included in amount in controversy "[e]ven if it is highly improbable that the Plaintiffs will recover" those amounts, and that punitive damages and

attorneys' fees are properly included); *Knowles v. Standard Fire Ins. Co.*, 2013 WL 3968490, *5-11 (W.D. Ark. 2013) (Holmes, J.) (explaining that "it is proper to calculate the potential damages as Defendant did, by determining the maximum potential value of the claims as alleged in the complaint," even if some of the amounts claimed could not be recovered, and that potential punitive damages and attorneys' fees were properly included in the amount in controversy).

The claim form process in the settlement was designed to make the process straightforward for class members submitting claims. The claim form asked the settlement class member to provide information only "TO THE BEST OF YOUR KNOWLEDGE," allowed each of the questions to be answered "I do not know" if the answer was unknown, and provided that settlement class members "may," but were not required to, attach documentation. The settlement class member is required to certify that the information that they have provided is correct to the best of their knowledge. This is standard language on a class action settlement claim form, and is necessary to prevent fraud, which is particularly important where some settlement class members may receive hundreds or even thousands of dollars. The settlement class member is not required to provide information they do not have, or to ensure completeness of the form. (Stipulation of Settlement at Ex. C.) A settlement class member who lacks information other than that which was pre-filled on the claim form may simply check off "I do not know" where appropriate.

If the parties had agreed to a settlement that required USAA to attempt to make payments to settlement class members who did not submit claims, that would have imposed an extraordinary undue administrative burden and expense on USAA, in order to attempt to pay people who have no interest in claiming the payment. Arkansas state and federal courts have consistently approved "claims made" class action settlements using a claim form process. *See*,

*e.g.*, *Ballard v. Martin*, 79 S.W.3d 838 (Ark. 2002); *Eastwood v. Southern Farm Bureau Cas. Ins. Co*., 2014 U.S. Dist. LEXIS 142652 (W.D. Ark. Oct. 7, 2014).

A motion for preliminary approval of the class action settlement was filed in the Polk County Circuit Court on June 23, 2015, and an order of preliminary approval was issued on August 26, 2015. (Pruitt Decl. Exs. A and B.) A final approval hearing was held on December 16, 2015, and the court took the matter under advisement. On December 18, 2015, the court issued a letter addressing objections to the settlement. On December 21, 2015, the court issued a final order and judgment approving the settlement. (Pruitt Decl. Exs. C and D.) Insofar as USAA's counsel is aware, Judge Jerry Ryan of the Polk County Circuit Court had not previously approved any class action settlement involving Plaintiffs' counsel or USAA's counsel. Judge Ryan expressed an intent to give the proposed settlement careful consideration before entering a final order.

## ARGUMENT

**I.      THE FEDERAL RULES OF CIVIL PROCEDURE PERMIT THE PARTIES TO STIPULATE TO THE DISMISSAL OF A FEDERAL CASE WITHOUT PREJUDICE AND CHOOSE TO ENTER INTO A SETTLEMENT IN A STATE COURT**

The Court's Order appears to suggest that the Court may believe it is improper for the parties to a putative class action pending in federal court to decide to stipulate to the dismissal of the federal case for the purpose of submitting a settlement for approval by a state court. There is no precedential authority suggesting that such a settlement decision by the parties is improper. Indeed, this process has been followed in other cases in both the Eastern and Western Districts of

Arkansas in recent years.[4] If this Court were to reach a conclusion that a decision to dismiss a federal case and enter into a state court settlement is improper, it appears this Court would be the first court ever to do so.

### A. Rule 41 Expressly Permits The Parties to Stipulate To A Dismissal Without Prejudice, Which Allows Re-Filing In State Court

Fed. R. Civ. P. 41 provides that "[s]ubject to Rules 23(e), 23.1(c), 23.2 and 66 and any applicable federal statute, the plaintiff may dismiss an action <u>without a court order</u> by filing: . . . (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). The rule further provides that "[u]nless the notice or stipulation states otherwise, the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(B). Rule 41 thus expressly provides for the dismissal of a civil action in a federal court both "without a court order" and "without prejudice" where the parties agree to such a dismissal. *See*, *e.g.*, Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 2362 (2005) ("Of course, a case, with very few exceptions, may be dismissed at any time by stipulation of all the parties."). "[T]he entry of such a stipulation of dismissal is effective automatically and does not require judicial approval." *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984).

