# Matthews Campbell Rhoads McClure & Thompson P.A.

ATTORNEYS

*119 South Second Street
Rogers, AR 72756-4525*

*PH 479/636-0875
FX 479/636-8150*

David R. Matthews •
Craig A. Campbell
George R. Rhoads •
Edwin N. McClure ▪
Larry J. Thompson
Sarah L. Waddoups
M. Anneliese Reed
Scott Tidwell ▪ •
Ryan P. Blue
Cole A. Truitt
Edmond Joseph McGehee

Kimberly R. Weber ▫
Mark T. Fryauf ▫ ▪
Mary B. Matthews
*of counsel*

•*also admitted in Oklahoma*
▪*also admitted in Missouri*
▫*also admitted in Texas*

Email
drm@mcrmt.com

Website
www.mcrmt.com

February 23, 2016

Honorable P.K. Holmes, III
Chief Judge
Judge Isaac C. Parker Federal Building
30 South 6th Street
Room 1038
Fort Smith, Arkansas 72901-2437

*CONFIDENTIAL INFORMATION FOR IN CAMERA REVIEW*
*Via Electronic Mail: pkhinfo@arwd.uscourts.gov*

Dear Judge Holmes:

Pursuant to your request during the show cause hearing held on February 18, 2016, I write to provide the Court confidentially, in camera, with the following information regarding the class action settlement that was approved by the Polk County Circuit Court.

As an initial matter, we reiterate the objections I made at the hearing: The information being provided herein regarding the number of claims made in the state court settlement is not relevant to the Court's sanctions inquiry because this information was not known until long after the federal court proceedings concluded. In addition, the information has been treated as confidential by the Polk County Circuit Court under Paragraphs 32 and 33 of that court's final order and judgment approving the settlement dated December 21, 2015. Given that the Polk County Circuit Court is administering the settlement, I respectfully suggest that this Court should defer to the state court judge's determination as to whether or not the information should be publicly disclosed. Notwithstanding those objections, in accordance with Your Honor's order, USAA provides the following information:

As of February 22, 2016, Rust Consulting, the settlement administrator, has provided the parties with the following data: The total number of notices mailed to potential class members based on records provided by USAA was 14,988. An additional 39 notices were mailed to potential class members who requested them from Rust Consulting. 257 notices were returned as undeliverable without a forwarding address, and 78 of those notices were re-mailed to new

RECEIVED
WD/AR

FEB 2 3 2016

U. S. DISTRICT COURT

addresses identified by Rust Consulting. 651 claim forms were received as of February 20th.

To the extent that the Court intends to attempt to calculate a "claims rate," it should be noted that the 14,988 persons to whom claim forms were mailed consisted of all members (policyholders) of USAA who received a payment for a covered structural loss during the class period (January 1, 2006 through December 31, 2014). Many of those members did not have depreciation withheld from the claim payment(s) made to them. USAA gave notice to all of its potentially-impacted members because it does not have a database or computer query it can make to systematically determine whether depreciation was withheld in connection with an actual cash value payment on a particular claim. It is not simply a matter of retrieving computerized data regarding total depreciation and then multiplying 45% by the total amount of depreciation to estimate labor depreciation. There is no such data. As part of USAA's property damage claims process, a vendor provides an on-line estimating system known as Xactimate. Actual payment information about each claim is maintained separately within USAA's claims system. The claims system does not merely use the Xactimate estimate to make a payment to a member with a claim. Rather, an adjuster must consider the estimate and other information gathered during the claims investigation to determine whether depreciation will be withheld at the time of making the claims payment. USAA could not and cannot identify the Arkansas members on whose claims depreciation was withheld in connection with an actual cash value payment without conducting manual file reviews of all relevant claims made by the 14,988 potential class members (some of whom made more than one claim during the relevant time period).

