IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARK I. and KATHERINE S. ADAMS,
individually and on behalf of all others
similarly situated                                                    PLAINTIFFS

v.                                       No. 2:14-CV-02013

UNITED SERVICES AUTOMOBILE ASSOCIATION;
USAA CASUALTY INSURANCE COMPANY; and
USAA GENERAL INDEMNITY CO                                    DEFENDANTS

## OPINION AND ORDER

On December 21, 2015, the Court ordered (Doc. 37) all counsel of record ("Respondents")—D. Matt Keil, Jason Earnest Roselius, John C. Goodson, Richard E. Norman, Stevan Earl Vowell, Timothy J. Myers, W. H. Taylor, William B. Putman, A. F. "Tom" Thompson, III, Kenneth (Casey) Castleberry, Matthew L. Mustokoff, R. Martin Weber, Jr., and Stephen C. Engstrom (collectively "Plaintiffs' counsel"); and Lyn Peeples Pruitt, Stephen O. Clancy, Stephen Edward Goldman, and Wystan Michael Ackerman (collectively "Defense counsel")—to show cause why sanctions should not issue under Rule 11 of the Federal Rules of Civil Procedure.  Respondents filed briefs (Docs. 42, 49) in response.  On February 11, 2016, the Court filed notice (Doc. 50) to Respondents that it was also considering imposing sanctions under its inherent authority.  Respondents filed supplemental responses.  (Docs. 51, 52).  On February 18, 2016, the Court held a hearing on the issue of sanctions and took the matter under advisement.  At the hearing, Plaintiffs' counsel were represented by John R. Elrod, with the exception of Respondent Engstrom, who was represented by James M. Moody.  Defense counsel were represented by David R. Matthews.  Having given this matter careful consideration, the Court now issues this opinion and order.

1

## I.   Background[1]

This matter was filed as a putative class action in the Circuit Court of Polk County, Arkansas, on December 5, 2013, and properly removed to this Court on January 15, 2014, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  An answer was filed the same day, and was followed by a motion for partial judgment on the pleadings on April 29, 2014.  On May 5, 2014, the Court stayed the action for mediation on joint motion of the parties.  Because September 15, 2014, was the mediator's earliest available date, the stay was continued on August 11, 2014.  At the September 2014 mediation, the possibility of dismissing this action and refiling the case in Arkansas state court for the purpose of certifying and settling a class action became a term in negotiations.  (Doc. 55, p. 21:11-19).  A second mediation was scheduled for December 3, 2014, and the Court continued the stay pending that mediation.  Though a settlement ultimately was not reached at that mediation, the parties were confident enough in their progress toward settlement to ask the Court to stay the matter an additional 90 days.  (Doc. 42-3).  The Court again continued the stay and advised the parties that further extensions were unlikely to be granted.

On March 16, 2015, the parties notified the Court that they had reached agreement on almost all material terms and moved for a one-month extension to resolve outstanding issues. The Court denied the motion, lifted the stay, and directed the parties to file an updated Rule 26(f) report.  On March 31, 2015, the parties reached a settlement agreement in principle.  (Doc. 55, pp. 21:25–22:6).  The terms of this settlement included dismissal of this action and refiling in

---

[1] The following facts outline the events in this case and are intended to provide some context.  In imposing sanctions, the Court relied on the record as a whole and, as stated at the hearing, takes judicial notice of the record in the Arkansas state court matter of *Adams v. USAA*, 57CV-15-105 (Polk County Circ. Ct.) and of the record in *Adams v. Cameron Mut. Ins. Co.*, No. 2:12-CV-02173 (W.D. Ark.) (referred to in discussion as *Adams I*).

Polk County, Arkansas.  On April 15, 2015, Defense counsel withdrew the motion for partial judgment on the pleadings and the parties filed a joint Rule 26(f) report proposing several dates for continued litigation of this action in this Court.  On May 5, 2015, the Court entered a final scheduling order on the basis of this Rule 26(f) report.  On June 16, 2015, the parties executed a settlement agreement identifying the reviewing court as the Circuit Court of Polk County.  On June 19, 2015, Respondents jointly dismissed this action by stipulation.  The Clerk's order of dismissal was entered on June 22, 2015

On June 23, 2015, this action was refiled in the Circuit Court of Polk County along with a joint motion to certify a class action and approve the stipulated class settlement that the parties had negotiated and executed while appearing in this action.  On August 26, 2015, the state court certified a settlement class and preliminarily approved the settlement agreement.  Despite representing in the settlement agreement that the class size likely topped out at 7,687 members (Doc. 42-2, p. 111), Respondents sent 15,027 notices.  (Doc. 60, p. 1 (noting that 14,988 notices were initially mailed plus an additional 39 notices mailed at the request of potential class members)).  As of February 20, 2016, only 651 claims were filed.[2]  *Id.*  Despite this approximately 4% claims rate, when the settlement was given final approval Plaintiffs' counsel were simultaneously awarded $1,850,000 in fees and expenses, which was paid promptly due to Respondents negotiating a quick-pay provision.  (Doc. 42-3, p. 107).  On December 14, 2015, the Court first learned that this case had been refiled in Polk County and that final approval of

---

[2] Though the Court can conceive of no set of circumstances in which the amount to be recovered in these 651 claims will result in a payout anywhere near the estimated potential settlement value of $3,445,598, and though Plaintiffs' counsel knew that this was the claims rate for the settlement they negotiated (Doc. 55, p. 47:3–8), at the hearing they represented through their own counsel that they were "proud of the settlement that they achieved" (*Id.*, p. 78:2), believed that "[t]hey provided benefit to the class, extraordinary benefit" (*Id.*, p. 78:4–5), and believed three times over that "[t]here was no detriment to the class" (*Id.*, p. 80:23–25).

the settlement was imminent.  On December 16, 2015, the state court conducted a hearing for final approval of the settlement, and on December 21, 2015, the state court entered its final order approving settlement and awarding attorney's fees.  That same day the Court entered its show-cause order.

## II.  Standard of Review

### A.  Rule 11

Federal Rule of Civil Procedure 11 forbids attorneys who present a pleading, written motion, or other paper to the Court from making the submission for an improper purpose.  Fed. R. Civ. P. 11(b)(1).  If Rule 11 is violated, the Court may impose sanctions.  Fed. R. Civ. P. 11(c).  Where, as here, the possibility of Rule 11 sanctions is raised sua sponte by the Court, "the rule should be applied with 'particular strictness.'"  *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006) (quoting *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003)).  The first issue the Court must address in applying Rule 11 with particular strictness is what standard it must apply to review potentially sanctionable conduct in a sua sponte inquiry.

