MARK L. ADAMS and KATHERINE S.                    PLAINTIFFS
ADAMS, individually and on behalf of all
Others similarly situated.

vs                               Case No. CV-2015-104

UNITED SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, USAA GENERAL
INDEMNITY COMPANY and GARRISON
PROPERTY AND CASUALTY INSURANCE
COMPANY                                       DEFENDANTS

# Honorable Jerry Ryan

## August 26, 2015

## December 16, 2015

APPEARANCES:

On behalf of Plaintiffs…………………………….. HONORABLE MATT KEIL
Keil and Goodson
406 Walnut
Texarkana, AR/TX 71854
(870) 772-4113
mkeil@kglawfirm.com

HONORABLE WILLIAM B. PUTMAN
HONORABLE STEVAN E. VOWELL
HONORABLE W. H. TAYLOR
Taylor Law
Post Office Box 8310
Fayetteville, AR 72703
(479) 443-5222
wbputman@taylorlawpartners.com

On behalf of Defendants……………………………...HONORBLE JOHN K. BAKER
Mitchell and Williams
425 W. Capitol Ave., Suite 1800
Little Rock, AR 72201
(501) 688-8850
jbaker@mwlaw.com

HONORABLE WYSTAN M. ACKERMAN
Robinson Cole
 280 Trumbull Street
Hartford, CT  06103
(860) 275-8388
wackerman@rc.com

Also Present.....................................HONORABLE ROBERT D. TRAMMELL

Attorney-at-Law
13608 Kanis Road
Little Rock, Arkansas  72211
(501) 223-3100
rdt@tlf-arkansas.com

# Special Note

Please consider the emailed copy of this transcript as a draft for your quick convenience.

Mr. Trammell has pointed out three scrivener errors that I have corrected in this written copy of the transcript:

Page 29  Line 12 and 13  The Date of August 26, 2015 has been corrected to be December 15, 2015

Page 70  Line  6  "piece" has been corrected to "peace"

Page 75  Line 12  "piece" has been corrected to "peace"

# Index

Hearing August 26, 2015.................................................... 4

Hearing December 16, 2015................................................ 29

    Trammell's Objectors Exhibit No. 1 – Docket Sheet
        Introduced at Page 93.......................................... 98
    Trammell's Objector's Exhibit No. 2 – Claim Form
        Introduced at Page 94.......................................... 100
    Trammell's Objector's Exhibit No. 3 – Proffered Motion
        Introduced at Page 94.......................................... 114

    Plaintiff's Exhibit No. 1 – Plaintiff's Appendix of Exhibits
        Introduced at Page 95.......................................... 137
        (1) Stipulation of Class Action Settlement................... 140
        (2) Motion for Preliminary Approval of Class Settlement........... 182
        (3) Order Preliminarily Approving Class Settlement................. 185
        (4) Affidavit of Matt Keil...................................... 199
        (5) Affidavit of Mark Adams................................... 207
        (6) Affidavit of Katherine Adams............................. 213

    Plaintiff's Exhibit No. 2 – Plaintiff's Supplemental Appendix
        of Exhibits  Introduced at Page 97.......................... 218
        (1) Affidavit of Tore Hodne Notification Requests for
            Exclusion and Settlement Administration Services.............. 220
        (2) Notice.................................................... 229
        (3) List of Opt-Outs.......................................... 244
        (4) Persons Who Listed Objections............................ 246
        (5) Supplemental Affidavit of Matt Keil..................... 248

1    (THE FOLLOWING PROCEEDING WAS HELD ON THE 26ᵀᴴ DAY OF
2    AUGUST, 2015. MR. PUTMAN AND MR. VOWELL ARE PRESENT
3    FOR THE PLAINTIFFS. MR. BAKER IS PRESENT FOR THE
4    DEFENDANT. HONORABLE JERRY RYAN PRESIDING)
5              BY THE COURT: Let's first - this is CV-2015-
6         105, Adams versus United Service Automobile
7         Association, et al. Mr. Baker - I've already
8         identified Mr. Baker.
9              BY MR. VOWELL: Stevan Vowell and Bill
10        Putman.
11             BY THE COURT: Mr. Vowell.
12             BY MR. VOWELL: For the Plaintiffs, Your
13        Honor.
14             BY THE COURT: And, Mr. Putman. Okay, thank
15        you, gentlemen. It's my understanding we're here
16        this morning for - on the motion for preliminary
17        approval of a class settlement that was filed on
18        June 23ʳᵈ, is that correct gentlemen?
19             BY MR. VOWELL: That's correct, Your Honor.
20             BY MR. BAKER: Yes, Your Honor.
21             BY THE COURT: Okay, do you have anything you
22        want to say for the record? Would that be - you
23        start, Mr. Baker or who wants to go first, let me
24        just ask you that.
25             BY MR. VOWELL: Normally, I would.

4

1    BY THE COURT:  You filed the motion correct?

2    BY MR. VOWELL:  We're the Plaintiffs.

3    BY THE COURT:  Yes, sir.

4    BY MR. VOWELL:  Actually, we filed the

5    motion, but it's a joint motion for approval.

6    BY THE COURT: Okay, Mr. Vowell, if you want

7    to make a record, you may proceed.

8    BY MR. VOWELL:  I'll make a short record and

9    I'll be as brief as possible, Your Honor.  As you

10   said, we're here today asking the Court to approve

11   a preliminary settlement in this matter.  The

12   Plaintiff brought this action individually and on

13   behalf of a proposed class of claimants to recover

14   damages from the Defendants as a result of what we

15   contend are improper claims settlement practices

16   of the Defendants whereby during the claim

17   settlement process the Defendants depreciated the

18   labor component of the repair costs.

19   So, we all understand that under an insurance

20   policy if you suffer a loss of your home or any

21   other improvement and the insurance company

22   repairs or replaces and they are entitled to

23   depreciate the cost of the materials.  If you have

24   a roof for instance that's blown away or a total

25   loss in a storm and if it was a twenty year

5

guaranteed roof and it was blown away at the end
of the tenth year, then you don't get a new roof,
you will get a new roof, but the insurance company
is not going to pay for a totally new roof.  They
are entitled to depreciate those shingles because
they were half used up at the time of the storm.
The problem is and what our lawsuit is about is
that in the process of depreciating materials,
they also depreciated the labor that it takes to
put those materials back on there and that's the
claim in a nutshell.

I think just a brief explanation of the types
of policies and settlement practices will put a
little more context on the matter for you.

There are basically two types of insurance
policies.  There's an actual cash value policy and
a replacement cost policy.

Now, very few actual cash value policies are
written anymore.  Some of the smaller companies
are still writing them, but not very many.  Under
an actual cash value when you suffer a covered
loss, the insurance company will pay you the
actual cash value of the loss.  Actual cash value
is always calculated by taking the replacement
cost as determined by the insurance adjuster and

1    then deducting depreciation and that gives you the

2    actual cash value.  So, in an actual cash value

3    policy that's all you'll ever recover.

4         In the replacement cost policy which is

5    almost universal these days, you get paid the full

6    replacement cost however it's almost universally

7    the rule that when the insurance company adjusts

8    your claim, the adjuster figures the replacement

9    cost, deducts the depreciation and pays you an

10   initial payment which is equal to the actual cash

11   value which is replacement cost less depreciation.

12   Then if you complete your repairs, you can go back

13   to the insurance company and recover the

14   depreciation that was deducted from the first

15   payment.

16        So, that's the difference between an AC

17   policy and a replacement cost policy.

18        Now, as I said, there's very few actual cash

19   value policies written anymore, but the actual

20   cash value calculation still is important in the

21   replacement cost policies because as I said, under

22   a replacement cost policy the company pays and

23   this company is no exception, pays an initial

24   actual cash value payment which has the

25   depreciation deducted and then you can come back

7

1   and get the second payment to recover your
2   depreciation.

3       As I said, this case and these companies were
4   writing replacement cost policies and the term
5   "actual cash value" as used in the policies was
6   not defined in the policy.

7       So, in this case the insureds could – they
8   had the right to and they could go back to recover
9   their depreciation and I say – used the word
10  "could" because the facts in the proposed
11  settlement gets a little complicated as I will
12  explain later, because not everyone did go back
13  for various – for one reason or another.  There
14  are various reasons why they might not go back for
15  a second payment, but – and so, we are going to
16  wind up as I'll explain later, with basically
17  three types of claimants, those that didn't go
18  back and get any recovery of depreciation, those
19  that went back and got a partial recovery but not
20  all of the recovery and those that got a full
21  recovery.

22      A little bit of history of what the law is we
23  think today in the State of Arkansas.  Back in
24  July 18, 2013 – on July 18th the Arkansas Insurance
25  Commissioner issued Bulletin 13-A-2013 and that

8

bulletin said and I quote, "labor of any kind

related to the repair, rebuild or replacement of

covered property cannot be depreciated."

Now, there's a little caveat to that because

the insurance commissioner prefaced that statement

by saying that the items that are eligible for

depreciation in policies with actual cash value

lost settlement provisions are what this bulletin

seeks to clarify as depreciation does not apply to

replacement loss settlement provisions.

That sort of left things up in the air about

whether or not an insurance company could deduct

depreciation ACV payment under a replacement cost

policy because the insurance commissioner just

referred to ACV loss provisions.

We contend and have always contended that

that bulletin and later supreme court decisions

applies not only to an ACV policy, but to also to

the ACV settlement practices under an RCV policy.

So, on November 21, 2013 the Arkansas Supreme

Court decided the case of Adams v. Cameron and

which incidentally involves the same Plaintiffs

involved in this case only a different property

loss.

In Adams v. Cameron that involved a straight

9

1   actual cash value policy where the insureds were

2   not entitled to recover anything other than the

3   actual cash value, they couldn't go back and get a

4   second payment. And, in Adams v. Cameron the

5   court said that the cost of labor cannot be

6   depreciated in an ACV loss settlement when the ACV

7   is not defined in the policy. But as I said, that

8   case is distinguishable from the present case in

9   the respect that it involved a straight ACV policy

10  and this case involves an RCV policy with ACV

11  settlement provisions.

12      So, when this case was filed that question

13  remained up in the air and basically remains up in

14  the air today and of course we resolved that issue

15  through a negotiated settlement that was presented

16  to the Court today.

17      The history of this litigation, the Court

18  will probably notice that this action was filed on

19  June 23rd of this year and a motion for approval of

20  settlement was filed the same day. This case –

21  the loss occurred on April 9, 2009 and the initial

22  case raising these same claims was filed on

23  December 5, 2013 here in Polk County Circuit

24  Court. The Defendants moved the case to Federal

25  Court in January of 2014. The parties engaged in

1     extensive discovery in document production in the

2     Federal Court case. The parties also engaged in a

3     long drawn out mediation process which was

4     vigorously fought and hotly contested even at the

5     mediation stage. The parties mediated on two

6     separate occasions in front of a well-known and

7     well respected mediator and then after the second

8     mediation continued to discuss settlement between

9     themselves. The Defendant was forthcoming – the

10     Defendants were forthcoming with financial

11     information so that we could all make an informed

12     decision about the proposed settlement.

13         The case in Federal Court was eventually

14     dismissed and then we refiled it here in Polk

15     County Circuit Court where it was originally filed

16     when the settlement was reached.

17         Now as I said, we seek certification of a

18     class of Plaintiffs and the class of Plaintiffs

19     and let me just read the definition to you, it's

20     fairly inclusive, but it will be narrowed down by

21     terms that I will explain later.

22         The class of Plaintiffs which we seek the

23     Court to certify is every person who was insured

24     under a homeowners insurance policy that was

25     issued by any of the Defendants that coverage for

11

any building or other structure located in the
State of Arkansas that during the class period
suffered a covered loss in which Plaintiff
received an ACV payment for the covered loss where
the ACV payment was calculated and made based upon
an estimate where depreciation was deducted. And,
so while that sounds very broad, it is easily
administered. There are certain classes of
individuals who are excluded from the class which
aren't mentioned at this time.

Now, as I said, the class period that we're
asking the Court to certify the class for is the
period from January 1, 2006 through December 31,
2014.

Now, the Court may wonder, well those are odd
dates. The reason that those dates are selected
are varied.

No. 1 in our pleading both in state court and
federal court we allege that the insurance
companies involved in – were involved in
fraudulent concealment of the claims practices so
that the insureds had no way of discovering that
the companies were depreciating the labor costs in
these claim settlements and the basis of that was
that most times the or a lot of times the

12

depreciation was taken on a unit cost basis. For

instance back to our roofer example. A roofer

comes out to replace your roof, he'll just measure

it and say, well, I'll do that for twenty-five

dollars a square, a square being a hundred square

feet. Well, that twenty-five dollars includes

both the materials and the labor it takes to put

the roof back on. So, the actual depreciation of

the labor component is embedded within that and is

not easily recognizable and that is the basis of

our contention in our complaint that we shouldn't

go back ten years because there was concealment of

the wrongful claim practices.

