IN THE CIRCUIT COURT OF POLK COUNTY, ARKANSAS

MARK L. ADAMS and KATHERINE S. )
ADAMS, individually and on behalf of all )
others similarly situated, )
                               )
            Plaintiffs, )
                               )
vs. )    Case No. CV-2015-105
                               )
UNITED SERVICES AUTOMOBILE )
ASSOCIATION, USAA CASUALTY )
INSURANCE COMPANY, USAA GENERAL )
INDEMNITY COMPANY, and GARRISON )
PROPERTY AND CASUALTY INSURANCE )
COMPANY, )
                               )
            Defendants. )

## PLAINTIFFS' SUPPLEMENTAL APPENDIX OF EXHIBITS

Respectfully Submitted,

_(signature)_

W.H. Taylor, Ark. Bar No. 81154
Stevan E. Vowell, Ark. Bar No. 75134
William B. Putman, Ark. Bar No. 91198
Timothy J. Myers, Ark. Bar No. 92110
TAYLOR LAW PARTNERS
301 E. Millsap Road
P.O. Box 8310
Fayetteville, Arkansas 72703
Telephone: (479) 443-5222
Facsimile: (479) 443-7842

Matt Keil, Ark. Bar No. 86099
John C. Goodson, Ark. Bar No. 90018
KEIL & GOODSON, P.A.
406 Walnut Street
Texarkana, Arkansas 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

*Plaintiffs for Attorneys and the Class*

218



# EXHIBIT 1

217

IN THE CIRCUIT COURT OF POLK COUNTY, ARKANSAS

MARK I. ADAMS and KATHERINE S.
ADAMS, Husband and Wife, individually
and on behalf of all others similarly
situated,

          Plaintiffs,                 Case No.:    Cv-2015-105

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, USAA GENERAL
INDEMNITY COMPANY, and GARRISON
PROPERTY AND CASULATY INSURANCE
COMPANY,

          Defendants.

## AFFIDAVIT OF TORE HODNE REGARDING NOTIFICATION, REQUESTS FOR EXCLUSION AND SETTLEMENT ADMINISTRATION SERVICES

STATE OF MINNESOTA  )
                    ) ss.
COUNTY OF HENNEPIN  )

    1.    I am a Client Services Director for Rust Consulting, Inc. ("Rust Consulting"),

which serves as the settlement administrator for the settlement of the above-captioned action

("Settlement"). I am responsible for supervising the settlement administration services provided

by Rust Consulting in connection with the Settlement. I have personal knowledge of the facts

set forth below. I submit this affidavit as proof of mailing of the Mailed Notice and Opt-Out List

called for under Paragraph 17 of the Court's Order Preliminarily Approving Class Settlement

dated August 26, 2015.

220

2.      With 35 years of class action settlement administration experience, Rust Consulting is among the industry's leaders.  Rust Consulting has provided services in class action lawsuits affecting millions of class members in cases involving employment, consumers, property, insurance, securities and product liability.  Rust Consulting has administered more than 5,000 class action settlements and judgments, 2,000 of which were in the past five years alone.

3.      On August 26, 2015, the Court issued a Preliminary Approval Order which, among other things, appointed Rust Consulting as the Settlement Administrator for this Settlement and approved the form and manner of the Class Mailed Notice and Claim Form Package and the Notice Plan.  As Settlement Administrator in this matter, Rust Consulting has provided the following administration services:

     (i)      securely received and stored Settlement Class Member data in a proprietary database dedicated to this Settlement;

     (ii)     updated Settlement Class Member addresses using the United States Postal Service National Change of Address (NCOA) database;

     (iii)    prepared, printed, and mailed the Class Mailed Notice and Claim Form to Settlement Class Members;

     (iv)    obtained a mailing address and an email address for the purpose of receiving class member inquiries;

     (v)     created a website and posted for inspection copies of the Order Preliminarily Approving Class Settlement, Motion for Preliminary Approval of Class Settlement, the long form notice and the web claim form;

(vi)    created an automated telephone support system and live call center for the purpose of answering Settlement Class Member questions;

(vii)    received, processed, and evaluated all Settlement Class Member Communications, including requests for exclusion and objections, if any.

(viii)    In addition, assuming the Court grants final approval of the Settlement, it is expected that Rust Consulting will assist, as needed, with the distribution of payments to Participating Class Members.

4.    The Mailed Class Notice and Claim Form Package used in this settlement are standard in the industry. The goal of the Mailed Class Notice and Claim Form Package should be to deliver information that is understandable to the class members and clearly articulates options and deadlines.  To ensure deliverability of the Mailed Class Notice and Claim Form Package, Rust follows two industry standard best practices to obtain updated address information. Rust updates addresses from information available in the National Change of Address ("NCOA") database prior to mailing the Package. If a Mailed Class Notice and Claim Form Package is returned as undeliverable with no forwarding address, Rust uses the batch trace process to update addresses and re-mail them to the updated addresses found.  I attest that Exhibit A is a true and correct copy of the Mailed Notice and Claim Form Package.

5.    The Mailed Class Notice and Claim Form Package was mailed to all Class Members by October 8, 2015; the deadline for a Class Member to exclude themselves from the Settlement was November 16, 2015, and the deadline to file an objection was also November 16, 2015. Based on the mailing date, and the length of time it takes for mail to be delivered in the United States, the Mailed Class Notice and Claim Form Package would be expected to

3

arrive more than 30 days in advance of the deadline.  The amount of time that Class Members were given to exclude themselves or object to a settlement is consistent with other settlements we have administered.

6.     The settlement in this case calls for the Class Members to submit a claim form in order to be eligible for payment.  A claim form process is typical in class action settlements that involve monetary payments, like this one, and Rust Consulting has routinely administered class action settlements that include a claim form process. From an administration perspective, the use of a claim form provides us with a means of confirming addresses and recipients, thereby reducing the number of misdirected payments and the resulting potential for fraud. It is our experience that checks mailed directly to the mailing list maintained in the defendant's database would result in a higher percentage of undeliverables or improperly delivered checks. Improperly delivered checks are problematic because they are more likely to be cashed by non-class members, potentially discarded, or otherwise never presented to a bank. By using the claims process, the risk of fraud and the number of misdirected payments is reduced.

7.     The claim form provided to class members in this class action is not unlike those forms routinely used in other class action settlements.  It is preprinted with their specific information that includes their name, mailing address, policy number, member number, and date of loss. This enables recipients to determine their class membership and to compare the list of policy numbers, member numbers and dates of loss against their records and provide missing numbers, if any. This process allows class members the opportunity to correct the information. Consequently, the administrator will pay the correct class member and mail the payment to the correct address.

4

223

8.    This claims process has the common characteristics of those that seek to maximize class member participation and to encourage class members to file claims by simplifying processes and providing support for class members who may have more complex claims. Through the claims process, class members are able to either go online to the website, www.HomeownersInsuranceSettlement.com, or contact the call center for assistance. Both will provide the answers to frequently asked questions.

9.    Rust Consulting obtained the following mailing address to be used for receiving requests for exclusion, objections, undeliverable Class Mailed Notice and Claim Form Packages, and other communications regarding the Settlement: USAA Class Action Settlement, P.O. Box 2411, Faribault, MN 55021-9100. Rust Consulting also obtained the following email address to be used for receiving class member communication: info@HomeownersInsuranceSettlement.com.

10.    A toll-free telephone support line (1-888-773-8278) providing live call support during normal business hours and a 24-hour service via Interactive Voice Response system was established on October 8, 2015 for Settlement Class Members to call with questions regarding the Settlement.

11.    Rust Consulting created and continues to maintain the Settlement Class Website. The following internet address was reserved: www.HomeownersInsuranceSettlement.com. The internet address appeared in the Class Mailed Notice and Claim Form Package. The Settlement Class Website became operational on October 8, 2015. This website contains a copy of the Long Form Notice, Web Claim Form, the Order Preliminarily Approving Class Settlement and the Motion for Preliminary Approval of Class Settlement. The website also provides the toll-

free telephone number and mailing address for the Settlement Administrator, contact information for Class Counsel, Frequently Asked Questions and Answers.

12.    Rust Consulting received an electronic record of the last known name and address for class members on September 14, 2015. Each class member's last known address was updated from information available in the National Change of Address ("NCOA") database prior to the mailing of the Notices. A total of 206 addresses were updated through the NCOA process.

13.    On October 8, 2015, Rust Consulting caused a total of 14,988 Mailed Notice and Claim Form Packages to be mailed by First-Class Mail.

14.    Through December 8, 2015, ten Mailed Notice and Claim Form Packages were returned as undeliverable with a forward order on file. Nine of those undeliverable Packages were re-mailed on November 5, 2015, with the tenth to be re-mailed on December 11, 2015. Rust will continue to re-mail the Mailed Notice and Claim Form Packages that are returned as undeliverable with a forward order on file.

15.    Through December 8, 2015, 202 Mailed Notice and Claim Form Packages were returned as undeliverable with no forwarding address. On October 28, 2015, Rust Consulting performed an address trace on 132 undeliverable packages and 39 Mailed Notice and Claim Form Packages were re-mailed on November 5, 2015. Thus, it appears that the notice campaign has successfully reached approximately 14,786 out of 14,988 potential Settlement Class Members, which is nearly 99% of the potential Settlement Class Members. This result is higher than most other class action settlements that Rust Consulting has administered. Rust will continue to batch trace Mailed Notice and Claim Form Packages that come back as undeliverable with no forwarding address and re-mail to those receiving an updated address.

