**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

---

**MARK I. and KATHERINE S. ADAMS,
individually and on behalf of all others
similarly situated,**

**Plaintiffs,**

**vs.**

**UNITED SERVICES AUTOMOBILE
ASSOCIATION; USAA CASUALTY
INSURANCE COMPANY; and USAA
GENERAL INDEMNITY COMPANY,**

**Defendants.**

---

Case No.: 2:14-cv-02013 (PKH)

**MEMORANDUM OF RESPONDENTS
CASTLEBERRY, GOODSON, KEIL, MUSTOKOFF, MYERS, NORMAN, PUTMAN,
ROSELIUS, VOWELL, TAYLOR, THOMPSON AND WEBER
CONCERNING THE IMPOSITION OF SANCTIONS**

June 15, 2016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

1.   There Was No "Improper Purpose" Within Rule 11 .................................... 4

2.   There Was No "Improper Purpose" Under Eighth Circuit Precedent .......................... 5

3.   Knowledge of *Thatcher* and *Hamm* Is Consistent with Respondents' Good Faith ....... 6

4.   The Eighth Circuit Repeatedly Upholds 41(a)(1) Dismissals
     Effected to Forum Shop .................................................................. 7

5.   Substantial Precedent Rejects Forum-Shopping
     Restrictions on 41(a)(1) Dismissals ..................................................... 8

6.   Many Arkansas Federal Judges Have Acquiesced in Respondents' Procedure ........... 9

7.   Rule 23 and CAFA Afforded Additional Grounds for Respondents' Conduct .......... 12

8.   Statements Made to the State Court Do Not Merit the Imposition of Sanctions ........ 13

9.   The Court Directed Entry of the Updated Rule 26(f) Report .................................. 16

10.  Inherent Power Should Not Be Invoked .................................................. 16

THE CONTEMPLATED INJUNCTIVE SANCTION IS EXCESSIVELY SEVERE .......................... 18

A REPRIMAND WOULD HAVE SERIOUS REPERCUSSIONS AND SHOULD NOT BE IMPOSED ............. 18

CONCLUSION .......................................................................................... 19

i

<u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*1-10 Indus. Assocs., LLC v. United States*,
    528 F.3d 859 (Fed. Cir. 2008)...................................................................................18

*Ameriquest Mortg. Co. v. Nosek (In re Nosek)*,
    609 F.3d 6 (1st Cir. 2010)........................................................................................3

*Anderson v. Smithfield Foods, Inc.*,
    353 F.3d 912 (11th Cir. 2003) .........................................................................16 n.15

*Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*,
    146 F.3d 1071 (9th Cir. 1998) ...............................................................................17

*Beavers v. Bretherick*,
    227 F. App'x 518 (8th Cir. 2007) .............................................................................7

*Bechuck v. Home Depot U.S.A., Inc.*,
    814 F.3d 287 (5th Cir. 2016) ...................................................................................8

*Black Hills Inst. of Geological Research v. S.D. Sch. of Mines & Tech.*,
    12 F.3d 737 (8th Cir. 1993) ...........................................................................4 n.7

*Cent. Mont. Rail v. BNSF Ry. Co.*,
    422 F. App'x 636 (9th Cir. 2011) .............................................................................9

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).................................................................1 n.1, 14 n.13, 16

*Children's Ctr. for Devel. Enrichment v. Machle*,
    612 F.3d 518 (6th Cir. 2010) ..........................................................................14 n.13

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990).................................................................................15, 18

*Crawford v. F. Hoffman-La Roche Ltd.*,
    267 F.3d 760 (8th Cir. 2001) .................................................................................12

*Dietz v. Bouldin*,
    No. 15-458, 2016 U.S. LEXIS 3772 (U.S. June 9, 2016)...................................17

*E.E.O.C. v. Trans States Airlines, Inc.*,
    462 F.3d 987 (8th Cir. 2006) ...........................................................................4 n.6

*FDIC v. MAXXAM, Inc.*,
523 F.3d 566 (5th Cir. 2008) ...................................................................14 n.13

*Foss v. Fed. Intermediate Credit Bank of St. Paul*,
808 F.2d 657 (8th Cir. 1986) ...........................................................................7

*Haeger v. Goodyear Tire & Rubber Co.*,
813 F.3d 1233 (9th Cir. 2016) ..................................................................18 n.16

*Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*,
187 F.3d 941 (8th Cir. 1999) ................................................................ *passim*

*Hardwick Airmaster, Inc. v. Lennox Indus., Inc.*,
78 F.3d 1332 (8th Cir. 1996) ...................................................................4 n.8

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
434 F.3d 320 (5th Cir. 2005) .......................................................................8-9

*In re Bees*,
562 F.3d 284 (4th Cir. 2009) ..........................................................................15

*In re Plaza-Martínez*,
747 F.3d 10 (1st Cir. 2014)..............................................................................20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*,
278 F.3d 175 (3d Cir. 2002)..............................................................................3

*In re Sargent*,
136 F.3d 349 (4th Cir. 1998) ............................................................................2

*In re Tyler*,
839 F.2d 1290 (8th Cir. 1988) ..................................................................18 n.16

*Indianapolis Colts v. Mayor & City Council of Balt.*,
775 F.2d 177 (7th Cir. 1985) ...................................................................8 n.10

*Isaacson v. Manty*,
721 F.3d 533 (8th Cir. 2013) ..........................................................................17

*Kern v. TXO Prod. Corp.*,
738 F.2d 968 (8th Cir. 1984) .......................................................................5-6

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010)..............................................................................15

*Kirk Capital Corp. v. Bailey*,
　　16 F.3d 1485 (8th Cir. 1994) ............................................................... 2 n.2

*Kusan, Inc. v. Alpha Distribs., Inc.*,
　　693 F. Supp. 1372 (D. Conn. 1988) ..................................................... 14-15

*Mackler Prods., Inc. v. Cohen*,
　　225 F.3d 136 (2d Cir. 2000) ...................................................................... 3

*McDaniel v. Manatt's, Inc.*,
　　No. 15-cv-2077, 2015 WL 5722802 (N.D. Iowa Sept. 29, 2015) ...................... 7

*McKnight v. Gen. Motors Corp.*,
　　511 U.S. 659 (1994) .......................................................................... 8 n.10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*,
　　136 S. Ct. 1562 (2016) ............................................................................ 20

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*,
　　8 F.3d 441 (7th Cir. 1993) ...................................................................... 15

*Miss. ex rel. Hood v. AU Optronics Corp.*,
　　134 S. Ct. 736 (2014) ............................................................................ 13

*Murray v. City of Columbus*,
　　534 F. App'x 479 (6th Cir. 2013) ........................................................... 1 n.1

