```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF ARKANSAS
 2                      FORT SMITH DIVISION

 3   MARK I. ADAMS and KATHERINE S. ADAMS,  )
     individually and on behalf of          )
 4   all others similarly situated,         )
                                            )
 5                       Plaintiffs,        )
                                            )
 6        vs.                               ) Case No. 2:14-CV-02013
                                            )
 7   UNITED SERVICES AUTOMOBILE ASSOCIATION;) @ Fort Smith, Arkansas
     USAA CASUALTY INSURANCE COMPANY; and   )
 8   USAA GENERAL INDEMNITY COMPANY,        )
                                            )
 9                       Defendants.        )

10              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE P. K. HOLMES, III
11             UNITED STATES DISTRICT COURT JUDGE
                       JUNE 24, 2016
12
                    A P P E A R A N C E S
13   For the Respondents,        MR. JOHN R. ELROD
     Plaintiffs' Attorneys:      Conner & Winters, LLP
14                               4375 N. Vantage Drive, Ste 405
                                 Fayetteville, Arkansas  72703
15
                                 MR. GREGORY P. JOSEPH
16                               Joseph Hage Aaronson, LTD
                                 485 Lexington Avenue, 30th Fl.
17                               New York, New York  10017

18   For the Respondent,         MR. JAMES M. MOODY
     Stephen C. Engstrom:        Wright, Lindsey & Jennings, LLP
19                               200 W. Capitol Ave, Ste 2300
                                 Little Rock, Arkansas  72201
20
     For the Respondents,        MR. DAVID R. MATTHEWS
21   Defendants' Attorneys:      Matthews, Campbell, Rhoads,
                                 McClure, Thompson & Fryauf, PA
22                               119 South Second Street
                                 Rogers, Arkansas  72756
23   REPORTED BY:

24   RICK L. CONGDON, RMR, FCRR
     Federal Official Court Reporter
25   P. O. Box 8493
     Fort Smith, Arkansas  72902
```

1                        ---o0o---

2              PROCEEDINGS OF JUNE 24, 2016

3                        ---o0o---

4         THE COURT:  Good morning.

5         AUDIENCE:  Morning, Your Honor.

6         THE COURT:  We are here this morning for a hearing in

7    the case of Mark Adams and Katherine Adams versus United

8    Services Automobile Association.  The case number is

9    2:14-CV-2013.  And the purpose, again, for the hearing today is

10   set forth in the Court's Order of April 14 of 2016, and what

11   I'd like to do before we proceed further is first to identify

12   counsel of record who are here, and then identify also as well

13   the Respondents who are here.

14        Representing Plaintiffs' counsel, with the exception

15   of Mr. Engstrom is Mr. John Elrod and Gregory Joseph, and, Mr. 

16   Elrod, could you let me know in regard to Plaintiffs' counsel

17   who's present or who's not present?

18        MR. ELROD:  Yes, Your Honor.  Present are Matt Keil,

19   Richard Norman, Steve Vowell, Tim Myers, W. H. Taylor, Bill

20   Putman, Casey Castleberry, and Martin Weber, and Mr. Thompson

21   has requested that we let the Court know that he is only not

22   here because he's had a heart issue in the last few weeks and

23   he's had surgery.

24        THE COURT:  Okay.  Okay.  Thank you, Mr. Elrod.  Okay.

25   And, Mr. Matthews, counsel for the Defendant Respondents?

1          MR. MATTHEWS:  Thank you, Your Honor.  All three of

2    the defense Respondents are present.

3          THE COURT:  Yeah.  And then, of course, Judge Moody

4    for Mr. Engstrom.  I believe Mr. Engstrom is here as well.

5          MR. MOODY:  Yes, sir.  That's correct.

6          THE COURT:  Thank you.  Now, let me just first state

7    kind of just procedurally how I intend to proceed today, and I

8    think I did have my law clerk send an e-mail to the counsel

9    just to give an idea procedurally how I plan to conduct the

10   hearing today.

11         Let me again first just give some background as to how

12   we got to the point of this hearing today.