A "without prejudice" dismissal, which is provided for in Rule 41 as the default outcome unless otherwise expressly agreed, permits the re-filing of the case in another state or federal court. *See Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("The effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.'") (quoting *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir. 1977)). Rule 41 dismissals are frequently used

---

[4] *See*, *e.g.*, *Vinson v. Metropolitan Prop. & Cas. Ins. Co.*, Case No. 4:14-cv-00029-BRW (E.D. Ark.); *Simpson v. Certain Underwriters at Lloyd's, London*, Case No. 4:14-cv-04042-SOH (W.D. Ark.) (discussed further below).

for the purpose of re-filing in another court, except where the defendant has answered and chooses to oppose such a dismissal. *See Harvey Specialty & Supply, Inc. v. Anson Flowline Equip., Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) ("plaintiffs in removed cases frequently use [Rule 41] to re-file an action in state court to secure their preferred forum by, inter alia, adding non-diverse parties").

A dismissal in accordance with Rule 41 is an "unfettered right," which "may be disruptive and annoying, but it is permitted by the rules . . . ." *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). The Second Circuit held that a law firm could not properly be sanctioned for filing a notice of voluntary dismissal because it "was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable." *Id.* at 115.

## B. Rule 23(e) Does Not Require Court Approval Of A Stipulated Dismissal Where No Class Has Been Certified In Federal Court

Rule 23(e) provides that "[t]he claims, issues, or defenses of a <u>certified class</u> may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e) (emphasis added). If, as here, no class has been certified in the federal court (and, in fact, no motion to certify a class was filed), Rule 23 does not require court approval for the voluntary dismissal of a putative class action. The Advisory Committee Notes to the 2003 amendment to this rule explain that "[t]he new rule requires approval <u>only</u> if the claims, issues or defenses of a <u>certified class</u> are resolved by a settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1)(A) adv. cmte. note (2003) (emphasis added); *see also Burks v. Arvest Bank*, 2006 U.S. Dist. LEXIS 78141, *3 n.1 (E.D. Ark. Oct. 24, 2006) ("The amendments to Rule 23 make clear that Rule 23(e)(1)'s requirement for court approval applies only if a class has been certified.");

*Sample v. Qwest Communs. Co., LLC*, 2012 U.S. Dist. LEXIS 70927, *12 (D. Ariz. May 22, 2012) ("with the 2003 amendment to Rule 23(e), parties are now allowed to voluntarily dismiss the action without court approval where the class has not yet been certified"); *Kurz v. Fid. Mgmt. & Research Co.*, 2007 U.S. Dist. LEXIS 74267, *4 (S.D. Ill. Oct. 4, 2007) ("Because no class has been certified in this case, the question of voluntary dismissal in this instance is governed not by Rule 23 but by Rule 41."); Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1797 (2005 & Supp. 2015) (under 2003 amendments, "settlements or voluntary dismissals that occur before class certification are outside the scope of subdivision (e)"); Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS: LAW & PRACTICE § 6.1 (11th ed. 2014) (after 2003 amendments, "where no class has been certified, voluntary dismissal of a putative class action is governed not by Rule 23, but by Rule 41").[5]

Rule 23, read together with Rule 41, thus permits the parties to a putative class action in a federal court to agree to stipulate to the voluntary dismissal of the federal case and then enter into a settlement in a state court.

### C. Under CAFA, the State Court Has Concurrent Jurisdiction Over Class Actions And There Are Valid Reasons For Seeking Approval Of A Class Action Settlement In State Court

In enacting CAFA, Congress chose to expand federal jurisdiction over class actions, but it chose not to provide federal courts with exclusive jurisdiction. *See* 28 U.S.C. § 1332(d). State courts in Arkansas and other states retain concurrent jurisdiction over class actions, and parties are entitled to choose to seek approval of class action settlements in state courts. Nothing in CAFA bars parties from choosing to settle in state court instead of federal court.