The process used to identify all potential settlement class members in order to provide them with notice of the settlement was separate and distinct from the process that was used to prepare the notice of removal to this Court. In providing support for the notice of removal, USAA used available data from Xactimate to determine amounts of depreciation shown on estimates (which may or may not have been the basis for a payment being issued). USAA has used Xactimate software in the preparation of most (but not all) of its estimates since 2008. Through searching Xactimate, USAA identified 7,687 estimates from January 1, 2008 to December 5, 2013 on which depreciation was shown on an Xactimate estimate. A significant portion of the claims connected with those 7,687 estimates, however, actually would not have had depreciation subtracted in issuing the payment to USAA's

member.[1]

There are various reasons why depreciation may have been included in an Xactimate estimate calculation, but it was not deducted when the assigned adjuster actually made the claim payment. These reasons include: (1) the amount of depreciation was below a particular monetary threshold; (2) the total amount of the claim was less than a particular monetary threshold; (3) the adjuster exercised his or her discretion to pay the full replacement cost value in the initial payment; (4) the claim was paid based on an agreed estimate from the member's contractor, rather than the USAA-prepared estimate; (5) the claim was handled and paid through USAA's Property Direct Repair Program, through which, by agreement with the USAA member, USAA pays the contractor directly for the repair work, without subtracting depreciation; or (6) the member completed repairs quickly, before the initial payment was made, so depreciation was not withheld from the initial payment. On claims on which there was no depreciation withheld, obviously there was no depreciation applied to labor costs, and those members would not be entitled to any relief in the lawsuit, and are not entitled to any payment under the settlement. USAA's procedures for handling claims appear to be very different from what has been vaguely suggested was the case with respect to Cameron Mutual Insurance Company.

Thus, to the extent the Court wishes to attempt to calculate a "claims rate," USAA does not know how many of the 14,988 members who were given notice of the settlement, or how many of the 7,687 estimates that were the subject of the removal data, are members who would be eligible for payment under the terms of the settlement if all of them made claims. This determination, which could only be made through a very time-consuming file-by-file review, was not made because the parties entered into a "claims made" settlement. Under the claims made settlement, every class member with a timely claim under the applicable statute of limitations and contractual suit limitation period, and who submitted a claim form, will receive what amounts to approximately full relief. The necessity for a file-by-file review to determine who actually had their initial claims payment reduced for labor depreciation made a "claims made" settlement particularly appropriate in this case.

---

[1] As explained in our prior briefing, and as this Court's and the Eighth Circuit's decisions have recognized, the amount in controversy calculation is separate and distinct from any settlement-related calculations. The amount in controversy was estimated based on what Plaintiffs' allegations seek on behalf of the putative class in potential damages, even if it is highly improbable that they will actually recover those amounts. The amount in controversy thus was properly calculated based on Plaintiffs' allegations that the entire class was entitled to recover for labor depreciation, and also appropriately included the alleged statutory penalty, attorneys' fees and potential punitive damages. (Doc. 48, at 5, 13-14.)

To the extent the Court inquired about the value of the 651 claims that have been submitted thus far, USAA has not determined the value of those claims. Under Paragraph 69(b) of the Stipulation of Settlement, the first step in that process is for the settlement administrator to make certain determinations and perform certain actions by approximately April 1, 2016. After that, USAA will make its determinations of the amounts it believes are the correct amounts to be paid under the settlement, by a deadline of August 1, 2016. The settlement administrator will then notify class members of the payments and class members who submitted claims will have an opportunity to object to USAA's determinations, as set forth in Paragraphs 69(d) through (h) of the Stipulation of Settlement.

We also thought it important and helpful to clarify the reasons for requesting on the claim form that USAA members include relevant documentation with their claim, if they had retained documentation. There were two reasons for this: (1) if a class member had completed the repairs to their property but not informed USAA of that, this information would affect how much money they were entitled to under the settlement; and (2) the settlement class period includes some claims for which USAA no longer retains claim files because of document retention policies in place prior to the litigation, and thus USAA could not make a determination under the terms of the settlement without some information being provided by the class member. The claim form allowed the class member to answer "I do not know" if appropriate with respect to all of the questions asked, and class members were asked to submit documentation only if they retained it.

Respectfully submitted,

*David R. Matthews*

David R. Matthews

DRM:srb

cc: John Elrod
    James Moody