Rule 11 requires that an attorney's conduct be objectively reasonable under the circumstances.  *Norsyn, Inc. v. Desai*, 351 F.3d 825, 831 (8th Cir. 2003) (citing *Black Hills Inst. of Geological Research v. S. Dak. Sch. of Mines & Tech.*, 12 F.3d 737, 745 (8th Cir. 1993)); *accord O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987) (explaining that "[t]he issue is whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading.").  Because there is no safe harbor[3] in Rule 11 when sanctions are raised by the Court, some circuits have required that sua sponte sanctions only

---

[3] Rule 11(c)(2)'s safe harbor provision requires a party who wants to file a motion for sanctions against a second party to serve the second party with the motion, and then to wait 21 days before filing the motion.  If during that time the second party withdraws or corrects the paper at issue, the first party may not file its motion for Rule 11 sanctions.

issue in the case of egregious misconduct akin to contempt.  *See Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255–56 (11th Cir. 2003); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90–93 (2d Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151, 153 (4th Cir. 2002); *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1115–16,  1118 (9th Cir. 2001).  The Second Circuit Court of Appeals has gone so far as to require that attorneys must engage in bad faith conduct before sua sponte Rule 11 sanctions may issue.  *In re Pennie & Edmonds LLP*, 323 F.3d at 90–93.  Conversely, the First Circuit Court of Appeals has explained that "[a] specific purpose of the 1993 revision of Rule 11 was to reject such a bad faith requirement," and that because sua sponte sanctions are at any rate far less likely to arise over frivolous matters than sanctions by motion, there is no need for a bad faith requirement or higher standard in sua sponte sanctions determinations.  *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 40 (1st Cir. 2005); *cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 n.11 (1991) (explaining that the 1983 amendments to Rule 11 removed any bad-faith requirement for imposing sanctions, and were adopted because courts were reluctant to use the previous version of Rule 11 to impose sanctions).

The Eighth Circuit Court of Appeals has thus far found it unnecessary to decide whether a more stringent standard than "objectively reasonable under the circumstances" is required for sua sponte sanctions.  *Clark*, 460 F.3d at 1010.  However, this circuit's requirement that Rule 11 be applied with particular strictness is echoed by the First Circuit's admonition that "judges must be especially careful where they are both prosecutor and judge."  *Young*, 404 F.3d at 40.  In the Court's view, the First Circuit has the better reasoning on what standard applies, and that reasoning is consistent with Eighth Circuit precedent.  As the *Young* opinion notes, Rule 11(c) distinguishes between procedures that apply "depending on whether opposing counsel or the

court initiates the charge," but "[n]othing in the language of Rule 11(c) says that, if the court initiates the inquiry, something more than a Rule 11(b) breach of duty is required." *Young*, 404 F.3d at 39; *cf. Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 540 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning.") (quotation omitted).

If the Court finds Rule 11 has been violated, the Court may impose an appropriate sanction.  "[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct." *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994).  If the Court determines a Rule 11 sanction is necessary, then an appropriate sanction is one tailored "to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  In determining the appropriate Rule 11 sanction, the Court may consider "the wrongdoer's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation,[4] and other factors."  *Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995).  The Court has broad discretion in determining the sanction, and a sufficiently deterrent sanction is not necessarily the least severe sanction available.  *Id.*

### B.    Inherent Authority (Abuse of Judicial Process)

In addition to its Rule 11 authority, the Court possesses an inherent authority to sanction parties for abuse of the judicial process.  *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993). This inherent sanctioning authority is not mutually exclusive with the Court's Rule 11 authority. *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 594 n.2 (8th Cir. 2001); *see also Chambers*, 501 U.S. at 49 ("[T]he inherent power of a court can be invoked even if procedural rules exist which

---

[4]  Because the presence and degree of bad faith are considered after a violation has already been found and while the Court is deciding what sanction to impose, if any, there is little reason to add an additional, unwritten requirement to Rule 11 that bad faith must precede finding a violation in the first place, even on a sua sponte analysis.

sanction the same conduct.");[5] *but cf. Chambers*, 501 U.S. at 50 (stating that where bad faith conduct can be adequately sanctioned under the Rules, "the court ordinarily should rely on the Rules rather than the inherent power."). The scope of the inherent authority extends beyond that of Rule 11. Sanctions under Rule 11 may be imposed only for violations committed "[b]y presenting to the court a pleading, written motion, or other paper." Fed. R. Civ. P. 11(b). But the inherent authority to sanction "reaches both conduct before the court and that beyond the court's confines." *Chambers*, 501 U.S. at 44.

As with Rule 11, sanctions imposed under the inherent power should be "appropriate." *Chambers*, 501 U.S. at 44–45. However, Rule 11's limitation that appropriate sanctions are those sufficient to deter future misconduct does not control inherent authority sanctions. Rather, the Court is "accorded considerable latitude in dealing with serious abuses of the judicial process" and "must give thoughtful consideration to all the relevant factors presented in the

---

[5] Just as with Rule 11, the Court's inherent authority to sanction and discipline members of its bar is not mutually exclusive with the disciplinary process set forth in the local rules. Persons enrolled as attorneys in this Court or appearing pro hac vice are subject to the Federal Rules of Disciplinary Enforcement. W.D. Ark. R. 83.5(e). Those Rules are found in the appendix to the Court's local rules and set out the process for disciplining admitted attorneys for "misconduct." Fed. R. Disciplinary Enforcement IV(A). "Misconduct" comprises "[a]cts or omissions by an attorney admitted to practice before this Court . . . which violate the Code of Professional Responsibility or Rules of Professional Conduct adopted by this Court." Fed. R. Disciplinary Enforcement IV(B). "The Code of Professional Responsibility or Rules of Professional Conduct adopted by this Court is the Code of Professional Responsibility or the Rules of Professional Conduct adopted by [the Supreme Court of Arkansas]." *Id.* The Court's order to show cause was not issued on the basis of suspected "misconduct" under the Rules of Disciplinary Enforcement but because it appeared that Respondents violated Rule 11 and abused the judicial process. The Federal Rules of Disciplinary Enforcement do not apply in this proceeding because those Rules do not supplant the Court's authority to impose sanctions on other grounds than "misconduct." Fed. R. Disciplinary Enforcement XIV; *cf. In re Bird*, 353 F.3d 636 (8th Cir. 2003) (reviewing suspension from practice imposed outside of the process set forth in the Federal Rules of Disciplinary Enforcement after show-cause orders issued on the basis of violations of those Rules). The Court is still considering whether Respondents engaged in misconduct warranting referral for disciplinary investigation and enforcement under the Local Rules.

case." *Frumkin v. Mayo Clinic*, 965 F.2d 620, 626–27 (8th Cir. 1992) (quotations omitted). Ultimately, the Court should remain mindful that whereas the purpose of Rule 11 is to deter future misconduct, the purpose of sanctions under the inherent authority is to vindicate judicial authority. *Chambers*, 501 U.S. at 46, 53, 55, 57.

## II.    Analysis

Turning now to the conduct that necessitated the Court's show-cause order, the Court must determine whether filings in this Court were made for an improper purpose, thus violating Rule 11; and if so, whether and what sanctions might be appropriate, and for which attorneys. The Court must also determine whether Respondents' conduct was an abuse of judicial process, and if so, whether and what sanctions might be appropriate under the Court's inherent authority.

### A.    Rule 11 Analysis

In its December 21, 2015, show-cause order, the Court ordered counsel of record to "show cause how their actions in making filings in this Court (to include the original removal, requests for stay, and/or stipulation of dismissal, etc.) were not made for 'any improper purpose.'" (Doc. 37, p. 5). In particular, the Court identified the improper purposes of mid-litigation forum shopping, wasting Government resources by using the Court's jurisdiction as leverage in settlement negotiations for a settlement that would be pursued before another court, and procedural gamesmanship. Having considered the matter, the Court finds that Respondents filed a stipulation of dismissal in this case for the purposes of seeking a more favorable forum and escaping an adverse decision, and that this mid-litigation forum shopping was objectively unreasonable under the circumstances. Respondents therefore violated Rule 11(b)(1) by filing the stipulation of dismissal.