Well, when we negotiated the case and went

through discovery, we determined that the

Defendant did not have any records, none of the

Defendants had any records going back beyond

January 1, 2006 so that's how we determined the

beginning of the class period and we brought the

class period forward through December 31, 2014

which was pretty much an arbitrary date. So, that

is a nine year class period.

The proposed settlement gets a little bit

more complicated, but it's really simple to

understand. The class period is divided up into

13

1    one period that runs from July 1, 2006 to July 4,
2    2008, excuse me, January 1, 2006.  Those would be
3    Plaintiffs who are outside the five year statute
4    of limitations and as I said, we plead fraudulent
5    concealment to the extent of the statute of
6    limitations out to ten years, but – and during the
7    settlement negotiations it was agreed that we
8    would pay or the Defendants would pay something to
9    those Plaintiffs beyond the ten year statutory
10   period.  So, they are treated a bit differently
11   because they have claims which are or could be
12   held by the courts to be barred by the statute of
13   limitations.  We resolved that issue by bringing
14   on a percentage payment that is less for those
15   Plaintiffs beyond the five year statute of
16   limitation period.

17        The Defendants of course vigorously contested
18   the ten year statute of limitations in Federal
19   Court and filed a motion for partial judgment on
20   the pleadings on that issue and that issue was
21   fully briefed and never was decided by the
22   District Court in the Western District of Arkansas
23   in Fort Smith.  As it turns out, the settlement
24   that we reached is very beneficial to that class
25   that's beyond the five year statute of limitations

14

because in the process of getting this settlement
negotiated, Judge Susan Hickey in the Texarkana
Division of Federal Court ruled that we couldn't
chin the bar on extending the statute of
limitations.

Now, admittedly the pleading requirements in
Federal Court to extend the statute of limitations
are more rigorous than they are in State Court but
still it was a real issue and so the Defendant has
agreed to pay a lesser percentage to those people
that are beyond the five year statute of
limitations and candidly that probably represents
a windfall to them if Judge Hickey's ruling was
applied in the State Court.

The other – the next class of Plaintiffs are
those who have claims from July 5, 2008 through
October 2, 2013 and which is a little bit over a
five year class period and of course the reason we
went back to July of '08 is to catch – go back
five years and I think it goes back a little more
than five years and the reason it ends on
October 2, 2013 is because that's when the
Defendants quit depreciating labor.  So, that
class receives a different percentage of claims.
They get what we consider full payment for their

1   claims which I'll go over in a minute.

2       And, then the last time period we're dealing

3   with is October 3, 2013 until the end of the class

4   period, December 31, 2014 and they get a small

5   amount because they received some depreciation or

6   received the depreciation of labor because the

7   Defendant had quit depreciating, but they may have

8   received it later in the second hold-back payment

9   and so they get a small amount for loss of use of

10  their money during that time period.

11      So, we've got the three time periods involved

12  and as to the first two time periods, those beyond

13  the five year statute and those within the five

14  year statute, they get paid based upon three

15  different factors.

16      No. 1 there is going to be a certain class of

17  claimants who didn't recover any of their

18  depreciation and there's going to be another class

19  of claimants who received some depreciation pay

20  back but not all. And, then there's going to be a

21  third class of claimants who received the full

22  reimbursement. So, those three classes of

23  claimants within the first two class periods will

24  receive different percentages.

25      In dealing with numerous cases like this,

16

1  we've been involved in several and I think Mr.

2  Baker has as well, we've always received document

3  production from the Defendants, voluminous

4  documents and it's been our past experience

5  throughout a number of cases and this one is no

6  exception that when you examine a representative

7  sample of total claim files, it is almost

8  universally the case that the amount of labor

9  depreciation that was withheld from a claim will

10  fall within the range of forty to forty-five

11  percent of the total depreciation on the claim.

12  Normally in the upper part of that claim is forty-

13  five percent and that's probably because insurance

14  companies use much of the same estimating software

15  from company to company.  Xactimate for instance

16  and there are various others, but it's been our

17  experience based on the examination of numerous,

18  lots of files that the amount withheld for

19  depreciation of labor will come out about forty-

20  five percent of the total depreciation figure.

21      Now, you may ask me well how did we determine

22  that.  By deposing a number of these adjusters in

23  cases and studying the Xactimate software, we

24  found that the adjusters are able to go into that

25  program and drill down even on the unit cost basis

1  as I explained in the roofing, they are able to

2  drill down in the software and give us the figure

3  that applies to the labor part of it and the

4  materials part of it. So, that's not just a wild

5  guess, it's based upon evidence.

6      So, the settlement terms speak in terms of

7  payments to the class members based upon a

8  percentage of the total amount of depreciation

9  that was withheld from their claim and that avoids

10 the necessity of taking every one of over seven

11 thousand claims, going back to the software and

12 drilling down into each individual item and trying

13 to determine the exact figure. We feel that the

14 forty-five percent figure is representative and is

15 fair and adequate compensation.

16      So, given those factors we've got the three

17 different time periods and we've got the three

18 different classes of claimants. What we have

19 agreed on and what we're proposing to the Court to

20 accept and approve is a payment first of all

21 dealing with the oldest class from January 1 of

22 '06 to July 4, 2008. Those that didn't receive no

23 reimbursement for depreciation, none at all will

24 receive nine (9%) percent of the total

25 depreciation.

18

1     Those in that time period who received some

2     reimbursement but not total reimbursement of

3     depreciation will receive seven (7%) percent of

4     the total depreciation.

5     Those within that time period who recovered

6     all of their depreciation will receive one point

7     four (1.4%) percent of the total depreciation and

8     as I said earlier, in effect that probably would

9     be a windfall to that time period because there's

10    a good chance - it's not a sure thing, but there

11    is a chance that in State Court the Court would

12    agree with Judge Hickey's assessment on extending

13    the statute of limitations.

14    Now, for those people in Time Period No. 2

15    which is the little bit more than five years main

16    class period who are within the statute of

17    limitations, the Defendant has agreed to pay those

18    that received no reimbursement of depreciation

19    forty-five (45%) percent of the total amount of

20    depreciation withheld from that claim. And as I

21    said, pretty much across the board that has been

22    representative of the amount that we have been

23    able to determine is applicable to the labor

24    component of the total depreciation. So, that's

25    full payment of the depreciated labor. So, again

19

1    within that five year time period, those claimants
2    who received some reimbursement for depreciation,
3    but didn't receive full reimbursement for
4    depreciation will be paid thirty-five (35%)
5    percent of the total amount of depreciation
6    withheld from their claim.

7         And, then lastly those claimants within that
8    five year statute of limitations time period who
9    recovered all of their depreciation in a
10   subsequent payment will receive seven (7%) percent
11   of the total amount of depreciation to compensate
12   them from loss of use of the money.

13        Then lastly, those from the time period of
14   October 3, 2013 up until the end of the class
15   period, December 31, 2014 will receive five (5%)
16   percent of the total amount of depreciation
17   withheld from their claim in order to compensate
18   them for the loss of use of their money during
19   that shorter, much shorter time period.

20        So, while it sounds complicated, if you kind
21   of put it down on paper as I did and I had a
22   little bit of trouble understanding it myself, but
23   within actually four different time periods and
24   three different classes of claimants, those that
25   received no payment, those that received partial

20

payment and those that received full payment. We feel that the amounts, the percentages that have been agreed upon are fair and adequate compensation to these class members.

Now, I'd like to talk just briefly about the class certification requirements under Rule 23. Under 23a, there are four requirements. First of all the class must be so numerous that joinder of all members in the class is impractical. We've determined that there are approximately 7,687 class members, so clearly that satisfies the numerosity requirement.

The second prong of Rule 23a is that there must exist questions of law or fact common to the class. So, obviously we have common questions of law and fact, namely was the Defendant entitled to depreciate labor in the initial ACV payment and what was the amount, how much are they entitled to. All questions of law in fact are the same for all class members.

Under Rule 23a the third prong is the claims of the representative parties, that is Mr. and Mrs. Adams are typical of the claims of the class and they are not only typical, they are identical. There's no difference in their claim and any one

1  of the 7600 other class members.

2  And, the fourth requirement under 23a is that

3  the representative parties and their counsel

4  fairly and adequately protect the interests of the

5  class. I can say that the class representatives

6  have been attentive to their duties and of course

7  the primary duty of which is to see that all class

8  members are treated equally and fairly. They have

9  provided us with all information we've requested

10 and have actively participated in the case. Mr.

11 Putman and myself and other members of our firm

12 and other counsel of record have participated in

13 numerous class actions and class action

14 settlements. We feel that we have done our

15 homework on this and other cases and of course the

16 knowledge that we've obtained in other cases has

17 helped us. This is not just a spur of the moment,

18 throw it out to the Court settlement. There was

19 extensive discovery performed in the Federal Court

20 case and as I said, extensive negotiations lasted

21 over a long period of time.

22 Then there are two requirements under 23b for

23 a class action certification the first of which is

24 that the questions – the common questions of law

25 or fact predominate over any questions affecting

22

only individual members and that's clearly the case here because while there will be differences between each class member depending on how much they had depreciated. The resolution of those claims is the same for every class member. The percentages apply and that's what they get.

And, lastly under 23b the class action must be superior to any other available remedy for the fair and efficient adjudication of the controversy. It's clearly superior. There's no way that these people could be compensated if they all had to file individual claims. As I said, there's 7687 class members give or take a few. The total potential class payout will be around $3.5 million and that averages out to about $450 per claimant. So clearly, there's no individual claimant – of course there will be some that have big claims and some that have much smaller claims, but clearly most of the individual claimants wouldn't be able to bring an individual action.

The last requirement which is not mentioned in the Rule is that the class must be objectively ascertainable, in other words, must be able to determine who is a member of the class by some objective standard and clearly as I read the class

1   definition to the Court, it's easy to determine

2   from the Defendant's own records who is or is not

3   a member of the class.

4       Lastly in 23c addresses the issue of notice

5   to the class. The notice provisions contained in

6   settlement are fairly extensive but I want to tell

7   you that they are identical to a - the notice

8   provision in the class action settlement that we

9   resolved just yesterday. In that case the

10  notification provisions as I said were identical

11  to the notification provisions in this case. In

12  that case the notice campaign resulted in ninety-

13  seven point five (97.5%) percent of the individual

14  claimants receiving actual individual mailed

15  notifications which is almost unheard of and we

16  feel like that we'll have a similar result with

17  the notice campaign in this case.

18      The other requirement of the notice and

19  there's three - well, there's more than that

20  requirements in 23(c)(2) as to what the notice

21  must contain, the facts it must contain. I'm not

22  going to go through each one of those

23  individually, but suffice it to say that our

24  notice is comprehensive. It's easily read and was

25  easy to determine what a potential claimant must

24

do and so we believe our notice satisfies all
requirements of 23c.

The ultimate decision at a final approval
hearing would be whether or not the post-
settlement is fair and reasonable and adequate to
the class as a whole.

At the preliminary approval stage, that bar
is lowered a little bit and it's generally
accepted that the Court should determine at this
stage if the proposed settlement is merely within
the range of possible approval and so then the
notices would go out to the class members, if they
- if there are any objectors, then those issues
will be dealt with later.

There are a number of considerations to
determine whether or not it's in the range of
possible approval. No. 1 was the collusion in the
negotiation or were uninformed decisions made. I
didn't bring the Federal Court pleadings with me,
but I can represent to the Court without
qualifications that there were extensive discovery
and extensive negotiations that led up to this
settlement.

Another consideration is whether or not the
proposed settlement unduly favors the class

1 representatives or a certain class of claimants.

2 We feel like they have all been treated fairly in

3 fact as I said, it goes beyond the five year

4 statute of limitations, might actually be getting

5 a windfall.

6 At this stage of the proceeding, a proposed

7 settlement enjoys the presumption of

8 reasonableness and the proposition that the Court

9 should approve it unless there is some reason to

10 question the fairness of the settlement. We feel

11 like we've been exhaustive in our review and we

12 have reached a settlement that is very beneficial

13 to all the class and we are asking the Court to

14 approve it.

15 BY THE COURT: Thank you, Mr. Vowell. It's

16 my understanding that you are not asking that the

17 class be certified except for the purposes of this

18 settlement, is that correct and the Defense is

19 going to reserve their right to agree that it's

20 not a certified class except for purposes of this

21 settlement only, is that correct?