**Response of Settlement Class Members**

16.     The Claims Period is open, and Rust Consulting is currently receiving Claim Forms from Class Members. The Claims Period closes on February 1, 2016.

17.     As of December 8, 2015, Rust Consulting has received 13 timely requests for exclusion from the Settlement Class, pertaining to 20 records (the "Opt-Out List"). I attest that Exhibit B is a true and correct copy of the Opt-Out List called for by Paragraph 17 of the Court's Order Preliminarily Approving Class Action Settlement dated August 26, 2015.

18.     As of December 8, 2015, Rust Consulting has been notified by Plaintiff's and Defense Counsel that one objection and one motion to intervene have been filed. See Exhibit C for a true and correct copy of those class members included in the filed objection and motion to intervene.

**Future Administration Duties To Be Performed By Rust Consulting, Subject To Court Approval**

19.     If ordered to do so by the Court, Rust will establish a Qualified Settlement Fund for the administration of the Settlement payments to Participating Class Members. Rust will prepare and distribute the Settlement payments for the Participating Class Members according to the methodology detailed in the Settlement Agreement and approved by the Court.



I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_TORE HODNE._

SWORN TO AND SUBSCRIBED BY ME ___Shari Barron___

on this, the 9th day of December, 2015.

(Notarial Seal)

NOTARY PUBLIC

My Commission Expires: 1/31/2020

SHARON DENISE BARRON
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2020

8   227

# EXHIBIT A

228

USAA CLASS ACTION SETTLEMENT
P.O. BOX 2411
FARIBAULT, MN 55021-9100

## IMPORTANT LEGAL MATERIALS

 - <<SequenceNo>>

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

### IN THE CIRCUIT COURT OF POLK COUNTY, STATE OF ARKANSAS

A class action settlement involving USAA homeowners insurance
may provide payments to those who qualify.

*A court authorized this Notice.*
*This is not a solicitation from a lawyer. You are not being sued.*

If you are a Class Member, your legal rights are affected whether you act or don't act.

### PLEASE READ THIS NOTICE AND THE ENCLOSED CLAIM FORM CAREFULLY

- This Notice provides information about a proposed settlement in a class action lawsuit concerning whether United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company and Garrison Property and Casualty Insurance Company (collectively, "USAA") have properly applied Depreciation when adjusting claims for Structural Losses under Homeowners Insurance Policies in the State of Arkansas. USAA denies any wrongdoing. The Court has not ruled on the merits of Plaintiffs' claims.

- You may be eligible for a payment if you qualify and timely submit a valid Claim Form.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a payment under the settlement. |
| EXCLUDE YOURSELF | Get no payment. This is the only option that allows you to ever be a part of any other lawsuit against the Defendants about the legal claims in this case. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. . |
| DO NOTHING | Get no payment. Give up rights. |

- These rights and options, and the deadlines to exercise them, are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve this settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL 1-888-773-8278 TOLL-FREE, OR VISIT www.HomeownersInsuranceSettlement.com.
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR 1-888-773-8278, O VISITAR www.HomeownersInsuranceSettlement.com.
-1-



## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ............................................................................................................. 3
   1. Why was this Notice issued?
   2. Which USAA Companies are part of the settlement?
   3. What is this lawsuit about?
   4. What is Depreciation?
   5. What is an Actual Cash Value Payment?
   6. What is a Structural Loss?
   7. What is a Homeowners Insurance Policy?
   8. Why is this a class action?
   9. Why is there a settlement?

WHO IS IN THE SETTLEMENT ............................................................................................... 4
   10. How do I know if I am part of the settlement?
   11. Are there exceptions to being included?
   12. Understanding Class membership.
   13. I'm still not sure if I am included.

THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY ....................................... 5
   14. What does the settlement provide?
   15. How do I qualify for a payment?
   16. How much will payments be?

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM ............................................... 6
   17. How can I get a payment?
   18. When will I get my payment?
   19. What if I disagree with the amount of my payment?
   20. What am I giving up to get a payment or stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT ............................................................... 7
   21. How do I get out of the settlement?
   22. If I don't exclude myself, can I sue the Defendants for the same thing later?
   23. If I exclude myself, can I get a payment from this settlement?

THE LAWYERS REPRESENTING YOU ................................................................................... 8
   24. Do I have a lawyer in the case?
   25. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT ...................................................................................... 8
   26. How do I tell the Court that I don't like the settlement?
   27. What's the difference between objecting and excluding yourself?

THE COURT'S FINAL APPROVAL HEARING .......................................................................... 9
   28. When and where will the Court decide whether to approve the settlement?
   29. Do I have to come to the Hearing?
   30. May I speak at the Hearing?

IF YOU DO NOTHING ......................................................................................................... 10
   31. What happens if I do nothing at all?

GETTING MORE INFORMATION .......................................................................................... 10
   32. How do I get more information about the settlement?

230

## BASIC INFORMATION

### 1. Why was this Notice issued?

The Court authorized this Notice because you have a right to know about a proposed settlement of this class action, including the right to make a claim for monetary payment, and about all of your options, before the Court decides whether to give "final approval" to the settlement. If the Court approves the parties' Stipulation of Class Action Settlement ("Settlement Agreement"), and after any objections and appeals are resolved, payments will be made to those who qualify and submit a valid claim.

This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available under the settlement, who is eligible for them, and how to get them.

Judge Jerry Ryan of the Circuit Court of Polk County, State of Arkansas, is overseeing this class action. This case is known as *Mark I. Adams and Katherine S. Adams v. United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company and Garrison Property and Casualty Insurance Company*, Case No. cv-2015-105. The persons who sued are called the Plaintiffs, and the companies they sued are called the Defendants.

### 2. Which USAA companies are part of the settlement?

This settlement includes United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company and Garrison Property and Casualty Insurance Company. This Notice also sometimes refers to these USAA companies as "USAA" or "Defendants."

### 3. What is this lawsuit about?

The lawsuit claims that Defendants or persons acting on their behalf improperly applied Depreciation when making Actual Cash Value Payments in adjusting claims for Structural Losses under Homeowners Insurance Policies, by improperly applying Depreciation to labor and other non-material items, such as taxes and general contractor overhead and profit.

Defendants maintain that they applied Depreciation reasonably and appropriately, and in compliance with the applicable law. Defendants have denied all allegations that they acted wrongfully or unlawfully.

### 4. What is Depreciation?

Depreciation is an amount subtracted from replacement cost value to calculate actual cash value, where the insurance policy provides for payment of actual cash value as compensation for a Structural Loss that is caused by a covered cause of loss. Depreciation reflects the age, condition, wear and tear and/or obsolescence of item(s) of property that have been damaged. For purposes of this settlement, Depreciation includes both materials and non-materials components of pricing (including but not limited to general contractor overhead and profit and sales tax) subtracted from replacement cost value to calculate actual cash value in making an Actual Cash Value Payment.

### 5. What is an Actual Cash Value Payment?

An Actual Cash Value Payment ("ACV Payment") is calculated by estimating the replacement cost value of the covered damage, and subtracting Depreciation (as defined above), any applicable deductible, and any other amounts that are properly subtracted under the terms of the Homeowners Insurance Policy.

### 6. What is a Structural Loss?

A Structural Loss is damage to a building or other structure located in the State of Arkansas while covered under a Homeowners Insurance Policy issued by USAA.

### 7. What is a Homeowners Insurance Policy?

A Homeowners Insurance Policy is a policy of insurance providing structural damage coverage for a home, manufactured home, condo, farm/ranch, or rental dwelling.

QUESTIONS? CALL 1-888-773-8278 TOLL-FREE, OR VISIT www.HomeownersInsuranceSettlement.com.
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR 1-888-773-8278, O VISITAR www.HomeownersInsuranceSettlement.com.

-3-

### 8. Why is this a class action?

In a class action lawsuit, one or more people called "Class Representatives" (in this case, Mark I. Adams and Katherine S. Adams) sue on behalf of people who have similar claims. The people together are a "Class" or "Class Members." One court resolves the issues for everyone in the Class, except for those people who choose to exclude themselves from the Class.

### 9. Why is there a settlement?

*The Court did not decide in favor of Plaintiffs or Defendants, and has not found that USAA did anything wrong.* Instead, both sides agreed to a settlement. That way, they avoid the risk and cost of a trial, and the people affected will get compensation. The Class Representative and Class Counsel think that the settlement is in the best interests of the Class and that the settlement is fair, adequate, and reasonable. *The settlement does not mean that USAA did anything wrong. No trial has occurred, and no determinations on the merits of the claims have been made.*

## WHO IS IN THE SETTLEMENT

To see if you are eligible under this settlement, you first have to decide if you are a member of the Class explained below.