*Navarro–Ayala v. Hernandez–Colon*,
　　3 F.3d 464 (1st Cir. 1993) ...................................................................... 15

*Nielsen v. Trans World Airlines, Inc.*,
　　95 F.3d 701 (8th Cir. 1996) ..................................................................... 17

*O'Connell v. Champion Int'l Corp.*,
　　812 F.2d 393 (8th Cir. 1987) ..................................................................... 6

*Pac. Dunlop Holdings, Inc. v. Barosh*,
　　22 F.3d 113 (7th Cir. 1994) ........................................................... 3, 9-10, 12

*Paulucci v. City of Duluth*,
　　826 F.2d 780 (8th Cir. 1987) .................................................................. 6-7

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
　　793 F.3d 1177 (10th Cir. 2015) ................................................................... 8

iv

*Safeguard Bus. Sys., Inc. v. Hoeffel*,
  907 F.2d 861 (8th Cir. 1990) ..........................................................................7

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir. 1999)..........................................................................19

*Sec. Nat'l Bank of Sioux City v. Jones Day*,
  800 F.3d 936 (8th Cir. 2015) .....................................................................3-4

*Sentis Grp., Inc. v. Shell Oil Co.*,
  559 F.3d 888 (8th Cir. 2009) ...................................................................16, 17

*Sentis Grp., Inc. v. Shell Oil Co.*,
  763 F.3d 919 (8th Cir. 2014) .......................................................................17

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011)......................................................................................19

*Square, Inc. v. REM Holdings 3, LLC*,
  No. 2011-1529, 2012 U.S. App. LEXIS 17257 (Fed. Cir. Aug. 14, 2012) .......18

*Stevenson v. Union Pac. R.R. Co.*,
  354 F.3d 739 (8th Cir. 2004) .......................................................................17

*Storage Tech. Partners II v. Storage Tech. Corp.*,
  117 F.R.D. 675 (D. Colo. 1987) ...................................................................19

*Thatcher v. Hanover Ins. Grp., Inc.*,
  659 F.3d 1212 (8th Cir. 2011) ............................................................. *passim*

*United States v. $11,071,188.64*,
  No. 15-1743, 2016 U.S. App. LEXIS 10226 (8th Cir. June 6, 2016)................17

*Willhite v. Collins*,
  459 F.3d 866 (8th Cir. 2006) .....................................................................2 n.2

*Wilson v. City of San Jose*,
  111 F.3d 688 (9th Cir. 1997) ..........................................................................9

*Wolfchild v. Redwood Cnty.*,
  No. 15-1580, 2016 U.S. App. LEXIS 9976 (8th Cir. June 1, 2016).................. 4 n.6 & n.9

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
  564 F.3d 110 (2d Cir. 2009).............................................................................8

## Rules & Statutes

Fed. R. App. P. 38 ...........................................................................................................8 n.10

Fed. R. Civ. P. 1 ..........................................................................................................14 n.13

Fed. R. Civ. P. 11 ......................................................................................................... *passim*

Fed. R. Civ. P. 16 .................................................................................................................16

Fed. R. Civ. P. 23 ....................................................................................................12, 13, 19

Fed. R. Civ. P. 26 .................................................................................................................16

Fed. R. Civ. P. 41 ......................................................................................................... *passim*

28 U.S.C. § 1332(d) ............................................................................................................13

## Other Authorities

2 Moore's Federal Practice § 11.11[8][b] (3d ed. 2015)......................................................5, 8

5 Moore's Federal Practice § 23App.04[1] (3d ed. 2015) ....................................................12

8 Moore's Federal Practice § 41.40[5][a] (3d ed. 2015) .......................................................7

Respondents Kenneth (Casey) Castleberry, John C. Goodson, D. Matt Keil, Matthew L. Mustokoff, Timothy J. Myers, Richard E. Norman, William B. Putman, Jason Ernest Roselius, Stevan Earl Vowell, W. H. Taylor, A.F. (Tom) Thompson, III, and R. Martin Weber, Jr. (collectively, "**Respondents**") respectfully submit this memorandum in connection with the June 24, 2016 hearing arising out of the Court's April 14, 2016 Opinion and Order (the "**Opinion**").

In the Opinion, the Court made it clear that "[t]he hearing will not be conducted for the purpose of reconsidering this order" (ECF No. 61 at 24), and Respondents are therefore not seeking reconsideration.  For the same reason, and in compliance with the Court's directive— conveyed by the Court's Law Clerk, Mr. Brown, in a June 6, 2016 email to all counsel—that the Court "has no intention of revisiting [its] finding that Rule 11 was violated and the judicial process abused," this memorandum does not address various legal issues relating to the Court's conclusions that violations of Rule 11 and the inherent power have occurred.  Respondents respectfully disagree with those conclusions.  Even where a court has determined that sanctionable conduct has been committed, however, whether to impose a sanction is discretionary.[1]  Respondents respectfully submit that this Court should exercise its discretion against imposing sanctions for four reasons.

---

[1]  Rule 11(c)(1) provides that, upon finding a violation, "the court <u>may</u> impose an appropriate sanction" (emphasis added).  Sanctions are equally discretionary under the inherent power:  "Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred."  *Murray v. City of Columbus*, 534 F. App'x 479, 485-86 (6th Cir. 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

*First*, as this Court has recognized, the purpose of sanctions is deterrence.[2]  Your Honor has found that this purpose has already been achieved by entry of the Opinion—that neither the lawyers before the Court nor other attorneys practicing in this District are likely to repeat the conduct proscribed by the Opinion:

> Furthermore, because the purpose of Rule 11 is to deter, and because the mere fact that Respondents now know that their conduct in stipulating to dismissal for the purpose of seeking a more favorable forum and avoiding an adverse decision is unequivocally improper, they are unlikely to repeat this misconduct.  Because the Court can and will institute changes to the way it manages putative class actions, and because this order should make clear to the bar that invoking federal jurisdiction under CAFA does not allow federal jurisdiction to be treated as a bargaining chip, other attorneys in this district—even those who remain unfamiliar with the holdings in *Hamm*[3] and *Thatcher*[4]—will also be unlikely to repeat this violation.

Opinion, ECF No. 61 at 23 (footnotes and emphasis added).

Once the goal of deterrence has been achieved, the imposition of sanctions is unnecessary, and no sanction should be imposed.  *See* Rule 11(c)(1)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." (emphasis added)); *In re Sargent*, 136 F.3d 349, 353 (4th Cir. 1998) (reversing sanction; the "finding by the district court that [defense counsel] violated Rule 11 by advancing an unsupported legal assertion essentially amounts to a public reprimand that, in and of itself, should be a significant deterrent to future violations.  And, there is no serious suggestion that further sanction was necessary to curb future abuses by [defense

---

[2]     Opinion, ECF No. 61 at 6 ("'[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct.'") (quoting *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994)).  The Eighth Circuit has applied this principle to sanctions imposed both under Rule 11 and the inherent power.  *See Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006) ("an award of sanctions should be 'no greater than sufficient to deter future misconduct by the party'") (citation omitted).