13         The action, the underlying case, was originally filed

14   in this court on January 15, 2014, based upon a removal from

15   Polk County Circuit Court, and the matter proceeded in

16   litigation for about 17 months at which time the matter was

17   dismissed pursuant to a Stipulation of Dismissal by the

18   parties.

19         Again, I don't need to go into all the underlying

20   facts.  I believe those are all set forth adequately in the

21   Order of April 14, 2016.  The Court, of course, entered its

22   initial Show Cause Order in December of 2015, but then entered

23   an additional notice on February 11, 2016, and, then, of

24   course, the Court conducted a hearing on February 18, 2016, at

25   which all the Respondents were present.

```
 1          Now, the Court made certain findings that were set
 2   forth in the Order of April 14, 2016, and also the Court set
 3   out in that particular Order what it would consider to be a
 4   range of sanctions it was considering in this case based upon
 5   the finding that was made in the Order of April 14.  And, of
 6   course, under Eighth Circuit precedent, parties are to be given
 7   adequate notice of the sanctions that the Court may be
 8   contemplating, and so that is how we arrived at this hearing
 9   today.
10          So the parties have all filed supplemental briefs and
11   affidavits and I've read all of the briefs and I've read all
12   the affidavits, and, also, I have reviewed some of the previous
13   material from the hearing of February 18, 2016, as well.
14          Now, I understand that Mr. Joseph is going to speak on
15   behalf of Plaintiffs' counsel and, and then I'll give
16   Mr. Matthews an opportunity for defense counsel, of course,
17   Judge Moody for Mr. Engstrom as well.  So with that said, I
18   think we will proceed.  Mr. Joseph?
19          MR. JOSEPH:  Thank you, Your Honor.  May it please the
20   Court, I'd like to begin by talking about a few ways the record
21   is different today than it was at the time of the April 14th
22   Order, and one of the ways that the record is different today
23   is that it corrects what I believe was a misimpression of the
24   Court with respect to the prior cases identified at pages 27 to
25   29 of the Order, which would be then Vinson, Rafaelli, Goodner,
```

1    Putman, excuse me, Pipes and Runyan.  In Footnote 12, the Court

2    said, "that misconduct that has been unnoticed in the past does

3    not excuse the instant misconduct.  If anything, this argument

4    bears on the degree of Respondents' bad faith."  Your Honor, I

5    think the record now proves that there was nothing unnoticed

6    about the procedure the parties engaged in in the other cases.

7    Mr. Castleberry's affidavit, in particular on the Vinson case,

8    shows that exactly the same procedure was followed in that case

9    as in this case.  The parties filed the Rule 41(a)(1.1)

10   dismissal, excuse me, (a)(1.2) Stipulation of Dismissal.  They

11   didn't give any advanced notice to Judge Wilson.

12        THE COURT:  And it got -- and he entered an Order of

13   Dismissal with Prejudice.

14        MR. JOSEPH:  With prejudice and retaining jurisdiction

15   to enforce the settlement.  And when that was called to the

16   Court's attention that counsel were, in fact, going to proceed

17   in state court with the settlement, he reversed that and he

18   entered a dismissal without prejudice which was essential to

19   permit that to proceed, and in each of the other four cases, on

20   Rafaelli, Pipes, Runyan, and Goodner, the state court was told

21   that a settlement was proceeding in state court, and in Pipes

22   and Runyan the Court entered stays for about a year-and-a-half

23   to permit that to proceed.  None of the Courts suggested there

24   was anything improper about doing that.

25        THE COURT:  Of course, all of those cases involve

1  parallel litigation.  I think in the Pipes case, which actually

2  is a case that was eight years old, involved multi-district

3  litigation.  I think it was litigation in like six different

4  states and there's some litigation in Arkansas as well.  And

5  then it coalesced into, I think, a final case in Pulaski County

6  Circuit Court.

7       MR. JOSEPH:  That, and well, Your Honor, in the Vinson

8  case in particular they commenced the action after the federal

9  action in order to proceed.

10      THE COURT:  Yeah, okay.  Excuse me.  Go ahead.  I

11  don't -- I just want to make sure I'm understanding what you're

12  saying.