---

[5] Prior to the 2003 amendment, some courts required approval for the dismissal of a putative, non-certified class action. *See Crawford v. F. Hoffman La Roche*, 267 F.3d 760, 764 (8th Cir. 2001). This requirement was eliminated by the 2003 amendment.

As one law professor who is a prominent national commentator on class actions has explained, "[b]ecause CAFA applies only to settlements in federal courts, it gives settling parties an unlimited opportunity to escape the statute's strictures at any later time. <u>Parties who want to settle a pending federal class action can simply dismiss the federal case and refile a settlement class action in state court</u>." Robert H. Klonoff and Mark Herrmann, *Symposium: Class Actions In The Gulf South and Beyond: The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements*, 80 Tul. L. Rev. 1695, 1710 (2006) (emphasis added).

A prior draft of CAFA, which was not enacted, would have potentially prevented parties from choosing to settle in state court by permitting an absent class member to remove to federal court a putative class action satisfying the jurisdictional requirements. *See* S. Rep. No. 108-123, at 48-49, 94-95 (2003) (noting that this proposed but not enacted provision might prevent parties from "attempt[ing] to settle on the cheap in a state court"). Congress could have taken steps to force parties to settle class actions only in federal court, and it considered doing so, but it ultimately chose not to do so.

In any event, Arkansas state courts, in reviewing proposed class action settlements, apply a standard similar to that of the federal courts. The Arkansas class action rule provides that:

> The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class. The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The court may approve any such resolution that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

Ark. R. Civ. P. 23(e).

The Arkansas Supreme Court has adopted factors previously adopted by the Eighth Circuit for approval of class action settlements, as follows:

> (1) the strength of the case for the plaintiffs on the merits, balanced against the amount offered in the settlement;
> (2) the defendant's overall financial condition and ability to pay;
> (3) the complexity, length, and expense of further litigation; and
> (4) the amount of opposition to the settlement.

*Ballard v. Martin*, 79 S.W.3d 838, 844 (Ark. 2002) (adopting factors set forth in *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). Arkansas law expressly provides for scrutiny of class action settlements that is similar to federal standards. *See also id.* at 849 (also considering whether collusion exists).

The Polk County Circuit Court has issued a final order approving the settlement. (Pruitt Decl. Ex. D.) That order is entitled to full faith and credit in this Court, and as a matter of comity and respect for the state court system, USAA and its counsel respectfully suggest that it would be inappropriate for this Court to criticize the state court's judgment at this juncture. *See* 28 U.S.C. § 1738; *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 374 (1996) ("a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit"); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 142 (3d Cir. 1998).

There are various valid reasons why parties choose to seek approval of a class action settlement in state court rather than federal court. In Arkansas state courts, for example, a class action settlement that is approved by the trial court is less likely to be the subject of an appeal, which can drag out the process, delaying finality, and increasing costs for defendants, and potentially delaying receipt of payments by class members. Unlike the federal courts, the Arkansas Supreme Court has long held that "for unnamed class members to have standing to appeal a class-action settlement in state court, those class members must have intervened at the trial court level. Non-parties and unnamed members of the class who have failed to intervene are

precluded from appealing a class settlement." *Ballard v. Advance Am.*, 79 S.W.3d 835, 837 (Ark. 2002). The Arkansas Supreme Court has further held that intervention into a class action settlement is properly denied where "any interests that [the proposed interenors] intended to assert in this case were either protected by the class representatives or by their right to opt out of the settlement class," and the proposed intervenors "were unable to identify any reason why the class representatives could not adequately represent their interests." *Hunter v. Runyan*, 382 S.W.3d 643, 655-56 (Ark. 2011); *see also DeJulius v. Sumner*, 282 S.W.3d 753, 756 (Ark. 2008) (motion to intervene was properly denied where intervenor "made no effort to demonstrate that the class representatives and class counsel did not protect his interests as a class member").

In the federal courts, in contrast, objectors have been held to have a right of appeal without intervention, and such appeals have become increasingly common in recent years. *See, e.g.*, *Marshall v. National Football League*, 787 F.3d 502 (8th Cir. 2015); *In re Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013). Parties deciding to enter into a class action settlement are entitled to decide that a state court forum is preferable.