### 1.    Mid-Litigation Forum Shopping is Improper

8

Refiling in a more favorable forum and avoiding an adverse decision are improper purposes for dismissal. Respondents' briefs (Doc. 42, pp. 18–20; Doc. 49, pp. 26–28) cite ample authority for the proposition that shopping for the most favorable forum prior to filing suit or when adding a claim can be proper. *See, e.g.*, *Predator Int'l v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1186, 1188 (10th Cir. 2015) (explaining that amending a complaint to add a new nonfrivolous claim to an existing case is permissible forum shopping); *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261–62 (5th Cir. 1983) (explaining that forum shopping at the outset of a lawsuit is permissible). However, though Defense counsel quotes *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009), for its statement that voluntary dismissal under Rule 41 may be had "for any reason, and the fact that [it is filed] to flee the jurisdiction or the judge does not make the filing sanctionable," (Doc 49, p. 17), Respondents cannot cite to Eighth Circuit authority for the proposition that their mid-litigation forum shopping is proper. This is because there is contrary, clear, and binding authority in this circuit that "a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999). This holding was recently reiterated in *Thatcher v. Hanover Insurance Group, Inc.*, 659 F.3d 1212 (8th Cir. 2011) and it remains good law.[6]  *See Wingo v. State Farm Fire and Cas. Co.*,

---

[6] *Hamm* addressed a voluntary dismissal of a putative class action while *Thatcher* addressed an opposed motion to dismiss a putative class action. While Respondents attempt to distinguish these cases by arguing that *Hamm* was issued prior to the 2003 amendments to Rule 23 (which removed the requirement that courts approve a precertification dismissal) and *Thatcher* was an opposed motion to dismiss rather than a stipulation, the amendments to Rule 23 had no effect on the propriety of dismissing to seek a more favorable forum or avoid an adverse decision, and using a different Rule 41 mechanism to dismiss with the agreement of an opposing party does not change the propriety of the *purpose* for dismissing. Nor does agreeing to dismiss for improper purposes make the dismissal proper—especially where, as here, the ultimate class settlement bears at least some hallmarks of collusion that would require a reviewing federal court to give the settlement close scrutiny.

No. 13-3097-CV, 2013 WL 4041477, *1 (W.D. Mo. Aug. 8, 2013) (discussing *Thatcher* and ruling that dismissing with the intent to avoid federal court "is improper forum shopping under Eighth Circuit precedent.").

Respondents have admitted that seeking a more favorable forum and avoiding an adverse decision were the purposes for which they filed a stipulation of dismissal in this putative class action.  Plaintiffs' counsel explained that they dismissed in order to return to state court because Arkansas makes it difficult for class members to object to a settlement.  Specifically, Plaintiffs' counsel argue that federal courts are ineffective at addressing objections that class members raise to proposed class settlements, and that Arkansas courts have developed the means to prevent objecting class members[7] from being heard by requiring successful intervention at the trial court level and denying standing to appeal any settlement to class members who are unable to successfully intervene.  (Doc. 42, p. 13; Doc. 55, pp. 78:16–79:24).  That is, Plaintiffs' counsel sought to escape an adverse decision regarding the settlement by preventing adverse positions from being heard in the first place.  Indeed, Plaintiffs' counsel directly admit that they consider the state court forum to be a more favorable forum than federal courts.  (Doc. 42, p. 27 ("Counsel believed [the Arkansas state court where Plaintiffs had originally filed their claims] was not only a proper forum, but *the best forum*, for their claims." (emphasis added))).

Though in a less direct manner, Defense counsel also admit that in stipulating to

---

[7] Plaintiffs' counsel raise the specter of "professional objectors" who have affected other cases to make their argument.  They do not, however, distinguish professional objectors from class members who raise objections in good faith, and they notably have not articulated any specific worry about the presence of professional objectors in *this* case, which involved a class "comprised solely of Arkansas property-holders . . . assert[ing] claims for breach of Arkansas law arising from Arkansas insurance policies."  (Doc. 42, p. 25).  To that extent, it appears to the Court that Plaintiffs' counsel was just as worried—and likely more worried—about actual, good-faith objections to their proposed settlement as they were about any speculative "professional" objections.

dismissal they sought a more favorable forum and to avoid an adverse decision.  In their brief and at the hearing, Defense counsel describe the barriers to objection and appeal as a reason a party might choose to seek class settlement in Arkansas state court.  (Doc. 49, p. 20–21; Doc. 55, pp. 11:21–12:7).  And they explain that they sought a "claims made," rather than a "claims paid," settlement,[8] and dismissing and refiling in state court was the only way to achieve settlement on those terms.  (Doc. 49, p. 14 ("If the parties had agreed to a settlement that required USAA to attempt to make payments to settlement class members who did not submit claims, that would have imposed an extraordinary undue administrative burden and expense on USAA, in order to attempt to pay people who have no interest in claiming the payment."[9]); Doc. 55, pp.12:22–13:2, 20:12–21:14; 34:14–17).  Defense counsel are of course correct that claims made settlements are "consistently approved," and because this Court is not sitting in review of the settlement, whether or not Defense counsel give the true justification for negotiating for this type of settlement does not affect whether their conduct was objectively reasonable, as in either case the purposes of stipulating to dismissal and refiling in state court were to seek a more favorable forum—one in which the class action could be settled through a burdensome claims made

---

[8] A "claims made" settlement is one in which there is no fixed common fund for settlement and the defendant only pays out on filed (and approved) claims.  Newberg on Class Actions § 13:7 (5th ed.).  Though "claims paid" is not a term in wide use in court opinions on class certification, and Respondents did not clarify exactly what they meant by this term, it likely refers to direct payment common fund settlements where funds are distributed to class members once the opt-out period ends and the settlement is approved.  *Cf.* Doc. 42, p. 35 (contrasting this claims made settlement from the direct payment settlement approved by the Court in *Adams I*).

[9] This stated justification for seeking a claims made settlement is entirely incredible.  Defense counsel fail to explain why a class member would have no interest in claiming a payment but would not then opt out of the settlement class.  The more likely reason for desiring a claims made settlement over a claims paid settlement, and even over a common fund settlement with a claims requirement, is that a claims made settlement creates a barrier to payout, which means in most cases not every class member will make a claim, and even legitimate claims can sometimes be rejected as inadequate.  Thus, a claims made settlement will result in a smaller payout to class members than would be had in a claims paid settlement, and a smaller loss to a defendant who retains the unclaimed funds throughout the entire process.

process—and to escape an adverse decision—one to which class members bound by the settlement might be permitted to object or appeal, or which involved some actual review of the settlement.