22 BY MR. VOWELL: That's right. If for some

23 reason and there are escape hatches built into the

24 settlement agreement. If for some reason this

25 settlement does not reach final approval, then

|    |                                                     |
|----|-----------------------------------------------------|
| 1  | this proposed settlement is as if it's dissolved    |
| 2  | and goes up in smoke.                               |
| 3  | BY THE COURT:  Moot, yes, sir.                      |
| 4  | BY MR. VOWELL:  And, cannot be used for any         |
| 5  | purpose.  Did I answer---                           |
| 6  | BY THE COURT:  That does it.  Thank you, Mr.        |
| 7  | Vowell.  Thank you very much.  Mr. Baker, do you    |
| 8  | have anything for the Defense?                      |
| 9  | BY MR. BAKER:  Your Honor, I suppose I just         |
| 10 | want the record to reflect that the Defendants      |
| 11 | maintain that they have at all times properly       |
| 12 | depreciated claims of Arkansas dwelling owners and  |
| 13 | we are entering into this proposed settlement       |
| 14 | evaluating risks and costs of litigation.  I want   |
| 15 | to make sure the record is clear that we are in no  |
| 16 | way admitting to wrong doing by entering into this  |
| 17 | proposed settlement.  But we do believe it is a     |
| 18 | settlement that is fair given all the               |
| 19 | circumstances that clients have to analyze when     |
| 20 | you evaluate future litigation, but other than      |
| 21 | that, Your Honor, I have nothing to add.            |
| 22 | BY THE COURT:  Thank you, Mr. Baker.  Based         |
| 23 | on the information that's been provided and I have  |
| 24 | looked through the file, the Court finds that the   |
| 25 | proposed preliminary settlement is fair and is      |

reasonable and I'm going to approve it and if you have an order - now, there's an order in the file I believe, is there not?

BY MR. VOWELL: There's an order attached as an exhibit to the settlement agreement.

BY THE COURT: Okay, but you want to present-

BY MR. VOWELL: Mr. Baker and I have modified it slightly by - just by plugging in the relevant date.

BY THE COURT: Yes, sir.

BY MR. VOWELL: We have spoken with your court coordinator yesterday and received a final approval hearing date of December 16th at 1:00 p.m.

BY THE COURT: Sounds good.

BY MR. VOWELL: And, so we've plugged that date in and then there are other dates that spring off of that date for notice of objections and those dates have been plugged in and Mr. Baker and I have approved the proposed order if I may approach.

BY THE COURT: You may approach, yes, sir. All right, I've signed the order. All right, Mr. Vowell, thank you.

BY MR. VOWELL: Thank you.

BY THE COURT: Mr. Baker, Mr. Putman.

```
1              BY MR. BAKER:  Thank you, Your Honor.
2              BY MR. PUTMAN:  Thank you, Your Honor.
3              BY THE COURT:  Good to see you.  We'll see
4         you gentlemen back here on the 16th of December
5         hopefully.
6              BY MR. BAKER:  Yes, Your Honor.
7              BY MR. VOWELL:  Thank you, Your Honor.
8              BY THE COURT:  Thank you.
9    (THIS CONCLUDES THE PROCEEDING HELD ON THE 26TH DAY
10   OF AUGUST, 2015)
11
12   (THE FOLLOWING PROCEEDING WAS HELD ON THE 16TH DAY OF
13   DECEMBER, 2015.  MR. PUTMAM, MR. VOWELL, MR. TAYLOR AND
14   MR. KEIL ARE PRESENT FOR THE PLAINTIFFS.  MR. BAKER AND
15   MR. ACKERMAN ARE PRESENT FOR THE DEFENDANTS.  MR.
16   TRAMMEL IS PRESENT.  HONORABLE JERRY RYAN PRESIDING)
17             BY THE COURT:  Gentlemen, do you all want to
18        have a conference outside the courtroom?  Would
19        that be - is that okay?
20             BY MR. BAKER:  That's probably a good idea.
21             BY THE COURT:  So we can talk informally?
22             BY MR. BAKER:  The Daughertys aren't here and
23        we know they know about it because they got the
24        notice and filed a motion to intervene and
25        complained about the notice.  I'm quite confident
```

29

| 1 | they know about today's hearing. |
| 2 | BY THE COURT: Well, I'll ask the Bailiff if |
| 3 | they – I don't know who they are, but if they show |
| 4 | up, we'll send them back. |
| 5 | BY MR. TRAMMELL: Your Honor, Bob Trammell. |
| 6 | BY THE COURT: Yes, sir, Mr. Trammell. |
| 7 | BY MR. TRAMMELL: At 12:56 there was a pro |
| 8 | hac vice filed by a Connecticut lawyer--- |
| 9 | BY MR. ACKERMAN: That was me, Your Honor. |
| 10 | BY THE COURT: Okay. |
| 11 | BY MR. TRAMMELL: Is that what--- |
| 12 | BY THE COURT: All right--- |
| 13 | BY MR. ACKERMAN: I've got an order for you |
| 14 | to consider. |
| 15 | BY THE COURT: Okay. |
| 16 | BY MR. BAKER: Your Honor, we have no |
| 17 | objection to Mr. Ackerman being accepted. |
| 18 | BY MR. TRAMMELL: Your Honor--- |
| 19 | BY THE COURT: Sir? |
| 20 | BY MR. TRAMMELL: The Objectors would object |
| 21 | to someone coming in this late. The affidavit is |
| 22 | fairly sparse and the basic fundamentals, Your |
| 23 | Honor, we have a right to look at disciplinary |
| 24 | records, personal conduct and anything else that |
| 25 | might cause these decisions to be confused or |

1    delayed or turn into something---

2         BY THE COURT:  What I'll do is I'll withhold

3    ruling on that at this time until Mr. Trammell has

4    had a chance to do his investigation in all

5    fairness to him, okay?  I won't sign this right

6    now until Mr. Trammell - you are objecting, Mr.

7    Trammell to the pro hac vice entry of order at

8    this time?

9         BY MR. TRAMMELL:  At this time, yes, Your

10   Honor.

11        BY THE COURT:  Application is - I will delay

12   ruling on that until you have a chance to submit

13   or investigate, as you say.

14        BY MR. BAKER:  Again, I'm John Baker for the

15   Defendants.  I'm the one that filed that pro hac

16   vice application and I want the record to reflect

17   that it's our contention that Mr. Trammell is not

18   even a party in the case and has no standing to

19   object to a pro hac vice application.  He's not

20   even a party to the lawsuit, but I respect the

21   Court's ruling.

22        BY MR. KEIL:  Your Honor, Matt Keil on behalf

23   of the Plaintiff, we also confer in that.  Mr.

24   Trammell is not a party to the lawsuit and has no

25   standing to even object or to make comment, but I

31

1  well understand the Court's ruling.

2  BY THE COURT: Well, he has filed – have you

3  all received the pleadings that he's filed, Mr.

4  Trammell?

5  BY MR. KEIL: We have, Your Honor.

6  BY MR. BAKER: Yes.

7  BY THE COURT: Who do you represent, Mr.

8  Trammell? It's veterans, is that correct?

9  BY MR. TRAMMELL: I represent four of many

10  veterans that are objecting to the terms of the

11  settlement and that as of today or actually

12  yesterday or maybe this morning, I moved to have

13  this case dismissed because – on a different legal

14  basis.

15  BY THE COURT: I'll give you all an

16  opportunity to come back in and make your

17  arguments on the record that you want to, whatever

18  statements you have to make. I think this – the

19  class has not been certified, is that correct?

20  BY MR. VOWELL: It was preliminarily---

21  BY THE COURT: It was preliminary – back in

22  October?

23  BY MR. VOWELL: August 26th.

24  BY THE COURT: August 26th. Okay, well, let's

25  go back into the jury room and we'll go off the

32

|    |                                                          |
|----|----------------------------------------------------------|
| 1  | record and you all can tell me.                          |
| 2  | (AT THIS TIME THERE IS A BREAK AFTER WHICH COURT IS      |
| 3  | RECONVENED.  MR. PUTMAM, MR. VOWELL, MR. TAYLOR AND MR.  |
| 4  | KEIL ARE PRESENT FOR THE PLAINTIFFS.  MR. BAKER AND MR.  |
| 5  | ACKERMAN ARE PRESENT FOR THE DEFENDANTS.  MR. TRAMMEL    |
| 6  | IS PRESENT.  HONORABLE JERRY RYAN PRESIDING)             |
| 7  | BY THE COURT:  CV-2015-105, Adams versus USAA            |
| 8  | et al.  I'll let the attorneys go ahead and             |
| 9  | identify themselves for the record and then I'll        |
| 10 | let the Plaintiff proceed.                               |
| 11 | BY MR. VOWELL:  Your Honor, present for the              |
| 12 | Plaintiffs today are myself, Stephen Vowell and          |
| 13 | co-counsel Bill Putman, Matt Keil and W. H.             |
| 14 | Taylor.                                                  |
| 15 | BY THE COURT:  And for the Defense?                      |
| 16 | BY MR. BAKER:  Your Honor, I'm John Baker                |
| 17 | here for the Defendants and I have with me Wystan        |
| 18 | Ackerman who we have applied to have pro hac vice        |
| 19 | admittance that I understand Your Honor is holding       |
| 20 | off on right now, but he is present.                     |
| 21 | BY THE COURT:  Okay and then we have Mr.                 |
| 22 | Trammell who---                                          |
| 23 | BY MR. TRAMMELL:  Bob Trammell for the                   |
| 24 | interveners and objectors.                               |
| 25 | BY THE COURT:  I'll let the Plaintiffs go                |

33

1    first.

2    BY MR. VOWELL: Thank you, Your Honor. Your

3    Honor, first of all there are three issues before

4    the Court today. No. 1 there is a motion to

5    intervene filed by Mr. Trammell on behalf of I

6    believe four individuals – excuse me, a motion to

7    intervene by the Daughterys, interveners. There's

8    an objection filed by Mr. Trammell and then

9    there's a motion for final approval of the class

10   action settlement and also approval of attorney

11   fees and costs.

12   I would respectfully suggest to the Court

13   that the first issue to take up and the first

14   issue that I will argue will be the motion to

15   intervene of the Daughtery interveners and I

16   understane no one is present, either Mr. or Mrs.

17   Daughtery. They've been called and I don't know

18   if the Court has already done so, but would the

19   Court sound the halls for the Daughtery

20   interveners?

21   BY THE COURT: Would you see if the

22   Daughterys are present in the hall? If you will

23   sound—

24   (AT THIS TIME THE BAILIFF SOUNDS THE HALL FOR THE

25   DAUGHTERTYS)

34

1             BY THE BAILIFF: No response, Your Honor.

2             BY THE COURT: Thank you.

3             BY MR. VOWELL: Thank you, Your Honor. First

4 of all, Your Honor, I believe that the Daughterty

5 motion to intervene should be summarily denied by

6 the Court. The motion to intervene is sort of a

7 catchall pleading in which the Daughtertys

8 apparently wanted to try to intervene for reasons

9 we're not sure of because it hasn't been stated in

10 the motion. They also wish to object. Those two

11 requests are not inconsistent, but then they also

12 say that they want to reserve their right to opt

13 out of this case in the event that either their

14 motion to intervene or their objections are

15 overruled. So, it is a procedurally defective

16 pleading in which they cannot ask – I guess they

17 can ask, they've already asked, but they cannot

18 receive all of the relief that they're asking for.

19 It's inconsistent.

20             No. 2, it is procedurally defective under

21 Rule 24 for a number of reasons. There are two

22 methods of intervention under Rule 24, an

23 intervention of right and then of course a

24 permissive intervention. Their motion to

25 intervene fails under either prong of the rule,

Your Honor.

2        Rule 24c provides that first of all a person

3   desiring to intervene shall file or serve a motion

4   to intervene upon the parties. They've done that.

5   But then it says the motion shall state the

6   grounds therefore and shall be accompanied by a

7   pleading setting forth the claim or defense for

8   which intervention is sought. They have done

9   neither, Your Honor. They have filed a motion and

10  it states no grounds, therefore it contains no

11  argument and no citation of authority. For that

12  reason alone it should be summarily denied.

13       No. 2, 24c requires that a motion to

14  intervene be accompanied by the pleading which the

15  proposed intervener proposed to file with the

16  Court asking for some sort of relief. The

17  Daughterty proposed interveners have not attached

18  a proposed pleading to their motion to intervene

19  and therefore nobody knows what their proposed

20  intervention would be and it's procedurally

21  defective under Rule 24 and should be summarily

22  denied.

23       Arkansas case law is clear on this point.

24  Probably the single most case in that regard is

25  Hunter vs. Runyan which is cited in our brief and

it says that even in a class case that if you file
a motion to intervene and don't attach a pleading
advising counsel of what relief you wish to
propose to the Court, it's procedurally defective
and it should be denied on that basis alone.