### 10. How do I know if I am an eligible Class Member and part of the settlement?

The Class includes everyone who is, or was, insured under a USAA Homeowners Insurance Policy that provided coverage for any building or other structure located in the State of Arkansas that:

- suffered a Structural Loss during the period from January 1, 2006 to December 31, 2014 that was determined to be covered by a Homeowners Insurance Policy issued by USAA;

- received from USAA an ACV Payment for the Structural Loss; and

- the ACV Payment was made based on an estimate USAA or someone acting on its behalf prepared that applied Depreciation.

See Question 11, below, for exceptions to the Class definition. Also, a complete definition of the Settlement Class can be found at Paragraph 33 of the Settlement Agreement (available at www.HomeownersInsuranceSettlement.com).

### 11. Are there exceptions to being included?

You are not included in the settlement if (i) you filed a lawsuit against USAA from January 1, 2006 to December 31, 2014 relating to payment or handling of the claim for Structural Loss under a Homeowner's Insurance Policy that would otherwise be the subject of your claim in this settlement; (ii) your claim was still open (still being actively adjusted) as of December 31, 2014; (iii) you asserted any claims for which USAA received an executed release during the period from January 1, 2006 to December 31, 2014; or (iv) you are a present or former officer and/or director of USAA, the Neutral Evaluator, Class Counsel, a Judge of this Court, or Defendants' counsel of record.

### 12. Understanding Class membership

If your claim was initially paid on an Actual Cash Value basis (i.e., with a deduction for Depreciation) using an estimate prepared by USAA or on USAA's behalf, USAA expects that your estimate and payment, consistent with industry standards existing at the time, would have included Depreciation of non-material items such as labor, taxes, and overhead and profit. If USAA initially paid your claim on a Replacement Cost basis, or made payment to you without withholding any amounts for Depreciation, you will not be entitled to any additional payment under this class settlement. If you are unsure or do not remember whether your claim was paid on a USAA estimate or on an Actual Cash Value basis, you may submit a Claim Form.

This series of questions may also help you determine if you are a Class Member. Please answer all of the questions in order.

232

| Question? | Yes | No |
|---|---|---|
| Do you or did you have a Homeowners Insurance Policy from United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company or Garrison Property and Casualty Insurance Company? | Continue to next question. | You are not a Class Member. |
| Does or did your Homeowners Insurance Policy cover a building or structure in the State of Arkansas? | Continue to next question. | You are not a Class Member. |
| Did you have a Structural Loss that occurred from January 1, 2006 to December 31, 2014? | Continue to next question. | You are not a Class Member. |
| Was the Structural Loss covered by the Homeowners Insurance Policy? | Continue to next question. | You are not a Class Member. |
| Did you receive an ACV Payment from USAA for your claim? | Continue to next question. | You are not a Class Member. |
| Was your ACV Payment made based upon an estimate that USAA or someone acting on its behalf prepared that applied Depreciation? | Continue to next question. | You are not a Class Member. |
| Did you file a lawsuit against USAA from January 1, 2006 to December 31, 2014 related to the Structural Loss? | You are not a Class Member. | Continue to next question. |
| Was your claim open (still being actively adjusted) as of December 31, 2014? | You are not a Class Member. | Continue to next question. |
| Did you provide an executed release to USAA for your claim? | You are not a Class Member | You could be a Class Member. |

## 13. I'm still not sure if I am included?

If you are still not sure whether you are included, you can get free help. You can call the Settlement Administrator toll-free at 1-888-773-8278; send an e-mail to info@HomeownersInsuranceSettlement.com; or visit www.HomeownersInsuranceSettlement.com for more information. Or you can fill out and return the Claim Form enclosed with this Notice to see if you qualify. The Court has directed that questions about the settlement should be directed to the Settlement Administrator, so please do not call USAA to ask about the settlement.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

## 14. What does the settlement provide?

The settlement will pay to compensate eligible Class Members for Defendants' alleged improper application of Depreciation to the labor or any non-material component of estimated replacement cost value when they paid certain homeowners insurance claims for Structural Losses.

## 15. How do I qualify for a payment?

You may qualify for a payment if (i) you suffered a Structural Loss during the period from January 1, 2006 to December 31, 2014 that resulted in an Actual Cash Value Payment under the dwelling and/or other structure coverage; (ii) the Actual Cash Value Payment was made based on an estimate that USAA or someone acting on its behalf prepared that applied Depreciation; and (iii) you did not receive payment equal to the applicable limits of coverage.



**16. How much will payments be?**

Payments to eligible Class Members whose claims had dates of loss from July 1, 2006 to July 4, 2008, inclusive, will be as follows: (i) eligible Class Members who received only Actual Cash Value Payments, and for whom no amount withheld as Depreciation was later paid in a subsequent payment, will receive 9% of the total amount of Depreciation shown on the final estimate a Defendant or someone acting on its behalf prepared on the claim (the "Final Estimate"); (ii) eligible Class Members who received, in a payment subsequent to their initial payment for Structural Loss, a portion but not all of the amount withheld for Depreciation, will receive 7% of any Depreciation shown on the Final Estimate that was not paid when that estimate was prepared; (iii) eligible Class Members who received, in a payment subsequent to their initial payment for Structural Loss, all of the amount withheld for Depreciation, will receive 1.4% of any Depreciation shown on the Final Estimate that was not paid when that estimate was prepared.

Payments to eligible Class Members whose claims had dates of loss from July 5, 2008 to October 2, 2013, inclusive, will be as follows: (i) eligible Class Members who received only Actual Cash Value Payments, and for whom no amount withheld as Depreciation was later paid in a subsequent payment, will receive 45% of the total amount of Depreciation shown on the Final Estimate; (ii) eligible Class Members who received, in a payment subsequent to their initial payment for Structural Loss, a portion but not all of the amount withheld for Depreciation, will receive 35% of any Depreciation shown on the Final Estimate that was not paid when that estimate was prepared; (iii) eligible Class Members who received, in a payment subsequent to their initial payment for Structural Loss, all of the amount withheld for Depreciation, will receive 7% of any Depreciation shown on the Final Estimate that was not paid when that estimate was prepared.

Payments to eligible Class Members whose claims had dates of loss from October 3, 2013 to December 31, 2014, inclusive, will be as follows: eligible Class Members will receive payment in the amount of 5% of the total amount of Depreciation shown on the Final Estimate.

Payments will also be limited by the terms of the Homeowners Insurance Policy involved. See Paragraph 60 of the Settlement Agreement (available at www.HomeownersInsuranceSettlement.com) for a more complete description.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

**17. How can I get a payment?**

To be eligible to receive a payment, you must mail in a valid and timely Claim Form. A Claim Form is included in this mailing. You may also get a Claim Form on the Internet at www.HomeownersInsuranceSettlement.com, or by calling the Settlement Administrator toll-free at 1-888-773-8278, or by sending an e-mail to info@HomeownersInsuranceSettlement.com and asking for one.

You should read the instructions on the Claim Form carefully and fill out the entire Claim Form. You'll need to attach any documents that you have (if any) showing that you were insured under a USAA Homeowners Insurance Policy that provided coverage for a Structural Loss, that you submitted a timely claim and that you received an ACV Payment. See Step 4 of the Claim Form for more details on the required documentation.

You must also have your Claim Form notarized. That means that you must sign the Claim Form under penalty of perjury in the presence of a notary public. You may have the Claim Form notarized by any notary public of your choice. Many banks, post offices, currency exchanges, and other businesses have notaries who can notarize your Claim Form.

If you need more information on where and how to find a notary, you can call the Settlement Administrator toll-free at 1-888-773-8278, send an e-mail to info@HomeownersInsuranceSettlement.com, or visit www.HomeownersInsuranceSettlement.com for help.

You must mail the Claim Form postmarked no later than February 1, 2016 to the following address:

USAA Class Action Settlement
P.O. Box 2411
Faribault, MN 55021-9100

Do not send a copy of the Claim Form to the Court, the Judge, or the Defendants.

Please note that, with a few exceptions, only a Class Member can submit a Claim Form. The only exceptions are that Claim Forms may be submitted on behalf of an individual Class Member by his or her "Legally Authorized Representative." A Legally Authorized Representative means an administrator/administratrix, personal representative, or executor/executrix of a deceased Class Member's estate; a guardian, conservator, or next friend of an incapacitated Class Member; or any other legally appointed person or entity responsible for handling the business affairs of a Class Member. If you have a personal lawyer, your lawyer may assist you with your Claim Form, but you must sign the Claim Form, unless the lawyer is your Legally Authorized Representative.

Claim Forms submitted as part of a group effort, or a class of persons, are invalid and ineffective.

### 18. When will I get my payment?

. The payments will be mailed to eligible Class Members who send in valid claim forms on time, after the Court grants "final approval" of the settlement, any appeals are resolved, and the claims administration process described in Paragraphs 69-70 of the Settlement Agreement is completed.

The Court will hold a hearing on December 16, 2015, at 1:00 p.m. to decide whether to approve the settlement. If the Court approves the settlement (see the section "The Court's Final Approval Hearing" below), there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time. Please be patient. Please check the settlement website, www.HomeownersInsuranceSettlement.com, for updates and other important information about the settlement, or call 1-888-773-8278 toll-free or send an e-mail to info@HomeownersInsuranceSettlement.com.