[3]     *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941 (8th Cir. 1999).

[4]     *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212 (8th Cir. 2011).

2

counsel]."); *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994) (reversing

where Rule 11 "sanctions were not necessary to deter similar attorney conduct in the future").

    *Second*, Respondents have been punished severely by entry of the Opinion and the

dozens of articles reporting on it and the antecedent Order to Show Cause, including in *Forbes*,

the *ABA Journal*, Reuters, Law360, Legal News Line, *Arkansas Business*, the *Arkansas*

*Democrat Gazette*, the *Arkansas Times*, the *San Antonio Business Journal*, the *San Antonio*

*Express-News*, and the *Times Record*.[5]  There is no need for further punishment, as the Eighth

Circuit found in similar circumstances in reversing the sanctions imposed by Judge Bennett last

year in *Security National Bank of Sioux City v. Jones Day*, 800 F.3d 936, 945 (8th Cir. 2015):

"Once information about an unusual sanction appears in public, the damage to the subject's

career, reputation, and future professional opportunities can be difficult if not impossible to

repair.... Assuming without deciding that there was sanctionable conduct here, defense counsel

has already suffered 'inevitable financial and personal costs,' *see Mackler Prods., Inc. v. Cohen*,

225 F.3d 136, 143 (2d Cir. 2000), and any additional sanction proceeding so long after the

disputed conduct would not usefully serve the deterrent purpose of Rule 30(d)(2)...."

    *Third*, none of the lawyers acted with malice or subjective bad faith, as discussed further

below.  The absence of malicious intent militates strongly against imposing sanctions.  *See*

*Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 609 F.3d 6, 10 (1st Cir. 2010) ("subjective intent

can bear on whether to impose a sanction").  "[S]anctions act as a symbolic statement about the

quality and integrity of an attorney's work—a statement which may have a tangible effect upon

the attorney's career."  *Sec. Nat'l Bank*, 800 F.3d at 944 (quoting *In re Prudential Ins. Co. Am.*

*Sales Practice Litig. Actions*, 278 F.3d 175, 191 (3d Cir. 2002)).  Here, as in *Security National*

---

[5]    *See* Appendix A (index of articles).

*Bank*, the Opinion stands as sufficient punishment for lawyers who did not act in subjective bad faith.

*Fourth*, in considering whether to impose a sanction, the question is not whether Respondents' view of the law was correct but only whether—in the Eighth Circuit's words—it was "colorable,"[6] "plausible" and "not baseless."[7] Even a "strained interpretation of the law" does not demonstrate a sanctionable improper purpose or bad faith.[8] Where, as here, the issues are complex and the lawyer has non-frivolous bases for proceeding as he or she did, the Court should not impose Rule 11 or inherent power sanctions.[9]

The Court should refrain from imposing any sanction because Respondents' strategy was colorable, plausible and not baseless, and was not motivated by an "improper purpose" under Rule 11, for the following 10 reasons:

## 1. <u>There Was No "Improper Purpose" Within Rule 11</u>

Filing a stipulation of dismissal to effect a class action settlement, with the intent of obtaining state court certification and review, has not previously been deemed an improper purpose under Rule 11, and the text of the Rule reasonably leads to the conclusion that it is not

---

[6]    *Wolfchild v. Redwood Cnty.*, No. 15-1580, 2016 U.S. App. LEXIS 9976, at *32 (8th Cir. June 1, 2016) (reversing Rule 11 and inherent power sanctions:  "even when a claim is ultimately meritless, sanctions are not appropriate where the plaintiffs had colorable legal arguments to support their claims") (citing *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 996 (8th Cir. 2006)).

[7]    *Black Hills Inst. of Geological Research v. S.D. Sch. of Mines & Tech.*, 12 F.3d 737, 745 (8th Cir. 1993) (reversing Rule 11 sanctions where decision to name certain defendant "was not baseless or lacking in plausibility").

[8]    *Hardwick Airmaster, Inc. v. Lennox Indus., Inc.*, 78 F.3d 1332, 1338 (8th Cir. 1996) (affirming denial of sanctions under Rule 11 and Ark. Code § 16-22-309).

[9]    *Wolfchild*, 2016 U.S. App. LEXIS 9976, at *32-33 (reversing sanctions imposed under Rule 11, the court's inherent power and 28 U.S.C. § 1927 in light of the complexity of the issues, which included subject matter jurisdiction, where "Appellants and their counsel have made good-faith, nonfrivolous arguments distinguishing, calling for modifications, or seeking extensions of existing law").

one.  Rule 11 qualifies the term "improper purpose" with the phrase "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  Filing a stipulation of dismissal to effect a class action settlement, with the intent of obtaining state court certification and review, is not of the same character as harassment or delay—that is, it is not vexatious behavior or conduct extraneous to the vindication of legal rights.  A leading treatise concludes: "Forum shopping is not an improper purpose [within Rule 11] if a ground for federal jurisdiction arguably exists."  2 MOORE'S FEDERAL PRACTICE § 11.11[8][b] (3d ed. 2015) (citing cases).  In this case, both federal and state jurisdiction clearly existed.  Respondents reasonably believed that the procedure they employed was not improper within Rule 11.

## 2.  There Was No "Improper Purpose" Under Eighth Circuit Precedent

If stipulating to dismissal under Rule 41(a)(1) in order to avoid an adverse decision and proceed in state court were an improper purpose, then filing a motion for dismissal under Rule 41(a)(2) for that purpose would also be sanctionable, as the purpose is the same.  *See* Opinion, ECF No. 61 at 9 n.6 ("using a different Rule 41 mechanism to dismiss with the agreement of an opposing party [under Rule 41(a)(1), rather than seeking dismissal by motion under Rule 41(a)(2)] does not change the propriety of the *purpose* for dismissing" (emphasis in original)).  But that purpose is not sanctionable in the Rule 41(a)(2) context, under Eighth Circuit precedent.  Neither the Eighth Circuit nor any district court in the Circuit has ever suggested that it is sanctionable to file a Rule 41(a)(2) motion to dismiss without prejudice for the purpose of avoiding an adverse decision and proceeding in another court.