13      MR. JOSEPH:  And what I'm saying, Your Honor, is in

14  each one of those cases the courts were aware that the

15  settlement was going to take place in the state court, which is

16  appropriate under Rule 23, and I'm going to come to Rule 23,

17  and let me say this:  I know Your Honor's not here to

18  reconsider.  So the point of my arguments for this purpose in

19  considering whether to exercise your discretion as to whether

20  or not to sanction is whether the position was colorable.

21  Okay?  You don't have to agree with it.  You don't have to

22  agree with what Judge Wilson did.

23      THE COURT:  I know.  That's why I told you in the

24  e-mail I'm going to permit you to make this argument, because I

25  do think it's relevant to that.

1          MR. JOSEPH:  Thank you very much, Your Honor.  And

2     when you have federal judges that actually facilitate a process

3     of permitting state court review, unnoticed of what is

4     happening, state court review of a settlement, which none of

5     them would have done if they had perceived anything improper

6     was going on --

7          THE COURT:  Well, do you know if those judges -- do

8     you know if Judge Wilson or Judge Hickey actually looked into

9     what actually happened in that state court proceeding, like I

10    did in this case, for the purpose of determining whether the

11    stipulation is done for a proper purpose?

12         MR. JOSEPH:  Your Honor, I don't.  I'm going to get to

13    the proper purpose in a moment.

14         THE COURT:  Yeah.  Do you know or do you not know?

15         MR. JOSEPH:  I do not know.  I don't have any evidence

16    that they did.  I don't have any evidence.  On the other hand,

17    Your Honor, from our perspective, I believe it's fair to say

18    that shouldn't matter under Rule 23 --

19         THE COURT:  Okay.

20         MR. JOSEPH:  -- because what we are going to get to is

21    the question is:  What was the purpose of the 2003 amendment to

22    Rule 23?  And I think the question is:  Were they using the

23    rule for the purpose for which it was intended?  Because if

24    they are using the rule for the purpose for which it was

25    intended, it's not an improper purpose.  At least they can

1   reasonably believe it's not an improper purpose for the Court's

2   purposes in determining whether or not to exercise its

3   discretion to sanction them.

4           THE COURT:  Yeah.  I've read that part of your brief.

5   I understand that part of your argument.

6           MR. JOSEPH:  What I'm saying about these cases

7   particularly when they have given notice to the Court, they

8   don't know whether or not the Court is doing anything further,

9   but if the Court thought that there was something improper

10  about what they did, they could reasonably expect the Court to

11  tell them.  That's what trial lawyers expect.  Judges don't

12  permit things they don't accept as proper.  And if they didn't

13  do anything further, they can decide whether or not the Court

14  thinks it's necessary to do anything further, but from the

15  lawyers' perspective, having had this happen on four separate

16  occasions, there was no reason to believe they were doing

17  something improper here.  So, Your Honor, let me talk about

18  Rule 23, because I think that really is the crux of this case,

19  because I think that the question is whether or not you --

20          THE COURT:  Are you talking about the change in the

21  rules?

22          MR. JOSEPH:  Correct, the 2003 amendment to Rule 23.

23  Because --

24          THE COURT:  And I think -- okay.  Go ahead.

25          MR. JOSEPH:  No, please, Your Honor, I'd rather not --

```
 1              THE COURT:  No, I've read your brief, and I'll have to
 2    tell you, the briefing is very good.  And, but I want you to
 3    emphasize what you --
 4              MR. JOSEPH:  Well, I'm not intending to repeat it, but
 5    I agree with Your Honor that the mere fact that the rules
 6    permit something to be done, doesn't mean it can't be done for
 7    an improper purpose.  Your Honor said you have a right to file
 8    a complaint, but that doesn't mean you can file a complaint for
 9    an improper purpose.  So then the question is:  What was the
10    purpose of the change in Rule 23?  And the purpose of the rule
11    change was to permit parties to divest federal courts of review
12    of putative class actions if they are uncertified.  That was
13    the purpose.  And if you take a look at the history of the
14    rule, that's very clear.  When that rule change went out --
15    let's talk about what the rule was in 2003 before December 1.
16    It was ambiguous.  All Circuits pretty much, with a few
17    exceptions, had ruled like the Eighth Circuit, that it was
18    intended to require District Court approval before an
19    uncertified class action could be settled or dismissed.  That
20    was the Eighth Circuit rule in Crawford.  And the way the rule
21    first went out in 2001, they were going to codify that.  They
22    were going to make it absolutely clear, and I just want to read
23    to you from the Advisory Committee minutes exactly what the
24    wording was that they put out for public comment.  And this is
25    what it said:  "A person who sues or is sued as a
```