### D. It Is Not Uncommon For Parties To Stipulate To Dismissal Of A Federal Case And Settle A Class Action In State Court

The Court's Order appears to imply that there is something unusual about the procedural mechanism of filing a stipulation of voluntary dismissal in federal court, and then seeking approval of a class action settlement in a newly-filed state court case. This procedure has been used repeatedly—without the federal court issuing any order to show cause—including in cases in which the federal court proceedings have been much more extensive and more burdensome on the federal court than in this case.

To cite one recent example, in *Vinson v. Metropolitan Prop. & Cas. Ins. Co.*, Case No. 4:14-cv-00029-BRW (E.D. Ark.), a putative class action involving depreciation of labor was

filed in Independence County Circuit Court and removed to the Eastern District of Arkansas. From January 15, 2014 through September 30, 2014, the parties engaged in extensive proceedings in the federal district court, including a motion to dismiss and completion of briefing on class certification. (*See* Docket Entry Nos. 1 through 69.) A class certification hearing was scheduled for October 7, 2014. (Docket Entry No. 52.) On October 1, 2014, less than one week before the class certification hearing, the parties jointly moved for a stay for settlement purposes, which was granted (Ex. 6 hereto), and they later filed a stipulation of dismissal without prejudice on December 11, 2014 (Ex. 7 hereto). On the same day that the stipulation of dismissal without prejudice was filed in federal court, a motion to preliminarily approve a class settlement was filed in Independence County Circuit Court. (Ex. 8 hereto.)

Similarly, in *Simpson v. Certain Underwriters at Lloyd's, London*, Case No. 4:14-cv-04042-SOH (W.D. Ark.), a putative class action involving depreciation of labor was filed in Miller County Circuit Court and removed to the Western District of Arkansas. The parties filed a joint motion to stay pending mediation less than 30 days after the case was removed, and that motion was granted. (Exs. 9 and 10.) The parties later filed a stipulation of dismissal without prejudice (Ex. 11), and then sought approval of a class action settlement in Miller County Circuit Court (Ex. 12). *See also Gough v. Transamerica Life Ins. Co. Life Investors Ins. Co. of Am.*, 781 F. Supp. 2d 498, 502 (W.D. Ky. 2011) (noting how numerous class actions were litigated in various federal courts, and then the parties decided to enter into a nationwide class action settlement in a state court). USAA and its counsel were aware of the existence of the *Vinson* and *Simpson* settlements when they entered into the settlement agreement in this case.

Counsel for USAA certainly did not intend or believe that their actions in this case, consistent with several recent class action matters in both the Eastern and Western districts of

Arkansas, would violate Rule 11. Frankly, counsel for USAA assumed the Court would anticipate that a settlement would be filed in state court given its knowledge that the parties had been involved in protracted settlement negotiations. As set out above, Plaintiffs and Defendants had an absolute right to enter a stipulation of dismissal without Court approval, and it does not appear that there is any basis on which this Court could have refused to permit the parties to stipulate to a dismissal in federal court in order to settle in the state court. There was no intention to mislead the Court.

## II.     THERE HAS BEEN NO VIOLATION OF RULE 11

### A.     Rule 11 Standards

Fed. R. Civ. P. 11 provides that, in presenting a written filing to the court:

> an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The rule further provides that "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). The rule provides for both monetary and nonmonetary sanctions, but does not permit a monetary sanction if the court raises the issue of

sanctions *sua sponte* and the show-cause order was not issued before a voluntary dismissal (as was the case here). Fed. R. Civ. P. 11(c)(4), (5). The Advisory Committee Notes to Rule 11 further explain that "[t]he rule applies only to assertions contained in papers filed with or submitted to the court." Fed. R. Civ. P. 11 adv. cmte. notes (1993). "Rule 11 liability is assessed only for a violation existing at the moment of filing." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006).

The Eighth Circuit has further explained that Rule 11 must be "applied with particular strictness where . . . the sanctions are imposed on the court's own motion." *MHC Investment Co. v. Racom Corp.*, 323 F.3d 620 (8th Cir. 2003). Although the Eighth Circuit has not yet determined whether subjective bad faith is required following the 1993 amendments, the Eighth Circuit has concluded that, at a minimum, "the standard under Rule 11 is whether the attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Jones v. United Parcel Service, Inc.*, 460 F.3d 1004, 1009 (8th Cir. 2006) (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)).