It is likely that Respondents also considered Arkansas state court to be a more favorable forum where they could escape an adverse decision because prior to certifying a class action, Arkansas courts do not undertake a rigorous analysis of whether the class certification requirements are met, and federal courts must do so.  *Compare, e.g.*, *Simpson Hous. Sols., LLC v. Hernandez*, 347 S.W.3d 1, 17 (Ark. 2009) ("[T]he federal courts apply a rigorous-analysis test for class actions, which this court has consistently rejected."), *with Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011) ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the [class certification] prerequisites of Rule 23(a) have been satisfied." (quotation omitted)); *see also The Money Place, LLC v. Barnes*, 78 S.W.3d 730, 733–34 (Ark. 2002) (explaining that Arkansas class certification requirements do not require the same rigorous analysis as federal class certification requirements).  The more lenient approach to certification in Arkansas state courts would allow Respondents to certify a large class that would hopefully justify the size of the negotiated fees for Plaintiffs' counsel and would allow Defense counsel to eliminate a much greater amount of potential liability for their client.[10] Because certification in this case was being sought for settlement purposes, Arkansas courts would also be unable to use the tools at their disposal—decertification, subclassing, or bifurcation—for correcting the certification order should later case developments reveal class

---

[10] The Court again notes that the settlement agreement signed in this Court and approved in state court represents that the maximum class size is 7,687 members (Doc. 42-2, p. 111), but Respondents sent 15,027 notices (Doc. 60, p. 1) and told the state court at the final approval hearing that the class size was "over 14,000 class members." Hearing Transcript, *Adams v. USAA*, 57CV-15-105 (Polk County Circ. Ct.) (Aug. 26, 2015 and Dec. 16, 2015), p. 52:20-22.

certification to have been improvidently granted.  Indeed, in federal courts, because certifications for settlement preclude later class modification, the rigorous class certification analysis "demand[s] undiluted, even heightened, attention."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Arkansas state courts are not bound by any requirement of heightened scrutiny in a certification-for-settlement case.  *See Ballard v. Martin*, 79 S.W.3d 838, 849 (Ark. 2002) (noting that other jurisdictions require heightened scrutiny when a class action is to be certified for settlement, but not adopting any similar requirement for Arkansas).  Respondents' attempt to escape the rigorous analysis with heightened attention that this Court would have been obligated to apply to a motion for class certification and settlement further supports a finding that Respondents stipulated to dismissal of this lawsuit for the purpose of seeking a more favorable forum and avoiding any adverse decision.[11]

It was objectively unreasonable in light of the circumstances for Respondents to dismiss for the purpose of refiling in a more favorable forum or escaping an adverse decision when there was clear and binding precedent that this purpose is improper.  Therefore, filing the stipulation of dismissal was a violation of Rule 11.

### 2.  Respondents' Arguments Against Finding Rule 11 Was Violated

In an attempt to dissuade the Court from finding a violation, Respondents argued: (1) that because no class action had been certified under Rule 23 the Court's approval was not required

---

[11] Because the issue of sanctions was raised sua sponte, the Court did not have the benefit of adversarial briefing on the issue of whether Arkansas is a more or less favorable forum for class certification and settlement.  In evaluating this issue, prior opposing briefs signed by some of the Respondents have proven helpful.  *See* Brief for Petitioner, *Standard Fire Ins. Co. v. Knowles*, --U.S.--, 133 S.Ct. 1345 (2013) (No. 11-1450), 2012 WL 5246242; Brief for Respondent, *Id.*, 2012 WL 5982592; Reply Brief for Petitioner, *Id.*, 2012 WL 6624223; *see also* Brief for Defendants-Appellants, *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212 (8th Cir. 2011) (No. 11-1610), 2011 WL 1748691; Response Brief for Plaintiff-Appellee, *Id.*, 2011 WL 2353837; Reply Brief for Defendants-Appellants, *Id.*, 2011 WL 2529681.

prior to settlement, and because Rule 41 allows the parties to stipulate to dismissal without the Court's approval, the decision to dismiss from this Court is insulated from the Court's review; (2) that CAFA and the Rules allow dismissal from this Court and refiling at the state level for certification of a settlement class; (3) that the Court entered orders contemplating a stipulation of dismissal; and (4) that Respondents have done this before without drawing similar inquiry and had no reason to suspect their conduct was improper.[12]   The Court will address these arguments in turn.

### a.       Insulation from the Court's review

Plaintiffs' counsel clarified at the hearing that their argument is that Respondents' actions are insulated from the Court's review.  (Doc. 55, p. 38:10–21).  It is true that no class action was certified before this Court, and so Rule 23(e) did not apply to require the Court's approval before dismissal.  It is also true that stipulations of dismissal under Rule 41 do not require Court approval to become effective.  However, it does not follow that this insulates the actions of Respondents from the Court's review.  Although the parties stipulated to dismissal of this lawsuit, the Court retains jurisdiction to enforce Rule 11 because any violation of the rule occurs at the time of the submission.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394–95 (1990); *Bryant v. Brooklyn Barbecue Corp.*, 932 F.2d 697, 699 (8th Cir. 1991) ("We find the Supreme Court's decision in *Cooter* resolves this issue in favor of the court's authority to award sanctions even though the original complaint was dismissed . . . .  The violation in this case occurred when the original complaint was filed for an improper purpose and without the 'reasonable inquiry' required by Rule 11."); *cf. Chambers*, 501 U.S. at 56 ("[E]ven under Rule 11, sanctions may be

---

[12] This fourth argument has little or no bearing on whether Respondents' conduct was objectively reasonable under the circumstances and can be rejected at once.  That misconduct has gone unnoticed in the past does not excuse the instant misconduct.  If anything, this argument bears on the degree of Respondents' bad faith.

imposed years after a judgment on the merits."). Furthermore, in this Rule 11 review the Court's concern is not whether a procedural mechanism exists in the Rules that Respondents used to dismiss their case, but whether the use of that procedural mechanism was for an improper purpose. For example, the Rules describe a procedural mechanism with which a person can initiate a lawsuit by filing a complaint in accordance with Rules 3 and 8, but Rule 11 may still apply to allow sanctions against that person if the complaint filed is frivolous. *See, e.g.*, *Welk v. GMAC Mortg., LLC*, 720 F.3d 736, 738 (8th Cir. 2013) (affirming sanctions imposed for filing of frivolous lawsuit). Just so, although Rules 41 and 23 allow dismissal of a putative class action by stipulation, Rule 11 may still be violated if that stipulation of dismissal is done for an improper purpose. In conducting a Rule 11 review, the Court is not imposing conditions on the stipulation of dismissal, is not attempting to vacate the order of dismissal, and is not reviewing the class settlement itself. Rather, the Court recognizes that the parties are able—as a procedural rule—to stipulate to dismissal pursuant to Rule 41. In reviewing the stipulation under Rule 11, which contains no exception for stipulations of dismissal, the Court is applying Eighth Circuit precedent that prohibits mid-litigation forum shopping. Respondents' conduct is not insulated from review, and Rule 11 sanctions may be imposed to deter the filing of stipulations of dismissal for an improper purpose.

### b.    CAFA and the Rules

Respondents argue that CAFA condones dismissal of a federal class action for the purpose of refiling and settling in state court. This is similar to the argument addressed above, although the conclusion is "because there is a procedural mechanism by which a thing can be done, it is proper to do so" rather than "because there is a procedural mechanism by which a thing can be done, the Court cannot review it." That is, Respondents argue that because CAFA

does not expressly prohibit dismissal of a putative class action from federal court and refiling of that same action in state court for certification and settlement, and neither do the Rules of Civil Procedure, therefore Respondents' actions in dismissing this case for the purpose of refiling in state court for certification and settlement cannot be improper.