Admittedly the Daughtery interveners are
acting pro se, but Arkansas law is clear that they
get no relief and the rules don't get bent for
them simply because they are acting pro se and
they don't have an attorney.  The rules apply with
equal force to a pro se litigant.  Their motion
should be denied summarily.

A corollary to that argument is - the pro se
argument is that part of their motion to intervene
makes some sort of a really vague allegation to
service members who may be deployed or on vacation
or first one thing and another and there
apparently is an attempt by the Daughterys to
represent other people and of course they are
acting pro se and the law is clear, they have no
legal right or authority to represent anyone other
than themselves.

If the Court wants to look past the
procedural defects of the Daughtery's application
and looking at the provisions a little more, the

motion to intervene lacks merit on the substance.

As I said, 24 provides two methods of intervention and one of them is intervention by right and it provides a person can intervene as of right when there is a statute which confers an unconditional right to intervene. We don't have that here.

Or, when the applicant claims an interest in the property or transaction which is the subject of the action and he is so situated that the disposition of the action may have as a practical matter impair or impede an ability to protect that interest unless that interest is adequately protected by existing parties.

The moving parties, the Daughtertys bear the burden of proof to bring forth some evidence or some proof or at least some argument and citation of authority that they meet the requirements of Rule 24a. They have not done so. They have not even specified whether they think they're entitled to intervene under Rule 24a or 24b. They just stated no grounds for intervention under either section.

Secondly, they have not presented anything in their motion from which the Court could find that

1  they are actually a member of this class or this
2  proposed class. Again, they made no argument, no
3  citation of authority. The law is clear and we've
4  cited the law in our brief in Foremost vs. Miller
5  County and the proposition is clear that neither
6  the Court nor opposing counsel is obliged to guess
7  at what they are trying to accomplish or obliged
8  to fill out their arguments and do their research
9  for them. They simply have not stated any grounds
10 for intervention under Rule 24a or b.

11      Addressing either 24a or 24b the issue of
12 whether or not to allow an intervention is solely
13 within the Court's discretion. Under 24a if they
14 have presented some evidence that they were in
15 fact members of the proposed class which they have
16 not done, they have not stated any reason why -
17 even a hypothesis as to why their interests are
18 not adequately protected by the class
19 representatives.

20      Further they have not offered any proof from
21 any pleading which would go beyond the issues that
22 are already before the Court. In other words,
23 they have not offered anything that would advance
24 the cause of the class in this case. They have
25 stated absolutely no grounds or no reason why

39

intervention is necessary in order to protect

interests owned by the class as a whole or in

order to protect their own interests because those

interests are adequately protected by the class

representatives and No. 2, if they did not like

the proposed settlement or did not like - did not

feel like they were being fairly treated or

adequately represented, they could have opted out

of the class. They could have elected to exclude

themselves.

To the extent that they are arguing in their

motion and it's really hard to define what they

are really arguing in their motion but to the

extent they are arguing that class counselors

should have struck a better bargain on behalf of

the class as a whole, they again lack standing to

make that argument because they are proceeding pro

se. They have no authority to represent a class

of individuals. So, they have not adequately also

represented standing on their own behalf to show

that they're even a member of the class. The

proof will show hopefully in this hearing today

that the proposed settlement is fair, reasonable

and adequate not only to the Daughtertys but to

the class as a whole. And again, if they didn't

like the treatment of their claims, they could
have opted out and excluded themselves from the
class.

Also, they have stated no basis on the merits
for intervention pursuant to 24b which is
permissive intervention.  24b provides that a
person may be allowed to intervene – may be under
the statute of a state confers a conditional right
to intervene and of course that's not the case
here or when the applicant's claim or defense and
the main action have a common question of law or
fact.  We don't know, we can't even tell from
their pleading whether or not their issues or the
issues that they propose to raise contain a common
issue of law and fact with the class complaint.
They have not – they have not given us enough
information to even meet that standard.

Their purpose in filing their motion to
intervene appears to be disruption of the case
rather than advancing any interest of the class or
even of themselves and the Court can exercise its
discretion to deny their motion to intervene.

Your Honor, do you want me to stop now and
allow other counsel to address that issue before
we proceed to other issues?

1    BY THE COURT: Mr. Baker, do you have
2    anything you want to say?

3    BY MR. BAKER: Just very shortly. I think
4    Mr. Vowell has covered the terrain pretty good, so
5    I'll be very brief but for the Defendants I really
6    think the easiest of the analysis of the
7    Daughterty motion all comes down to Rule 24c
8    because the rules says you've got to attach your
9    pleading to your motion to intervene. Now, as I
10   try to teach young lawyers at my law firm, there's
11   actually a definition of the word "pleading" under
12   Rule 7 and a pleading is a very specific thing.
13   It's either a complaint or an answer or a third
14   party complaint. It has a list of what a pleading
15   is. And, then any pleading under Rule 8 has to
16   have as you know, Your Honor, facts pled showing
17   entitlement to relief along with demands for
18   relief. In other words, we're a fact pleading
19   State. So, when you have to attach a pleading to
20   your motion to intervene, that pleading is super
21   important because you've got to detail within all
22   the facts showing you're entitled to relief and
23   any legal claim.

24       So, when the Daughterty's motion to intervene
25   doesn't have a pleading attached to it, Your Honor

42

1    has nothing to study to even analyze Rule 24a and

2    b whether or not they really should be permitted

3    to intervene under either one of those rules

4    because you don't have the facts and the claims

5    against which to judge whether they've satisfied

6    either 24a or 24b.  So, it's a death nail, it's a

7    non-starter when you don't even attach your

8    pleading showing your legal claims pled and your

9    facts to support them.  If you don't do that, you

10   don't get past go and that's exactly what I argued

11   in the Hunter v. Runyan case and Judge Looney

12   agreed and dismissed or denied the motion to

13   intervene and it was affirmed by the Supreme Court

14   and they said, we don't even understand what their

15   claims are when you don't even attach a pleading

16   of claims.  So, we don't even get to the

17   intervention analysis.

18          So, Your Honor, the motion ought to be denied

19   for that and all the reasons Mr. Vowell argued and

20   I have a proposed order I would to leave with Your

21   Honor to consider entering.  May I approach?

22          BY THE COURT:  Yes, sir.

23          BY MR. TRAMMELL:  Your Honor, before - I'd

24   like to be heard on that issue.

25          BY THE COURT:  You don't represent them, Mr.

43

1 | Trammell.

2 | BY MR. TRAMMELL: No, sir.

3 | BY THE COURT: No, sir, you do not.

4 | BY MR. BAKER: Thank you, Your Honor.

5 | BY THE COURT: Anyone else other than Mr.

6 | Trammell? I can't do that, Mr. Trammell because

7 | you don't have the permission of the Daughtertys

8 | to speak for them either.

9 | So, I think based on the arguments that I've

10 | heard I'm going to grant the motion to dismiss the

11 | intervention by the Daughertys or at least deny

12 | their motion to intervene based on failure to

13 | comply with the rules, Civil Procedure Rule 24

14 | specifically, but the order has been prepared and

15 | I will go ahead and sign that order. I don't

16 | think I need to take that under advisement,

17 | gentlemen.

18 | BY MR. BAKER: Thank you, Your Honor.

19 | BY MR. VOWELL: Thank you, Your Honor.

20 | BY THE COURT: I think that's pretty clear

21 | that that - now, Mr. Vowell, you---

22 | BY MR. VOWELL: Yes, Your Honor, I don't know

23 | what the Court wants at this point but since we're

24 | talking about interveners and potential objectors,

25 | I would address those objections at this point.

44

1    The Daughtery proposed interveners, their motion

2    has just been denied have also filed I guess we

3    could call them objections to the proposed

4    settlement.  They are so vague, it's hard to try

5    them, but in any event I will address those

6    objections of both the Daughtertys — the Daughtery

7    objectors and the Trammell objectors at this point

8    if the Court has no objection.

9        BY THE COURT:  You may proceed.

10       BY MR. VOWELL:  Thank you, Your Honor.  First

11   of all as to the Daughterty objections, as I said

12   before they apparently attempted to preserve

13   objections and also preserve their right to opt

14   out of the proposed class at the same time and

15   that's just not allowed.  That is procedurally

16   defective, they can't do both.  Their status as

17   either an objector or an opt out determines what

18   rights they have not only here at this hearing,

19   but going forward in this case and so I think

20   their objections should be denied for that basis

21   alone.

22       Secondly, their proposed objections are

23   procedurally defective in that they have not been

24   filed on the administrator.  The notice that went

25   out to the class and the Court's preliminary

45

approval order specified very clearly the means and manner by which an objection to the proposed settlement can be made and one of those requirements is that the objection be served on the administrator and there's no indication that that's been done in this case.

Also, they have failed to comply with any of the requirements of the Court's preliminary order of approval that specifies what must be contained in an objection in order for it to be considered by the Court. It must contain a heading which includes the name of the case and the case number, they've done that. Provide the name, address and telephone number, it must indicate a specific reason why the settlement class member objects to the proposed settlement, it was deficient in that regard, Your Honor. It must contain the proposed class member attorney's information if they had one and of course they do not and must state whether they intend to appear here and of course that's moot because they have not appeared today.

In addition and this is in Paragraph 23 of the Court's preliminary approval order, this is what is particularly an egregious violation on their part. It says that they must make a

1   detailed objection or a detailed specification of

2   the objections that they have to the settlement.

3   They have made very vague general allegations that

4   they object to the handling of two of their

5   claims. One of those, Claim No. 2 apparently

6   involves an issue which has nothing to do with the

7   depreciation of labor and it has nothing to do

8   with this case and then they make a very general

9   vague objection on behalf of unknown veterans who

10  may be retired and traveling or maybe deployed and

11  again they are attempting to represent people who

12  they are not entitled to represent because they

13  are acting pro se.

14          Also, no part of their objection contains any

15  convincing argument – actually it contains no

16  argument concerning the merits or whatever their

17  allegations are. First of all we can't really

18  tell what the allegations they are seeking to

19  propose to the Court. We don't know what they are

20  objecting to. They have made no convincing

21  arguments and they have cited no authority for

22  their objections and again, the law is clear that

23  the Court is not obligated and the Court nor

24  defense counsel flesh out arguments for them or to

25  do their research for them. So, unsupported

47

arguments such as this should be summarily -
summarily overruled or denied.

If the Court proceeds beyond that point and
considers the objections and I use that term
loosely, on their merits as I said their
conclusory and unsubstantiated allegations.

Their first complaint is that the proposed
settlement failed to compensate them under Claim
No. 1 for six hundred dollars. They claim they
lost six hundred dollars in labor depreciation.
How do they arrive at that? We don't know No. 1
if they are actually a member of the class,
they've not submitted any documentation to show
that they are even a member of the class and No. 2
if they were a class member, they have not shown
when their claim arose and so we don't know
whether they were entitled to reimbursement. If
their claim arose within the five years
immediately preceding the filing, they would be
entitled to a hundred percent payback. So, that
objection, as vague as it is, is unsupported and
should be denied.

And, then their objection to this Claim No. 2
is the same, they didn't get reimbursed for labor
expense - their depreciated labor expense. Again,

48

| | |
|---|---|
| 1 | they don't offer any details as to how much, how |
| 2 | they were uncompensated, when their claim arose, |
| 3 | whether they are a member of the class at all and |
| 4 | if they were, when their claim arose.  They might |
| 5 | be entitled to a hundred percent payback.  Nobody |
| 6 | knows and nobody can tell from their objection. |
| 7 | And, then they raise this mixed objection |
| 8 | argument which is a bit strange but they say, |
| 9 | well, we also have a claim against USAA because |
| 10 | they failed to replace our decking on our roof. |
| 11 | Well, that's a coverage question I guess.  I don't |
| 12 | know, it may be a factual question of whether or |
| 13 | not they actually sustained damage to their |
| 14 | decking or it may be a question about what it cost |
| 15 | to repair or replace it.  Whatever it is, it's not |
| 16 | a depreciation of labor issue and it can't be |
| 17 | raised in this proceeding.  As the Court knows and |
| 18 | everybody else in this litigation knows, this case |
| 19 | pertains to the depreciation of labor.  They are |
| 20 | free to bring that claim for the decking against |
| 21 | USAA if they still want to bring it.  The release |
| 22 | that we hope the Court will approve in this case |
| 23 | will release USAA only from claims relating to |
| 24 | depreciation of labor.  No other issues.  So, USAA |
| 25 | will not be released from that claim if they in |

49

1    fact have one.