### 19. What if I disagree with the amount of my payment?

There is a process in the settlement to resolve disagreements between you and Defendants over whether you are eligible and how much money you should get. You will get further details in the letter you receive about your settlement claim. See Paragraphs 69-70 of the Settlement Agreement (available at www.HomeownersInsuranceSettlement.com) for more information, or you can contact the Settlement Administrator at 1-888-773-8278 or e-mail info@HomeownersInsuranceSettlement.com.

### 20. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue or be part of any other lawsuit against Defendants about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. If you submit a Claim Form, or simply stay in the Class, you will agree to "release and discharge" USAA as described in Paragraphs 29-31, 36, and 57-58 of the Settlement Agreement.

A complete copy of the Settlement Agreement can be obtained at www.HomeownersInsuranceSettlement.com. The Settlement Agreement specifically describes the Released Claims in necessarily accurate legal terminology. Talk to Class Counsel (see the section on "The Lawyers Representing You") or your own lawyer if you have questions about the Released Claims or what they mean.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue Defendants on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as "opting out" of the Class.

### 21. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter to the Settlement Administrator by first-class mail with a clear statement that you want to be excluded from the *Adams v. United Services Automobile Association* settlement.

Be sure to include your name, address, telephone number, and your signature. If you are sending the request to be excluded as the "Legally Authorized Representative" of a Class Member (see Question 17 above for the definition of "Legally Authorized Representative"), you must include any information or documents that confirm your appointment or status as a Legally Authorized Representative. Requests for exclusion must be submitted individually by a Class Member or his or her Legally Authorized Representative, and not on behalf of a group or class of persons. If you have a personal lawyer, your lawyer may assist you with your exclusion request, but you must sign the exclusion request, unless the lawyer is also your Legally Authorized Representative.

You must mail your exclusion request postmarked no later than November 16, 2015, to:

USAA Class Action Settlement
P.O. Box 2411
Faribault, MN 55021-9100

You can't exclude yourself on the phone, by e-mail, or on the website (www.HomeownersInsuranceSettlement.com). If you ask to be excluded, you will not get any money from the settlement, and you cannot object to the settlement or intervene in the case. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) the Defendants.



**22. If I don't exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.

Remember, the exclusion deadline is November 16, 2015.

**23. If I exclude myself, can I get a payment from this settlement?**

No. If you exclude yourself, do not send in a Claim Form to ask for any money.

## THE LAWYERS REPRESENTING YOU

**24. Do I have a lawyer in this case?**

The Court has appointed the following law firms to represent you and other Class Members:

| | |
|---|---|
| W.H. Taylor | Matt Keil |
| Stevan E. Vowell | John C. Goodson |
| William B. Putman | KEIL & GOODSON, P.A. |
| Timothy J. Myers | 406 Walnut Street |
| TAYLOR LAW PARTNERS | Texarkana, AR 71854 |
| 301 E. Millsap Road | Tel. (870) 772-4113 |
| P.O. Box 8310 | Fax (870) 773-2967 |
| Fayetteville, AR 72703 | |
| Tel. (479) 443-5222 | |
| Fax (479) 443-7842 | |

These lawyers are called Class Counsel. You will not be charged for services performed by Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

**25. How will the lawyers be paid?**

Class Counsel will ask the Court to approve a payment of up to $1,850,000 for attorneys' fees and expenses. Class Counsel will also ask for a payment of up to $5,000 each to Mark I. Adams and Katherine S. Adams, in full satisfaction of all of their claims, for their services as Class Representatives. The Court may award less than these amounts. Defendants have agreed not to oppose the request for fees and expenses up to these amounts. Defendants will also pay all costs to administer the settlement and the fees and costs of the Neutral Evaluator. None of these amounts will reduce the amounts distributed to eligible Class Members.

## OBJECTING TO THE SETTLEMENT

If you are a Class Member and do not exclude yourself, you can tell the Court that you don't agree with the settlement or some part of it.

**26. How do I tell the Court that I don't like the settlement?**

If you're a Class Member (or a Class Member's Legally Authorized Representative), and you haven't excluded yourself from the settlement, you can object to the proposed settlement if you don't like it, or try to intervene in the case. However, you cannot object if you have excluded yourself. In other words, you must stay in the case as a Class Member in order to object or to intervene in the case.

You can give reasons why you think the Court should not approve the settlement. The Court will consider your views. To object, you must (a) mail your objection to the Settlement Administrator and (b) file it with the Court. To be timely, your objection must be mailed to the Settlement Administrator so that it is postmarked by November 16, 2015, and must be filed with the Court by no later than November 16, 2015, at the following addresses:



Address of Settlement Administrator:

USAA Class Action Settlement
P.O. Box 2411
Faribault, MN 55021-9100

Address of Court:

Case No. cv-2015-105
Circuit Court of Polk County
507 Church St.
Mena, AR 71953

Note: You may mail your objection to the Court, but it must be received by the Court and filed by November 16, 2015. See Paragraphs 95-99 of the Settlement Agreement for more information on how to object to or intervene in the settlement.

Your objection must include all of the following: (a) contain a heading which includes the name of the case and case number (*Adams v. United Services Automobile Association*, Case No. cv-2015-105); (b) provide your full name, address, telephone number, and signature; (c) indicate the specific reasons why you object to the settlement; (d) contain the name, address, bar number, and telephone number of your counsel, if you're represented by an attorney; if you are represented by an attorney, he/she or it must comply with all applicable Arkansas laws and rules for filing pleadings and documents in Arkansas courts; and (e) state whether you intend to appear at the Final Approval Hearing, either in person or through counsel.

If you do intend to appear at the Final Approval Hearing to object to the settlement, you must also provide with your written objection a detailed statement of the specific legal and factual basis for each objection, a list of any witnesses you will call at the hearing with each witness' address and summary of the witness' testimony, a detailed description of all evidence you will offer at the hearing with copies of the exhibits attached, and documentary proof of your membership in the Class. You or your lawyer may appear at the Final Approval Hearing if you have filed a written objection as provided above. (See the section on the "Court's Final Approval Hearing" below). If you have a lawyer file an objection for you, he or she must follow all Arkansas rules and you must list the attorney's name, address, bar number, and telephone number in the written objection filed with the Court.

Unless you submit a proper and timely written objection, according to the above requirements, you will not be allowed to object or appear at the Final Approval Hearing. Furthermore, if you want to intervene as a party to the case, you must file a motion to intervene with the Court by November 16, 2015. If you fail to do so, you won't be able to intervene in the case.

Please note that any objections or motions must be submitted by an individual Class Member or his or her attorney, not as a member of a group, class, or subclass. The only exception is that an objection may be submitted on behalf of an individual Class Member by his or her Legally Authorized Representative (see Question 17 above for a definition of that term).

### 27. What's the difference between objecting and excluding yourself?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object, because the case no longer affects you. If you object, and the Court approves the settlement anyway, you will still be legally bound by the result.

### THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing called a "Final Approval Hearing" (also known as a "Fairness Hearing") to decide whether to approve the settlement. If you have not excluded yourself from the settlement, you may attend the Final Approval Hearing and you may ask to speak, but you don't have to.

### 28. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing to decide whether to finally approve the proposed settlement. You may attend and you may ask to speak, but you don't have to do either one.

The Final Approval Hearing will be on December 16, 2015, at 1:00 p.m. before Judge Jerry Ryan, Circuit Court of Polk County, 507 Church St., Mena, AR 71953.

At this hearing, the Court will consider whether the proposed settlement and all of its terms are adequate, fair, and reasonable. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the hearing and complied with the other requirements for objections explained in Question 26 above. The Court may also decide how much to award Class Counsel for fees and expenses for representing the Class and whether and how much to award the Class Representatives for representing the Class.



At or after the hearing, the Court will decide whether to finally approve the proposed settlement. There may be appeals after that. We do not know how long these decisions will take.

The Court may change deadlines listed in this Notice without further notice to the Class. To keep up on any changes in the deadlines, please contact the Settlement Administrator or review the website (www.HomeownersInsuranceSettlement.com).

### 29. Do I have to come to the Hearing?

No. Class Counsel will answer any questions asked by the Court. But, you are welcome to come at your own expense. If you intend to have a lawyer appear on your behalf at the final approval hearing, your lawyer must enter a written notice of appearance of counsel with the Clerk of the Court no later than November 16, 2015, and you must comply with all of the requirements explained in Question 26.

If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it.

### 30. May I speak at the Hearing?

If you submitted a proper written objection to the settlement, you or your lawyer acting on your behalf may speak at the Hearing. To do so, you must send a Notice of Intention to Appear and follow the procedures set out in Question 26. Your Notice of Intention to Appear must be mailed to the Settlement Administrator so that it is postmarked no later than November 16, 2015, and it must be filed with the Clerk of the Court by that same date. See Question 26 for the addresses. You cannot speak at the hearing if you excluded yourself.

## IF YOU DO NOTHING

### 31. What happens if I do nothing at all?

If you do nothing, you will get no money from this settlement. But, unless you exclude yourself, you won't be able to sue or be part of any other lawsuit against Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

### 32. How do I get more information about the settlement?

You may obtain additional information by

- Calling the Settlement Administrator toll-free at 1-888-773-8278 to ask questions and receive copies of documents, or e-mailing the Settlement Administrator at info@HomeownersInsuranceSettlement.com.