This is vividly illustrated by the Eighth Circuit's decision in *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir. 1984), a case quoted at length and with approval in *Thatcher*, 659 F.3d at 1213.  *Kern* upheld the grant of a Rule 41(a)(2) motion filed for the purpose of

5

avoiding an adverse decision and potentially seeking a more favorable forum in state court.  In *Kern*—in the middle of trial, just 15 minutes after the court informally indicated that it would "more than likely direct a verdict in favor of the defendant" (*Kern*, 738 F.2d at 970)—plaintiff's counsel successfully moved for voluntary dismissal without prejudice pursuant to Rule 41(a)(2), to avoid an adverse decision and be able to refile in state court (which the Eight Circuit found "likely" (*id.* at 972)).  The Eighth Circuit affirmed the dismissal without prejudice (remanding only for entry of an order conditionally imposing costs, if the case were to be refiled), and it declined to condition the dismissal "on a requirement that plaintiff refile, if at all, only in a federal court."  *Id*. at 972-73.  The *Kern* Court explained:  "It would be unwise for us (assuming our power to do so) to forbid a citizen to resort to the courts of her own state....  We have no reason to think the state courts will not do justice."  *Id*. at 973.

Had the conduct in *Kern* been sanctionable, both the trial court and, on appeal, the Eighth Circuit would have been required to impose sanctions *sua sponte* because, in 1984, Rule 11 sanctions were mandatory whenever misconduct came to the attention of the court.  *See O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987) ("Rule 11 makes sanctions mandatory when a violation of the Rule occurs....").  Sanctions were not imposed because there was nothing improper about counsel's moving to dismiss under Rule 41(a)(2) for the purposed of avoiding an adverse decision and potentially re-filing in state court.

### 3.  Knowledge of *Thatcher* and *Hamm* Is Consistent with Respondents' Good Faith

Respondents Keil, Goodson, Roselius, Weber and Norman's knowledge of *Thatcher* and *Hamm* does not give rise to an inference of bad faith.  *Thatcher* and *Hamm* were both decided under Rule 41(a)(2), not Rule 41(a)(1).  "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side."  *Paulucci v. City of Duluth*, 826 F.2d

780, 782 (8th Cir. 1987); *accord Beavers v. Bretherick*, 227 F. App'x 518, 520 (8th Cir. 2007) (citing and quoting *Paulucci*); 8 MOORE'S FEDERAL PRACTICE § 41.40[5][a] (3d ed. 2015) ("The primary purpose of Rule 41(a)(2) is to protect the interests of the defendant...."). This purpose is not implicated when the defendants consent to dismissal under Rule 41(a)(1). *Cf. McDaniel v. Manatt's, Inc.*, No. 15-cv-2077, 2015 WL 5722802, at *2 (N.D. Iowa Sept. 29, 2015) (granting motion for Rule 41(a)(2) voluntary dismissal post-removal to permit plaintiff to pursue state law claims in state court—notwithstanding *Thatcher* and *Hamm*—where defendants "renounced their right to a federal forum" and "consented to the dismissal"). Neither *Thatcher* nor *Hamm* prohibits a Rule 41(a)(1) dismissal to avoid an adverse decision and proceed in state court. Neither addresses Rule 41(a)(1) at all. Both *Thatcher* and *Hamm* hold that, in deciding a plaintiff's motion to dismiss under Rule 41(a)(2), the plaintiff's goal of avoiding an adverse decision and proceeding in state court is a basis on which the court may deny a Rule 41(a)(2) motion. We can find no precedent in the Eighth Circuit extending *Thatcher* or *Hamm* to voluntary or stipulated dismissals under Rule 41(a)(1).

### 4.  <u>The Eighth Circuit Repeatedly Upholds 41(a)(1) Dismissals Effected to Forum Shop</u>

On the contrary, the Eighth Circuit has repeatedly upheld the effectiveness of voluntary dismissals under Rule 41(a)(1) when plainly filed for the purpose of avoiding an adverse decision and refiling in a more favorable forum. *See, e.g.*, *Safeguard Bus. Sys., Inc. v. Hoeffel*, 907 F.2d 861, 863-64 (8th Cir. 1990) (notice of dismissal filed after plaintiff's request for a temporary restraining order was denied; "we consider only whether an answer or a motion for summary judgment was filed before the notice of voluntary dismissal.… <u>Consistent with our cases, we can inquire no further</u>.") (emphasis added); *Foss v. Fed. Intermediate Credit Bank of St. Paul*, 808 F.2d 657, 658-60 (8th Cir. 1986) (notice of dismissal filed after magistrate judge

recommended dismissal with prejudice but before district court acted; district judge refused to allow the notice to be filed, accepted the magistrate judge's recommendation, and dismissed with prejudice; the Eighth Circuit held the district court was "without jurisdiction to pass upon the merits of the case," reversed the district court and ordered dismissal without prejudice).

5. **Substantial Precedent Rejects Forum-Shopping Restrictions on 41(a)(1) Dismissals**

Several other Circuits have considered and rejected attempts to impose forum-shopping constraints on the right to voluntarily dismiss under Rule 41(a)(1).  The fact that other courts have upheld the procedure Respondents employed further demonstrates that their behavior was not unreasonable or improper.[10]  *See, e.g.*, *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009) (plaintiff "was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable"); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1188 (10th Cir. 2015) ("Forum shopping is not an improper purpose [within Rule 11] if a ground for federal jurisdiction arguably exists") (quoting 2 MOORE'S FEDERAL PRACTICE § 11.11[8][b]); *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 292-93 (5th Cir. 2016) ("Court-ordered sanctions should be neither 'a consequence' of a voluntary dismissal without prejudice nor a 'condition' placed upon such dismissal.... Although forum-shopping is not a trivial concern, 'Rule 41(a)(1) essentially permits forum shopping.'") (quoting *Harvey Specialty & Supply, Inc.*

---

[10]     *See, e.g.*, *Indianapolis Colts v. Mayor & City Council of Balt.*, 775 F.2d 177, 182 (7th Cir. 1985) ("the fact that judges who have ruled on the merits of that pleading disagree provides significant evidence that the pleading was not frivolous or unreasonable").  In *McKnight v. General Motors Corp.*, 511 U.S. 659 (1994), the Supreme Court reversed a sanction imposed by the Seventh Circuit on an attorney who put forward an argument that was foreclosed by precedent in the Seventh Circuit and every other appeals court.  The Supreme Court reasoned that, even though there was no circuit conflict, the issue "had divided the District Courts and its answer was not so clear as to make petitioner's position frivolous."  *Id.* at 660.  While *McKnight* was decided under FED. R. APP. P. 38, the Supreme Court focused on the meaning of the word "frivolous," which is the standard applied under Rule 11(b)(2).

*v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 n.15 (5th Cir. 2005) ("We note that plaintiffs in removed cases frequently use the rule [41(a)(1)] to re-file an action in state court to secure their preferred forum.... Rule 41(a)(1) essentially permits forum shopping") and citing *Wilson v. City of San Jose*, 111 F.3d 688, 694 (9th Cir. 1997)).