1    representative of a class may settle, voluntarily dismiss,

2    compromise or withdraw all or part of the class claims, issues

3    or defenses but only with the Court's permission."  That was

4    what they put out.  That's what everybody expected the rule to

5    say in 2003, and they changed their minds.  After receiving

6    public comments, they decided that federal court approval

7    should not be required for a dismissal of an uncertified class

8    action, and the reasoning was absent class members aren't

9    relying on uncertified class actions because they don't even

10   know about them.  That is the rationale.  So the rule-makers

11   allowed parties to divest federal courts of jurisdiction over

12   uncertified class actions, so it's not a matter of evading

13   federal review to subvert the purpose of Rule 23.  That is the

14   purpose that you could take the race away from the Court.  A

15   lot of us thought that was a bad idea at the time.  But that

16   was what the rule-makers decided.  And the sanctions power is

17   not a reservoir of power to reverse rule-makers' decisions.

18   That was their decision.  And if you think about this, Your

19   Honor, the Plaintiffs never sought a federal forum.  There's

20   nothing improper in their agreeing, when the rule specifically

21   is drafted to permit it, to go back to state court.

22          Now, there's another way that the record isn't the

23   same as it was on April 14, and that is that the Court now has

24   full briefing on Thatcher and Hamm, and I know Your Honor has

25   read that and read that they are both 41(a)(2) cases where

1  defendants objected, and the Eighth Circuit has made it

2  extremely clear that the purpose of 41(a)(2) in requiring a

3  motion is to protect defendants.  But when the defendants don't

4  object, there's nothing improper even under 41(a)(2) in

5  granting the motion to remand, and that's just Judge Reade's

6  decision in McDaniel.  She said when the defendant consents,

7  then the forum shopping rationale is entitled to little weight,

8  the defendants not being prejudiced.

9         Now, the Eighth Circuit in Kern, and I know Your

10  Honor's familiar with Kern, upheld the motion at a time just

11  before directed verdict, so making the motion, the purpose

12  isn't improper.  It can be a ground to deny if the defendant

13  objects, but it's not an proper purpose.  I'm not going to go

14  into, you know, the situations where the Eighth Circuit has

15  upheld 41(a)(1) dismissals where it's clearly for forum

16  shopping, like Safeguard where they had already filed the new

17  action in the District of Kansas when they said, "You filed a

18  41(a)(1); it's out of our hands."  Rule 43 -- 41 together with

19  23 now permit that in uncertified class actions where counsel

20  can reasonably believe that.  We believe we are right about

21  that.  Your Honor, may entirely disagree.  One of us is right.

22  One of us is wrong.  But it's a reasonable position.  And, Your

23  Honor, whether or not the Court is persuaded about this, it

24  can't be the right answer that doing this in the federal courts

25  of Arkansas is sanctionable, but if you cross the border into

1    Oklahoma and you are under Tenth Circuit law or you cross the

2    border and you are in Texas and you are under Fifth Circuit

3    law, it's okay, or if you are on either coast in the Second or

4    the Ninth Circuit, it's okay.  That's not what the sanctions

5    power is intended to require.  We have four Circuits that

6    expressly permit it, and the Eighth Circuit has never expressly

7    rejected it.  We found no case applying Thatcher and Hamm to a

8    41(a)(1) dismissal where it's stipulated on consent.  It's a

9    reasonable position, and in the exercise of discretion, it's

10   not appropriate to be sanctioning people in these, in these

11   circumstances.