Where an opposing party files a Rule 11 motion, the rule provides a "safe harbor" whereby the party that allegedly violated Rule 11 and its counsel can avoid the filing of a Rule 11 motion by withdrawing or correcting the allegedly offending pleading or other paper within 21 days after service of the motion. *See* Fed. R. Civ. P. 11(c)(2). Where, as here, a judge raises the issue of Rule 11 sanctions *sua sponte*, there is no "safe harbor." In light of the absence of a "safe harbor" in this circumstance, several federal courts of appeals have held that where the issue of Rule 11 sanctions is raised by the court *sua sponte*, a higher threshold must be satisfied for the imposition of sanctions. Several courts of appeals have held that the conduct must be "akin to contempt" in order for sanctions to be warranted. *Kaplan v. DaimlerChrysler, A.G.*, 331

F.3d 1251, 1255 (11th Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001); *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003) (bad faith must be shown).

Moreover, despite the Eighth Circuit's reticence to determine whether subjective bad faith is required for a Rule 11 violation, USAA and its counsel respectfully submit that the subjective purpose behind a court submission is of paramount relevance for the Court in evaluating whether a violation of Rule 11(b)(1) has occurred in this action. Unlike a violation of subsections (2) – (4) of Rule 11(b) that understandably could be evaluated objectively based on a case record or published jurisprudence, in evaluating a possible violation of Rule 11(b)(1), which prohibits a filing made for an "improper purpose," *an individual attorney's purpose* for presenting a pleading, written motion, or other paper may not be discernable from only an objective review of a cold record. It is axiomatic that the purpose (proper or improper) of a filing can only be given its truest voice from the filing attorney who had a mindful purpose for its filing. Hence, USAA and its counsel respectfully submit that the subjective purposes for USAA's filings, as articulated by USAA's attorneys in Exhibits 1-3 attached hereto, must be considered by this Court. Other courts have recognized that such evidence must be considered in evaluating whether a Rule 11(b)(1) violation has occurred. *See, e.g.*, *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 639 (11th Cir. 2010) (whether a lawyer violated Rule 11(b)(1) by filing the complaints for improper purposes is a "subjective analysis"); *Alpern v. Lieb*, 38 F.3d 933, 935-36 (7th Cir. 1994) (Rule 11's "improper purpose" clause has both objective and subjective components); *Pennie & Edmonds LLP*, 323 F.3d at 91 (bad faith required).

**B.** **No Document Filed With This Court On Behalf Of USAA Was Filed For An Improper Purpose**

It appears that the Court's concern is limited to whether USAA's counsel filed any document with the Court that was made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ." Fed. R. Civ. P. 11(b)(1); Doc. 37, at 5. In particular, the Court has asked counsel to "show how their actions in making filings in this Court (to include the original removal, requests for stay, and/or stipulation of dismissal, etc.) were not made 'for any improper purpose,' including: (1) forum-shopping to seek a forum that counsel believed would best suit their own interests at any given time (to the detriment of class members); (2) wasting Government resources expended in adjudicating and monitoring this matter over 17 months only so counsel could gain leverage in settlement negotiations while ultimately evading federal review of the negotiated settlement; and/or (3) generally inappropriate procedural gamesmanship with no intent to actually litigate claims in good faith before this Court." (Doc. 37, at 5-6.) USAA and its counsel will address each of these issues below.

**1.** **The Selection Of The State Court Forum, Which This Court Has Characterized As "Forum Shopping," Cannot Be A Violation Of Rule 11**

With respect to the Court's concern about "forum shopping," as a matter of law, USAA was entitled to choose to agree to submit the proposed class action settlement to the Polk County Circuit Court rather than this Court. *See* Section I above. Counsel for USAA acted fully consistently with their obligations to their client with respect to the settlement. *See* Ark. R. Prof. C. 1.2, 1.3. As the Fifth Circuit has explained, where both federal and state courts have jurisdiction, "[t]he existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers

most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983).