As with the argument that Respondents' conduct is insulated from the Court's review, this argument is unavailing.  Respondents attempt to support their position by citing secondary sources authored by a law professor who identifies this "gap" in CAFA that does not expressly forbid parties from dismissing and refiling in state court for certification and settlement. Respondents ignore that professor's recognition that this tactic subverts CAFA's purpose.  *See* Robert Klonoff, Class Actions and Other Multi-Party Litigation in a Nutshell (4th ed. 2012) § 9.2(E), p. 305 ("Congress arguably did not anticipate such an easy route to circumvent CAFA . . . ."); Robert H. Klonoff and Mark Herrmann, The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements*, 80 Tul. L. Rev. 1695, 1710 (2006) (explaining that "this potential for settlement forum-shopping poses a serious concern.").  While Respondents and Professor Klonoff identify this tactic as a thing that technically can achieve Respondents' desired effect, it is only Respondents who go so far as to conclude that because CAFA does not expressly prohibit the procedural mechanism of dismissing to refile, it cannot be improper for them to use that mechanism.  Respondents fail to show that dismissal and refiling for certification and settlement is affirmatively a proper purpose under CAFA, and they miss the mark with this argument.  That it is possible under the rules and laws to do a thing in a certain way does not mean that one is always doing that thing for the proper purpose.  This distinction is the very reason Rule 11 exists.  As above, in this Rule 11 review the Court's concern is not whether Respondents complied with the technical requirements of the procedural mechanism

16

they used to dismiss or whether the jurisdictional grant in this case expressly prohibits their dismissal, but whether the use of that procedural mechanism was for an improper purpose.

### c.       The Court's Orders on Stipulation of Dismissal

On May 5, August 11, October 10, and December 15 of 2014, the Court entered orders directing the parties to file a status report or stipulation of dismissal by a certain date.  This is standard language the Court uses in civil matters where a case is stayed for settlement purposes. Defense counsel disingenuously argue that their conduct was proper because these orders "appeared to contemplate that a potential final resolution might involve a stipulation of dismissal of the federal case, rather than a proposed class action settlement being submitted to this Court for approval."  (Doc. 49, p. 7).  First, final resolution by stipulation of dismissal would have been quite appropriate had the Adamses settled their individual claims prior to certification and then dismissed from this Court.  Second, the stipulation of dismissal eventually entered was not a final resolution of this case, but instead was a step taken to insulate this case from federal review by refiling it in a state forum.  The cited orders are too general for Respondents to truly have believed that the Court contemplated the case might be dismissed by stipulation so that Respondents could refile and move to certify and settle in Arkansas state court.  To the extent Respondents might be claiming that on the basis of these orders, they believed in good faith that the Court condoned their chosen means of evading federal review, the Court does not find such a claim to be credible.

### 3.       Responsibility for the Violation

Rule 11 permits the Court to sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  No Respondent has specifically set out for the Court how the decision to stipulate to dismissal and seek a more

favorable forum was made.  However, affidavits submitted in response to the Court's show-cause order indicate that "[o]n March 31, 2015, *the parties' counsel exchanged emails* confirming that they had reached agreement in principle on the basic terms of a class action settlement that included a stipulation of dismissal of the federal case and a re-filing in the Polk County Circuit Court with a motion for preliminary approval of the settlement."  (Doc. 49-2, pp. 3–4, ¶ 16; Doc. 49-3, p. 4, ¶ 17) (emphasis added).  Furthermore, refiling in state court was discussed as a term in settlement negotiations as early as the first mediation in September of 2014.  (Doc. 55, p. 21:11-19).  Because the return to state court was a factor in the negotiations for so long, because this settlement term was circulated in an email among Respondents, and because all Respondents entered an appearance in this case, the clear implication is that all Respondents were aware that a stipulation of dismissal would be filed for the purpose of refiling and settling this case in state court.

When a lawyer enters an appearance and continues to represent a client and remains silent in the face of objectively unreasonable conduct by co-counsel or opposing counsel, the lawyer's hands-off approach to representation does not render the lawyer's silence objectively reasonable.  This is especially true in the class action context, where a lawyer's appearance and the weight of his or her reputation bears on a court's determination of the adequacy of class counsel and approval of a class settlement.  Any Respondent who did not actively press the dismissal tactic in settlement negotiations, or was not otherwise actively engaged in the negotiations, is not thereby absolved of responsibility for the violation of Rule 11 (though such limited participation might bear on the extent to which that Respondent's conduct was characterized by bad faith, and is an appropriate consideration for whether and what sanctions should be imposed).  The Court therefore finds that all Respondents are responsible for violating

Rule 11 by stipulating to dismissal for the improper purposes of seeking a more favorable forum and avoiding an adverse decision.[13]

### 4.      Rule 11 Sanctions under Consideration

Having found that the stipulation of dismissal was filed for an improper purpose and violates Rule 11(b)(1), and that Respondents are responsible for the violation, the Court must now decide whom to sanction and what sanction to impose.  Because the purpose of Rule 11 is to deter misconduct, and inaction in the face of sanctionable misconduct that results in harm as great as in this case would contravene this purpose, the Court finds that some sanction is necessary for all violators and will not exercise its discretion under Rule 11(c)(1) to refrain from sanctioning those who violated the Rule.

Because sanctioning Respondents will have an adverse effect on their careers, the Court must give particularized notice of the sanctions under consideration.  *Sec. Nat'l Bank of Sioux City, Iowa v. Day*, 800 F.3d 936, 945 (8th Cir. 2015).  After considering the history, experience, and ability of Respondents, the severity of the violation, the degree to which malice or bad faith contributed to the violation, and other factors,[14] the Court has broad discretion in determining the sanction, and recognizes that a sufficiently deterrent sanction is not necessarily the least severe sanction available.  *Pope*, 49 F.3d at 1328.

As should be clear from its analysis thus far, the Court views this as a serious violation. As a result of Respondents' decision to stipulate to dismissal, properly-invoked federal

---

[13] Respondent Clancy is specifically excepted, as the Court finds he is not responsible for this violation.  Respondent Clancy did no work on this case after May 21, 2014, (Doc. 49-4, p. 1, ¶ 4), which was well before settlement negotiations began and the improper purpose introduced.

[14] The Court's consideration of the relevant factors in this case has necessarily been limited by Respondents universally arguing that their conduct is not sanctionable, and generally declining to identify factors for the Court that might mitigate the extent of any sanctions imposed should the Court find, as it does here, that a violation has occurred.

jurisdiction has been undermined in this case, the rigorous review this Court is obligated to give to motions for class certification (especially in the settlement context) has been avoided in favor of review by a court that was obligated to give a less rigorous review, and the rights of class members to object and to appeal the settlement have been significantly curtailed through a settlement that has at least some hallmarks of collusion.