2         They raise a very general kind of a shotgun

3    approach to jurisdictional issues.  They say

4    there's no jurisdiction because no summons was

5    served on the class members.  Well, everyone knows

6    that service of summons on all the class members

7    is not required by Rule 23.  They don't support

8    their argument by any citation or authority and

9    there's no argument.  The law is clear.  We cited

10   the Phillips Petroleum case in our brief that when

11   the Court certifies a class for a proposed

12   settlement and notices are sent out to the class

13   and they are given the opportunity to be heard and

14   a chance to opt out, then they are subject to the

15   jurisdiction of the Court.

16        They make next a general argument about lack

17   of subject matter jurisdiction which is just

18   nonsensical and clearly this Court has

19   jurisdiction, it's within the Court's

20   jurisdictional limits.  The case involves Arkansas

21   property only and insurance policies issued,

22   insuring properties within the State of Arkansas.

23        Lack of sufficient timely notice, again no

24   argument or authority, they certainly had

25   sufficient time to file their motion to intervene

50

and their objections.  I don't really understand
their claim of lack of sufficient notice because
they filed pleadings before the Court.

And, then an objection which is almost
amusing, they object because there's a violation
of every provision of Article 2 of the Arkansas
Constitution.  I don't know what that is habeas
corpus, treason, search and seizure, cruel and
unusual punishment, no citation of authority, no
argument and should be overruled.

And, then again the objection about traveling
retired servicemen or servicemen deployed they
can't bring a cause action or objection on behalf
of other individuals whom they are not entitled to
represent aside from the fact there's no evidence
there's anyone that fits that category in this
class.

And lastly they say that it contravenes
federal law but again no citation of authority and
no argument and that should be summarily
overruled.

And, I think that deals with all of the
objections that we were able to glean from this
very vague pleading and if it please the Court
I'll stop at this point and let someone else

1    address those.

2         BY THE COURT:  Mr. Baker.

3         BY MR. BAKER:  Judge, you should overrule the

4    Daughterty's objection for all the reasons Mr.

5    Vowell just went over.  This is just like old

6    Johnny Carson when he would have that Carmack

7    magnificent hat on and he would open an envelope

8    and try to discern what was in it.  That's what

9    the Daughtertys have asked you to try to figure

10   out and what I was hoping is that they would walk

11   through this door today and take the stand and we

12   could actually figure out what they're trying to

13   argue.  What I expected them to do maybe was to

14   run through the calculations of how they feel the

15   settlement does not adequately compensate them,

16   something perhaps like that but we don't have

17   anything like that.  They're not here and we're

18   left to scratch our heads like Johnny Carson at

19   what their complaint is.

20        So, think about this, Judge.  We're talking

21   about over 14,000 class members got notice of this

22   proposed settlement and the right to object.

23   We've got the Daughtertys and we've got Brother

24   Trammell's four people, that's it.  So, we don't

25   have any context to understand any trends about

objections to this settlement because there aren't

any others besides them.

But look, the Daughtertys for all the reasons

Mr. Vowell argued, their objection is not cogent.

It's not clear.  It hasn't been explained with

enough specificity for Your Honor to even

understand what it is that might be problematic

under the proposed settlement, only for the

Daughertys and their choosing not to appear today

is further evidence that it ought to be denied

because they knew about this hearing and they said

they were trying to get a lawyer and I thought

they said they were going to be here, but we don't

have them here.  We have nothing in the record to

sustain their objection.  It should be overruled.

BY THE COURT:  All right, on the – the Court

finds that the objection by the Daughterys is

conclusory, not founded on facts, it's unclear and

it lacks merit therefore their objection is

overruled.

BY MR. BAKER:  Thank you, Your Honor.

BY THE COURT:  Okay, Mr. Vowell.

BY MR. VOWELL:  If I may proceed, Your Honor,

I would propose to address the Trammell objection

at this point.

53

BY THE COURT: You may proceed.

BY MR. VOWELL: Thank you, Your Honor. Your Honor, the Trammell objections suffer from the same - many and most of the same defects that the Daughterty's objections suffer from. No. 1, there is no indication they were served on the administrator which is clearly required by the Court for preliminary approval by the notice that was sent out. I can cite the Court chapter and verse if need be, but it clearly requires that any objections be served on the class administrator.

Secondly, it's our contention that Mr. Trammell who is present here today should not be heard on these objections because he has not complied with the requirements of the notice and the Court's preliminary approval order. Specifically, Paragraph I believe it's 23 of the preliminary approval order provides that in order to be effective, a notice of intention to object must contain the following information if the settlement class member or his or her attorney requests to seek a final approval hearing.

First of all, a detailed statement of specific legal and factual basis for each and every objection and it is deficient in that

1    regard.

2         Second a list of any and all witnesses whom

3    the settlement class member may call at the final

4    approval hearing with the address of each witness

5    and a summary of his or her proposed testimony.  I

6    don't know if they intend to call witnesses or

7    not, but if they do they should not be allowed

8    because they haven't complied with that rule.

9         No. 3 their objection should contain a

10   detailed description of any and all evidence that

11   the settlement class member may offer at the final

12   approval hearing including photocopies of all

13   exhibits which the objector may introduce at the

14   final approval hearing.  They've not done that,

15   Your Honor.

16        And, No. 4 should contain a list of any legal

17   authority the settlement class member will present

18   at the final approval hearing.  We have no

19   citation of authority whatsoever for any of their

20   allegations or objections.

21        And, then lastly, the document must contain

22   documentary proof of membership in the class.

23   They have not provided any proof, documentary or

24   otherwise that they are even members of this

25   proposed class and so therefore, they should not

be allowed to be heard at today's hearing. The
preliminary order and the class notice clearly put
those obligations on them.

Secondly their objection should be summarily
overruled because they do not cite any authority
for any proposition they assert in the objection
nor do they make any argument convincing or
otherwise concerning any of their objections and
so therefore under Foremost v. Miller County, they
have waived any objection by not arguing - I mean,
that's a rule that's been so long standing in the
class action cases and all civil litigation that
it really needs no citation of authority.

So, failure to cite any authority or make any
convincing argument and further failure to comply
with the requirements of the notice and the
preliminary approval order constitutes a waiver of
their right to appear and argue or present
evidence at this hearing.

If the Court wants to proceed beyond that
point then we'll address the merits argument of
their proposed objections.

No. 1, their first argument is they want to
take discovery. They want the Court to give them
the opportunity to take discovery. Well, the

simple answer to that is is that discovery can
only be taken by parties to the case. They are
not parties to this case. They have not filed a
motion to intervene, much less been allowed to
intervene. Further, discovery by an objector is
not allowed under Rule 23. They lack standing to
engage in any discovery. Further they present no
argument or citation of authority in regard to
their request to conduct discovery, should be
summarily denied.

Their second objection says that the
preliminary order prohibits objections on behalf
of a subclass. Well, Your Honor, it may, it
depends on how you interpret that. He's in effect
representing a subclass, he's got four people in
his camp I guess, but in any event, the order
complies with Rule 23e(4) which says – allows
objections only by individual class members, not
subclasses. If objections were allowed by a
subclass of class members, it would create a
quagmire by the Court because then the Court would
have to determine whether or not the subclass met
all the requirements of Rule 23, numerosity,
commonality, predominance, superiority,
typicality, adequacy, you have to go through that

| | |
|---|---|
| 1 | procedure with every subclass and every proposed |
| 2 | representative of a subclass. It's just not |
| 3 | allowed under Rule 23. |
| 4 | The Court can determine in its discretion |
| 5 | whether this settlement is fair, reasonable and |
| 6 | adequate for the class as a whole. There's no |
| 7 | need for subclasses as far as objections are |
| 8 | concerned. |
| 9 | His third objection is that he needed |
| 10 | additional time to prepare. Notices were sent out |
| 11 | in this case by the administrator on October 8th I |
| 12 | believe. Clearly Mr. Trammell's clients received |
| 13 | the notices. They have had at least sixty days |
| 14 | prior to today's hearing to prepare for this |
| 15 | hearing. They have filed a proposed objection so |
| 16 | their actions in this case belie this objection. |
| 17 | They've had plenty of notice. |
| 18 | The next one – the next argument they make is |
| 19 | that this claims made procedure makes |
| 20 | participation by the class members a challenge and |
| 21 | that's their term, a challenge. That's hard for |
| 22 | me to understand because the notice is written in |
| 23 | the most plain and straightforward language that |
| 24 | can be written. The claim form is a real short |
| 25 | three page form that is simple and easy to fill |

1    out. They are only asked to fill out the

2    information that they have and it says if you

3    don't know the information, just check the box

4    that says I don't know. They are not even

5    required – they are asked to present documents,

6    but it says if they don't have them, that's fine,

7    submit the claim form anyway.

8        And, we've submitted an affidavit by a

9    representative of Rust Consulting who is the class

10   administrator in this case. Rust Consulting has

11   broad experience in many many many class action

12   cases, huge cases and it's their affidavit. It

13   confirms that this type of notice and this type of

14   claim form is commonly used in class action

15   settlements and then it's in effect easy to read,

16   easy to understand. It's hardly a burden on

17   anyone to read the class notice or to fill out the

18   claim form. Much of the claim form has pre-filled

19   information on it and it's just inconceivable to

20   me that a USAA insured would be unable to read

21   this real simple notice and complete – check the

22   boxes on the claim form and sign their signature.

23       Claims made settlements in general are

24   approved by Arkansas Courts and we cite numerous

25   cases in that regard, but the main one is Ballard

v. Martin. It's a common procedure and has the approval of the Arkansas Supreme Court and it's used in large cases in order to help deter checks just being mailed out and received by people who are not entitled to them or it defers fraud to put the matter bluntly and shortly.

The next objection is is that the claims form threatens criminal perjury. You know, I've read that form several times and I don't know what they're talking about. It does require it to be notarized but all it requires is that the claimant sign the statement above which it says that the statements contained herein are true and correct to the best of my knowledge. It doesn't have them swear to anything other than what they've put on the form. It doesn't even really – it just says it's true and correct to the best of my knowledge. I mean, that's common in any legal document that anyone signs.

Next, they mysteriously say that there's no commitment on the part of USAA to pay anything and that is just simply untrue and I don't know whether that results from just a plain misunderstanding of the terms of the settlement. It's very plain and very detailed in the order

1  approving the preliminary settlement. USAA is

2  clearly obligated to pay every claim that falls

3  within the class parameters and there is no cap on

4  the amount that they may be liable to pay. We

5  have made certain estimates of the amount that

6  might be paid under this settlement, but there

7  again, that's an estimate that's used for other

8  purposes and the point is there is no cap on the

9  amount that they may have to pay for claims. They

10  are totally obligated that if a person meets the

11  definition of a class member and if they have a

12  loss that falls within the class period and submit

13  a claim, then USAA is obligated to pay it with no

14  limit - no limit to the total amount.

15  USAA has also agreed to pay attorney fees,

16  expenses, incentive award to the class

17  representative, the costs of administration,

18  mailing of notice and administration of the

19  settlement which is not negligible I assure you

20  and also obligated to pay the fees of the neutral

21  evaluator if those of the neutral evaluator

22  becomes necessary.

23  The next argument is that USAA should admit

24  wrongdoing in a national ad. They want them to -

25  I don't know, go on television and run commercials

or something and fall down on their sword and say,

well, we were bad actors.  That's movie stuff.  I

mean, Mr. Trammell has been watching too much TV,

Your Honor.  That does not happen in civil

litigation.

They next suggest that there should be a cy

pres payment to Habitat for Humanity on behalf of

veterans.  The law is clear and we have cited

cases in our brief that when you have a class

that's going to receive the money, then there's no

need to establish a cy pres comme and there's no

need in this case because there's a rather large

class of almost fifteen thousand who could receive

payments under this settlement.