- Writing to the Settlement Administrator at the following address:

USAA Class Action Settlement
P.O. Box 2411
Faribault, MN 55021-9100

- Visiting the settlement website (www.HomeownersInsuranceSettlement.com), where you will find answers to common questions about the settlement, a Claim Form, plus other information to help you.

- Reviewing legal documents that have been filed with the Clerk of Court in this lawsuit at the Court offices stated in Question 26 above during regular office hours.

- Contacting Class Counsel listed in Question 24 above.

**PLEASE DO NOT CALL THE JUDGE, THE COURT CLERK, OR USAA TO ASK QUESTIONS ABOUT THIS LAWSUIT OR NOTICE.**

**THE COURT WILL NOT RESPOND TO LETTERS OR TELEPHONE CALLS. IF YOU WISH TO ADDRESS THE COURT, YOU MUST FILE AN APPROPRIATE PLEADING OR MOTION WITH THE CLERK OF THE COURT IN ACCORDANCE WITH THE COURT'S USUAL PROCEDURES.**



USAA CLASS ACTION SETTLEMENT
P.O. BOX 2411
FARIBAULT, MN 55021-9100

## MUST BE POSTMARKED BY
## FEBRUARY 1, 2016

 – <<SequenceNo>>

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

| FOR OFFICIAL USE ONLY |
| :---: |
| 01 |

Page 1 of 4

<<MAILDATE>>

Date of Loss: <<DateOfLoss>>

Policy #: <<PolicyNr>>

## CLAIM FORM

### USAA CLASS ACTION SETTLEMENT

If you submitted a claim for a Structural Loss that (a) occurred from January 1, 2006 to December 31, 2014, inclusive; (b) was determined to be covered by a Homeowners Insurance Policy issued by one of the USAA companies in the State of Arkansas; and (c) resulted in an Actual Cash Value Payment by a USAA company that was calculated and made based upon an estimate that the USAA company or someone acting on its behalf prepared that applied Depreciation, you may be eligible for a payment in this proposed settlement. "Homeowners Insurance Policy" means a policy of insurance providing structural damage coverage for a home, manufactured home, condo, farm/ranch, or rental dwelling. A "Structural Loss" is damage to a building or other structure located in the State of Arkansas while covered under a Homeowners Insurance Policy issued by a USAA company. An Actual Cash Value Payment is a payment that is calculated by estimating the replacement cost value of the covered damage, and subtracting Depreciation, any applicable deductible, and any other amounts that are properly subtracted under the terms of the Homeowners Insurance Policy. Depreciation is an amount subtracted from replacement cost value to calculate actual cash value, reflecting the age, condition, wear and tear and/or obsolescence of item(s) of property that have been damaged as part of a covered loss. The USAA companies in this settlement are United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company and Garrison Property and Casualty Insurance Company.

To be eligible to receive a payment, you must complete this Claim Form, sign it, have it notarized, and mail it, together with all requested documentation that you have available, to the following address, postmarked by February 1, 2016:

USAA Class Action Settlement
P.O. Box 2411
Faribault, MN 55021-9100

**Please read this Claim Form _and_ the enclosed Notice carefully.** If you have more than one insurance claim, please submit a separate Claim Form for each of your claims. If you have any questions about filling out this Claim Form, please call the Settlement Administrator at 1-888-773-8278 toll-free, visit www.HomeownersInsuranceSettlement.com, or e-mail info@HomeownersInsuranceSettlement.com.

**Certain information on this Claim Form may have been pre-filled by USAA if this form was mailed to you.** If you believe that information is incorrect, please cross it out and correct it.

QUESTIONS? CALL 1-888-773-8278 TOLL-FREE, OR VISIT www.HomeownersInsuranceSettlement.com.
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR 1-888-773-8278, O VISITAR www.HomeownersInsuranceSettlement.com.

239



 – <<SequenceNo>>

PLEASE PRINT (OR TYPE) CLEARLY IN BLUE OR BLACK INK ONLY. MAKE CORRECTIONS TO PRE-FILLED INFORMATION IF NECESSARY. <u>MUST BE POSTMARKED BY FEBRUARY 1, 2016.</u>

## STEP 1: PROVIDE CLASS MEMBER INFORMATION

Class Member Full Name: _____

Mailing Address of Class Member: _____

City: _____ State: _____ Zip Code: ___ ___ ___ ___ ___

Daytime Phone of Class Member: ( ___ ___ ___ ) ___ ___ ___ – ___ ___ ___ ___

Evening Phone of Class Member: ( ___ ___ ___ ) ___ ___ ___ – ___ ___ ___ ___

USAA Member Number or Policy Number applicable to the Class Member's claim (if known): <<MbrNumber>><<PolicNR>>

Name of first person listed on the insurance policy (<u>if NOT the Class Member</u>):

Last Name: _____ First Name: _____ Middle Initial: ____

Relationship of first person listed on the insurance policy to the Class Member: _____

- If <u>you</u> are a Class Member and are filling out this Claim Form <u>for yourself</u>, please skip STEP 2 and <u>GO TO STEP 3</u>.
- If you are <u>not</u> a Class Member, but are filling out this Claim Form <u>on behalf of</u> a Class Member, please <u>GO TO STEP 2</u>.

## STEP 2: INFORMATION TO BE PROVIDED BY EXECUTORS, ADMINISTRATORS, GUARDIANS, PERSONAL REPRESENTATIVES, OR OTHERS LEGALLY AUTHORIZED TO PROVIDE CLASS MEMBER INFORMATION.

NOTE: Fill out STEP 2 <u>only</u> if you are filling out this Claim Form <u>on behalf of</u> a Class Member.

If <u>YOU</u> are a Class Member, go to STEP 3.

(a) Are you the personal representative of a deceased Class Member?          Yes ____    No ____

    If so, provide the date of the Class Member's death: ___ ___ / ___ ___ / ___ ___ ___ ___
                                          Month    Day     Year

(b) Are you a guardian, conservator, or attorney in fact of an incapacitated Class Member?    Yes ____    No ____

(c) Are you the legally appointed representative (for example, through a power of attorney) responsible for handling the Class Member's business affairs?          Yes ____    No ____

Please provide YOUR information:

Last Name: _____ First Name: _____

Mailing Address: _____

City: _____ State: _____ Zip Code: ___ ___ ___ ___ ___

Daytime Phone Number: ( ___ ___ ___ ) ___ ___ ___ – ___ ___ ___ ___

IMPORTANT: If you are submitting this claim on behalf of the Class Member, please also submit with this Claim Form documents to prove that you are authorized to submit this Claim Form on behalf of that Class Member (for example, estate documents, powers of attorney, death certificates, etc.).

QUESTIONS? CALL 1-888-773-8278 TOLL-FREE, OR VISIT www.HomeownersInsuranceSettlement.com.
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR 1-888-773-8278, O VISITAR www.HomeownersInsuranceSettlement.com.
Page 2 of 4

240

 – <<SequenceNo>>

## STEP 3: ANSWER QUESTIONS ABOUT YOUR LOSS AND YOUR INSURANCE CLAIM

a.  Address of Damaged Structure:

Complete Street Address: _____

City: _____ State: _____ Zip Code: ___ ___ ___ ___

b.  Approximate Date of Loss: ___ ___ / ___ ___ / ___ ___ ___ ___
     MONTH          DAY          YEAR

c.  Description of Loss:

_____

_____

_____

_____

**PLEASE ANSWER THE QUESTIONS BELOW TO THE BEST OF YOUR KNOWLEDGE. DO NOT CONTACT USAA TO REQUEST THIS INFORMATION IF YOU DO NOT KNOW:**

f.  Did the amount USAA paid for your claim include an Actual Cash Value Payment, that is, a payment calculated by USAA or someone acting on its behalf that estimated the replacement cost value of the covered damage, and subtracted for Depreciation (and any applicable deductible and/or other deductions)?

    Yes _____   No _____   I do not know _____

g.  If yes, how much did USAA subtract for Depreciation? (if known) $_____

h.  Did you receive, in a payment subsequent to your initial payment for structural damage, a portion or all of the amount previously withheld for Depreciation?

    Yes _____   No _____   I do not know _____

i.  If yes, how much money that was previously withheld for Depreciation was later paid to you? (if known) $_____

j.  Does your claim fall within any of these categories: (1) you received payment from USAA equal to the applicable limits of coverage; (2) your claim was the subject of a prior lawsuit; (3) your claim was open (still being actively adjusted) as of December 31, 2014; or (4) you executed a release (a document giving up your legal rights) on your claim?

    Yes _____   No _____   I do not know _____

## STEP 4: ATTACH DOCUMENTATION FROM YOUR RECORDS, IF ANY

You may attach to this Claim Form any documents that you have showing the following. Do not contact USAA to request copies of documents. USAA will review documents in its possession (to the extent they exist) in processing this claim form:

- You submitted a timely claim for the Structural Loss (e.g., copies of letters submitting claims or responding to claims);

- The claim was paid on the basis of an estimate that subtracted for Depreciation (e.g., copies of adjuster estimates, worksheets provided by USAA, or letters enclosing claim payments); and

- How USAA paid the claim (e.g., copies of checks or letters enclosing claim payments).