At least one of these Circuits, the Ninth—like the Eighth—nonetheless considers forum shopping a sufficient discretionary ground to deny a Rule 41(a)(2) motion to dismiss. *See Cent. Mont. Rail v. BNSF Ry. Co.*, 422 F. App'x 636, 638 (9th Cir. 2011) (affirming denial of Rule 41(a)(2) motion where "[t]he district court's conclusion that the Rule 41(a)(2) motion was motivated by forum shopping has support in the circumstances here."). Therefore, there is no inherent inconsistency between allowing Rule 41(a)(1) dismissals for the purpose of forum shopping but precluding dismissal under Rule 41(a)(2) for that purpose.

### 6. Many Arkansas Federal Judges Have Acquiesced in Respondents' Procedure

Many federal judges in this State have consciously permitted the conduct at issue here—stipulated voluntary dismissal of an uncertified, CAFA-removed class action in deference to state court certification and settlement review. In each case, the federal judge was apprised that the federal class action was being dismissed to effect a settlement in state court, subject to state court certification and review. In each case, the federal judge facilitated the process. There was no reason for any of the Respondents—all of whom were involved in at least one of these cases—to believe that the same conduct would be deemed sanctionable in this case. For sanctions purposes, just the opposite is true: "[O]nce an attorney expressly informs the court of a proposed course of conduct which does not violate a rule of procedure, local rule, court order, or case law, and the district court does not indicate any disapproval, then it is objectively reasonable for the attorney to proceed in the manner made known to the court." *Pac. Dunlop Holdings*, 22 F.3d at

119.  It is true that Respondents did not inform this Court of their proposed course of action in this case.  In light of their experience in the cases below, however, they had no reason to believe it was necessary to do so.  The other Arkansas federal court cases in which the same conduct has been acquiesced in—and never chastised—include the following:

i.   *Rafaelli v. Certain Underwriters at Lloyd's London*, No. 4:14-cv-4038 (W.D. Ark.), was a CAFA-removed, putative class action.  *Rafaelli*, ECF No. 1.  While defendants' motion to remand was pending, the parties jointly moved for a stay pending mediation.  *See Rafaelli*, ECF Nos. 18, 19, 22, 23.  In a status report submitted by email to the Honorable Susan O. Hickey, counsel advised the Court that "they [had] participated in a mediation … and ha[d] reached a tentative settlement...."  Leventhal Decl. Ex. 1.  Counsel subsequently advised Judge Hickey:

> [T]he parties <u>have reached class settlement in this case and have sought approval in the related Arkansas state court case</u>.… Upon final approval of the settlement, Plaintiffs will dismiss the case in this Court.

App. 436 (emphasis added).[11]   Subsequently, the parties filed a Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice, and Judge Hickey ordered the case dismissed with prejudice.  *Rafaelli*, ECF Nos. 27 and 28.

ii.   In *Vinson v. Metropolitan Property & Casualty Insurance Co.*, No. 4:14-cv-00029 (E.D. Ark.), another CAFA-removed, putative class action, counsel stipulated to dismissal without prejudice under Rule 41(a)(1)(A)(ii).  *Vinson*, ECF Nos. 1, 73.  The next day, after a text entry entered on the docket indicated that the case was dismissed with prejudice, Mr. Castleberry called the law clerk to the presiding judge, the Honorable Billy Roy Wilson, to note the error and advise that a state court action was being filed so that the settlement could be administered in state court.  *Vinson*, ECF No. 74; Castleberry Decl. ¶¶2-3 & Ex. A.  Judge Wilson's law clerk (who was away from his phone at the time of the call) returned the call and, after his conversation with Mr. Castleberry, a corrected docket entry was made later that day, vacating the earlier order and specifying that the case was dismissed without prejudice.  *Vinson*, ECF No. 75; Castleberry Decl. ¶¶3-4.

Note that in *Vinson*, as in this case, counsel did not notify the District Court in advance that they had filed a Rule 41(a)(1) dismissal without prejudice with the intent of obtaining state court certification and review of a settlement.  When that was brought to the District Court's attention, however, it acquiesced in the procedure and vacated its earlier order dismissing the federal action with

---

[11]   Citations to "App." refer to ECF No. 42-1 through 42-4 (Plaintiffs' Appendix in Support of Plaintiffs' Counsel's Response to Order to Show Cause, filed January 14, 2016).

prejudice, which would otherwise have prevented the state court action from proceeding.  Accordingly, with notice of the procedure, the Court permitted it to proceed.

iii.  In *Pipes v. Life Investors Insurance Co*., No. 1:07-cv-00035 (E.D. Ark.)—also a CAFA-removed, putative class action—a Joint Motion to Stay informed the Honorable Susan Webber Wright that "[t]he Parties ha[d] reached a class action settlement agreement (the 'Settlement') in a related matter entitled *Runyan* … pending in the Circuit Court of Pulaski County" that "includes the Parties to this action and provides that upon Final Approval of the Settlement, the Parties will move to dismiss this action with prejudice."  *Pipes*, ECF Nos. 1, 136.  Judge Wright granted the stay and ordered the parties "to report to the Court on the status of the Settlement proceedings pending in the Circuit Court…." *Pipes*, ECF No. 140.  The parties later filed a status report on the state court settlement proceedings and notice of the state court's approval of the class and entry of a final order and judgment. *Pipes*, ECF No. 144, 154, 155.  Nearly two years later, following resolution of all appeals in the state courts, Judge Wright directed the parties to report on "the status of the state court litigation and stat[e] any reason why this case should not be terminated immediately."  The parties filed a Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice, and Judge Wright entered an order dismissing the case with prejudice. *Pipes*, ECF Nos. 156, 158-60.

iv.  In *Runyan v. Transamerica Life Insurance Co.*, No. 6:08-cv-06034 (W.D. Ark.)— a CAFA-removed, putative class action related to *Pipes*—counsel filed a Joint Motion to Stay informing the Honorable Jimm Larry Hendren that "[t]he Parties ha[d] reached a class action settlement agreement (the 'Settlement') in a related matter entitled *Runyan* … pending in the Circuit Court of Pulaski County, Arkansas" that "includes the Parties to this action and provides that upon Final Approval of the Settlement, the Parties will move to dismiss this action with prejudice." *Runyan*, ECF Nos. 1, 5, 37, 38.  Judge Hendren granted the stay, ordered the parties to report on the status of the state court settlement proceedings, and later extended the stay pending the fairness hearing in state court. *Runyan*, ECF Nos. 39-41.  After the parties advised the Court that the state court had approved the settlement and entered final judgment, Judge Hendren administratively terminated the case without prejudice to the parties' rights to reopen proceedings for good cause, including to file a stipulation of dismissal. The *Runyan* parties subsequently filed a Rule 41(a)(1)(A)(ii) stipulation of voluntary dismissal with prejudice. *Runyan*, ECF Nos. 42-44.