12            There's one thing I want to add on the state court --

13   and as I understand the opinion, Your Honor, it wasn't saying

14   that you were sanctioning for what was said in the state court,

15   but you were looking to that as evidence of bad faith.  And so

16   we've documented how the record actually reflects that the

17   Court knew exactly that this was a claims-made settlement.

18   When they talked about a common fund, they said time and time

19   again it may not all be claimed.  It's claims made.  The Court

20   knew that.  It's in the Final Order.  It's in every

21   application.  But there's one thing I wanted to add and that's

22   specifically on the perjury issue, Mr. Gold's [sic] statement,

23   you know, Your Honor, just today I found out that the actual

24   objection that Mr. Trammell filed was filed on November 16,

25   2015, in Polk County Case CV2015-105, and this was the

1   objection to the Notice.  He said it, quote, "threatened

2   criminal perjury if the form contained errors."  Well, that's

3   not right.  It's got to be to the best of your knowledge or

4   information, but it doesn't threaten perjury if it makes a

5   mistake, and that was what was being responded to, so I'm not

6   going to go into the things we have in our brief, but I will

7   say that, as the Kusan case said years ago, if you present the

8   Court with a document and you mischaracterize it, it's a no-

9   harm-no-foul-no-sanctions situation, but here, repeatedly in

10  the affidavits and in the applications, they made it clear that

11  the form required to be signed under the penalty of perjury,

12  and the appendix you have, it's in three separate times, and in

13  each one it twice says it, but it wasn't if there was an

14  inadvertent error.  It had to be done to the best of people's

15  knowledge and information.  And on the 26(f) report, the Court

16  was aware that the case was on the verge of settlement.  The

17  Court didn't want to stay it anymore, and that's entirely

18  within the Court's discretion, move this along.  That may have

19  expedited getting it settled, but when the Court orders the

20  parties to file a 26(f) report so that if they don't file it,

21  they are subject to sanction under Rule 16(f), it can't be a

22  Catch-22 situation where if you file it, you are subject to

23  sanction, and if you don't file it, you are subject to

24  sanction, so I urge the Court to exercise its discretion not to

25  impose sanctions for that.  Complying with a Court Order

1    doesn't show bad faith.

2          And on the inherent power, the Court's focused on the

3    filing, the 41(a)(1) filing, which is the Stipulation of

4    Dismissal and the Court's question is:  Was that filed for an

5    improper purpose?  That's subject to Rule 11.  And if it's

6    subject to Rule 11, all of the learning is you don't go where

7    you don't need to under the inherent power, and it's not

8    necessary to resort to inherent power when it's specifically

9    covered by Rule 11.

10          I'd also say about Rule 11, that implicit in the

11   Court's opinion is a recognition that in reality there was no

12   bad faith.  And let me explain that.  On page 23 of the

13   opinion, I just want to read one sentence.  It says,

14   "Furthermore, because the purpose of Rule 11 is to deter, and

15   because the mere fact that Respondents now know that their

16   conduct in stipulating to dismissal for the purpose of seeking

17   a more favorable forum and avoiding an adverse decision is

18   unequivocally improper, they are unlikely to repeat this

19   misconduct."  The recognition that repetition is unlikely

20   because they now know clearly implies they did not know before.

21   And that's true.  I mean, given the history with the other

22   judges, they did not know, and that really undercuts a finding

23   of bad faith on the part of these lawyers.

24          And lastly, I'd simply say, as I referred to earlier,

25   the inherent power shouldn't be invoked to reverse rule-makers'

1   decisions and take away procedural opportunities that are given

2   under the rules.

3          And as for the injunction, Your Honor, I've read a lot

4   of injunction cases, and they are like the Tyler case in the

5   Eighth Circuit, you have a vexatious litigant in that case who

6   had filed 113 lawsuits in 18 months.  You know, that's an

7   injunction -- or the Goodyear case in the Ninth Circuit where

8   they actually suppressed bad test results on their tires so

9   they could fraudulently settle.  They are enjoined in every

10  other product with those tires to admit that those records

11  exist and they have been sanctioned.  This is not of that

12  character.  I mean, this is conduct which is permitted

13  elsewhere and has not been explicitly rejected here.  And that

14  isn't something that should be enjoined.