At a minimum, USAA's decision to settle in state court was not foreclosed by any existing law, and was based on a reasonable position under Rules 23 and 41 and other applicable law. Such a decision, as long as it is based on a nonfrivolous legal position, does not fall within the realm of Rule 11 sanctions. *See* Fed. R. Civ. P. 11(b)(2) (legal contentions must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"); *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987) (affirming district court's denial of Rule 11 sanctions on grounds that "plaintiffs had nonfrivolous legal arguments" for their position); *Goodman v. Goodman*, 2007 U.S. Dist. LEXIS 16010 (D.N.J. Mar. 6, 2007) (where plaintiff was entitled to file a notice of voluntary dismissal and chose to do so, that was not a basis for Rule 11 sanctions).

Forum selection is not an improper purpose under Rule 11 where parties have the right to proceed in state court. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1188 (10th Cir. 2015) (explaining that "[t]here is no impropriety simply in pursuing the same claim simultaneously in state and federal courts," and that is not a Rule 11 violation); *Sussman by & Through Guilden v. Bank of Israel*, 56 F.3d 450, 457 (2d Cir. 1995) (selection of a forum where venue was not improper could not be basis for Rule 11 sanctions); *Conte v. Aargon Agency, Inc.*, 2013 U.S. Dist. LEXIS 65288, *19-20 (E.D. Cal. May 3, 2013) (while court did not approve of forum shopping, it was not a basis for Rule 11 sanctions). Given the recent history in both the

Eastern and Western Districts of Arkansas in putative class action matters set out above, the parties' agreement to settle in state court was not inconsistent with this Court's orders suggesting that the settlement discussions might lead to the filing of a stipulation of dismissal. (Doc. 21; text only orders dated Aug. 11, 2014, Oct. 10, 2014, Dec. 15, 2014.)

To the extent the Court suggests that the selection of the state court forum was purportedly "to the detriment of class members," a defendant's interests in a class action are *adverse* to the class members. USAA's counsel had no responsibility for the class members. Plaintiffs' counsel was responsible for representing the settlement class, and they concluded that the settlement was appropriate for the class. This conclusion was subsequently ratified by the Circuit Court of Polk County after a thorough review of the settlement terms. (Pruitt Decl. Ex. D.)

### 2.     There Was No Intent To Waste Government Resources

USAA's filings in this Court were not intended to waste Government resources. To the contrary, they were expressly intended to *avoid* wasting Government resources. USAA, together with Plaintiffs, asked for stays in the hopes that a settlement could be reached that would avoid the need for motion practice and rulings on class certification and various other issues. The alternative would have been to proceed simultaneously with litigation in this Court and settlement discussions at the same time, which would have imposed substantial litigation costs on USAA and substantial burden on this Court, all of which would be wasted if a settlement ultimately was reached. That is what occurred, for example, in *Vinson v. Metropolitan Prop. & Cas. Ins. Co.* (discussed above). In contrast, in the present case, USAA joined in the request for an additional stay of the case in this Court on March 16, 2015 because it believed that a settlement was likely to be reached, and it wanted to avoid imposing any burden on the Court.

(Doc. 30; Pruitt Decl. ¶ 16; Goldman Decl. ¶ 15; Ackerman Decl. ¶ 16.) After the Court denied a further stay, USAA's counsel proceeded as the Court directed, while at the same time withdrawing the motion for judgment on the pleadings so that they would *not* impose a burden on the Court where the settlement discussions appeared to be close to completion. (Pruitt Decl. ¶¶ 18-19; Goldman Decl. ¶¶ 17-18; Ackerman Decl. ¶¶ 18-19.)

To the extent the Court suggests an improper intent to use this Court's jurisdiction to "gain leverage in settlement negotiations," USAA fully intended to litigate this case in this Court when the notice of removal was filed, and at any later point if a settlement could not be reached. (Pruitt Decl. ¶ 26; Goldman Decl. ¶ 25; Ackerman Decl. ¶ 26.)

To the extent the Court suggests an improper intent to avoid a repeat of the type of criticism apparently expressed by this Court regarding the approval of the class action settlement in *Adams v. Cameron Mutual Ins. Co.*, USAA and its counsel had no such intent. USAA and its counsel were not aware of the concerns apparently expressed by this Court regarding the approval of the class action settlement in the *Cameron Mutual* case. (Pruitt Decl. ¶ 27; Goldman Decl. ¶ 26; Ackerman Decl. ¶ 27.)