The Court also finds that some degree of bad faith led to this Rule 11 violation.  "Bad faith" does not lend itself to a specific and narrow definition.  Bad faith conduct is often characterized by dishonesty of belief, purpose, or motive.  *See* Bad Faith, Black's Law Dictionary (10th ed. 2014).  It involves a subjective component of knowledge or reckless disregard for whether one's conduct is improper.  *See, e.g.*, *United States v. Monson*, 636 F.3d 435, 444 (8th Cir. 2011) (Riley, J., dissenting) (describing the meaning of "bad faith" conduct in several contexts).  Any bad faith on the part of any one Respondent may not be imputed to the remaining Respondents.  *See* Gregory P. Joseph, Sanctions: The federal law of litigation abuse, § 27(A)(3) (5th ed. 2013) (collecting cases holding that the bad faith of one attorney is not imputed to others).  Bad faith may, however, be inferred from the combination of the improper purpose and a Respondent's reckless indifference to the propriety of his or another's conduct.  *Accord Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) ("Although recklessness, of itself, does not justify the imposition of sanctions, sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose.").

Here, Respondents Keil, Goodson, Roselius, Weber, Norman, Goldman, Ackerman, and Pruitt knew of the holding in *Thatcher*, and therefore of the holding in *Hamm*.  *See Thatcher*, 659 F.3d at 1212 (listing Respondents Goldman, Pruitt, Keil, Goodson, and Roselius as having argued or briefed the case for the Eighth Circuit Court of Appeals); (Doc. 55, pp. 31:8–12, 32:6–

9 (answering that Respondents Goldman, Ackerman, and Pruitt were aware of *Thatcher*); (Doc. 59 (advising that Respondents Weber and Norman entered an appearance in *Thatcher* after it was remanded)).  That is, these Respondents knew from the time dismissal and return to state court was first raised in the settlement negotiations in this case until the time that the stipulation of dismissal was filed that dismissal for the purpose of seeking out a more favorable forum or avoiding an adverse decision is improper.  Knowing this, they chose to stipulate to dismissal rather than move for certification and settlement in this Court, or at the very least make a joint motion for dismissal that the Court would be required to analyze in light of *Hamm* and *Thatcher*. Either they desired to conceal the purpose of their dismissal from the Court or they were recklessly indifferent to whether that purpose was proper.  The conduct of these Respondents, at least, is characterized by some degree of bad faith which contributed to the violation.  Though the remaining Respondents deny knowledge of the holding in *Thatcher*, the convoluted means by which settlement was achieved for a class without review of the Court in which the putative class action was actually pending should at the very least have raised their suspicion that something improper might be occurring.  While their reckless indifference to whether their tactic was improper might not rise to the level of bad faith, it contributed to the violation and requires at least some minimal sanction.

There is also evidence that some Respondents in this action have engaged in misleading conduct.  This evidence undermines the credibility of Respondents when they claim that their conduct has been taken in subjective good faith, and instead supports an inference that they were acting with some degree of bad faith at the time they stipulated to dismissal of this action.  For example, in attempting to justify the amount of the fee awarded to Plaintiffs' counsel, appearing Respondents misrepresented this as a common fund case to the Arkansas state court.  (Doc. 42-2,

p. 42 (describing the settlement as making available a common fund); *Id.*, *passim* (justifying the fee on the basis of precedent involving common fund settlements); Doc. 42-3, p. 42, ¶ 30 (affidavit of Matt Keil) ("Defendants have agreed to pay up to $1,850,000 for fees and expenses. This total equals only 34.87% of the total *common fund* obtained by the efforts of Class Counsel using the above calculations." (emphasis added)); Doc. 49-5, p. 13, ¶ 30 (same)).  Yet before this Court it was acknowledged that this was not a common fund settlement.  (Doc. 55, p. 23:11–15). Furthermore, despite moving for approval of a settlement that required claiming class members to make affirmations "under penalty of perjury," (Doc. 42-2, p. 104, ¶ 61(b); *Id.* p. 156, ¶ 5), at the December 16, 2015, hearing in Polk County Respondent Vowell denied that claims were made under threat of criminal perjury, and Respondents Putman, Taylor, Keil, and Ackerman (all present at that hearing) made no effort to correct the record.  (Hearing Transcript, *Adams v. USAA*, 57CV-15-105 (Polk County Circ. Ct.) (Aug. 26, 2015 and Dec. 16, 2015), p. 60:7-10 ("The next objection is is [sic] that the claims form threatens criminal perjury.  You know, I've read that form several times and I don't know what they're talking about.")).  Additionally, Respondents Mustokoff and Ackerman signed a joint Rule 26(f) report (Doc. 31), filed April 15, 2015, representing to this Court that the litigation in this case was expected to run well into 2016. In light of these various representations, the Court is unconvinced that all Respondents were acting in subjective good faith when they stipulated to dismissal of this action.

Were these the only factors under consideration, the Court would impose a most severe sanction on Respondents.  However, for those Respondents whose conduct appears to be characterized by bad faith that led to the violation,[15] other factors mitigate against finding that

---

[15]  The conduct of Respondents Keil, Goodson, Roselius, Weber, Norman, Goldman, Ackerman, and Pruitt (all who knew of *Thatcher* and *Hamm* and were at least recklessly indifferent to the propriety of the dismissal); Respondents Vowell, Putman, Taylor, and again

their violation was characterized *only* by bad faith.   As attorneys, Respondents have an obligation to zealously advocate for their clients.  Often the means or ends of that advocacy can be distasteful.  Yet however distasteful Respondents' conduct may have been, it is only the violation of Rule 11—and the extent that that particular violation was characterized by bad faith—that informs the Court's Rule 11 sanctions analysis.  That Respondents were likely motivated by something other than just malicious bad faith qualitatively lessens the degree of bad faith characterizing their violation.  It does not, however, absolve them of that bad faith, and so something more than a minimal sanction is necessary for them.  For the other Respondents found responsible for the violation, while an "empty-head pure-heart" argument does not affect whether the violation occurred, it may affect whether and to what extent a violator is sanctioned. Furthermore, because the purpose of Rule 11 is to deter, and because the mere fact that Respondents now know that their conduct in stipulating to dismissal for the purpose of seeking a more favorable forum and avoiding an adverse decision is unequivocally improper, they are unlikely to repeat this misconduct.  Because the Court can and will institute changes to the way it manages putative class actions, and because this order should make clear to the bar that invoking federal jurisdiction under CAFA does not allow federal jurisdiction to be treated as a bargaining chip, other attorneys in this district—even those who remain unfamiliar with the holdings in *Hamm* and *Thatcher*—will also be unlikely to repeat this violation.

For these reasons, the Court is considering imposing the following sanctions on Respondents, and hereby gives them particularized notice:

(1) for each Respondent whose violation of Rule 11 was characterized by bad faith, in

---

Keil and Ackerman (whose misrepresentation and silence on the claim form perjury issue before the state court implies some degree of bad faith in dismissing the action from this Court); and Respondents Mustokoff and again Ackerman (who signed the April, 2015 Rule 26(f) report) appears to be characterized at least in part by bad faith that led to the violation.

any class action in the federal courts of Arkansas in which the Respondent has entered an appearance or is otherwise representing an involved party with respect to the action, in which a motion for approval of a class settlement is filed, the requirement that the Respondent file a notice along with the motion for settlement that the Respondent has previously been sanctioned for improper conduct in connection with a class action settlement agreement;

(2) for each Plaintiff's counsel whose violation of Rule 11 was characterized by bad faith, in any putative class action in the federal courts of Arkansas in which that attorney files a motion to be appointed class counsel, or in any pending class action in which that attorney has already been appointed class counsel, the requirement that that Respondent file a notice that he has violated Rule 11 by dismissing a putative class action for the improper purposes of seeking a more favorable forum or escaping an adverse decision; and

(3) for any Respondent whose violation is not characterized by bad faith, an admonition, reprimand, caution, censure, or similar sanction.