They complain lastly in Paragraph 85 that the

stipulated settlement is improper.  Paragraph 85

briefly is a paragraph that says that the parties

of the litigation won't use the information,

especially the confidential information that

they've obtained during the course of discovery to

further or advance some other or different lawsuit

against USAA.  That's a common term, Your Honor,

that's a part of the confidentiality agreement

that was signed in this case.  We can't and it's

unheard of for a Plaintiff who obtains

1    confidential information from a Defendant in any
2    civil case to take that information from this case
3    and then go file a different and separate lawsuit
4    against the Defendant. And, that's what Paragraph
5    85 prevents. It's a common term and it's by no
6    way egregious.
7        And, I think that addresses all of the
8    objections from the Trammell objectors, Your Honor
9    and I will pass the podium.
10        BY THE COURT: Mr. Baker, I think – Mr.
11    Trammell, do you want to go first?
12        BY MR. BAKER: I'm real short. I agree with
13    everything that Mr. Vowell said. I'm not going to
14    belabor the record with it because I think he's
15    covered the landscape. My only addition is it's
16    important when you evaluate objections in a
17    settlement like this to put in context how many
18    objectors advance similar concerns about the
19    settlement. Mr. Trammell's four clients and I
20    suppose if we can discern the Daughterty objection
21    at times, those are the outlyers, the only ones
22    who have come forward to articulate claimed
23    objections. If there was a ground swell of
24    objections, you would see a trend, Judge, and I've
25    seen it in other cases where people come out of

|   |   |
|---|---|
| **1** | the woodwork and say this isn't fair or this |
| **2** | provision isn't fair. You have one filing from |
| **3** | Mr. Trammell that articulates his concerns. They |
| **4** | are not shared by others. In the absence of other |
| **5** | objection consistently is important for you to |
| **6** | cite and factor in when you should overrule their |
| **7** | objections. Thank you, Your Honor. |
| **8** | BY THE COURT: Thank you. Mr. Trammell. |
| **9** | BY MR. TRAMMELL: Yes, sir. Since Mr. Baker |
| **10** | has injected his knowledge of the case, I'd call |
| **11** | him as my first witness. He has put forth |
| **12** | positions of fact that he has no knowledge of |
| **13** | relative to communications among the military |
| **14** | community that USAA services and in fact, USAA |
| **15** | insures 94% of all military officers and now 44% |
| **16** | of the enlisted men and unless he has some sort of |
| **17** | direct contact with the military community, he |
| **18** | doesn't know what is being said. He does – I can |
| **19** | make the observation right off the bat that they |
| **20** | chose to file this on the Oklahoma border of |
| **21** | Western Arkansas. It is a great place. It's my |
| **22** | old homeland and it's good to be back. I rode a |
| **23** | mountain bike race here not long ago, I'm a |
| **24** | Cossatot floater and it's a wonderful part of the |
| **25** | world, but he doesn't know anything about what the |

64

1  military is thinking relative to this class action

2  settlement.

3  BY MR. BAKER:  Your Honor---

4  BY MR. TRAMMELL:  Maybe I should have let Mr.

5  Baker go first.

6  BY MR. BAKER:  Look, if you had an objection,

7  Your Honor ordered people to go through a process

8  to object and that was to send written objections

9  to the settlement administrator.  In the absence

10  of those and the settlement administrator has

11  given a report of the number of objections, they

12  filed that on December 10th, that is the only fact

13  that I'm referring to is the absence of objections

14  per your Court's order on how you go about making

15  an objection and the absence of any more than that

16  that's in the record.  It's an evidentiary fact

17  that's in the affidavit that's in the record and

18  that's the only statement I'm making.  I'm just

19  reflecting what's already in the record.

20  BY THE COURT:  Well, I guess Mr. Trammell is

21  going to make some kind of a statement that he

22  feels that I guess that that order does not apply

23  to the people he represents and I'm very curious

24  to see what the argument is.

25  BY MR. BAKER:  I guess---

1    BY THE COURT:   Because that has been ordered

2    by the Court already.   Go ahead, Mr. Trammell.

3    BY MR. TRAMMELL:   The order – the fact that

4    no one else has filed a claim form probably speaks

5    to one of the objections that the Trammell

6    objectors have and that is ten pages of single

7    spaced with all sorts of requirements involved,

8    Mr. Vowell has made so many misrepresentations to

9    the Court in that regard, I'll start off with

10   Paragraph 80 of the preliminary settlement which

11   says that the Defendant's liability over the

12   settlement shall be limited to paying claim

13   payments because the settlement class numbers and

14   the rest of it has to do with expenses.   But, my

15   statement is clear in the objection and that is

16   they are not willing to pay a dime even though

17   they have the claim information for every member

18   of this class or else they would not have received

19   a notice at the first instance after the

20   preliminary approval, Judge.

21       The purpose of this ten page single spaced

22   notice that discourages anyone during the holidays

23   to want to sit down and fill out a claim form

24   attached to it for a sum total of $49.00 or

25   $149.00 or whatever it is, is discouraged.   Half

| | |
|---|---|
| 1 | the people in America lose their Staples rebates |
| 2 | or their Apple Store rebates and there is a way to |
| 3 | show this Court without a lot of expense a |
| 4 | statistical analysis with human factor, people and |
| 5 | probabilities and statistics to show you what USAA |
| 6 | is really going to have to pay in this and it's |
| 7 | not going to be very much because of the nuisance |
| 8 | required to get your hands on an extra $42.00 for |
| 9 | a roof claim in Mayflower, Arkansas. |
| 10 | At the end of that paragraph it says that |
| 11 | they will pay no monies voluntarily except for the |
| 12 | claims. Now normally, if a class counsel has |
| 13 | seized upon a bad actor, it seems reasonable that |
| 14 | that bad actor, just in the commercial world |
| 15 | should be willing to put up an amount of money in |
| 16 | response to having been caught for State Farm |
| 17 | putting on a defective part of $758,000 and so on |
| 18 | and so forth. And, then if there is not a claim |
| 19 | made or they can't find those people or those |
| 20 | people are in a nursing home or that veteran has a |
| 21 | widow now and she's not going to open up any |
| 22 | paper, whatever it is, that money is going to go |
| 23 | out and serve the class members in an alternative |
| 24 | but substantive and fair way. USAA is not putting |
| 25 | up a nickel. It uses a big number like |

67

$3,665,000, assuming everybody in the class
submits their claim form and that's a statistical
impossibility. It's just not going to happen.

The claim form also says straight out under
penalty - you must also have your claim form
notarized. This means that you must sign the
claim form under penalty of perjury. Now, to a
sophisticated group like my four decorated
veterans, ship captain, naval aviator, a computer
giant, these gentlemen would probably not be
intimidated by that. But as I've said, USAA
insures 44% of all the enlisted. I think, it's my
understanding that the class representative in
this case is actually some mariner or an Iraqi
veteran and he's now a well-respected barber
around town. But the point is, it says under
penalty of perjury and that's why I made the
observation. This claim form does everything it
can to run people off because any successful claim
not filed goes back in USAA's file and that amount
of money has to be known, Your Honor, in my
opinion in order for this to be evaluated whether
or not it's a good settlement.

But if I can summarize just basically the ten
pages if the Court will permit me, you have to

| | |
|---|---|
| 1 | file a claim in ninety days.  Before that you have |
| 2 | to read a ten page single spaced maze of caveats |
| 3 | and limitations entitled notice.  If there's been |
| 4 | any legal status changed to your situation like |
| 5 | maybe someone has died, you are now a trust, you |
| 6 | are a guardian, go find the probate papers from a |
| 7 | fire loss or from the hail loss that happened back |
| 8 | in 2010.  I don't know if I can do that.  I don't |
| 9 | know if I can find my hail loss claim.  You might |
| 10 | forget it, you might lose it, you might be |
| 11 | overseas, you might be deployed.  All those |
| 12 | circumstances inure to USAA and their scheme to |
| 13 | limit the amount of money they have to pay, even |
| 14 | though in return should this Court look the other |
| 15 | way and approve a settlement that's a sham on its |
| 16 | face, they will be cleansed of all misconduct. |
| 17 | This is not a typical commercial transaction. |
| 18 | BY THE COURT:  What is the sham, Mr. |
| 19 | Trammell? |
| 20 | BY MR. TRAMMELL:  A sham--- |
| 21 | BY THE COURT:  What is the sham about this |
| 22 | settlement? |
| 23 | BY MR. TRAMMELL:  It is a scheme to put forth |
| 24 | an appearance of normalcy when in fact it has |
| 25 | ulterior motives that inure to the benefit of the |

69

```
 1    creator.

 2            BY THE COURT:  And, what are those?

 3            BY MR. TRAMMELL:  What are what?

 4            BY THE COURT:  Ulterior motives?

 5            BY MR. TRAMMELL:  Ulterior motives are to buy

 6    the peace of the approval of the settlement

 7    granting them immunity from further action by the

 8    class members.

 9            BY THE COURT:  Didn't they have a chance to

10    opt out?

11            BY MR. TRAMMELL:  Every class action has a

12    chance to opt out.

13            BY THE COURT:  Well, did these people in your

14    - that you purport to represent, did they have an

15    opportunity to opt out?

16            BY MR. TRAMMELL:  They did.

17            BY THE COURT:  And, they did not, did they?

18            BY MR. TRAMMELL:  They did not.

19            BY THE COURT:  Okay, go ahead.  You may

20    proceed.

21            BY MR. TRAMMELL:  There's a choice there,

22    Judge.

23            BY THE COURT:  Yes.

24            BY MR. TRAMMELL:  They can opt out and

25    prosecute or they can for the good of all come in
```

and object and say this settlement should not go

forward.

All right, so they do read the ten pages.
They do submit the claim form. USAA then compares
it to the data that they already have. If your
loss happened between 2006 and 2008, you'll get 5
or 7 or 9% of the original haircut that USAA gave
you back at the time you had your house fire.

Between July of 2008 and 2013, you might get
35% or you might get 45%, but no more. So
immediately they've given the members of USAA most
of which are military veterans at least a 55%
haircut and up to a 92% haircut.

Now, when they say that – when they put the
$3,445,000 figure on the table, that is I suggest
an attempt to produce an approval because of the
big numbers. It also reaches to justify an
attorneys fee. Now, let me make a commentary
right here in that I am a strong advocate of the
class action process. When someone does a
consumer wrong to the tune of $15, we have no
recourse absent a visit to the Better Business
Bureau or something like that. But when you add
up 740,000 people that they can identify at $15
per, then a State Farm, anybody will take notice

| | |
|---|---|
| 1 | and that will curb future behavior because it will |
| 2 | probably be a deterrent and also punitive in |
| 3 | nature. |
| 4 | My people - the ones I represent are asking |
| 5 | the rhetorical question that arises from the very |
| 6 | beginning of the relationship between USAA and |
| 7 | their acquisition of property coverage. This is |
| 8 | not going down to your independent insurance agent |
| 9 | and saying, shop me the best price with |
| 10 | Progressive, Liberty or State Farm. Instead, USAA |
| 11 | was formed in the early 1920's by twenty West |
| 12 | Point officers that got together and said, let's |
| 13 | protect each other. Let's insure each other. |
| 14 | Since that time they have marketed themselves |
| 15 | primarily as a military company. It's owned by |
| 16 | the members. It's not really owned by the |
| 17 | members, but it's a reciprocal company which is to |
| 18 | say just like the twenty-five West Point guys in |
| 19 | the 20's, I'll protect you if your car goes over a |
| 20 | cliff and you protect me if my car goes over a |
| 21 | cliff, but the principle is the same. The members |
| 22 | at the end of the year receive whatever extra is |
| 23 | in the pot which is properly retained at USAA. |
| 24 | Over the course of that solicitation for their |
| 25 | business be it through the Navy offices, they have |

offices throughout and the reason and this happens
to anybody, advertising in major markets.  There's
a major military base in San Diego, San Francisco,
just about every major market and my guys are
really serious and I put it in there for their
benefit.  If they are busted and in this case they
are officially as of last Thursday in my opinion,
then they need to either come up with a reason why
the Supreme Court decision of last Thursday does
not apply to them or they need to finally fess up
and go, we are no longer going to deny that we had
anything to do with it and using the words of
their PR professional from Sacramento that USAA
deferred to to make a statement, he said these
cases are such a nuisance, but sometimes we just
have to do it because everything is so expensive
related to the class action.  That's going to be
offered in the record one of these days assuming
we get to have a hearing.

        The objectors in the class action case serve
a very very valuable purpose generally speaking,
but here especially so for the simple reason,
there has been a fiduciary relationship
established by the nature of the marketing, the
promotion, the God, Country, Flag, Duty, Honor,

1    Country techniques that they use and I'll be the
2    first one to admit the typical USAA member thought
3    that USAA really had their back and they don't in
4    this case because for instance, you'll find in
5    your readings that USAA tends to seize upon the
6    statute of limitations and even though they do owe
7    the claim, ethically and morally, technically they
8    can seize on the statute of limitations and not
9    pay that group before July, 2008.  That's why
10   there are percentages like 3, 5 or 7%.  They are
11   held to a different standard.  A fiduciary
12   relationship involves someone that entrusts and in
13   this case they are entrusting their protection of
14   their property, they are entrusting their
15   financial wherewithal and USAA through their
16   marketing has accepted that and the breach is
17   usually in disclosing.  USAA is not disclosing
18   anything, only if you go through a laborious
19   process.

20        Much about what you do every day, Judge, is
21   discretion.  Mr. Vowell couldn't have said it
22   better.  An intervention is solely within your
23   discretion.