QUESTIONS? CALL 1-888-773-8278 TOLL-FREE, OR VISIT www.HomeownersInsuranceSettlement.com.
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR 1-888-773-8278, O VISITAR www.HomeownersInsuranceSettlement.com.
Page 3 of 4

 - <<SequenceNo>>

**STEP 5: READ THE CERTIFICATIONS BELOW. IF TRUE, SIGN AND DATE YOUR CLAIM FORM IN THE PRESENCE OF A NOTARY PUBLIC.**

This Claim Form **must be signed under penalty of perjury and notarized** by a notary public. You can find a notary public at post offices and banks as well as most currency exchange businesses. Bring some form of identification with you in order to have this Claim Form notarized. If you have any questions, please call the Settlement Administrator at 1-888-773-8278 toll-free, visit www.HomeownersInsuranceSettlement.com, or e-mail info@HomeownersInsuranceSettlement.com.

**CERTIFICATION:**

I certify under penalty of perjury that I have read this Claim Form; I believe I am eligible for Class membership; all of the information on this Claim Form is true and correct to the best of my knowledge; I request a review of my claim for potential payment; and I have attached to or enclosed with this Claim Form all documents described in Step 4 that I have been able to locate.

Print Name: _____

Signature: _____     Date: _____ / _____ / _____
                                                                 (MM)      (DD)      (YY)

State of _____

County of _____, SS:

SUBSCRIBED AND SWORN to and before me this _____ day of _____, 20____

_____
NOTARY PUBLIC Signature

_____                              (Seal)
My Commission expires:


**STEP 6: MAIL YOUR CLAIM FORM.**

This Claim Form must be postmarked by February 1, 2016 and mailed to:

USAA Class Action Settlement
P.O. Box 2411
Faribault, MN 55021-9100

Please be patient. You will receive a letter telling you whether the Class Member identified above is eligible for a payment and, if the Class Member is determined to be eligible, the amount of the payment. The letter will also explain the process and deadlines to resolve any disagreement you may have with this determination.

**PLEASE DO NOT CALL THE COURT, THE JUDGE, THE CLERK OF COURT, OR USAA REGARDING THIS MATTER.**

QUESTIONS? CALL 1-888-773-8278 TOLL-FREE, OR VISIT www.HomeownersInsuranceSettlement.com.
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR 1-888-773-8278, O VISITAR www.HomeownersInsuranceSettlement.com.

242

# EXHIBIT B

| OPT-OUT LIST | | | |
|---|---|---|---|
| COUNT | FIRST NAME | MIDDLE INITIAL | LAST NAME |
| 1 | CARLTON | R | TABOR |
| 2 | DIANNA | LYNNE | SELLERS |
| 3 | DR ROBERT | J | MATLOCK |
| 4 | FREDERICK | A | TAYLOR |
| 5 | JAMES | E | MC CLUER |
| 6 | KAY | | VANDERPUTTEN |
| 7 | ROBERT | A | ZIERAK |
| 8 | CAROLYN | W | HURST |
| 9 | EST OF MAX | D | FOSTER |
| 10 | JESSE | T | PEACOCK III |
| 11 | LARRY | M | ARNOLD |
| 12 | DWIGHT | E | BROWN |
| 13 | MRS DONNA | C | HARRIS |

244

# EXHIBIT C

345

| COUNT | FIRST NAME | MIDDLE INITIAL | LAST NAME |
|---|---|---|---|
| CLASS MEMBERS WHO SUBMITTED AN OBJECTION OR MOTION TO INTERVENE | | | |
| 1 | JOHN | L | DAUGHERTY M.D. |
| 2 | PARTNE | A | DAUGHTERTY |
| 3 | KENNETH | L | WARTICK, LT. COL. USMC (Ret.) |
| 4 | THOMAS | | MEADOWS, CAPT (Ret.) USN |
| 5 | PAUL | R | SIEDSMA, USNA 1975 |
| 6 | GENE | | FLESHER, JR., USN (Ret.) |

2 44

# EXHIBIT 2

247

IN THE CIRCUIT COURT OF POLK COUNTY, ARKANSAS

MARK L. ADAMS and KATHERINE S.               )
ADAMS, individually and on behalf of all     )
others similarly situated,                   )
                                             )
            Plaintiffs,                       )
                                             )
vs.                                          )       Case No. CV-2015-105
                                             )
UNITED SERVICES AUTOMOBILE                   )
ASSOCIATION, USAA CASUALTY                   )
INSURANCE COMPANY, USAA GENERAL              )
INDEMNITY COMPANY, and GARRISON              )
PROPERTY AND CASUALTY INSURANCE              )
COMPANY,                                     )
                                             )
            Defendants.                       )

## AFFIDAVIT OF MATT KEIL

STATE OF ARKANSAS          )
                           ) ss.
COUNTY OF MILLER           )

BEFORE ME, the undersigned Notary Public, on this day personally appeared Matt Keil who, being by me first duly sworn, on oath stated as follows:

1.    My name is Matt Keil. I am over 18 years of age. I am licensed as an attorney in the State of Arkansas, and am fully competent to make this affidavit. Except as stated, I have personal knowledge of the facts set forth below and, if called as a witness, could and would testify accurately to their veracity. I have personally been involved in this litigation, and as such, I have personal knowledge of the information contained herein.

2.    I am an attorney licensed by the Supreme Court of Arkansas, and I am one of the attorneys in this matter. My law firm, Keil & Goodson, P.A., has participated as Class Counsel in this matter. Along with my co-counsel, we worked tirelessly as a team on this case, collectively investing significant hours over the span of the last two years. Our team of lawyers

248

researched and investigated the claims and defenses, engaged in motion practice, reviewed documents, conducted numerous meetings with counsel, revised and filed pleadings, participated in multiple mediation sessions, and worked throughout this case to protect the interests of the Plaintiffs and the Class. Our investigation enabled Class Counsel to make informed decisions on the merits of this case with knowledge of the strengths and weaknesses of the case.

3.     As issues of liability and damages were heavily contested, it was apparent that this case could be a major win for the Class, or a total loss. The parties disagree on the scope of liability and on damages. Courts considering the claims against these Defendants have yet to rule definitively on many merits issues, and none of the class certification issues, creating the risk of potentially an all or nothing result in this case. Because of the uncertainty of the outcome of these issues, the risks and costs of further litigation, and the absence of a clear middle ground, Class Counsel engaged in over a year of arms-length negotiations with Defendants in order to obtain a fair settlement. I am pleased with the Settlement that resulted from these efforts and the excellent benefit that it offers to the Class.

4.     The Proposed Settlement in this case follows two years of litigation. This matter was initiated on December 5, 2013 by Plaintiffs filing a lawsuit against Defendants United Services Automobile Association, USAA Casualty Insurance Company, and USAA General Indemnity Company in the Circuit Court of Polk County, Arkansas. The case was removed by Defendants to federal court on January 15, 2014, citing jurisdiction under CAFA. Plaintiffs and Class Counsel disagreed with the removal asserted by the Defendants, and believed that Arkansas state court was the appropriate forum for the litigation.

5.     After removal to federal court, the Parties began exploring the potential for resolution of the claims plead against Defendants. The Parties enlisted the services of the

Honorable Layn R. Phillips, retired federal district judge for the Western District of Oklahoma. Judge Phillips is one of the nation's preeminent mediators, successfully mediating numerous high-stakes civil disputes in complex multi-party matters, including matters involving Fortune 500 companies.

6.     Prior to the mediation, the parties provided Judge Phillips with briefs discussing the factual and procedural background of the case, as well as the disputed factual and legal issues in the case, supported by substantial factual and expert data.  These materials required hundreds of hours of legal time to prepare. The materials were based, in some measure, on the experience obtained by Class Counsel in other litigation involving similar claims.  Preparation for the mediation began months in advance of the scheduled September 2014 mediation, and was time intensive.

7.     The Parties participated in a mediation session in New York, New York on September 15, 2014.  While the September mediation was productive and progress was made, a settlement was not reached at the conclusion of that session.  It was clear that Plaintiffs and Defendants were not in agreement on numerous key factual and legal points.  Accordingly, both sides conducted significant additional work in an attempt to narrow the legal and factual differences.

8.     In December 2014, as a culmination of the additional work performed, the Parties returned to mediation and participated in a second mediation session with Judge Phillips.

9.     The second mediation session, and numerous telephonic conferences, concluded with the parties reaching an agreement in principle on the major deal points.  However, as is commonplace in complex litigation, it was necessary for the attorneys for the Parties to engage in significant negotiation concerning the details of the settlement documents, including the form

$\partial 50$

and content of the Settlement Agreement, Mailed Notice, and Claim Form. These rigorous discussions and negotiations continued for many months following the formal mediation sessions.

10. As part of the settlement agreement, the parties agreed that this matter would be refiled in the Circuit Court of Polk County, which is where Plaintiffs filed the original action. The Settlement Class, now and as originally plead, is comprised solely of Arkansas properties; brought claims for breach of Arkansas law; and consists of claims arising from Arkansas insurance policies. Arkansas state courts have a strong interest in resolving disputes of an Arkansas-only Settlement Class, whose claims are governed by Arkansas substantive law. Class Counsel believe that Arkansas trial judges are fully capable of handling these, and that the citizens of Arkansas are well protected by Arkansas state court judges making determinations as to whether these settlements are fair, adequate, reasonable, and in the best interest of the class. In this matter, we negotiated to have the case resolved in the same court we originally filed it, and Defendants were willing to agree to that as part of the negotiation.