v.  In *Goodner v. Shelter Mutual Insurance Co.*, No. 4:14-cv-4013 (W.D. Ark.)— another CAFA-removed, putative class action before Judge Hickey—counsel jointly moved for, and the Court granted, several stays pending settlement discussions. *See, e.g.*, *Goodner*, ECF Nos. 1, 29-30, 32-37.  One of these motions informed Judge Hickey that certain plaintiffs and the defendant had "executed a settlement agreement, and on April 20, 2015, the Circuit Court of Miller County, Arkansas, entered an order preliminarily approving the settlement.  The final approval hearing is set for August 12, 2015…." *Goodner*, ECF No. 36 ¶3.

Subsequently, the parties filed a Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice as to the settling plaintiffs' claims. *Goodner*, ECF No. 38.

"If a district court does not approve of a procedure made known to the court in advance, then it should say so at the time." *Pac. Dunlop Holdings*, 22 F.3d at 119. This is the experience of working trial lawyers: If judges disapprove of a practice, they do not condone it—they prohibit it. Counsel reasonably believed that a procedure acquiesced in by Judge Hickey, Judge Wilson, Judge Wright and Judge Hendren was not improper.[12]

### 7. Rule 23 and CAFA Afforded Additional Grounds for Respondents' Conduct

The 2003 amendment to Rule 23(e) and the enactment of CAFA in 2005 gave counsel additional grounds to believe that their conduct was proper. Prior to December 1, 2003, Rule 23(e) provided that: "A class action shall not be dismissed or compromised without the approval of the court...." 5 MOORE'S FEDERAL PRACTICE § 23App.04[1] (3d ed. 2015). The Rule thus required court approval for any voluntary dismissal of a putative class action. *See Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("dismissal under either provision of Rule 41 is subject to court approval pursuant to Rule 23(e)"). The requirement of court approval was eliminated by the 2003 amendment to Rule 23(e), which (as non-substantively restyled in 2007) now provides: "The claims, issues, or defenses of a <u>certified</u> class may be settled, voluntarily dismissed, or compromised only with the court's approval" (emphasis added). The 2003 Advisory Committee Note stresses that: "The new rule requires approval only if the claims, issues, or defenses of a <u>certified</u> class are resolved by a settlement, voluntary dismissal, or compromise" (emphasis added).

When Congress enacted CAFA in 2005, it did not reverse the 2003 amendment to Rule 23(e) to require court approval of dismissals or settlements of uncertified CAFA-removed class

---

[12]     *See* App. 445-46, 450, 455, 459-60, 464, 469, 474, 479, 484, 497, 502 and 507.

actions—in contrast, for example, to Congress's action, when it enacted the PSLRA in 1995, reversing the 1993 amendment to Rule 11 to make sanctions mandatory, rather than discretionary, in securities fraud cases. In interpreting CAFA, the Supreme Court has held that Congress drafted CAFA with knowledge of—and to work in tandem with—the Federal Rules of Civil Procedure. *See Miss. ex rel. Hood v. AU Optronics Corp*., 134 S. Ct. 736, 742 (2014) ("Congress used the terms 'persons' and 'plaintiffs' just as they are used in Federal Rule of Civil Procedure 20, governing party joinder."). Indeed, CAFA cites Rule 23 in defining "class action" and elsewhere. *See* 28 U.S.C. §§ 1332(d)(1)(B), 1332(d)(11)(C)(ii)(I), 1332(d)(11)(C)(ii)(II).

The power that, prior to December 1, 2003, had been vested in the federal courts to ensure that every putative class action be subjected to, in the Opinion's words, "the rigorous review this Court is obligated to give to motions for class certification (especially in the settlement context)" (ECF No. 61 at 20), was thus consciously removed by federal rulemakers in 2003 and not reinstated by Congress in 2005. Respondents could reasonably conclude that acting to shift such review to the Arkansas state court was an outcome foreseen and permitted by both the rulemakers and by Congress.

### 8.   Statements Made to the State Court Do Not Merit the Imposition of Sanctions

The written and oral statements made (or not corrected) by Respondents Vowell, Putman, Taylor and Keil to the state court, viewed in context, were not misleading and do not merit punishment. In the Opinion, the Court identified (a) state court filings describing the settlement as a "common fund case to the Arkansas state court," and (b) a statement by Mr. Vowell, who said, in reference to an objection asserting "that the claims form threatens criminal perjury," that he did not "know what they're talking about." Opinion, ECF No. 61 at 21-22. Even assuming that statements made in state court after a federal action has been dismissed are within the federal

13

sanctions power,[13] these statements must be considered in the context of the full state court

docket, an examination of which reveals the following:

i.    Respondents' submissions to the state court made it abundantly clear that the settlement was "a claims-made settlement." App. 102 ¶59 (Proposed Stipulation of Class Action Settlement); *see also, e.g.*, App. 233 (Plaintiffs' Motion for Final Approval of Settlement) ("Because this is a claims-made settlement, Class Members who do not submit a valid Claim Form shall not receive a payment….").

ii.    To the extent the phrase "common fund" appears in the state papers, it merely describes the total expected funds to be made available pursuant to the settlement. *See, e.g.*, App. 288 ¶30 (December 9, 2015 Affidavit of Matt Keil) (ECF No. 42-3 at 42 ¶30) (referring to the value "of the total common fund obtained by the efforts of Class Counsel"—having previously explained the "claims made process" in ¶28 (App. 287-88)). Counsel's fee application explicitly disclosed that "the possibility exists that some of the cash funds Defendant has made available to Class Members might not be claimed" and urged that "the attorneys' fees should be based on the amount of funds potentially available." App. 42 n.16.

iii.    The state court's Final Order and Judgment Approving the Settlement expressly provides that "Defendants will provide Claim Payments to all qualifying Settlement Class Members who submit timely and approved claims" (App. 337 ¶6), and requires that "Class members ... timely submit Claim Forms" (App. 369 ¶42). The Claim Form on its face required a certification "under penalties of perjury" (App. 407).

The complete Settlement Agreement and Claims Form were presented to the state court.

A mistaken characterization of documents presented to a court for its review does not warrant

sanctions. *See, e.g.*, *Kusan, Inc. v. Alpha Distribs., Inc.*, 693 F. Supp. 1372, 1375-76 (D. Conn.