15         And the career impact of any sanction but particularly

16  injunctions, the career impact is there are a lot of lawyers,

17  clients do not need lawyers that have been sanctioned, and they

18  certainly don't need lawyers who have to publicize the fact

19  they have been sanctioned in every case that the client hires

20  them for, so we really urge the Court not to issue the

21  injunction.

22         As for the reprimand, sometimes reprimands are viewed

23  from the bench as being mild.  They are not mild.  I mean, they

24  are something that haunt a lawyer.  It really is every

25  insurance application, every renewal, every bar renewal, every

1   pro hac vice application.  I mean, that is something that stays

2   with you for a career, not to mention the Internet.  It becomes

3   the first thing when somebody is Googled that ultimately ends

4   up on the Internet.

5          And I know the Court has a harsh view, a dim view of

6   claims-made settlements.  I'm not here to put forward any

7   settlement, but let me say this:  If this case had gone to

8   trial and the Plaintiffs won, there would have been a claims

9   process.  People would have had to come forward and prove they

10  are a member of the class.

11         In the Vivendi class action in New York, that case was

12  tried to a jury verdict in 2010.  It took years to go through a

13  claims process, so a claims-made settlement that gives one

14  hundred percent on the dollar to anybody that bothers is no

15  different than what happens if you get a jury verdict.  Now, it

16  may not be the best settlement compared to other settlements,

17  but it's not an irrational settlement.

18         So, Your Honor, our final position is pretty

19  straightforward.  Sanctions are not necessary to deter here.

20  Your Honor has found that.  They are not necessary to punish.

21  The media has taken care of that.  They aren't necessary.  And

22  in the Wolfchild case that the Eighth Circuit decided about two

23  weeks ago, they made it clear, again, that when you've got a

24  complicated area of law, it really isn't an area that sanctions

25  are appropriate.  So we would urge the Court -- this is

1    entirely discretionary.  We have this opinion sitting there.

2    It's entirely discretionary with whether you go forward and

3    issue a sanction, and we would say, like in the Sargent case,

4    which was decided out of the Fourth Circuit, the opinion is the

5    opinion but we do not need a sanction.  We would urge the Court

6    not to issue any sanctions.

7         Thank you, Your Honor.  Unless you have any questions,

8    I would --

9         THE COURT:  Okay.  Thank you, Mr. Joseph.  I would

10   think Judge Moody would actually be next --

11        MR. MOODY:  Yes, sir.

12        THE COURT:  -- I'll let you, Judge Moody --

13        MR. MOODY:  Thank you, Your Honor.  May it please the

14   Court, Your Honor, I just want to make one brief point on

15   behalf of Mr. Engstrom.  I did not file a separate brief, but I

16   did ask that the Court consider it on behalf of Mr. Engstrom,

17   adopting it and --

18        THE COURT:  I think we entered a text order

19   acknowledging that or should have.

20        MR. MOODY:  Okay.  I did file a supplemental

21   affidavit, which I know the Court has read.

22        THE COURT:  I received it, too.

23        MR. MOODY:  All right.  One thing was omitted in the

24   affidavit, but I think the brief supports this point is that

25   initially Mr. Engstrom's role was primarily to take the case to

1    the Arkansas Supreme Court and establish the underlying law

2    with respect to the depreciation of labor.  He did enter an

3    appearance in this case.  He continued to follow the case, and

4    to be candid with the Court, he participated, so he knew that

5    as part of the settlement negotiations that the case -- that it

6    was intended to take the case back to state court.  But I'm not

7    sure that he was ever consulted about the propriety of that,

8    but to the extent that he had the opportunity to give his

9    opinion about the propriety of that, I think his opinion would

10   be that he could see no reason why it wasn't proper, based on

11   what he thought was his good faith understanding of what other

12   courts in this District and in the Eastern District had done

13   under the same or similar circumstances, so I think I just

14   would ask the Court to take that into consideration, applying

15   the arguments that Mr. Joseph just made and also the brief that

16   he submitted.