Where an agreement to submit a class action settlement to this Court for review was not reached, USAA's choices were either to agree to a state court settlement (which USAA and its counsel reasonably believed the law permits), or to litigate in federal court to finality, with all of the litigation expense and risk that entailed. USAA was entitled to choose the state court option.

### 3. USAA Intended To Litigate In This Court

To the extent the Court suggests "generally inappropriate procedural gamesmanship with no intent to actually litigate claims in good faith before this Court" (Doc. 37, at 6), that is incorrect. USAA fully intended to litigate claims in good faith in this Court when the notice of

removal was filed, at all times prior to the commencement of settlement discussions, and at all times thereafter if a settlement could not be reached. (Pruitt Decl. ¶¶ 4-10, 26; Goldman Decl. ¶¶ 6-9, 25; Ackerman Decl. ¶¶ 6-10, 26.)

## **CONCLUSION**

For all of the foregoing reasons, USAA and its counsel respectfully submit that Rule 11 sanctions are not appropriate in this case and should not be issued. USAA and its counsel respectfully submit that this brief and the accompanying declarations should satisfy the Court's concerns and obviate the need for a show cause hearing.

As the Court must know, even the suggestion that an attorney has violated Rule 11 is a very serious matter, and USAA's experienced counsel take their obligations very seriously. Certainly the attorneys for USAA want to cooperate in every way possible to satisfy the Court that their conduct in this case has been above reproach. Therefore, unless the Court elects to withdraw its order to show cause after reviewing the written submissions, counsel for USAA will make themselves available at the hearing scheduled by this Court to present argument why sanctions are not warranted and to fully respond to any questions of the Court.

Respectfully Submitted,

MATTHEWS, CAMPBELL, RHOADS,
MCCLURE & THOMPSON, P.A.
119 S. Second Street
Rogers, AR 72756
Tel. (479) 282-2586

By:    ***David R. Matthews***_____
David R. Matthews, Ark. Bar No. 76072

*Attorney for Defendants*
*United Services Automobile Association, USAA*
*Casualty Insurance Company, and USAA General*
*Indemnity Company and for Mitchell, Williams,*
*Selig, Gates & Woodyard, P.L.L.C., Robinson &*
*Cole LLP, Lyn P. Pruitt, Stephen E. Goldman,*
*Wystan M. Ackerman and Stephen O. Clancy*

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone:  (501) 688-8869
Facsimile:  (501) 918-7869
Email:  lpruitt@mwlaw.com

By:    ***Lyn P. Pruitt***_____
Lyn P. Pruitt, Ark. Bar No. 84121


Stephen E. Goldman (pro hac vice)
Email:  sgoldman@rc.com
Wystan M. Ackerman (pro hac vice)
Email:  wackerman@rc.com
Stephen O. Clancy (pro hac vice)
Email:  sclancy@rc.com
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
Telephone:  860-275-8200
Facsimile:  860-275-8299

*Attorneys for Defendants*
*United Services Automobile Association, USAA*
*Casualty Insurance Company, and USAA General*
*Indemnity Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2016, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which shall send notification of such filing to the

following:

John C. Goodson
jcgoodson@kglawfirm.com

D. Matt Keil
mkeil@kglawfirm.com

W.H. Taylor
whtaylor@taylorlawpartners.com

William B. Putman
wbputman@taylorlawpartners.com

Steven E. Vowell
svowell@taylorlawpartners.com

Jason E. Roselius
jason@mroklaw.com

Richard E. Norman
rnorman@crowleynorman.com

Timothy J. Myers
tmyers@taylorlawpartners.com

Stephen C. Engstrom
stephen@engstromlaw.com

A.F. (Tom) Thompson, III
aftomt2001@yahoo.com

Kenneth (Casey) Castleberry
caseycastleberry2003@yahoo.com

Matthew L. Mustokoff
mmustokoff@ktmc.com

R. Martin Weber, Jr.
mweber@crowleynorman.com

James M. Moody
jmoody@wlj.com

John R. Elrod
jelrod@cwlaw.com

Vicki Bronson
vbronson@cwlaw.com

$\textbf{\textit{\underline{David R. Matthews}}}$
David R. Matthews