The Court will schedule a hearing for June 10, 2016, at which any Respondent may appear and be heard.  The hearing will not be conducted for the purpose of reconsidering this order, but to allow each Respondent to individually address the factors relevant to the nature of sanctions the Court intends to impose against him or her.  A final order on sanctions will issue following that hearing.

### B.    Inherent Authority Analysis

The Court reiterates that coextensive with the authority in Rule 11, the Court possesses an inherent authority to sanction for abuse of the judicial process.  *Harlan*, 982 F.2d at 1259.  As

an initial matter in this analysis, to the extent it can be read to apply to inherent authority sanctions, the Court again rejects Respondents' argument that a stipulation of dismissal insulates their conduct from review.  It is widely accepted that "[w]hile the filing of a stipulation of dismissal is effective automatically and does not require judicial approval, the court, exercising its inherent powers, may look behind it to determine whether there is collusion or other improper conduct giving rise to the dismissal."  *United States v. Mercedes-Benz of N. Am., Inc.*, 547 F. Supp. 399, 400 (N.D. Cal. 1982); *see also Green v. Nevers*, 111 F.3d 1295, 1300–01 (6th Cir. 1997) (quoting *Mercedes-Benz* for the principle that a court may decline to permit voluntary dismissal "to avoid short-circuiting the judicial process, or to safeguard interests of persons entitled to the court's special protection"); *Moeller v. Weber*, Civ. No. 04-4200, 2012 WL 5289331, *1 (D. S. Dak. Oct. 23, 2012) (citing *Mercedes-Benz* for the principle that courts may exercise inherent authority to determine whether improper conduct gave rise to a stipulation of dismissal).  In determining whether Respondents' conduct was improper as an abuse of the judicial process, the Court's examination is not constrained by the limited Rule 11(b) analysis of whether a party filed a "pleading, written motion, or other paper . . . for any improper purpose." Rather, it may reach conduct "beyond the court's confines."  *Chambers*, 501 U.S. at 44.

### 1.     Abuse of Judicial Process

At least as early as the September 2014 mediation, at which dismissal and return to state court was a term in negotiations, Respondents treated the federal court system and its rules for class actions as a bargaining chip.  A return to Arkansas state court for settlement purposes allowed Respondents to certify a settlement class in a court whose precedent prevented it from rigorously analyzing whether the class should have been certified, and to insulate the class settlement in that court both from reasonable objections by class members and from any

substantive appellate review.  All Respondents are complicit in this conduct.  Plaintiffs' counsel have embraced the practice of negotiating lucrative attorneys' fees from various defendants using the threat of class action as leverage, as evidenced by their willingness here to negotiate a settlement that primarily benefits Plaintiffs' counsel and USAA.  Despite this Court not having certified a class, and knowing they would not ask this Court for an appointment as class counsel, while proceeding in this Court Plaintiffs' counsel negotiated and signed a class settlement agreement before stipulating to dismissal of this action.  Plaintiffs' counsel used the lesser scrutiny of Arkansas state courts to entice defendants to stipulate to dismissal for refiling in a forum where it is possible to certify a potentially overinclusive and indeterminate class and settle on terms that will take less money from the defendants.  Defense counsel removed this action to federal court and then took advantage of the more difficult certification and settlement process in this forum to negotiate a settlement designed to result in a lower payout to an overinclusive class in exchange for a high attorney's fee.

The result of Defense counsel invoking federal jurisdiction and then all Respondents treating that jurisdiction as a bargaining chip during pending litigation is that the Court was not treated as a forum in which to resolve a dispute but as leverage in negotiations that benefited everyone but the class members.  This gamesmanship is improper in any case.  That it has become standard practice for some Respondents only further convinces the Court that this conduct is an abuse of the judicial process.  This abuse may have begun during the pendency of *Thatcher*.  After the Eighth Circuit Court of Appeals reiterated that seeking a more favorable forum and avoiding an adverse decision are improper purposes for dismissal, the case was remanded and this Court[16] denied the motion to dismiss.  *Thatcher* was ultimately dismissed by

---

[16] Hon. Jimm Larry Hendren.

stipulation, and the Court is left to wonder whether that was the beginning of Respondents' current class action settlement tactic.

Regardless of whether this pattern of abuse was born in *Thatcher*, Respondents have acknowledged that some form of this tactic has been employed by Plaintiffs' counsel in numerous other cases to evade federal review.  (Doc. 42, p. 36; Doc. 49, p. 21–22).  In *Pipes v. Life Investors Insurance Co. of America*, No. 1:07-CV-00035 (E.D. Ark.), the case was removed from Jackson County, Arkansas, on April 30, 2008.  The Plaintiffs moved to certify a class on March 3, 2008.  The case was then stayed pending a decision on whether the case (and others) would proceed as multidistrict litigation.  The panel denied multidistrict litigation certification in August of 2008, and the federal court denied the motion to certify a class action in November of 2008.  Notably, the federal court found that the named plaintiffs were not adequate class representatives (disqualifying one named plaintiff on the basis of that plaintiff's conflict with the proposed class).  On March 13, 2009, a putative class action was filed in the state courts of Arkansas, naming the *Pipes* plaintiffs among the putative class representatives.  A class was certified for settlement purposes in April of 2009, and the settlement preliminarily approved.  Final approval was given to the settlement on December 29, 2009, and notice of the judgment was filed in federal court.  *Pipes* was dismissed from federal court by stipulation on November 2, 2011.  Respondent Castleberry entered an appearance in *Pipes* and signed the stipulation of dismissal.  Respondent Thompson also entered an appearance in that federal case.

In *Runyan v. Transamerica Life Insurance Co.*, No. 6:08-CV-06034 (W.D. Ark.), the case was removed from Hot Springs County, Arkansas, on March 28, 2008.  The case was part of the same multidistrict litigation decision as *Pipes*.  When multidistrict litigation was denied, the state action (which also included the *Pipes* plaintiffs) was filed between the parties in March

of 2009.  Following the April 23, 2009, preliminary approval of class settlement in the state court action, *Runyan* was stayed in May of 2009.  After the final approval of the state court settlement in December of 2009, the parties filed notice in federal court.  They filed their stipulation of dismissal on November 2, 2011.  Respondent Castleberry entered an appearance in *Runyan* and signed the stipulation of dismissal.  Respondent Thompson also entered an appearance in the federal case.