24        Now, if you deny my four officers the right
25   to intervene in this case be it individually

74

1       represented by one lawyer or through the requested

2       subclass, then it's smooth sailing.  It's time for

3       the group to line up and pop the bottle of

4       champagne.  That's why we have the right to object

5       and in your discretion, given the nature of the

6       fiduciary duties here in this case and given

7       proper motion added to the objection at the end,

8       it's in your discretion to permit them to go

9       forward and they are needed.  What possibly is

10      wrong with someone coming in and airing another

11      view of this besides USAA that wants to buy your

12      peace for change and the class counsel that now is

13      motivated to also go with the group settlement but

14      for the objectors and interveners.

15           Now, the notice says that you will copy in

16      the claim administrator.  My reading of the rules

17      of civil procedure are you've got parties to the

18      action, you've got counsel representing them.  The

19      claim administrator is a contractor hired probably

20      by the class counsel, probably paid by USAA to

21      notice the people that hired them is to notice the

22      claim administrator.  So, if it's really a

23      requirement in the notice, certainly it is

24      satisfied in the spirit when the November 16th

25      deadline was satisfied in the filing of the

1    objection to intervention.

2        I make the observation here that these

3    lawyers all come from substantial law firms.  They

4    are all heavily loaded up.  Now, if the Court

5    wants to approve a process that limits access to

6    the Polk County Circuit Court, only to those that

7    can have enough resources to respond to forty-five

8    day deadlines and to guess what the data is

9    underlying the preliminary settlement, that's –

10    that's I guess within the power of the Court.  I

11    don't think it's appropriate and it doesn't do the

12    public justice.

13        I have covered the points made by Mr. Vowell

14    and I appreciate your time.

15        BY THE COURT:  Mr. Baker, any response?  I'm

16    not saying you have to.

17        BY MR. BAKER:  No, Your Honor, I have no

18    additional argument.

19        BY THE COURT:  Mr. Vowell.

20        BY MR. VOWELL:  Just a couple of points in

21    rebuttal, Your Honor.  First of all, as far as the

22    claim form and the notice, those were approved by

23    the Court long ago as the best reasonable notice

24    in this case and now is not the time to be finding

25    the claim form objectionable, but in that regard

76

| | |
|---|---|
| 1 | the notice and the claim form are attached in two |
| 2 | or three of our different briefings in the case. |
| 3 | Yes, the notice is ten pages long, but I |
| 4 | submit that any grade school can read it and |
| 5 | understand it. It's structured with a number of |
| 6 | questions. What is Actual Cash Value Payment? |
| 7 | Actual Cash Value Payment, "ACV payment" is |
| 8 | calculated by estimating the replacement cost |
| 9 | value of the covered damage and subtracting |
| 10 | depreciation. I mean, it's in grade school |
| 11 | language. It's clearly - it goes through a series |
| 12 | of questions and tells them what should I do and |
| 13 | am I a member of the class, do I have the right to |
| 14 | exlude myself from the class. |
| 15 | No. 15, how do I qualify for a payment? You |
| 16 | may qualify for a payment if you suffered a |
| 17 | structural loss from January 1, 2006 to |
| 18 | December 31, 2014 that resulted in an actual cash |
| 19 | value payment and where the labor was depreciated. |
| 20 | At the top of the page, that's Page 5 it has |
| 21 | a box that people can go down to determine whether |
| 22 | or not they are a member of the class. It tells |
| 23 | them - how do I get a payment and in very plain |
| 24 | basic elementary language. How do I get out of |
| 25 | the settlement? If you want to exclude yourself |

from the settlement you must send a letter to the
settlement administrator by first class mail with
a clear statement that you want to be excluded
have the Adams versus United States Automobile
Association settlement.

I don't know how much easier and clearer it
could get? I don't think it can get any easier.

No. 26, how do I tell the Court that I don't
like the settlement? If you are a class member
and you haven't excluded yourself from the
settlement, you can object to the proposed
settlement if you don't like it or try to
intervene in the case. However, you cannot object
if you have excluded yourself. In other words,
you must stay in the class as a class member in
order to object or to intervene in the case. I
mean, a grade school student can read and
understand the notice.

The claim form is equally basic and
elementary and the Court can look at it. It asks
some very simple questions and it states if you
don't have the documentations to support your
claim fine, submit your claim anyway. You don't
have to or if you don't know, check the box saying
I don't know.

And, Mr. Trammell says, well, there may be deceased insured that would be entitled to make a claim and maybe their personal representative does not have the documentation. They are not asked for documentation to prove their status as personal representative. They are asked if they are an executor or an administrator, but they are not asked to submit that documentation. They are asked simple questions, are you an administrator of the estate, etc.

Mr. Trammell somehow thinks that the class is just not going to be informed of this action. You have seen - you have before you the affidavit of the administrator Rust Consulting. They sent out 14,988 notices, twelve shy of fifteen thousand. There was that many potential claimants. Based upon the mailing and few returns which were remailed, they determined and they filed an affidavit in this case showing that 14,886 of those notices were received. Only 202 have not been received by the addressee. That addresses or person who received it might be the spouse of the insured. It might be the personal representative of the estate, but they were received by the persons to whom they were addressed or their

79

| | |
|---|---|
| **1** | authorized representative. Every – it's |
| **2** | unprecedented. It's a 99% success rate on the |
| **3** | notice. |
| **4** | Mr. Trammell would have you believe that USAA |
| **5** | intends to short these insureds by 55% and maybe |
| **6** | as much as 90%. I think that Mr. Trammell does |
| **7** | not perceive the way that the settlement is |
| **8** | structured and I went through that in detail with |
| **9** | the Court at the preliminary approval hearing. |
| **10** | We engaged in extensive discovery with USAA. |
| **11** | We received a sampling of the claims filed |
| **12** | covering the claims period. We had those claim |
| **13** | files examined by an expert at that cost in excess |
| **14** | of $150,000 to have those things examined. Our |
| **15** | expert came up with damage model. We were able to |
| **16** | determine based upon the sampling – based upon |
| **17** | samplings that we received in the other class |
| **18** | action cases that it is almost universally |
| **19** | accurate that labor depreciation on a property |
| **20** | damage claim amounts to 45% of the total |
| **21** | depreciation figure. Total depreciation is |
| **22** | depreciation of materials, depreciation of sales |
| **23** | tax, overhead, profit and other matters but long |
| **24** | story short, the total depreciation encompasses |
| **25** | the whole gamut of items that are depreciated. |

1    Labor depreciation is only one part of that and

2    based upon the thousands of files that have been

3    examined in this and other cases, it almost never

4    varies, the labor depreciation is 45% of the total

5    depreciation.  So, if a class representative such

6    as those within the five year class period that do

7    not have statute of limitation issues, the

8    settlement says they will receive a payment equal

9    to 45% of the total depreciation which means they

10   are getting 100% of the labor depreciation.

11        Now, assuming if they did not receive any

12   reimbursement after their initial ACV payment, if

13   they did receive a partial reimbursement then they

14   will receive 35% of the total depreciation.

15        In the scheme that is set out in the

16   settlement documents and in the motion for

17   approval, for final approval so those persons who

18   are outside of a five year statute of limitations

19   I dare say would never be able to receive a

20   payment except for this settlement.

21        We have pled in this case and in the other

22   cases that the insurance company owes a fiduciary

23   duty to its insureds and that therefore they had

24   the duty to inform those insureds that they were

25   depreciating labor.  That contention has never

1   been upheld and I challenge Mr. Trammell's

2   assertion that there is a fiduciary relationship

3   between USAA and its insureds.  That's not the law

4   in the State of Arkansas.  It's never been the law

5   that an insured and an insurance company in a

6   property and casualty insurance policy stand in a

7   fiduciary relationship.

8       So, I digressed from my point. My point was

9   that we've done that road about the five statute

10  of limitations and at least one court in the State

11  of Arkansas has ruled that you cannot recover

12  beyond five years from the date of the filing of

13  the claim.  You cannot make out a case, you have

14  not even alleged and you are not able to allege

15  facts which would allow that statute of

16  limitations to be extended beyond five years

17  whether it be based on fraudulent concealment or

18  any other theory.

19      So, those insureds in this case whose claims

20  are beyond the five year period are simply getting

21  a windfall and the fact that they are getting less

22  recognizes the fact that what they are getting is

23  pure windfall which they would not otherwise be

24  able to get in an action against USAA.

25  I want to make one last point and that is Mr.

82

1    Trammell referred to Paragraph 80 of the

2    stipulated settlement in saying that USAA has

3    absolutely no obligation to pay anything.  Mr.

4    Trammell did not read the entire language of that

5    paragraph.  That language says in no event shall

6    Defendants be liable for making any payments under

7    this settlement for claim payments, the attorney

8    fee award and the fees and costs of the neutral

9    evaluator before the deadline set forth in the

10   stipulation and in no event before the effective

11   date.  It doesn't say they are under no obligation

12   to pay anything, it says they don't have to pay it

13   until it becomes due and until the effective date.

14        Mr. Trammell complains vigorously about the

15   claimants made settlement, the claimants made

16   settlement and has been approved for a long time

17   in the State of Arkansas.  I would point out as

18   Mr. Trammell has said, USAA is a - I don't know

19   whether it's a mutual benefit or what the proper

20   term for the legal organization in that it's owned

21   by its own insureds, money that is not claimed

22   under this settlement goes back to USAA where it's

23   in effect going by USAA's own insureds since they

24   own the company.

25        That's all I have, Your Honor.

1    BY THE COURT:  I have a question.  Mr.

2    Trammell.

3    BY MR. TRAMMELL:  Yes, sir.

4    BY THE COURT:  You - I'm just going to ask

5    you just basically and you can sit right there,

6    that's fine.  Is it your intention that - first of

7    all let me ask you, you have not filed a motion to

8    intervene, is that correct?

9    BY MR. TRAMMELL:  Yes--

10   BY THE COURT:  When did you file your

11   objection?

12   BY MR. TRAMMELL:  The same day I filed the

13   intervention, November 16th.

14   BY THE COURT:  You did file an intervention?

15   BY MR. TRAMMELL:  At the end of the objection

16   there's a motion paragraph.

17   BY THE COURT:  Okay.

18   BY MR. TRAMMELL:  In context with that, Your

19   Honor.

20   BY THE COURT:  Are you asking for

21   intervention as a matter of right or permission?

22   BY MR. TRAMMELL:  As a matter of right, class

23   members.

24   BY THE COURT:  Yes, sir, okay, that's all I

25   needed to ask you.  Did you serve - did you serve

that - did you attach a petition to your - to your
motion for intervention?

BY MR. TRAMMELL: That's what I wanted to
bring up with the gentleman that's been dismissed.
In this case, there is but one pleading, that is
the complaint and then we go straight to the
motion for preliminary settlement.

BY THE COURT: Was that attached to your
motion to intervene?

BY MR. TRAMMELL: No, sir and the suggestion
is the Court there is no purpose in it because
there is but one pleading.

BY THE COURT: Well, it says under Rule 24
subsect c the motion shall state the grounds
thereof and shall be accompanied by a pleading
setting forth the claim or defense to which the
intervention is sought.

BY MR. TRAMMELL: Yes, sir.

BY THE COURT: If there was no pleading
attached to it, then you would have had to have
stated in your motion that it was not necessary to
do that and I don't know why you wouldn't do that.

BY MR. TRAMMELL: Or the Court would exercise
its unbridled discretion to do what is fair under
the circumstances and in this case, there is but

1    one pleading. The objection and intervention are

2    served upon the parties to the action and to

3    enforce a hyper-technicality in that notice is to

4    put form over substance.

5    BY THE COURT: Well, that's exactly right and

6    the Supreme Court of Arkansas has made it clear

7    the rules of civil procedure shall be strictly

8    complied with, substantial compliance is not

9    enough and it says in Rule c or sub c the pleading

10   shall set forth the claim or defense. It shall be

11   accompanied by a pleading.

12   So, you are acknowledging that that has not

13   been done, but you are saying it wasn't necessary,

14   that the Court had the discretion to ignore that.

15   BY MR. TRAMMELL: And, I'm quoting Mr. Vowell

16   as he goes through his intervention argument under

17   23 and 24 it's solely within the Court's

18   discretion and I think the Court in its discretion

19   would want to hear every fully airing as it

20   relates to this case because of the involvement of

21   the special character of the members of the class.

22   Thank you.

23   BY MR. BAKER: Your Honor, I must, with your

24   permission since you've raised questions now that

25   we really haven't talked much about, I need to

86

1    make a brief argument.  I don't take Mr.

2    Trammell's November 16, 2015 objection as a motion

3    to intervene at all.  It doesn't say that anywhere

4    on it.

5        BY THE COURT:  I can't find it in the file

6    quite frankly.

7        BY MR. BAKER:  Well, that---

8        BY THE COURT:  I've got a copy of it on my

9    desk back there.

10        BY MR. BAKER:  So, it---

11        BY THE COURT:  But I will look at it.

12        BY MR. BAKER:  If he's pulling that rabbit

13    out of the hat, I have all of the same arguments I

14    made with the Daughterty motion to intervene as

15    against Bro. Trammell, but I don't think - I mean

16    even the wherefore clause doesn't ask any

17    permission to intervene.  I mean---

18        BY MR. TRAMMELL:  Paragraph 23 of the

19    objection starts off with the phrase, motion.  A

20    subclass of veterans should be recognized and if

21    the Court is inclined not to grant a subclass, it

22    still has the four members that I represent before

23    the Court that are entitled to intervene.  It

24    cannot be any more clear, Mr. Baker.

25

BY MR. BAKER: Well, again here's the deal. If he has claims for his four clients that — against my client, I'm entitled to know what they are okay and that's the whole reason you have 24c. You have to — there's no hide the ball. If he has claims against USAA Defendants, he's got to attach a pleading that says what they are. I don't get to sit around and have to dream it up and have to discern what he's claiming against me and so it is important and that's exactly what the Hunter case said. This is news to me that he even thinks this thing is an intervention motion. It ought to be denied for its failure to adhere to 24c and it ought to be denied for all the same reasons we've articulated with the Daughterty motion.

BY MR. VOWELL: Your Honor, we join in Mr. Baker's argument in that regard.

BY THE COURT: Okay, thank you, gentlemen. Yes.

BY MR. TRAMMELL: If the Court would permit the parties to respond to the motion to dismiss and---

BY THE COURT: I think before we can get there there's a procedural hurdle first before we even get to that, Mr. Trammell. That's what I'm

1   taking under advisement and writing a letter to

2   the lawyers about. That's where we're at. I've

3   got to do that first of all whether I can even

4   consider Mr. Trammell's. That's the first hurdle

5   we've got to clear and if I say I can't consider

6   it procedurally because it didn't comply with the

7   rules, then that's the end of it and the only

8   issue before the Court then is to approve the

9   final settlement. Are we all understanding that,

10  Mr. Vowell?

11       BY MR. VOWELL: I believe so, Your Honor and

12  we are prepared to address today the motion for

13  final approval and a motion for fees and costs.

14       BY MR. TRAMMELL: The Court has told us in

15  chambers that he has not even finished his review

16  of the file yet.

17       BY THE COURT: I will look at that. Is it

18  necessary for you to make oral argument or oral

19  for that other than what you've just put in the---

20       BY MR. VOWELL: Well, if the Court reads our

21  papers, our brief in support, it clearly argues

22  in---

23       BY THE COURT: Basically your oral argument

24  would repeat what you've put in your motion and

25  brief.

BY MR. VOWELL: Yes, sir, yes, in all truth and honesty that would be regurgitation of what we put in our papers.

BY THE COURT: One other question I want to ask Mr. Vowell and Mr. Baker, on October 23rd there was a Ms. Lanicholas Anderson – on October 23rd filed a letter with the Court, I don't see any certificate of service where she disagreed to the conditions of the payments for this case. Apparently it is some type of form of an objection that she has made. It's a four page document. There is no certificate of service on it. I'm assuming no one here at counsel table has received that, but I've marked it and I will have – allow you to make a copy of it. I'm going to have to address unless you all have something on that. Mr. Taylor.

BY MR. TAYLOR: It's not shown on the docket.

BY MR. BAKER: I have no knowledge of it, it's not shown on our docket.

BY THE COURT: It's probably because you didn't get it. It was just filed with the Court, but I think I'm going to need to address that and I haven't read it. It just appears to be some type of an objection. This lady lives in Pine

90

1  Bluff, Arkansas. This letter was dated – I've got

2  it on here somewhere, she has her address and

3  telephone number on it and I believe it was dated

4  October 18, 2015, filed in the clerk's office on

5  October 23, 2015. I'll mark it for you and have

6  the bailiff make copies for you.

7  BY MR. VOWELL: I'm sorry, what was the name

8  of the lady again that---

9  BY THE COURT: I can't pronounce her first---

10  BY MR. VOWELL: I was just checking. I can't

11  see that she's on the list of persons seeking

12  exclusion.

13  BY THE COURT: I have a little trouble with

14  her first name, let me spell it for you,

15  L-a-n-i-c-h-o-l-a-s, Lanicholas, Michelle,

16  M-i-c-h-e-l-l-e, Watts, W-a-t-t-s/Anderson.

17  BY MR. VOWELL: Okay, no, she is not on the

18  list.

19  BY THE COURT: And, she has put her address

20  and telephone number on this pleading and I'll

21  have the bailiff make a copy of it and let you all

22  look at it. But, she didn't file anything other

23  than a letter and I probably need to address that

24  since it was filed.

25  Okay, gentlemen, I will get a letter out to

91

1    you.

2              BY MR. TRAMMELL:  Your Honor, can I---

3              BY THE COURT:  Yes, sir.

4              BY MR. TRAMMELL:  I'd like to make a record

5    if possible.  I'd like to offer a couple of

6    exhibits.  I'm asking - has the claim form been

7    offered yet?

8              BY THE COURT:  I think it's - it's part of

9    the file isn't it?  I think it was made as an

10   exhibit to the preliminary.

11             BY MR. VOWELL:  It is an exhibit to the

12   motion for preliminary approval and Your Honor, we

13   do have today a group of exhibits that we would

14   request the Court to allow to be introduced into

15   evidence.

16             BY MR. TRAMMELL:  Excuse me, sir.  I was in

17   the middle of offering my exhibits.

18             BY MR. VOWELL:  I'm sorry.

19             BY MR. TRAMMELL:  All right.

20             BY MR. VOWELL:  He asked me a question.

21             BY THE COURT:  Go ahead, Mr. Trammell, what

22   are you proffering?

23             BY MR. TRAMMELL:  I'm offering Polk County

24   Circuit Docket as of today from the circuit Clerk

25   as Trammell Objector's 1.

92

1    BY THE COURT:  Any objection?

2    BY MR. VOWELL:  No, Your Honor.

3    BY THE COURT:  Have you seen it, Mr. Baker?

4    BY MR. BAKER:  I haven't.

5    BY THE COURT:  I think it's a copy of---

6    BY MR. BAKER:  If it's a docket sheet, I have

7        that.

8    BY THE COURT:  It's received without

9        objection.

10   (AT THIS TIME THE DOCKET SHEET IS INTRODUCED INTO THE

11   RECORD MARKED AS TRAMMELL'S OBJECTOR'S EXHIBIT NO. 1)

12   BY MR. TRAMMELL:  And, I'd like to offer the

13       claim form attached to the original ten page

14       notice.

15   BY THE COURT:  Any objection?

16   BY MR. VOWELL:  That's the claim form?

17   BY THE COURT:  The claim form.

18   BY MR. VOWELL:  No objection, Your Honor.

19   BY THE COURT:  Mr. Baker?

20   BY MR. BAKER:  No objection.

21   BY THE COURT:  Do you need to see it?

22   BY MR. BAKER:  If it matches what is already

23       in the record, I have no objection to it.

24   BY THE COURT:  All right, thank you.  Mr.

25       Trammell it will be received.  I don't know how

93

| 1 | you're going to mark these. I just – Trammell, |
| 2 | that's fine. |
| 3 | BY MR. TRAMMELL: Trammell Objector's 2. |
| 4 | (AT THIS TIME THE CLAIM FORM IS INTRODUCED INTO THE |
| 5 | RECORD MARKED AS TRAMMELL OBJECTOR'S EXHIBIT NO. 2) |
| 6 | BY MR. TRAMMELL: And, finally the motion to |
| 7 | dismiss or in the alternative for a continuance |
| 8 | primarily to offer the exhibits attached thereto. |
| 9 | That will be collective Trammell's Objector's |
| 10 | Exhibit 3. |
| 11 | BY THE COURT: Any objection? |
| 12 | BY MR. BAKER: Yes, we object to that. He |
| 13 | has not been granted party status. He has no |
| 14 | standing or authority to file. He filed the |
| 15 | motion as a non-party and we do object. |
| 16 | BY THE COURT: Okay, I will allow it as a |
| 17 | proffer at this time. Thank you, Mr. Trammell. |
| 18 | (AT THIS TIME THE MOTION IS PROFFERED INTO THE RECORD |
| 19 | MARKED AS TRAMMELL OBJECTOR'S EXHIBIT NO. 3) |
| 20 | BY THE COURT: Mr. Vowell. |
| 21 | BY MR. VOWELL: Your Honor, in our motion for |
| 22 | approval of attorney fees and expenses we have |
| 23 | referred to several exhibits and we've attached to |
| 24 | that motion an appendix of exhibits consisting of |
| 25 | six different documents and I would offer as |

94

Exhibit 1 the entire appendix consisting of six

2       different documents.  I'll tell you what those

3       documents are for the record.  The first document

4       of the Plaintiff's Exhibit or Appendix of Exhibits

5       is the Stipulation of Class Action Settlement.

6       No. 2 in the appendix of exhibits is the Motion

7       for Preliminary Approval of Class Action

8       Settlement.  No. 3 is the Order Preliminarily

9       Approving Class Action Settlement.  No. 4 is the

10       Affidavit of Matt Keil in support of the

11       application for attorney fees.  No. 5 is the

12       Affidavit of Plaintiff Mark Adams in support of

13       the application for attorney fees and No. 6 is the

14       Affidavit of Katherine Adams in support of the

15       application for attorney fees.  As I said, these

16       documents were attached as exhibits to the motion,

17       but they are not actually exhibits in this record

18       so I'm offering them as such at this time as

19       Plaintiff's Exhibit No. 1, an accumulative

20       exhibit.

21            BY THE COURT:  They will be received.

22  (AT THIS TIME THE SIX DOCUMENTS ARE INTRODUCED INTO

23  THE RECORD AS PLAINTIFF'S EXHIBIT NO. 1)

24            BY MR. VOWELL:  I'm also offering as

25            Plaintiff's Exhibit No. 2 another cumulative

95

1   exhibit.   It's called Plaintiff's Supplemental

2   Appendix of Exhibits.   That appendix of exhibits

3   is referenced in our petition for final approval

4   of the settlement that's been filed with the Court

5   and these exhibits in the supplemental appendix

6   are attached to the motion for final approval, but

7   I would offer them as Exhibit 2, a group exhibit

8   and I'll identify those at this point.

9        No. 1 is the affidavit of Tore Hodne who is

10   the authorized representative of Rust Consulting.

11   We've talked a lot today about facts that have

12   been put forward by Rust Consulting, their notice

13   and those facts are verified in the affidavit of

14   Ms. Hodne.

15        No. 2 is – well, actually it's the notice and

16   it's already been put in by Mr. Trammell, but I'll

17   leave it.

18        BY MR. TRAMMELL:   Notice?   I'm sorry, I just

19   put the claim form in so notice should go in.

20        BY MR. VOWELL:   Next is the List of Opt-Outs,

21   thirteen persons who opted out.

22        Next is a List of Persons who Submitted

23   Objections.

24        Next is the Supplemental Affidavit of Matt

25   Keil.

| 1 | Next is the claim form, but I believe that |
| --- | --- |
| 2 | has been offered by Mr. Trammell, is that correct? |
| 3 | BY MR. TRAMMELL: That's correct. |
| 4 | BY MR. VOWELL: And, received so I will pull |
| 5 | that out. We offer this as Plaintiff's Cumulative |
| 6 | Exhibit 2. |
| 7 | BY THE COURT: Be received. |
| 8 | (AT THIS TIME THE DOCUMENTS ARE INTRODUCED INTO THE |
| 9 | RECORD AS PLAINTIFF'S CUMULATIVE EXHIBIT NO. 2) |
| 10 | BY MR. VOWELL: Your Honor, we have a |
| 11 | proposed Order Approving the Final Settlement - |
| 12 | Approving the Motion for Approval of Final |
| 13 | Settlement and Application for Attorney Fees we |
| 14 | would submit to the Court for its consideration. |
| 15 | I understand the Court is not going to read and |
| 16 | consider it – this is our proposal for final |
| 17 | order. |
| 18 | BY THE COURT: All right gentlemen, is that |
| 19 | it? |
| 20 | BY MR. TRAMMELL: That's it. |
| 21 | BY MR. BAKER: It is Your Honor. |
| 22 | BY THE COURT: All right, thank you very |
| 23 | much, gentlemen. |
| 24 | (THIS CONCLUDES THE PROCEEDING HELD ON THE 16TH DAY OF |
| 25 | DECEMBER, 2015) |