11. The Stipulation of Settlement was finalized and executed by the Parties on June 16, 2015. On June 23, 2015, Plaintiffs moved for preliminary approval of the Settlement Agreement. This Court granted preliminary approval and certified a settlement class on August 26, 2015.

12. As part of the settlement negotiation process, both parties attempted to determine the total aggregate damages to putative class members using data provided within a sampling of several hundred USAA claim files, which were randomly selected and agreed to by the parties.

13. In order to fairly and reasonably calculate class wide damages, Plaintiffs retained Saul Solomon of Berkeley Research Group (Houston, Texas). Class Counsel, aided by Solomon,

251

committed to ascertaining a class-wide damage model, expending hundreds of man-hours and more than $150,000 in the services of Berkeley Research Group. At the conclusion of this process, the total aggregate damages were computed at $4,293,025.84.

14.     Class-wide damages were arrived at by first determining the total amount of depreciation among the several hundred claim files which is reflected in the data provided by USAA. Once this number was determined, it was divided by the total amount of depreciation actually withheld from the actual cash value ("ACV") payments, enabling one to determine the percentage of depreciation withheld.

15.     It was next determined that the total withheld depreciation amount fell into three categories of claims: (i) claims where the insured received an ACV payment only (the "ACV Payment Only Category"); (ii) claims where the insured received an ACV payment followed by payment of less than the full replacement cost value ("RCV") (the "Partial RCV Payment Category"); and (iii) claims where the insured received an ACV payment followed by payment of the full RCV (the "Full RCV Payment Category").

16.     Review of the claim file sampling revealed that some of the depreciation amount for claims falling within the Partial RCV Payment Category was recovered in connection with subsequent payments, while a greater amount of the depreciation amount was never recovered. Accordingly, the size of the Partial RCV Payment Category was reduced by this amount.

17.     These figures were then applied to the parties' agreed-upon recovery amounts for each of the categories of payment outlined in the Settlement Agreement.   Applying the negotiated settlement rates, these calculations resulted in projected class damage model of $4,293,025.84.

252

18.     Independently of the above analysis, USAA determined the class recovery was $2,205,000 based on different assumptions regarding the percentage breakdown of the total depreciation withheld amongst the claim file sampling (*i.e.*, the three categories of claimants).

19.     Thus, the parties arrived at a range of between $2,205,000 and $4,293,025.84 as representing the class recovery when applying the agreed-upon percentage recovery amounts to each category of putative class members. After further negotiations, the application of different assumptions and a well-informed discussion regarding the validity of these assumptions, the parties agreed that $3,445,598 was a reasonable estimate of the class recovery based on a thorough analysis of the claim file sampling and a well-informed discussion regarding the various assumptions used by the parties.

20.     The well-informed projections above notwithstanding, nothing in the Proposed Settlement prevents a Class Member from making a claim for payment. Indeed, there is no cap to the number of payments that may be made under the Proposed Settlement. No claim for payment will be required to share *pro rata* with another claim made under the claims-making process. No Class Member will have his or her recovery reduced on account of Class Counsels' request for attorneys' fees, litigation expenses, or incentive awards for the Class Representatives. Defendants have agreed to pay the requested award separate and apart from the funds available for Class Members.

21.     Any settlement is inherently the product of compromise. It is—by nature—an exercise in balancing the strength of the case on the merits with the risk that Class Members receive nothing. Thus, any settlement, including the Proposed Settlement, is a bargained exchange among the parties. In structuring the Proposed Settlement, Class Counsel protected the interests of the Settlement Class, by—among other things—negotiating a limited (not "general"

or "blanket") release, obtaining a recovery for class members who might otherwise have their claims barred by the statute of limitations, and obtaining recovery of a broader category of damages than originally plead by Plaintiffs:

   a.  In exchange for monetary payments available under the Proposed Settlement, the Settlement Class is subject to a specific and limited release. As detailed in the Settlement Agreement, the Settlement Class releases only those claims "relating to the application or calculation of Depreciation." Thus, as a result, Class Counsel has preserved the claims of any class member not covered by the definition of "Released Claims" in the Settlement Agreement;

   b.  Additionally, Class Counsel obtained a recovery for many Arkansans who might otherwise have any claim barred by the statute of limitations. Under the negotiated terms of the Settlement Agreement, the Class Period begins on January 1, 2006. Class Counsel plead fraudulent concealment as a basis for recovery on behalf of class members with claims accruing outside the statute of limitations. However, following commencement of the litigation, adverse rulings have been issued on the applicability of fraudulent concealment to similar claims in other litigation. Rather than abandon the claims, Class Counsel negotiated a recovery for these time-barred claims at a discount commensurate with the projected risk; and

   c.  The Proposed Settlement allows for an expanded scope of recovery. Plaintiffs plead allegations concerned the purported depreciation of labors costs in estimating and making property insurance payments. Under the Settlement Agreement, the Settlement Class is entitled to recover a percentage of total depreciation withheld, which includes depreciation not only on labor costs, but sales tax, overhead & profit, and other material and non-material components of pricing that was depreciated and withheld. Given that labor costs are only one component of overall depreciation withheld, the Settlement Agreement provides a significant

$\partial 54$

recovery for members of the Settlement Class.

22.     While the amount of the recovery is significant in regard to the total amount, the Settlement is even more remarkable considering the percentage of maximum actual damages the Proposed Settlement makes available to each Class Member.  As described in Plaintiffs' complaint, the case was brought to recover damages resulting from the depreciation of labor costs in adjusting homeowners' insurance claims.  Information obtained from the Defendants demonstrated that labor depreciation comprised approximately 45% of the total depreciation on Arkansas claims.  In the simplest scenario, therefore, the amount of labor depreciation withheld on a claim would be 45% of the total depreciation, expressed as follows:

**Labor Depreciation = Total Depreciation x 45%**

Assuming that the "total depreciation" on a hypothetical claim was $1,000, the amount of withheld labor depreciation would be $450 ($450 = $1,000 x 45%).  Thus, under the case as plead, a recovery of $450 under this hypothetical would be a recovery of 100% of the maximum actual damages suffered by the insured.

Applying the relationship of labor depreciation to total depreciation, it becomes apparent that the Proposed Settlement provides a remarkable recovery of the labor depreciation at issue in Plaintiffs' complaint. For example:

a.     For a Plaintiff/Class Member who never received any subsequent payment of withheld depreciation, the amount of actual damages sought to be recovered was the total of the withheld depreciation (in our prior hypothetical, the $450). If, in this litigation, we negotiated a settlement that provided for the recovery of $450 under this hypothetical, it is my opinion that we would have recovered 100% of the labor depreciation withheld if the case was successfully tried to verdict.

Through the course of negotiations, and based on arguments advanced by Plaintiffs, it



was determined that the settlement would provide for a recovery of a percentage of all depreciation, including materials, and not just a recovery of labor depreciation. The model for the settlement for a Class Member who received an initial payment, did not receive any subsequent payment, and who had a claim less than 5 years of age (meaning Defendants did not have a statute of limitations defense), called for that Class Member to be eligible to recover 45% of the total amount of all depreciation (not just labor depreciation). Using the hypothetical from above with a "total depreciation" figure of $1,000, the Class Member would be eligible under the settlement to recover $450:

$450 = $1000 [total depreciation] x 45%

As demonstrated, the Settlement (Para. 60(b)(1)) provides that the Class Member will receive an amount which approximates 100% of the labor depreciation sought in the case (45% of total depreciation = 100% of labor depreciation). Such a recovery is of course, clearly fair, adequate and reasonable, and quite extraordinary.

b.      For persons who received supplemental payments of withheld depreciation, the Proposed Settlement provides for a recovery of 35% of the remaining unpaid Depreciation. Settlement, Para. 60(b)(2)). This equates to a recovery of approximately 78% of the total labor depreciation, as demonstrated by the following hypothetical: assuming $1,000 in initial total depreciation, and assuming that 50% (or ($500) had already been paid as a supplemental RCV payment, the remaining withheld depreciation would be $500. Of that, approximately 45%, or $225, would be attributable to Labor Depreciation, and would be the subject of the claims in this lawsuit. Under the terms of the settlement, the Class Member in this hypothetical would be eligible to recover 35% of $500, or $175 (which equates to 78% of the withheld and unpaid labor depreciation of $225). Again, a negotiated Settlement providing for 78% of labor depreciation (in the face of an asserted defense that this Class Member had already

356

been paid everything he was owed under the terms of the policy) is clearly fair, adequate and reasonable.

        c.    For persons who received supplemental payments of all of their withheld depreciation in subsequent payments, the Proposed Settlement provides for a recovery of 7% of the total depreciation appearing on the final estimate. Defendants have argued that these Class Members have no actual damages, having already recovered all labor depreciation that had been withheld. Regardless, the Proposed Settlement provides a potential recovery for even these Class Members. Given that these Class Members may recover in excess of 100% of the labor depreciation that was withheld, it is my opinion that the Settlement negotiated for this group is fair, adequate and reasonable.

        d.    The Settlement also contemplates recoveries for persons who had similar settlement scenarios to those addressed in (a), (b), and (c) above, but whose claims arose more than five years prior to the filing of the original complaint in this case. Defendants asserted these claims were time barred by the applicable five-year statute of limitations. Given that at least one federal district court has agreed with that defense (asserted by another defendant in similar litigation), we recognized as Class Counsel that these "older than 5 year claims" were potentially time barred and at substantial risk of being dismissed on a dispositive motion (such as summary judgment). We fought to negotiate and obtain a settlement for this Class Members, albeit as smaller percentages of recovery. In its final form, the groups with claims older than five years of age are eligible to recover 20% of the damages made available to similarly situated Class Members whose claims are not subject to a statute of limitations defense. Given the viability of the statute of limitations defense, we believe this recovery is fair, adequate and reasonable.

        23.    Thus, on balance, the Proposed Settlement provides benefits that directly address (and in fact, exceed) the Defendants' alleged withholding of labor depreciation without the

257

considerable risks and delays of continued litigation, trial and appeal. Indeed, if this litigation were to proceed to class certification on a contested basis, or to a trial, the apparent strengths of Plaintiffs' case is no guarantee against a defense ruling at class certification, or defense verdict at trial. Even if a judgment were obtained against Defendants at trial, it could be years before the class received any recovery. In my opinion, the Proposed Settlement is the best vehicle for Settlement Class members to receive significant relief to which they are entitled in a prompt and efficient manner and is unquestionably fair, reasonable, and adequate, satisfying the standards for final approval.

24.     I believe that the Proposed Settlement presented and preliminarily approved by this Court represents the best result that could be achieved for the Proposed Class without all of the risks attendant to dispositive motion practice, contested class certifications, and a lengthy trial. I also believe that the advantages of settling the case on the terms detailed in the Settlement Agreement significantly outweigh the risks of proceeding forward. Chief among those risks is the obvious possibility that Plaintiffs in the present action could lose at the class certification stage and/or at the trial of this matter and not recover anything.

25.     The members Settlement Class are not held captive by the Proposed Settlement. Indeed, the Mailed Notice—preliminarily approved as to form by this Court—plainly provides how any member may exclude themselves from the Proposed Settlement, which would preserve any and all claims that class member may have against Defendants.

26.     The actions of the Settlement Class evidence the broad approval of the Proposed Settlement, with approximately *one-quarter of one percent* (0.25%) of the Settlement Class choosing to exclude themselves from the Proposed Settlement, based upon Defendants' estimate in their Notice of Removal. However, the fact that Class Members timely and properly excluded themselves demonstrates that (i) the Class Notice adequately detailed how to file a request for

258

exclusion, and (ii) that the deadlines were sufficiently long to allow exclusions to be drafted and filed.

27.    Plaintiffs and Class Counsel present a fair and reasonable settlement for this Court's approval. Indeed, it is the *only* settlement reached to date and should be evaluated on its own merits.  The objectors suggest that the Settlement could be better, or that it should be improved.   However, there is no "perfect" Settlement (when viewed from only one side's perspective). Like all settlements, the Plaintiffs and the Class Counsel are getting less than what they want; and the Defendants are paying more than they really want.  Thus, the notion of a compromise for purposes of settlements does not cease to exist simply because the case is a class action.  It has been my experience that if Plaintiffs and the Class want a "perfect" settlement (which would be 100% of all recoverable damages paid now, in cash), then no Defendant would agree. Those "perfect" settlements do not exist in reality, and thus, this Proposed Settlement—like all settlements—required that choices be made to resolve the litigation.  This seems like a simple notion universally accepted by all counsel in all litigation, but it is one that objectors in class action lawsuits routinely forget. But courts do not forget it; it is for that reason that courts routinely recognize that "perfect" is not the standard, nor could it be.  Rather, the Settlement must be analyzed not in terms of "what is on your wish list," but rather, in light of all the circumstances, is the settlement fair, adequate and reasonable?   And here, the proposed Settlement in my opinion exceeds that standard.

28.    In this Proposed Settlement, Class Counsel negotiated a short and simple Claim Form, much of which is preprinted with the Class Member's information.  The Claim Form is needed to ease administration and reduce the chances for fraud.  Under a claims-made process, as a general matter, interested class members obtain a larger percentage of his or her damages that would otherwise be available in a settlement where all claims are simply paid.  Here,

259

because there is no cap to the amount of payments available under the claims-making process, Class Counsel negotiated a greater maximum potential recovery for each class member than, in our opinion and experience, could have otherwise been negotiated and made available under a claims-paid process where no claim form was required and each class member received a set amount. Again, there is no "perfect" settlement; in this case, we felt that it was appropriate, given all of the available information, to obtain for each class member a higher potential individual recovery on a claims-made basis than would have been available if checks were simply prepared and mailed.

29.     Based on my review and understanding of the Settlement Agreement, and the calculations presented above, the value of the Settlement (inclusive of Class Benefits, Attorneys Fees, Administrative Costs, and Incentive Awards) is approximately $5,295,598.00:

- Class Benefits          $3,445,598.00
- Attorneys' Fees          $1,541,096.90
- Expenses               $308,903.10
- Incentive Fees          $10,000.00
- Administration Costs Paid by Defendants

30.     In this settlement, Defendants have agreed to pay up to $1,850,000 for fees and expenses. This total equals only 34.87% of the total common fund obtained by the efforts of Class Counsel using the above calculations. The fee component of $1,541,096.90 constitutes 29.05% of the common fund. As detailed above, Class Counsel presented a conservative model of damages in their Motion for Fees and Expenses, irrespective of the fact that any award to Class Counsel will be paid apart from any money available to the Class.

31.     Based on the above-referenced fee awards, and my knowledge of other similar class action settlements in Arkansas, the range of fees customarily charged and approved in Arkansas in complex class action matters certainly encompasses a fee request of 29.05% of the settlement value made available to Class Members.   Accordingly, the fee request of



$1,541,096.90 and an expense request of $308,903.10 are, in my opinion and experience, reasonable and supported by existing law and precedent. Indeed, more than half of the requested expenses are allocated to recovering the costs expended on Plaintiffs' expert to review, analyze, develop, and refine a class-wide model of damages in this matter. The great bulk of expenses were incurred in the retention of expert services and mediation costs and expenses.

32.     Further, although Rust mailed nearly fifteen thousand individual notices, Class Counsel has received only twenty timely requests for exclusion from thirteen Class Members, and two objections to the settlement—one from Dr. and Mrs. Daugherty *pro se* and the other from attorney Robert Trammel on behalf of four individuals. This demonstrates that the Class overwhelmingly supports the proposed settlement.

FURTHER AFFIANT SAYETH NOT.

_____
MATT KEIL

SUBSCRIBED AND SWORN TO BEFORE ME, to certify which witness my hand and seal of office, on the 9th day of December, 2015.

_____
Notary Public in and for the State of Arkansas

# EXHIBIT 3

IN THE CIRCUIT COURT OF POLK COUNTY, ARKANSAS

MARK L. ADAMS and KATHERINE S.        )
ADAMS, individually and on behalf of all  )
others similarly situated,             )
                                       )
                Plaintiffs,            )
                                       )
        vs.                            )        Case No. CV-2015-105
                                       )
UNITED SERVICES AUTOMOBILE             )
ASSOCIATION, USAA CASUALTY             )
INSURANCE COMPANY, USAA GENERAL        )
INDEMNITY COMPANY, and GARRISON        )
PROPERTY AND CASUALTY INSURANCE        )
COMPANY,                               )
                                       )
                Defendants.            )

## LIST OF PERSONS TIMELY SEEKING
## EXCLUSION FROM THE SETTLEMENT CLASS

1.    Carlton R. Tabor

2.    Dianna Lynne Sellers

3.    Dr. Robert J. Matlock

4.    Frederick A. Taylor

5.    James E. McCluer

6.    Kay Vanderputten

7.    Robert A. Zierak

8.    Carolyn W. Hurst

9.    Estate of Max D. Foster

10.   Jesse T. Peacock III

11.   Larry M. Arnold

12.   Dwight E. Brown

13.   Donna C. Harris

C E R T I F I C A T E

I, Mary E. Dixon, Official Court Reporter for the 18th Judicial District Western Division, Arkansas Certified Court Reporter No. 45 do hereby certify that the foregoing proceeding in the cause of action stated in the caption hereof; that the testimony was recorded by me and later reduced to writing; that the above and foregoing Pages 1 and to Page 263 and the exhibits constitutes a true, correct and complete transcription of said proceedings to the best of my ability together with all items of evidence that may have been introduced.

It is further certified that this reporter is not a relative to any party to this action or counsel thereof and has no financial interest in the outcome of this action.

IN WITNESS WHEREOF, I have hereunto set my hand and seal as such court reporter on this 6th day of February, 2016.

_____
MARY E. DIXON
Supreme Court Certified Reporter No. 45

My Commission Expires:

December 31, 2021                    ( S E A L )

264