---

[13]    *But see* FED. R. CIV. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts...."); *Children's Ctr. for Devel. Enrichment v. Machle*, 612 F.3d 518, 524 (6th Cir. 2010) (affirming district court determination that court lacked inherent power to sanction misconduct before administrative tribunal: "The inherent power of a court to manage its own affairs by assessing attorney's fees does not also empower it to assess fees in cases litigated in other venues. In fact, such a conclusion would infringe on the inherent power of other judges to manage *their own* affairs.") (emphasis in original); *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 591 (5th Cir. 2008) (*Chambers* only "allows sanctions for conduct beyond that occurring in trial when a party engages in 'bad-faith conduct' which is 'in direct defiance *of the sanctioning court*.' Additionally, the *Chambers* Court authorized sanctions reaching 'beyond the court's confines' expressly with the purpose of allowing courts to sanction parties … to address problems arising from 'disobedience *to the orders of the Judiciary*.'") (emphasis in original).

1988) (in a brief in support of a motion for a preliminary injunction, plaintiff's counsel misrepresented that the pertinent trademark registration appeared on the principal register (which would have made it presumptively valid), when in fact it appeared only on the supplemental register; held: "The fact that copies of the actual registrations were appended to the complaint stand as truthful statements of the status of trademark registrations owned by [the plaintiff] and simultaneously negate any problem that the misstatement in the brief may have created. Rule 11 sanctions are not appropriate."). Nor should the Court impose a sanction based on an oral statement that did not reiterate statements made in papers previously filed with the court—Rule 11 carves out spontaneous utterances made to the court.[14]

Even if an isolated misstatement were made, that would not warrant the imposition of a sanction. *See, e.g.*, *In re Bees*, 562 F.3d 284, 288 (4th Cir. 2009) ("isolated, inadvertent error does not justify Rule 11 sanctions"); *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 451 (7th Cir. 1993) ("Although it is true that deterrence is a 'central goal' of Rule 11 (*see Cooter & Gell*, 496 U.S. at 393), that goal would not be furthered by the imposition of sanctions here. Inadvertent factual errors will occur—we hope not frequently, but litigants and attorneys will make mistakes.... Rule 11 is not directed to isolated factual errors...."); *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.") (quoting *Navarro–Ayala v. Hernandez–Colon*, 3 F.3d 464, 467 (1st Cir. 1993)).

---

[14]     *See* Adv. Com. Note (1993) to FED. R. CIV. P. 11 ("The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection.").

15

### 9.  **The Court Directed Entry of the Updated Rule 26(f) Report**

On March 17, 2015, the Court—fully apprised that the parties "had reached agreement on almost all material terms" of a settlement—ordered the parties "to file an updated Rule 26(f) report."  Opinion, ECF No. 61 at 2; Text Only Order, *Adams v. USAA*, No. 14-cv-2013 (W.D. Ark. Mar. 17, 2015).  Had counsel failed to do so, counsel would have been subject to sanction under FED. R. CIV. P. 16(f)(1)(C) for disregarding the Court's order.  The Court should not, in fairness, place counsel in an impossible predicament—subject to sanction for complying with a Court order that they would have been subject to sanction for disregarding.  There is no way to complete a Rule 26(f) report without inserting dates for litigation benchmarks in the future—in the event a case does not settle, as most do—and this report was ordered after counsel had disclosed to the Court the likelihood of imminent settlement.  The Court should not impose a sanction for complying with the Court's order.[15]

### 10.  **Inherent Power Should Not Be Invoked**

"[I]nherent authority is a broad and powerful tool.  As such, it should be used sparingly." *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009); *see also Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").  Courts "first should turn to specific rules tailored for the situation at hand … to justify sanctions," and only then, "as an alternative basis for support or in circumstances where specific rules are insufficient, *i.e.*, where 'there is a need,' it may be appropriate to invoke their inherent authority."  *Sentis*, 559 F.3d at 900 (citation omitted).  There is no such need here.  The Court has already found the challenged conduct falls within the scope of Rule 11.  The exercise

---

[15]     *See Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 916 (11th Cir. 2003) (reversing sanctions imposed on plaintiffs' counsel for filing an amended complaint where "a reasonable lawyer could interpret the order as inviting better-pleaded ... claims").

of inherent power should not be used to "nullify the procedural choices reserved … under the federal rules." *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). *See also Dietz v. Bouldin*, No. 15-458, 2016 U.S. LEXIS 3772, at *10 (U.S. June 9, 2016) ("the exercise of an inherent power ... cannot contradict any express rule or statute").

The conduct that is the subject of the Opinion, moreover, is not of the extreme and egregious character that the Eighth Circuit has historically found to comprise sanctionable bad faith—*e.g.*:

- "[R]epeated flaunting of the court's unambiguous orders" (*United States v. $11,071,188.64*, No. 15-1743, 2016 U.S. App. LEXIS 10226, at *7 (8th Cir. June 6, 2016))

- "[I]ntentional ... ongoing and systematic suppression of evidence" (*Sentis Grp., Inc. v. Shell Oil Co*., 763 F.3d 919, 924 (8th Cir. 2014))

- "[P]ursu[ing] [a] lawsuit 'in bad faith and for no purpose other than to harass and badger [the defendant]'" (*Nielsen v. Trans World Airlines, Inc*., 95 F.3d 701, 702-03 (8th Cir. 1996))

- "[F]iling ... papers that contained 'unbelievably and unmitigatingly outrageous' assertions" (*Isaacson v. Manty*, 721 F.3d 533, 536, 539 (8th Cir. 2013))

- "[D]estroying [evidence] pursuant to [a] routine policy in circumstances where [the destroying party] had general knowledge that such [evidence] would be important to any litigation over an accident that resulted in serious injury or death, and its knowledge that litigation is frequent when there has been an accident involving death or serious injury" (*Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 747-48 (8th Cir. 2004) (stressing that "this case tests the limits of what we are able to uphold as a bad faith determination") (emphasis added).

None of Respondents' conduct identified in the Opinion is of a remotely similar character or amounts to bad faith, which is a prerequisite for the imposition of inherent power sanctions. *Sentis*, 559 F.3d at 899.

## THE CONTEMPLATED INJUNCTIVE SANCTION IS EXCESSIVELY SEVERE

Injunctive relief is reserved for serious offenders whose behavior is outrageous.[16]  There is no such conduct here.  In the past, the procedure that Respondents employed was acquiesced in, and facilitated, by other judges in this District and the Eastern District; it has been expressly approved in other Circuits and by a leading treatise; it has never been expressly disapproved by the Eighth Circuit; and the Federal Rules of Civil Procedure were amended in 2003 in a way that allows it.

An injunction would also have potentially devastating professional consequences.  Clients do not need lawyers who have been sanctioned, let alone lawyers who—while acting on the clients' behalf—must file notices proclaiming the fact they have been sanctioned.  The Court should exercise its discretion against imposing the contemplated injunctive sanctions.

## A REPRIMAND WOULD HAVE SERIOUS REPERCUSSIONS AND SHOULD NOT BE IMPOSED

A sanction in the form of a reprimand is a serious sanction:  "[A] reprimand [i]s likely to have a serious adverse impact upon the attorney's professional reputation and career."  *Square, Inc. v. REM Holdings 3, LLC*, No. 2011-1529, 2012 U.S. App. LEXIS 17257, at *4 (Fed. Cir. Aug. 14, 2012).  *See also 1-10 Indus. Assocs., LLC v. United States*, 528 F.3d 859, 861 (Fed. Cir. 2008) (reversing reprimand:  "Justice Stevens observed in *Cooter & Gell* ... that the most precious asset of an attorney is his professional reputation.  A formal order of sanction of any kind imposed by a court necessarily tarnishes an attorney's professional reputation.").  A public

---

[16]     *See, e.g.*, *In re Tyler*, 839 F.2d 1290, 1292-93, 1295 (8th Cir. 1988) (inmate who had filed 113 cases in one district court over a 19-month period limited to one filing per month, accompanied by an affidavit reflecting the action's bona fides); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1237, 1242 (9th Cir. 2016) (ordering products liability defendant—which had suppressed negative test results to obtain a favorable settlement—to file a copy of sanctions order in any future products liability case dealing with same product, given the "repeated, deliberate decisions by [counsel and client] to delay the production of relevant information, make misleading and false in-court statements, and conceal relevant documents").

reprimand should "be reserved for particularly egregious conduct indicating, for example, a lack of integrity." *Storage Tech. Partners II v. Storage Tech. Corp.*, 117 F.R.D. 675, 680 (D. Colo. 1987).

A sanction in the form of a reprimand haunts an attorney. Every insurance application, every insurance renewal, every *pro hac vice* application, every bar renewal requires disclosure of the reprimand. It lives forever on the Internet. "Sanctions carry much more than a pecuniary impact: Reputations are at stake and licenses to practice are in danger." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) (inherent power/§ 1927 monetary sanction). A reprimand is an irremovable badge of dishonor that should not be imposed.

## CONCLUSION

Although the Opinion acknowledges that "this Court is not sitting in review of the settlement" (ECF No. 61 at 11), an award of sanctions would necessarily rest on the conclusion that the state court should not have approved what the Opinion characterizes as "a settlement that primarily benefits Plaintiffs' counsel and USAA" (*id.* at 26)—otherwise, no harm would have flowed from what the Opinion terms Respondents' actions to "evade federal review" (*id.* at 27). But the Supreme Court has recognized the right of state courts to interpret their class action rules differently than federal courts—and specifically to apply what the Opinion refers to as a "more lenient approach to certification" (*id.* at 12). *See Smith v. Bayer Corp.*, 564 U.S. 299 (2011) (after federal court denied class certification, West Virginia state court certified the same class applying the less rigorous interpretation of Rule 23 adopted by the West Virginia Supreme Court, which had "declar[ed] its independence from federal courts' interpretation of the Federal Rules—and particularly of Rule 23" (*id.* at 310); held, federal court without power to enjoin state class action from proceeding).

Just a few weeks ago, the Supreme Court emphasized once again that:

> Out of respect for state courts, this Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires.  <u>We have reiterated the need to give "[d]ue regard [to] the rightful independence of state governments"—and more particularly, to the power of the States "to provide for the determination of controversies in their courts."</u>

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1573 (2016) (emphasis added; citations omitted).  This concern and deference apply in these circumstances, and they weigh against an award of sanctions.

"In this day and age, sanctions are a badge of reprobation that can haunt an attorney throughout his or her career.  They can have ramifications that go far beyond the particular case." *In re Plaza-Martínez*, 747 F.3d 10, 14 (1st Cir. 2014).  It is within this Court's discretion to decline to impose any sanction.  For the reasons set forth above, Respondents respectfully urge the Court to do just that.

Respectfully submitted,

**JOSEPH HAGE AARONSON LLC**


____/s/ *Gregory P. Joseph*_____
Gregory P. Joseph (*pro hac vice*)
Mara Leventhal (*pro hac vice*)
Courtney A. Solomon (*pro hac vice*)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel:  (212) 407-1200
Fax: (212) 407-1280
Email:  gjoseph@jha.com; mleventhal@jha.com;
csolomon@jha.com

John R. Elrod, Ark. Bar 71026
Vicki Bronson, Ark. Bar 97058
**CONNER & WINTERS LLP**
4375 N. Vantage Drive
Suite 405
Fayetteville, AR 72703
Tel. (479) 582-5711
Fax (479) 587-1426
Email: jelrod@cwlaw.com; vbronson@cwlaw.com

Russell Post (*pro hac vice*)
**BECK REDDEN LLP**
1221 McKinney Street
Suite 4500
Houston, TX 77010
Tel. (713) 951-6292
Fax (713) 951-3720
Email: rpost@beckredden.com

*Attorneys for Respondents Kenneth (Casey) Castleberry, John C. Goodson, D. Matt Keil, Matthew L. Mustokoff, Timothy J. Myers, Richard E. Norman, William B. Putman, Jason Ernest Roselius, Stevan Earl Vowell, W. H. Taylor, A.F. (Tom) Thompson, III, and R. Martin Weber, Jr.*

776973

<u>**CERTIFICATE OF SERVICE**</u>

On this 15th day of June, 2016, I verify that I have electronically submitted the foregoing Memorandum of Respondents Castleberry, Goodson, Keil, Mustokoff, Myers, Norman, Putman, Roselius, Vowell, Taylor, Thompson and Weber Concerning the Imposition of Sanctions, including Appendix A, the Declaration of Kenneth P. "Casey" Castleberry, and the Declaration of Mara Leventhal to the Clerk of the Court using the ECF filing system and for electronic transmission of notice to all counsel of record.

/s/ *Gregory P. Joseph*

Gregory P. Joseph (*pro hac vice*)
**JOSEPH HAGE AARONSON LLC**
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel:  (212) 407-1200
Fax: (212) 407-1280
Email:  gjoseph@jha.com

*Attorney for Respondents Kenneth (Casey)*
*Castleberry, John C. Goodson, D. Matt Keil,*
*Matthew L. Mustokoff, Timothy J. Myers,*
*Richard E. Norman, William B. Putman,*
*Jason Ernest Roselius, Stevan Earl Vowell,*
*W. H. Taylor, A.F. (Tom) Thompson, III,*
*and R. Martin Weber, Jr.*