17            THE COURT:  Good.  Okay.  Thank you, Judge Moody.

18   Okay.  Mr. Matthews?

19            MR. MATTHEWS:  Your Honor, thank you for the

20   opportunity.  I don't have anything further to add.  We do

21   appreciate the opportunity to have filed supplemental

22   affidavits and a brief accompanying it, but we have nothing

23   further, unless the Court has questions for me.

24            THE COURT:  No, no.  The one that thing that I will

25   say is that the supplemental briefing and the affidavits are

1  helpful, and I do think that that information -- in fact, I

2  even went back and looked at the original affidavits as well,

3  and I do think that calls into question about the Court's

4  finding of bad faith in regard to those particular Respondents.

5          MR. MATTHEWS:  Thank you very much, sir.

6          THE COURT:  So, anyway, to the extent there are any

7  errors in the original Order, if I conclude that that's the

8  case, I'll correct them in the Final Order.

9          But, anyway, what I intend to do is take the matter

10  under advisement, and as I told counsel before, we've been very

11  busy here this week with a lot of criminal cases.  I have not

12  had the opportunity to read in depth all of these briefs, but I

13  did read them, but we need to go back and digest them further.

14  Again, I'm going to make a decision on what I believe to be the

15  law and the evidence in the case, and I think counsel have, for

16  each of the Respondents, have represented their clients well

17  and I do believe that I have sufficient information to take the

18  matter under submission, under advisement.

19          So before we recess, I'll ask either, Mr. Elrod or

20  Mr. Joseph, is there anything else?

21          MR. JOSEPH:  Your Honor, I referred to one document

22  from the Polk County case.  May we submit that into the record,

23  just so the record is complete on that?

24          THE COURT:  Yes.

25          MR. JOSEPH:  Would you like that now or would you just

1   like us to submit that separately electronically?

2           THE COURT:  What is that document again?

3           MR. JOSEPH:  It's the objections that Mr. Trammell

4   actually submitted to which Mr. Ball was actually responding.

5           THE COURT:  Okay.  Why don't you file that

6   electronically as a supplement to your brief?

7           MR. JOSEPH:  Will do that, Your Honor.

8           THE COURT:  I think that would probably be the easiest

9   way to do it.  You could give it to me physically here, but it

10  would probably be easier to just file it electronically.  I

11  understand it probably may not happen until next week, so just

12  whenever you get it done.

13          MR. JOSEPH:  We will get it done.  Thank you very

14  much, Your Honor.

15          THE COURT:  Okay.  Mr. Matthews?

16          MR. MATTHEWS:  Nothing further.

17          THE COURT:  Judge Moody, anything else from you?

18          MR. MOODY:  Nothing further, Your Honor.

19          THE COURT:  Thank you for your time today, and I'll

20  take the matter under submission.  And, again, I don't -- we

21  will try to -- I know how important this is to all of you, and

22  we will try to get something entered as soon as we can, but I

23  do want to get it right, correct, and so I'll take the matter

24  under advisement, and the Court will be in recess.

25          (End of proceedings.)

C E R T I F I C A T E

State of Arkansas    )
                     )
County of Sebastian  )


     I, Rick L. Congdon, a Registered Merit Reporter, and

Official Court Reporter for the United States District Courts,

Western District of Arkansas, do hereby certify that the

foregoing transcript, taken before me at the time and place

herein designated, consisting of pages 2 through 20, was taken

down by me in machine shorthand and then transcribed via

computer, either personally or under my supervision, and that

this transcript is a true, correct, and complete transcript of

said proceedings as reflected herein.

     Signed this 28th day of June, 2016, in the City of Fort

Smith, County of Sebastian, State of Arkansas.


                              */s/  Rick L. Congdon*
                              **RICK L. CONGDON, RMR, FCRR**
                              OFFICIAL COURT REPORTER
                              U. S. DISTRICT COURTS
                              WESTERN DISTRICT OF ARKANSAS