In *Vinson v. Metropolitan Property & Casualty Insurance Co.*, No. 4:14-CV-00029 (E.D. Ark.), the case was removed from Independence County, Arkansas, on January 15, 2014.  The plaintiffs moved to certify a class on July 24, 2014.  A joint motion to stay was filed on December 1, 2014.  A stipulation of dismissal was filed December 11, 2014.  That same day, the parties filed a new state court action, as well as a motion to certify and settle a class action. Respondent Castleberry entered an appearance in *Vinson* and signed the stipulation of dismissal. Respondents Roselius, Norman, Thompson, Mustokoff, Weber, and Engstrom also entered an appearance in that federal case.[17]

In *Goodner v. Shelter Mutual Insurance Co.*, No. 4:14-CV-04013 (W.D. Ark.), the case was removed from Miller County, Arkansas, on January 10, 2014.  In February of 2014, the parties jointly moved to stay the case for settlement purposes and the motion was granted.  The stay was lifted in May of 2014, following the failure of settlement negotiations.  The case was stayed again for settlement purposes in December of 2014.  On August 12, 2015, final approval was given to a related class action settlement between the parties in state court,[18] and the parties filed a stipulation of dismissal in *Goodner* for some of the named plaintiffs—the Keeners—on

---

[17] Respondents Vowell, Myers, Taylor, and Putman had entered their appearances in *Vinson*, but withdrew (Doc. 19) roughly six months prior to the stipulation of dismissal.

[18] *Keener v. Shelter Mut. Ins. Co.*, No. 46CV-15-69-2 (Miller Cnty. Ark.).

that basis.  A motion to stay was subsequently filed in *Goodner* in October, 2015, on the basis that the remaining plaintiffs had a class action settlement on appeal to the Arkansas Supreme Court that could resolve the federal case.  The motion to stay was denied on January 21, 2016, and *Goodner* remains pending.  Respondent Weber entered an appearance in *Goodner* and signed the stipulation of dismissal on behalf of the Keeners.  Respondents Keil, Goodson, Roselius, Vowell, Myers, Taylor, Putman, Thompson, Castleberry, Norman, and Engstrom also entered an appearance in the federal case.

In *Rafaelli v. Certain Underwriters at Lloyd's London*, No. 4:14-CV-04038 (W.D. Ark.), the case was removed from Miller County, Arkansas, on March 4, 2014.  Respondents Keil, Roselius, Goodson, Norman, Putman, Weber, and Engstrom entered an appearance.  In *Simpson v. Certain Underwriters at Lloyd's, London*, No. 4:14-CV-04042 (W.D. Ark.), the case was removed from Miller County, Arkansas, on March 21, 2014.  Respondents Keil, Roselius, Goodson, Putman, Myers, Taylor, Vowell, and Engstrom entered an appearance.  A motion to stay for mediation was filed in each case on April 11, 2014, and those motions were granted on April 16 and 17.  Respondent Keil signed a stipulation of dismissal in *Simpson* on August 8, 2014.  A case was filed by the *Rafaelli* and *Simpson* plaintiffs in Miller County, Arkansas, on September 9, 2014.[19]  On September 10, the defendants filed an answer and the plaintiffs filed a motion to preliminarily approve a stipulated class settlement.  The motion was granted and a class was certified and the settlement given preliminary approval on September 12, 2014.  Final approval of the settlement was granted on January 5, 2015.  Respondent Keil signed a stipulation of dismissal in the federal *Rafaelli* case on January 13, 2015.

Overall these cases reveal the extent to which the judicial process is being abused by

---

[19] *Simpson & Raffaelli v. Certain Underwriters at Lloyds's London*, 46CV-14-213 (Miller Cnty. Ark.).

dismissal tactics designed to insulate the settlement of class actions from federal review, and do not support Respondents' claim that their dismissal tactic has been approved by other courts. The Court notes that Defense counsel did not appear in any of the above federal proceedings, but reiterates that along with Respondents Keil, Goodson, Roselius, Weber, and Norman, Respondents Goldman, Ackerman, and Pruitt knew of the *Thatcher* opinion, and their noninvolvement in the above-cited actions does not reduce the extent of their bad faith in the instant action.

Respondents have jointly abused the federal court system through their conduct in this case. That abuse was committed in a way designed to insulate Respondents' actions from federal judicial scrutiny. When the terms of the return to state court were decided, Defense counsel withdrew the pending motion for partial judgment on the pleadings, perhaps concerned that the pending motion would call the Court's attention to the case, or might otherwise impede their dismissal of the action, as occurred when the district court in *Hamm* converted a 12(b)(6) motion to a motion for summary judgment. *See Hamm*, 187 F.3d at 949 (affirming district court's conversion of the motion); *Id.* at 950 (explaining that a converted 12(b)(6) motion precludes a plaintiff's unilateral voluntary dismissal). In their last status report and request for continuance filed in this Court (Doc. 30, ¶ 1), the parties represented that they had "made substantial progress toward resolving *this* action" (emphasis added), not some future action to be filed in state court. After the agreement was reached to stipulate to dismissal and refile in Arkansas state court for certification and settlement, Respondents also jointly submitted a Rule 26(f) report (Doc. 31) in which they proposed several litigation deadlines to this Court, implying their intent to continue to litigate in this forum.[20] This conduct—knowingly aimed at evading properly-invoked federal

---

[20] Despite these actions, Defense counsel have the temerity to claim in their brief:

judicial scrutiny and gaming the system established by the Federal Rules of Civil Procedure to dismiss for a purpose Respondents knew or should have known to be improper under those Rules—reveals some degree of bad faith on the part of Respondents.  An appropriate sanction is necessary to vindicate judicial authority.

### 2.      Inherent Authority Sanctions

Sanctions imposed under the Court's inherent authority are within the Court's discretion, with the constraint that they must be "appropriate."  The Court recognizes that it should rely on the Rule 11 sanctions if they are adequate.  In the Court's view, the proposed Rule 11 sanctions are adequate.  However, the sanctions proposed under Rule 11 are limited to what is sufficient to deter future misconduct.  To the extent that any of the contemplated Rule 11 sanctions is in excess of what is sufficient to deter future misconduct, the Court finds that it is appropriate to impose that sanction against each Respondent to vindicate judicial authority.  Therefore, unless the Court determines after the June 10, 2016, hearing that a proposed sanction should not be imposed against any given Respondent, the Court will issue a final order imposing sanctions as stated above.

## III.    Conclusion

IT IS THEREFORE ORDERED that Respondents D. Matt Keil, Jason Earnest Roselius, John C. Goodson, Richard E. Norman, Stevan Earl Vowell, Timothy J. Myers, W. H. Taylor, William B. Putman, A. F. "Tom" Thompson, III, Kenneth (Casey) Castleberry, Matthew L. Mustokoff, R. Martin Weber, Jr., Stephen C. Engstrom, Lyn Peeples Pruitt, Stephen Edward Goldman, and Wystan Michael Ackerman may appear before this Court on June 10, 2016, to be

---

"Frankly, counsel for USAA assumed the Court would anticipate that a settlement would be filed in state court given its knowledge that the parties had been involved in protracted settlement negotiations."  (Doc. 49, p. 23).

heard regarding the nature of the sanctions the Court intends to impose.  A final order will issue following that hearing.

IT IS FURTHERMORE ORDERED that Respondent Stephen O. Clancy did not violate Rule 11 or abuse the judicial process and has shown cause why sanctions should not be imposed against him.

IT IS SO ORDERED this 14th day of April, 2016.

*/s/ P. K. Holmes, III*

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE